Erika Lee (email: leeerikalatise@gmail.com)
20 Confucius Plaza #10k
NY, NY 10002
(Phone:646-552-8394)

- - - - - - - - - - - - - - - - - - - - - - - - - -X

**ERIKA LEE**                     **US DISTRICT COURT**
                                  **SOUTHERN DISTRICT OF NY**

        Plaintiff, Pro Se

                                  **CASE: 22-cv-08618-GHW-RWL**
        -against

                                  **SECOND AMENDED**
                                  **VERIFIED COMPLAINT**

**DELTA AIR LINES, INC.;**
**DAVID NEEDHAM; &**
**JOSE ROSADO**
        Defendants                **JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - -X

### IDENTITY OF PARTIES

**1.** At all relevant times mentioned herein, Plaintiff Erika Lee ("Lee"), a New York City resident, was employed by Defendant Delta Air Lines, Inc. ("Delta").

**2.**At all relevant times mentioned herein, **Delta** was and is a corporation duly-organized and existing under the laws of Delaware and was and is authorized to do business in the County, City; and State of New York.

**3.** At all relevant times mentioned herein, **DAVID NEEDHAM**, was employed by Defendant Delta Air Lines, Inc. ("Delta") as"Chief HR professional for JFK Airport," and/or "Manager of Human Resources"

**4. JOSE ROSADO**, was employed by Defendant Delta Air Lines, Inc. ("Delta") as "General Manager Customer Service" at JFK Airport, in Queens,New York beginning in mid June 2021. Prior to mid June 2021, Jose Rosado was employed at Jetblue Airways.

### RELEVANT BACKGROUND

**5.** Plaintiff began working her employment with Delta in September 2005 at JFK Airport as a Customer Service Agent.

6. At all relevant times herein, Plaintiff satisfactorily performed her job duties as a Customer Service Agent.

7. From January 2011- March 26, 2021, Plaintiff was never disciplined for any reason including but not limited to "reliability" (latenesses and/or absences) or poor performance, at any time. Additionally, Plaintiff did not have any form of "performance development" and/or "formal verbal coachings" and/or "written corrective action" in her personnel file at any time within the last 10 years of her employment with Delta.

8. From around December 2017 through 2020, Plaintiff was being sexually and racially harassed, as well as sexually assaulted, by Delta Manager Bernadette Tomasi.

9.In April 2019, Plaintiff had a telephonic meeting with Delta's HR/Equal Opportunity or "EO" Department and formally complained to Delta that because of Plaintiff's race and sex, Delta Manager Bernadette Tomasi was forcing Plaintiff to wear a skirt and "heels," as Tomasi demanded that Plaintiff "look sexy" because Manager Tomasi told Plaintiff, "I want to see them big black ass cheeks switching when you walk." Yet, the similarly situated white women who Tomasi also managed were not required to wear heels/ skirts as Tomasi was demanding Plaintiff to do, as Delta's written uniform policy allows females to wear flat shoes, and Plaintiff was threatened with suspension and adverse employment actions and/or write-ups if she didn't wear heels, "look sexy" and/or acquiesce to Tomasi's sexual requests for lesbian sex.

10. In this same April 2019 telephonic meeting with Delta's HR/Equal Opportunity or"EO" Department,. Plaintiff also requested a reasonable accommodation, wherebyDelta's EO Manager refused to engage in the interactive process and denied Plaintiff's request for a reasonable accommodation, while refusing to accept any medical documentation and refusing to explore any alternative options, as Delta had always done with similarly situated white female comparators, such as Tabitha Hutchinson, Jennifer Palmer, etc.

11. Immediately after Plaintiff made these formal complaints and engaged in protected activity to Delta's EO HR Manager in April 2019, Plaintiff was immediately suspended without pay for 2 weeks, whereby Plaintiff suffered economic harm in retaliation for opposing race/disability/sex discrimination and hostile work environment by Delta Manager Tomasi.

12. After Delta "EO" HR Department became aware of Manager Tomasi's illegal sexually and racially harassing behavior, Delta told Plaintiff that Plaintiff would have to continue to be subjected to Tomasi's sexually and racially harassing behavior if Plaintiff wanted to remain

---

SECOND AMENDED VERIFIED COMPLAINT page 2

1   employed at Delta because Delta had no reason to address the situation because Plaintiff was
2   not being sexually harassed by a man, so Manager Tomasi, because of her sex, was
3   empowered by Delta to continue her disgusting behavior any time she desired because of
   Plaintiff's sex. Delta's "EO" HR Manager tried to reduce this to a "petty cat-fight," as Delta's
4   "EO" HR Manager told Plaintiff, "Bernadette sticking her tongue out at you and staring at
5   your breasts and asking you about your vagina is just girl talk, women often touch each others
6   breasts and make sexual comments about their vaginas to each other, it is just how females
7   are with other females. You are not being sexually harassment because there is NO MAN
   involved." Not one action was taken by Delta to ensure that Plaintiff would not be subjected
8   to Manager Tomasi's sexually and racially harassing behavior again.
9   13. After Plaintiff returned to work after Delta's 2 week suspension without pay in retaliation
10   for opposing Tomasi's sexually and racially hostile work environment, Plaintiff was still
11   being sexually and racially harassed by Delta Manager Tomasi from April 2019 through
12   2020, whereby Tomasi would stick her tongue out and move it in a rapid up and down motion
13   to simulate the act of cunnilingus, where she would then ask Plaintiff if Plaintiff's pubic hair
   was "kinky" and if Plaintiff shaved her vagina, and telling Plaintiff that she couldn't wait to
14   try Plaintiff's black vagina because she heard black vagina tastes like "fried chicken and
15   collard greens."
16   14. At all times from 2019 through termination, Plaintiff was filled with fear every time she
17   reported to work, given that Delta refused to address Tomasi's sexually aggressive conduct
18   perpetuated on Plaintiff because of her sex and race, since Tomasi constantly told Plaintiff
19   that Tomasi was going to penetrate Plaintiff's black vagina with Tomasi's "big white dildo"
   and Tomasi was tired of Plaintiff "playing hard to get."
20   15. In mid-2020, Manager Tomasi spanked Plaintiff's butt and made sexual comments while
21   spanking Plaintiff butt.
22   16. From mid-2020 through March 2021, Plaintiff did not want to make any more complaints
   or report Manager Tomasi sexual harassment/violent sexual
23   assault(spanking Plaintiff's butt) because Plaintiff did not want to be suspended without pay
24   again and/or be terminated, as Delta threatened Plaintiff with suspension without pay or
25   termination in April 2019 if Plaintiff made any more complaints about Tomasi's sex and race
26   discrimination and the severely hostile work environment Delta intentionally subjected
   Plaintiff to.
27   17. On February 19, 2021, Delta's New York HR Manager **David Needham** called Plaintiff
28   because Needham needed to ask Plaintiff if she had ever been sexually "spanked" by

Manager Tamasi in 2020 because he told Plaintiff, without revealing his source, that he had heard that Plaintiff was sexually "spanked by Manager Tamasi." However, it is 100% false that Plaintiff herself voluntarily"raised" these "complaints" that Plaintiff was "spanked" by Manager Tamasi in mid-2020 to David Needham or anybody at Delta in February 2021, as Plaintiff did not want to be retaliated against again.

18. In this telephonic February 2021 phone call between Delta's HR Manager David Needham and Plaintiff, Plaintiff NEVER specifically told Needham whether or not Plaintiff was sexually spanked and sexually assaulted by Manager Tomasi in mid-2020, as Plaintiff had not reported this to anyone at Delta and did not want to report it to anyone at Delta since Plaintiff was threatened with suspension and termination by Delta in April 2019 if she made any more complaints about discrimination, the hostile work environment, and the constant retaliation.

19. The first time that Plaintiff herself voluntarily "raised" these "complaints" that Plaintiff was "spanked" by Manager Tamasi in mid-2020 was on March 25, 2021 to Delta Equal Opportunity HR Manager, Kelly Nabors. On March 25, 2021, Plaintiff had a phone conversation with Delta "EO" HR Manager Kelly Nabors, whereby Plaintiff made another formal complaint where Plaintiff informed Nabors that Plaintiff was continuously and constantly sexually and racially harassed by Manager Tamasi after Plaintiff's last April 2019 complaint to Delta's Equal Opportunity, as Manager Tomasi"sexually spanked my butt in mid-2020 and continued to sexually and racially harass me, because Delta refused to intervene." During this March 25, 2021 conversation with Nabors, Plaintiff also requested a reasonable accommodation for her May 1,2021 return to work, and Nabors refused to engage in a cooperative dialogue and

failed to accommodate Plaintiff's disability from March 25, 2021 through June 17, 2021.

20. On March 26, 2021, in retaliation for opposing Delta Manager Tomasi's sex and race discrimination (including but not limited to the sexual spanking issue) and requesting a reasonable accommodation to Nabors on 03/25/2021, Plaintiff was suspended without pay, whereby Plaintiff suffered economic harm.

21. In February 2021, March 2021, April 2021, May 2021 and June 2021, Plaintiff requested reasonable accommodations for her disabilities, and at all times, Delta, again, refused to engage in the interactive process.

22. From March 26, 2021 through June 16, 2021, Plaintiff was suspended without pay.

23. On June 17, 2021, Delta and/or **Jose Rosado and/or David Needham** terminated

---

1   Plaintiff's employment in retaliation for opposing Delta Manager Tomasi's sex and race
2   discrimination (including but not limited to the sexual spanking issue) to Delta's HR
3   Managers, Danielle Kruit and Kelly Nabors on or around April 1, 2021, as well as requesting
    a reasonable accommodation from February 2021- June 2021.

4   24.The baseless, discriminatory, and defamatory reason offered for Plaintiff's June 17, 2021
5   termination was Plaintiff's "dishonest behavior" regarding Delta HR Managers Danielle Kruit
6   and Kelly Nabors not believing that Plaintiff was sexually "spanked by Manager Tamasi in
7   mid-2020," after Plaintiff first voluntarily "raised" this complaint to Kelly Nabors on March
    25, 2021.

8   25. On Plaintiff's April 1, 2021 phone call with Delta HR Managers Danielle Kruit and Kelly
9   Nabors, Plaintiff asked them if this call was about sexual harassment or about some other
10  issue, at which point they dismissed Plaintiff's complaints regarding Tomasi sexually
11  harassing Plaintiff, saying "we already investigated Tomasi spanking you in April 2019 and
12  this issue was addressed already," Kruit and Nabors then both said that the call was solely
13  about Plaintiff, at which point Plaintiff explained that it was impossible for Delta to have
14  investigated Plaintiff being spanked by Tomasi at any time in 2019 because Plaintiff was not
    spanked until mid-2020, which silenced them.

15  26. Delta never contacted Plaintiff again after her call with Kruit and Nabors on April1, 2021,
16  making it clear that Delta desired that Plaintiff stay out of its workplace to punish her for her
17  complaints about Tomasi's sexually and racially harassing behavior and Delta's condonation
    of that harassment.

18  27. Attached as Exhibit 2 is a true and correct copy of Plaintiff's March 30, 2021 email to
19  Delta HR Manager Danielle Kruit, where Plaintiff opposed discrimination and retaliation.
20  28. As a result of Defendant Delta's discriminatory conduct, Plaintiff has suffered the adverse
21  effects of sexual and racial harassment and retaliation, the quality of her life has been
22  irreparably damaged and her self-esteem, self-respect and well-being has been damaged
23  because she were subjected to the humiliating and demeaning type of conduct described
    herein, all of which will continue and remain a source of humiliation, distress and financial
24  loss to Plaintiff into the future, so that the quality of Plaintiff's life has been negatively
25  impacted as a result of the discrimination to which Plaintiff were subjected by Delta.
26  29. The acts of Defendant were committed with reckless indifference in the face of a
    perceived risk that their actions would violate Plaintiff's protected rights under the New York
27  City Human Rights Law so that, in addition to the damages inflicted upon Plaintiff and in
28  addition to all the other measures of relief to which Plaintiffs may be properly entitled herein,

1   Defendant should also be required to pay punitive damages as punishment for their
2   discriminatory conduct, in order to deter Defendants and others similarly situated from
3   engaging in such conduct in the future.

**DEFAMATION (LIBEL PER SE & SLANDER PER SE)**

4   30.Beginning around March 26, 2021 and continuing through July 2021, Delta managers
5   Danielle Kruit, David Needham, and Kelly Nabors published and republished Delta's
6   unprivileged, false statements of purported facts of and concerning Plaintiff to other Delta
7   employees and third parties, other airline industry colleagues, including but not limited to
8   JetBlue Airways employees Jose Rosado and Southwest Airlines employee Mayra
9   Amezquita, Ashley and Evan, etc., that Plaintiff is a "liar," a "fraud," was terminated for
10  having "engaged" in "dishonest behavior," that **David Needham** was "conducting...an
11  investigation…into complaints raised by you," that Plaintiff "had been dishonest in
12  connection with your relations with Delta," that Plaintiff was terminated for
    "insubordination" and because Delta "lost trust in your ability to perform your duties in a
13  manner consistent with our policies and expectations, including the expectation of candor in
14  your relations with Delta," and that Plaintiff committed the crime of "workers comp
    (insurance)fraud."
15  31.Attached as Exhibit 1 is a true and correct copy of Delta's March 26,2021 "Suspension
16  Letter." where Delta Manager Danielle Kruit published and republished Delta's unprivileged,
17  false, defamatory per se statements of purported facts of and concerning Plaintiff to
18  Southwest Airlines employee Mayra Amezquita, Ashley and Evan, and JetBlue Airways
    employees Jose Rosado and Erik H., Aasir Azzarmi, John Gurney, etc. that Plaintiff
19  "engaged" in "dishonest behavior...Additionally, should the allegations be substantiated (with
20  or without your participation), your employment will be reviewed for disciplinary action, up
21  to, and including, termination." (LIBEL PER SE).
22  32. Attached as Exhibit F is a true and correct copy of Jose Rosado's LinkedIn account which
    proves that he was employed by JetBlue Airways from March 2021 through around early
23  June 2021 and/or was not employed by Delta Air Lines, Inc. during this time period, yet he
24  published these false, unprivileged statements of purported facts of and concerning Plaintiff
25  to third parties of which Rosado had no personal knowledge of.
26  33. Attached as Exhibit B is a true and correct copy of Delta's June 17, 2021 termination
    letter which Jose Rosado published Delta's false, unprivileged statements of purported facts
27  of and concerning Plaintiff to Southwest Airlines employee Mayra Amezquita on or around
28  July 1, 2021, Evan and Ashley, Aasir Azzarmi, John Gurney, etc. that "We initially reached

out to you on March 26, 2021 to inform you that you were suspended... in connection with our investigation of a complaint that you had been dishonest in connection with your relations with Delta. We received information that you falsely represented that you had had a conversation with David Needham(Senior Human Resources Manager for JFK in New York) on February 19, 2021 in which he allegedly made a variety of statements concerning an investigation he was conducting into complaints raised by you regarding another employee who worked in LaGuardia Airport(LGA) in New York while you worked in LGA with her...In light of the foregoing, Delta has decided to terminate your employment, effective immediately, on that grounds that it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta. Your failure to cooperate during the investigation also constitutes insubordination..."

34. As evidenced by Exhibit F, Jose Rosado has never had personal, firsthand knowledge of the purported facts that he published and republished in Exhibits A, B, C, & D, as he was a JetBlue employee in March 2021-June 2021 and never conducted any "interview" with Plaintiff at any time.

35. In July 2021, Delta managing agents, Wendy Chau and Richard Lorich, in the course and performance of their Delta HR Manager duties, published unprivileged, false, defamatory per se statements of purported facts about Plaintiff to Southwest Airlines employee, Mayra Amezquita, and other third parties, that Plaintiff is "a liar and a fraud who got caught lying and committing workers compensation fraud on Delta by faking workplace injuries for years to both steal money from Delta and to get paid time off from Delta. A few weeks ago, Delta finally caught Erika lying and doing workers comp fraud while she was out on another workers comp leave trying to steal more money from Delta without working, and Delta suspended her and terminated her for lying and for workers comp fraud. Do you still talk to Erika? Have you heard this about her? She's going to go to jail for doing this fraud and she's going to have to pay Delta restitution. Everybody is talking about Erika in New York and LA. Just the other day, one of the LAX gate agents, was like the fifth person to tell me this story about how finally after all these years, Erika got caught committing workers comp fraud." (SLANDER PER SE).

36. Attached as Exhibit A is a true and correct copy of Delta HR Manager Danielle Kruit's unprivileged, false, statements of purported facts of and concerning Plaintiff that Delta published and republished to Southwest Airlines employee, Mayra Amezquita, Ashley and Evan___, Aasir Azzarmi, John Gurney, etc. on or around July 1, 2021 that "On February 17,

2019, David Needham (Senior Human Resources Manager for JFK in New York) telephoned you in an effort to investigate new complaints made by you regarding Bernadette Tamasi (who worked in LaGuardia airport (LGA) in New York while you worked in LGA with her). At that time, he left a message for you to call him back so that he could get additional information from you. You did not return his phone call as requested and have not provided additional information.Notwithstanding the lack of information or cooperation from you, we took steps to look into your new claims. We note in April 2019, when you worked at LGA, you made complaints regarding a variety of matters, including allegations against Ms. Tamasi. Those complaints were investigated at the time, however, at that time, you did not raise the allegations you now have raised against Ms. Tamasi, including but not limited to the allegation that she "spanked" you. Ms. Tamasi denied your claims and we find her credible. We do not find your allegations credible. Based on the foregoing, we do not believe that the conduct alleged occurred and we are closing this matter."

37. In July 2021, Jose Rosado, who began working at Delta Air Lines in or around mid-June 2021, published unprivileged, false statements of facts about Plaintiff to JetBlue Airways employee, Erik Hildebrandt, that, "I fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee." (SLANDER PER SE)

38. After Jose Rosado,in the course and performance of his Delta HR Manager duties, published these false, unprivileged statements of purported facts about Plaintiff to Jetblue Airways employee Erik Hildebrandt in July 2021,Plaintiff witnessed JetBlue manager Erik H. republish Jose Rosado's false, statements that Jose Rosado "fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee" to third parties, John Gurneye and Aasir Azzarmi.

39. After Plaintiff discovered that Jose Rosado published these false, defamatory statements to JetBlue Airways employee Erik H in July 2021, Plaintiff sent Jose Rosado an email, on or around July 19, 2021, demanding that he, Jose Rosado, cease and desist from publishing these false, unprivileged statements of purported facts of and concerning Plaintiff to third parties.

40. Because Jose Rosado published these false, defamatory statements to Delta Airlines employees on and/or before June 17, 2021 and/or before being employed at Delta Air Lines, Inc., Plaintiff was harmed in her profession, as Plaintiff was terminated from Delta Air Lines, Inc., causing Delta Air Lines, Inc. to cancel their March 2021 contract with Plaintiff that was set to begin in July 2021, causing Plaintiff special damages.

41. Because Jose Rosado, later employed as Delta Manager, published these unprivileged, false, defamatory statements to JetBlue Airways employee Erik H in July 2021 of and concerning Plaintiff, Plaintiff was harmed in her profession, as she was unable to obtain employment at JetBlue Airways and/or any other airline, causing Plaintiff special damages.

**FAILURE TO ENGAGE/FAILURE TO ACCOMMODATE/RETALIATION**

42.Since 2012-present, Plaintiff's actual and perceived non-transitory disabilities of mobility impairment, depression, anxiety, PTSD, & obesity, are disabilities covered by the NYCHRL.

43.In February 2021, March 2021, April 2021, May 2021 and June 2021, on multiple occasions, Plaintiff made formal and informal reasonable accommodation (via telephone(oral) and email (written)) requests to Delta HR Managers *David Needham*, Kelly Nabors, and Danielle Kruit.

44. Because Plaintiff has a disability and requested a reasonable accommodation of "a chair to sit down in while performing the essential functions of her job" and/ or a transfer in February 2021 to David Needham, and again to Delta's Equal Opportunity HR Manager Kelly Nabors on March 25, 2021, Plaintiff was immediately suspended without pay on March 26, 2021, causing Plaintiff economic harm.

45. On or around the end of April 2021, Plaintiff's local manager, Shelonda, called Plaintiff to return to work on May 1, 2021, as Plaintiff was on a voluntary, unpaid, COVID leave from around April 2020 through April 30, 2021.

46. Because Plaintiff emailed HR Manager Danielle Kruit requesting a reasonable accommodation and again opposed discrimination/retaliation, Plaintiff was suspended again without pay in retaliation from May 1, 2021 through June 17,2021, which caused Plaintiff to suffer further economic harm.

47. At all times herein, Plaintiff was qualified to perform all of the essential functions of her job at Delta Air Lines, Inc., with or without a reasonable accommodation.

48. The essential functions of Plaintiff's job as a Customer Service Agent, in Dept.125, at Delta, were to "greet Delta's customers and guide and assist them with the ticketing and baggage check-in process; use computers to sell, print, and reissue tickets. Manage the check-in process, ensuring the customers have the proper documentation for travel;Tagging baggage and occasionally perform lifting tasks that involved transferring baggage from scales to conveyor belts; Practices safety- conscious behaviors in all operational processes and procedures: help Delta customers with routing, trip planning and gate boarding; use computers to assist customers with seat availability; gate announcements with regard to the boarding process, flight status, checking and handling baggage, managing and initiating the

boarding process; operate jetways to place them in position prior to aircraft arrival and lifting, opening, closing and securing aircraft doors."

49. Attached as Exhibit 7 is a true and correct copy of a photo that Plaintiff took with her cell phone on 10/09/2021 around 5pm at Terminal 2, JFK Airport of a similarly situated, white female Delta employees who was provided a "chair to sit down in while performing the essential functions of her job," yet Delta has always denied Plaintiff, because of her race and disability, this same "chair" as a reasonable accommodation for Plaintiff's disability.

50. Attached as Exhibit 6 are true and correct copies of photo that Delta employe Bajhi Adams took with her cell phone in or around 2016 at Delta's ATL airport in Georgia of a similarly situated Delta employees who Delta provided more than 1 "chair to sit down in while performing the essential functions" of their job.

51. Attached as Exhibit 5 are true and correct copies of Delta's online job postings that Delta posted on it's website and publicly advertised on delta.com in April 2021 through June 17, 2021.

52. Plaintiff's February 2021-June 2021 reasonable accommodation requests for a "transfer" to a vacant Cargo agent position and for a "chair" did not produce any undue hardship to Delta because Delta was publicly advertising on delta.com that Delta was looking to fill these Cargo agent job vacancies and Delta regularly provides "chairs" to similarly situated, non-disabled employees at JFK Airport in New York and ATL Airport in Georgia.

53. At all times from February 2021 through June 17, 2021, Delta failed and refused to both engage in a cooperate dialogue about the "chair" and "transfer" to reasonably accommodate Plaintiff's disabilities.

54. Attached as Exhibit 2 is a true and correct copy of Delta HR Manager Danielle Kruit's June 11, 2021 email response to Plaintiff's June 8, 2021 reasonable accommodation email requests for a "chair" and "transfer" to the vacant position that Delta was publicly advertising on delta.com since April 2021.

55. As evidenced by the emails in Exhibits 2-4, from April 2021 through June 11, 2021, Delta HR Manager Danielle Kruit refused and failed to ever have a cooperative dialogue, nor did Kruit address the "chair" as a reasonable accommodation in herJune 11, 2021 email response and summarily dismissed Plaintiff's "transfer" as a form of reasonable accommodation by stating "that is not a request Delta would consider."

56. Attached as Exhibit 3 is a true and correct copies of Plaintiff's April 2,2021 reasonable accommodation email requests for a "chair" and "transfer" where Plaintiff is opposing the fact that since February 2021, David Needham, Kelly Nabors and Danielle Kruit "have still

1  refused to engage in the interactive process" after Plaintiff made formal reasonable
2  accommodation requests to them in late February 2021 (before suspension without pay) on
3  March 25, 2021 (before suspension without pay), on March 30, 2021, and on April 1, 2021.
4  57. Attached as Exhibit C is a true and correct copy of Jose Rosado's June 17,2021 email to
   Plaintiff at 3:12 PM, which Plaintiff personally received by email from Jose Rosado's email
5  account, jose.e.rosado@delta.com, which was on Defendant Delta's server, which is
6  materially different than Exhibit B, which Delta published and republished to Southwest
7  Airlines employee Mayra Amezquita and other third parties, beginning around July 1, 2021
   and after July 1, 2021.
8  **COUNT I- INTENTIONAL RACE DISCRIMINATION (IN VIOLATION OF 42 USC**
9  **1981 & New York City Human Rights Law, N.Y.C. Admin. Code. § 8-107 , & New York**
10 **State Human Rights Law(N.Y. Exec. Law § 296) (ALL DEFENDANTS)**
11 58.Plaintiff realleges the above paragraphs and incorporates them by reference as if they were
12 fully restated herein.The New York State Human Rights Law ("NYSHRL"), NY Exec. Law §
   290, et seq., establishes that it is unlawful, because of an individual's race, "to bar or to
13 discharge from employment such individual or to discriminate against such individual in
14 compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)
15 (a). The New York City Human Rights Law ("NYCHRL"), NYC Admin Code § 8- 101, et
16 seq., establishes that it is unlawful, because of an individual's race, "to bar or to discharge
   from employment such person," or to "discriminate against such person in compensation or in
17 terms, conditions or privileges of employment." NYC Admin Code§ 8-107.
18 59. Plaintiff is a black(African-American) woman .
19 60. Plaintiff performed satisfactorily since her job performance met or exceeded the
20 Defendants' expectations.
21 61. Because of Plaintiff's race, Plaintiff suffered adverse employment actions (several
22 suspensions without pay, termination, failure to hire, breach of contract)by Rosado and/or
   David Needham and/or Delta Air Lines, Inc., because she opposed Manager Tomasi's racially
23 hostile work environment from late February 2021 through June 17, 2021.
24 62. Similarly situated non-black female Delta comparators such as Erin Pieroni, Delgado,
25 Eileen Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc,
26 because of their race, were not suspended or terminated when opposing sex discrimination.
   63. Delta violated the NYSHRL, NYCHRL & 42 USC 1981 by suspending and terminating
27 Plaintiff from employment and discriminating against her in compensation and in terms,
28 conditions, or privileges of employment, because of her race, as similarly situated non-black

female Delta comparators such as Erin Pieroni, Delgado, Eileen Kosakowski, Maria
Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc, because of their race,
were never suspended without pay or terminated when opposing sex discrimination.

64. Plaintiff has suffered damages as a result of Defendants violation of the NYSHRL,
NYCHRL and 42 USC 1981 as Defendants conduct, as alleged herein, constituted unlawful
discriminatory practices and unlawful discrimination on the basis of race.

65. Defendants subjected Plaintiff to adverse employment actions(suspensions and
termination and refusal to hire) on account of her race and color by denying her equal
opportunity and treatment in the conditions of employment.

66. By the acts and practices described above, all Defendants directly and/or through
employees and/or agents, subjected Plaintiff to discrimination in violation of the New York
State Human Rights Laws, New York City Human Rights Laws, & 42 USC 1981.

67. At all times, all Delta ratified and approved of its managers discriminatory acts by failing
to take corrective action against Managers Tomasi, David Needham and Jose Rosado.

68. As a result of Defendants discrimination in violation of the New York City & State
Human Rights Laws, & 42 USC 1981, Plaintiff has been denied employment opportunities
providing substantial compensation and benefits, entitling her to injunctive and equitable
monetary relief, and she has suffered anguish, humiliation, distress, inconvenience, and loss
of enjoyment of life impacting her in NYC, entitling her to compensatory damages.

69. In Defendants race-based discriminatory actions alleged in violation of New York City &
State Human Rights Laws, Defendants acted with malice or deliberate indifference to the
rights of Plaintiff, thereby entitling her to an award of punitive damages.

70. Defendant engaged in conduct, as alleged herein, that constituted unlawful
discriminatory practices and unlawful discrimination on the basis of race and color in
violation of the New York City Human Rights Law, N.Y.C. Admin. Code. § 8-107 et seq.
Plaintiff, therefore, seeks compensatory, punitive, emotional damages plus prejudgment
interest, and all fees and costs of this action.

**COUNT II- INTENTIONAL Gender Discrimination, Sexual Harassment, and Hostile
Work Environment in Violation of the New York State (§ 296 )Human Rights Law &
New York City Human Rights Law N.Y.C. Admin. Code §§ 8-107(1)**

71. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if
fully set forth herein.

72. The entirety of the acts which constitute and form this Cause of Action, as set forth above,
all of which are deemed repeated and re-alleged herein as though said paragraphs were

1   specifically set forth herein, were perpetrated upon Plaintiff while she was in the course of
2   her employment with Delta here in NYC, which impacted Plaintiff here in NYC
3   73. The conduct that Defendants took against Plaintiff that forms the basis of this Cause of
    Action was unwelcome to her, a fact which Delta knew, or should have known, as a result of
4   Plaintiff's response & actual nature of the conduct.
5   74. Delta is liable to Plaintiff for the sexual harassment she suffered in her workplace,
6   because the unlawful conduct was permitted and condoned by Delta management and
7   supervisory personnel, who allowed and condoned a workplace permeated with intimidation
    and harassment that altered the terms, conditions and privileges of Plaintiff's employment
8   and created an abusive, threatening and hostile work environment where Plaintiff was treated
9   less well because of her gender.
10  75. The aforementioned acts of Defendants constitute unlawful gender discrimination against
11  Plaintiff in violation of Chapter 1, Title 8 of the Administrative Code of the City of New
12  York, §8- 107(1)(a) (referred to as "The New York City Human Rights Law"),which provides
    inter alia, that: It shall be unlawful discriminatory practice: (a) For an employer or an
13  employee or agent thereof, because of the . . . gender . . . of any person to discriminate against
14  such a person in compensation or in terms, conditions or privileges of employment.
15  76.Defendants discriminated against Plaintiff on the basis of her gender, sexually harassed
16  Plaintiff, and/or caused Plaintiff to experience a hostile work environment in violation of the
17  NYCHRL by treating Plaintiff less favorably than her male colleagues, making harassing or
    discriminatory comments to Plaintiff based on her gender, and/or by sexually harassing and
18  assaulting Plaintiff.
19  77. Defendants knew of the general discrimination and sexual harassment perpetrated against
20  Plaintiff, or at a minimum, should have known about the harassment, based on the pervasive
21  atmosphere of sexual harassment that Plaintiff reported to Delta's HR managers (Omojole,
    Rangel, David Needham, Nabors, Kruit, etc)from 2018 through June 2021.
22  78. The sexual harassment perpetrated against Plaintiff by Delta's manager Tomasi affected a
23  term, condition, and the privileges of her employment, impacting Plaintiff in NYC.
24  79. As a result of Defendants gender discrimination and sexual harassment of Plaintiff in
25  violation of the New York City & State Human Rights Law, Plaintiff has been denied
26  employment opportunities providing substantial compensation and benefits, entitling her to
    injunctive and equitable monetary relief, and she has suffered anguish, humiliation, distress,
27  inconvenience, and loss of enjoyment of life here in NYC due to Defendants' actions,
28  entitling her to compensatory damages.

80. In their gender-based discriminatory actions alleged in violation of the NYCHRL & NYSHRL, Defendants acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

81. As a result of Delta's violation of NYCHRL & NYSHRL, Delta is liable to Plaintiff pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established. Under N.Y.C. Admin. Code § 8-120, Plaintiff is entitled to recover reasonable fees and costs .

82. As a proximate result of Delta's conduct, Plaintiff has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Plaintiff believes Delta's conduct, complained of herein, has and will continue to have a devastating effect upon her career and the quality of her life.

83. Here, the acts of Delta were so reprehensible and were done with reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the New York City & State Human Rights Laws, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measures of relief to which Plaintiff may properly be entitled herein, Delta should additionally be required to pay punitive damages as punishment for its discriminatory conduct in order to deter Delta and others similarly situated from engaging in such conduct in the future.

84. Plaintiff, therefore, seeks compensatory, emotional, damages, plus prejudgment interest, and any and all fees and costs of this action.

**COUNT III- Retaliation (42 USC 1981 , New York State Human Rights Law N.Y. Exec. Law § 296 –, NYC HRL § 8-107 e)**

85. Plaintiff repeats, realleges and incorporates the above paragraphs of thisComplaint, as though fully set forth at length herein.

86. From around late April 2019 and/or from February 19, 2021 through around June 17, 2021, Plaintiff engaged in protected activity under 42 USC 1981,  New York State Human Rights Law N.Y. Exec. Law § 296, &  New York City Human Rights Law, of which Delta was aware, when Plaintiff made multiple written and oral complaints to HR Managers David Needham, Kelly Nabors, & Danielle Kruit about the hostile work environment (race and sex), sexual harassment, discrimination (race, sex, and disability) that Delta's managers subjected her to on account of her race and her gender and her disability and by seeking to be protected against those same discriminatory acts.

87. As a proximate result of Plaintiff engaging in protected activity under the NYS HRL, NYCHRL, & 42 USC 1981,  Plaintiff suffered adverse employment actions, including

multiple suspensions without pay, subjecting her to a hostile work environment, termination,
refusing to contract with Plaintiff, failure to hire that were all causally connected to her
complaints of hostile work environment(sexual and racial), harassment (sexual and racial),
discrimination(sex, race, & disability) and Delta's failure to engage in the interactive process
after Plaintiff requested a reasonable accommodation, which was summarily denied.

88. Defendants' adverse employment actions on or around March 26, 2021, May 1, 2021, &
June 17, 2021 were a direct and proximate result of Plaintiff's protected complaints & reports
& request for reasonable accommodations to Delta's managers regarding their discriminatory
& retaliatory conduct against Plaintiff.

89. As a result of the Defendants' illegal conduct, Plaintiff has suffered anguish,
humiliation, distress, inconvenience, and loss of enjoyment of life, as well as lost
wages and work opportunities, and Plaintiff believes that the injuries inflicted upon
her, which were a direct result of the occurrences complained of herein, have and will
continue to cause Plaintiff damage, entitling her to compensatory damages.

90. The aforementioned acts of Defendants constitute unlawful retaliation against Plaintiff in
violation of Chapter I, Title 8 of the AdministratiVe Code of the City of New York, §8-107(7)
of the New York City Human Rights Law, which provides, inter alia, that: It shall be unlawful
discriminatory practice for any person engaged in any activity to which this chapter applies to
retaliate or discriminate in any manner against any person because such person has (i)
opposed any practice forbidden under this chapter . . .

91. As a direct and proximate result of Defendants violation of  NYCHRL, Defendants are
liable to Plaintiff pursuant to §8-502, §8-502(f) of said statute for"damages," costs and fees.

92.Pursuant to N.Y.C. Admin. Code § 8-502(c) & § 40-d,Plaintiff is providing the NYCHRC
& Office of the Attorney General notice of her claims under NYCHRL & NYSHRL.

93. As a direct and proximate result of Defendants conduct complained of herein, and as
alleges in this Cause of Action, as well as the conduct set forth in this Complaint,Plaintiff has
suffered emotional and compensatory damages, injuries and losses here in NYC, which
includes the emotional pain and suffering she has been caused to suffer and continues to
suffer, plus prejudgment interest, the costs of this action.

94.Here, the acts of Defendants were so reprehensible and were done with malice, reckless
indifference in the face of a perceived risk that its actions would violate Plaintiff's s protected
rights under the New York City Human Rights Law, New York State Human Rights Law, and
42 USC 1981, that, in addition to all the damages inflicted upon Plaintiff and in addition to all
the measures of relief to which Plaintiff may properly be entitled herein, Defendants should

1  additionally be required to pay punitive damages as punishment for its discriminatory &
2  retaliatory conduct in the further amount of Six Million ($6,000,000) Dollars, in order to
3  deter Defendants and others similarly situated from engaging in such conduct in the future.
   95. Defendants knew that Plaintiff had engaged in protected activity.
4
                           **COUNT IV- 42 U.S.C. § 1981**
5  96. Plaintiff incorporates by reference the allegations in all preceding paragraphs. Delta and/
6  or Needham and/or Jose Rosado intentionally discriminated against Plaintiff on the basis of
7  her race, as similarly situated white female Delta employees, Erin Pieroni, Delgado, Eileen
8  Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz,etc. were
   never suspended without pay and/or terminated for opposing discrimination and/or retaliation
9  and/or hostile work environment (filing verbal and/or written complaints and/or lawsuit) and/
10 or for making and enforcing contracts and/or for suing(filing lawsuit) and/or being parties (to
11 a lawsuit) and/or giving evidence and/or for exercising the full and equal benefit of all laws
12 and proceedings for the security of persons and property under 42 U.S.C. § 1981(a).
   97. In or around 2013, Plaintiff had previously made and/or formed and/or entered into a
13 binding Ready Reserve contract **(CONTRACT 1)**with Defendant Delta Air Lines, Inc.,
14 whereby Delta contracted Plaintiff to work for Delta as a Ready Reserve employee, who
15 Delta did not consider to be full time Delta employees.
16 98. But for Plaintiff's race, on or around May 1, 2021, Delta and/or Manager Needham would
   have *enforced* Plaintiff's *Ready Reserve contract* **(CONTRACT 1)** to have returned Plaintiff
17 to work on May 1, 2021 from Plaintiff's 1 year voluntary COVID leave of absence(a
18 contract), as Defendants allowed similarly situated Hispanic and/or white and/or Asian
19 employees to return to work in 2020 and/or 2021 after their voluntary COVID leave of
20 absences.
21 99. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have *terminated*
   Plaintiff's **Ready Reserve contract (CONTRACT 1)**on or around June 17, 2021.
22 100. In March 2021, Plaintiff made and/or formed and/or entered into a new employment
23 contract (CONTRACT 2) with Delta, where Delta contracted with Plaintiff to begin working
24 for Delta as a full time employees with benefits beginning in July 2021.
25 101 But for Plaintiff's race, Delta and/or Needham and/or Rosado would have **enforced** the
26 *March 2021 Full-Time employee contract (CONTRACT 2)* that Plaintiff made/formed with
   Delta in March 2021, that was set to begin in or around July 2021.
27 102. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have
28

---

1   *terminated* Plaintiff's ***Full-Time employee contract* contract** (CONTRACT 2) on or around
2   June 17, 2021, which Plaintiff made/formed/entered into with Delta in March 2021.
3   103. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have **impaired**
    **and/or interfered with** Plaintiff's **Ready Reserve contract** (CONTRACT 1) on or around
4   May 1, 2021 and then again on or around June 17, 2021.
5   104. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have **impaired**
6   **and/or interfered with** Plaintiff's ***Full-Time employee contract*** (CONTRACT 2) on or
7   around June 17, 2021.
8   105.Plaintiff is a person within the jurisdiction of the United States,who has the right to make
    and enforce contracts in the United States and is entitled to the full and equal benefits of the
9   law.
10  106. At no time from 2018 through June 17, 2021 did Plaintiff ever violate any written Delta
11  policy to warrant any suspension without pay in 2021 and/or termination on June 17, 2021.
12  107. At no time from 2018 through June 17, 2021 did Delta ever inform Plaintiff that Plaintiff
    violated any written Delta policy nor did Delta ever discipline Plaintiff by using any steps in
13  Delta's progressive discipline policy that Delta uses for similarly situated employees.
14  108. From around March 2021- July 2021 and continuing, But for Plaintiff's race(black),
15  Defendants would not have intentionally racially discriminated against Plaintiff by interfering
16  with and impairing Plaintiff's employment contracts, causing Plaintiff to suffer irreparable
    injury and harm.
17  109. Attached as Exhibit 13 is a true and correct copy of the "Ready Reserve
18  contract," aka "EMPLOYMENT CONTRACT 1," that Plaintiff and Delta had entered
19  into from around 2005, which was contractually set to end on June 30, 2021.
20  110. Attached as Exhibit 14 is a true and correct copy of an independent, mutually
21  exclusive, separate employment agreement("FULL TIME EMPLOYMENT CONTRACT 2")
22  that Plaintiff and Delta entered into on March 3, 2021, whereby Plaintiff was to become a
    full-time Delta employee on July 1, 2021.
23  111.Plaintiff performed all of her obligations under the March 3, 2021 contract (CONTRACT
24  2) and satisfied all conditions precedent to Delta's obligations under the contract.
25  112. Under the March 3, 2021 employment contract, Defendant could only terminate
26  Plaintiff's employment "for Cause" only if certain circumstances existed.
27  113. None of the circumstances that would have justified a termination "for Cause"
    actually existed.
28  114. Because Defendants Jose Rosado and/or David Needham terminated Plaintiff on June

17, 2021 impairing the Ready Reserve Contract (Contract 1) , Plaintiff was never able to enforce the terms and conditions of the binding "FULL TIME EMPLOYMENT (CONTRACT 2)," which were set to begin on July 1, 2021. **(FAILURE TO HIRE CLAIM)**

**COUNT V-Failure to Accommodate in Violation of the New York City& State Human Rights Law (N.Y.C. Admin. Code §§ 8-101, et seq.)**

115. Plaintiff realleges above paragraphs and incorporates them by reference as if they were fully restated herein.

116. Plaintiff qualifies as "person with a disability" per the NYCHRL. N.Y.C. Admin. Code § 8-102. At all times relevant to this action, Defendants has been covered entities and employers within the meaning of N.Y.C. Admin. Code § 8-102.

117. N.Y.C. Admin. Code § 8-107(1)(a)(3) makes it an unlawful discriminatory practice for an employer to discriminate against an employee with a disability in the "terms, conditions or privileges of employment."

118. N.Y.C. Admin. Code § 8-107(15) makes it an unlawful discriminatory practice for an employer "not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right[s]" of the position, provided that the disability is known or should have been known by the employer. N.Y.C. Admin. Code § 8- 107(15)(a).

119. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be a person aggrieved by an unlawful discriminatory practice" on the basis of her disability.

120. Defendant knew of Plaintiff's disability and unreasonably failed to provide reasonable accommodations, despite her multiple requests.

121. By the acts and practices described above, Defendant unlawfully discriminated against Plaintiff due to her disability, in violation of the NYCHRL & NYSHRL

122 As a result of these violations, pursuant to N.Y.C. Admin. Code § 8-502, Plaintiff is entitled to recover compensatory damages, declaratory and injunctive relief, fees and costs, and other appropriate relief as determined by this court.

**COUNT VI-Failure to Engage in Cooperative Dialogue in Violation of the New York City & State Human Rights Law (N.Y.C. Admin. Code § 8-107)**

124. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

125. N.Y.C. Admin. Code § 8-107(28)(a) makes it an unlawful discriminatory practice for an employer to fail to engage in a cooperative dialogue within a reasonable time

with an employee who requests a disability-related accommodation or to fail to engage in a cooperative dialogue if the covered entity has notice that an individual may require an accommodation.

126. The term "cooperative dialogue" per the NYCHRL "means the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8- 102.

127. Defendant was obligated to engage in a cooperative dialogue independently of their related obligation to provide a reasonable accommodation to Plaintiff pursuant to N.Y.C. Admin. Code § 8-107(15).

128. Defendants failed to engage in a cooperative dialogue with Plaintiff regarding her need for a reasonable accommodation to allow her to use a "chair" at work and by granting a transfer to a vacant position and by failing to communicate in good faith and in an effective manner with Plaintiff concerning her need for accommodations and failing to communicate with Plaintiff regarding her specific needs with regard to her chair accommodations despite being on notice for many years that she required such an accommodation, in violation of N.Y.C. Admin. Code § 8-107(28)(a).

129. Defendants failed to engage in a cooperative dialogue with Plaintiff following her formal requests for reasonable accommodations regarding the chair and transfer, in violation of N.Y.C. Admin. Code § 8-107(28)(a).

130. Defendants failed to provide Plaintiff with a written, final determination ident-ifying any accommodation granted or denied. N.Y.C. Admin. Code § 8-107(28)(d).

131. By the acts and practices described above, Defendants unlawfully discriminated against Plaintiff because of her disability in violation of the NYCHRL.

132. As a result of these violations, pursuant to N.Y.C. Admin. Code § 8-502 & NYSHRL, Plaintiff is entitled to recover compensatory damages, declaratory and injunctive relief, fees and costs, and other appropriate relief as determined by this court.

### COUNT VII- Defamation Per Se/Defamation

133. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

134. As described above, Delta and/or Defendants have stated false facts to third parties, regarding, inter alia, the circumstances surrounding it's reasons for suspending and terminating Plaintiff's employment, and/or employment contracts, and/or Plaintiff having committed workers compensation insurance fraud against an unknown/unnamed third party insurance company, and that Plaintiff is an unchaste sex worker.

135. These statements were untrue and defamatory in that they falsely reported, inter alia, that Plaintiff is a "liar" and a "fraud," and/or that Plaintiff engaged in "dishonest behavior," and/or that Plaintiff committed "workers compensation insurance fraud," etc..

136. Defendants knew or should have known that such defamatory statements were false.

137. Defendants defamatory statements were published with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

138. On or around June 17, 2021, Jose Rosado, informed Plaintiff that **Defendant Needham**, in the course and performance of his Delta HR Manager duties, had published unprivileged statements of purported facts of and concerning Plaintiff to third party, Jose Rosado, a few days earlier while Rosado was still working at JetBlue Airlines, that *"Delta was made aware that Erika Lee has an OnlyFans page where she performs daily sex acts on camera with random men for money and then gets paid more money by her subscribers who have a fetish for big black women."*

139. It is 100% false that Plaintiff "has an OnlyFans page where she performs daily sex acts on camera with random men for money and then gets paid more money by her subscribers who have a fetish for big black women."

140. In the beginning of June 2021, Jose Rosado was employed at JetBlue Airlines and/or was not employed by Delta Air Lines, Inc. at all times in the month of June 2021.

141. Defendants statements constitute defamation per se because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, inter alia, that Plaintiff engaged in "dishonest behavior,"that Plaintiff committed the crime of "insurance fraud," and imputing unchastity to Plaintiff, by alleging that Plaintiff is some type of a prostitute or sex worker or some kind of internet porn star on OnlyFans.com.

142. At all times relevant herein, Delta did not have a third party workers compensation insurance policy with any third party insurance company, as Delta has been self-insured for workers compensation claims for many years.

143.Defendants defamatory per se statements have harmed Plaintiff's professional reputation and standing in her industry, have caused her economic harm, have caused her to incur special damages in the form of actual pecuniary loss, including lost weekly income,

yearly salary of approximately $50, 000.00, failure to be hired by Delta Air Lines, Inc. as a full time employee beginning on July 1, 2021, termination of her Ready Reserve employment contract on June 17, 2021, loss pf pass travel benefits, yearly profit sharing, 401k, health insurance benefits, monthly bonuses, overtime,  job security and opportunities for career advancement and have caused her embarrassment, humiliation and emotional injury.

144. As a direct and proximate result of Defendant's defamation per se, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

145.As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer harm entitling her to an award of monetary damages and other relief.

146. Defendant's defamatory per se statements were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights. As such, Plaintiff is entitled to an award of punitive damages.

### COUNT VIII- Negligence Per Se/Negligence(against Defendant Delta)

147. N.Y. Workers' Comp. Law WCL §2 ,  3 and §51 is designed to protect NY employees.

148. Plaintiff is in the class of people that N.Y. Workers' Comp. Laws§2, §3 and §51 were designed to protect.

149. Delta's intentionally caused Plaintiff harm by Delta's intentional violation of NY state statutes(Workers' Comp. Law WCL §2 , §3 and §51 is negligence per se since Delta intentionally failed and refused, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy for its' employees, which included Plaintiff; Delta violated N.Y. Workers' Comp. Law§51 as Delta never posted notice of workers compensation insurance coverage in their place of business, as Delta never had third-party workers compensation insurance coverage.

150. Delta's intentional violation of N.Y. Workers' Comp. Laws§2, §3 and §51 was the proximate cause of Plaintiff's injuries and damages

151. Around late June/ earlyJuly 2019, when Delta manager Tomasi, in her professional capacity, **intentionally** stuck her hand under Plaintiff's skirt in an attempt to intentionally grab Plaintiff's vagina, causing Plaintiff to jump to distance herself from her sexual assaulter, Tomasi. Manager Tomasi's act of intentionally grabbing Plaintiff's vagina caused Plaintiff to slip and fall over a chair, causing intentionally injury to Plaintiff's neck, back, and legs.

152. Delta manager Tamasi, in her professional capacity, committed battery and sexually assault against Plaintiff in mid 2020 (while Plaintiff was not in her professional capacity as a Delta employee, as Plaintiff was on an unpaid, COVID leave )when Manager Tamasi

intentionally "spanked" Plaintiff of her sexual pleasure, which Delta was aware of but negligently failed to prevent.

153. Prior to, during, and after Plaintiff's employment with Delta, Delta owed Plaintiff and all of Delta's employees, a cognizable duty to ensure that Delta's employees were not exposed to unsafe working conditions, and if Delta owed Plaintiff a cognizable duty of care to have a third-party workers compensation insurance policy to provide Plaintiff with medical treatment for her workplace injuries that resulted from any unsafe working conditions that Delta exposed Plaintiff to.

154 As a result of Delta's conduct where Delta unreasonably exposed Plaintiff to unsafe working conditions without third-party workers compensation insurance policy, Plaintiff was at actual risk of immediate physical injury and Plaintiff actually sustained workplace injuries in 2017, 2019 and 2020.

155. Delta breached it's duty of care by failing to purchase a third workers compensation insurance policy, which would've provided Plaintiff with medical treatment, monetary compensation for her workplace injuries, and monetary compensation for lost weekly wages.

156. Plaintiff suffered damages (financial, emotional, personal injury to leg, back and neck)as a proximate result of Delta's intentional failure to purchase a third-party workers compensation insurance policy to provide Plaintiff with medical treatment for her workplace injuries, monetary compensation for her workplace injuries, and monetary compensation for her lost weekly wages.

### COUNT IX-Negligent Infliction of Emotional Distress(3 year Statute of Limitations)

157. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

158. From December 2018 through June 17, 2021,  Defendant Delta breached a duty of care to Plaintiff that unreasonably endangered Plaintiff's physical safety, caused Plaintiff to fear for her physical safety and caused Plaintiff to sustain physical and emotional injuries when Manager Tamasi intentionally grabbed Plaintiff's vagina directly causing Plaintiff to jump and sustain a slip and fall injury.

159. Delta engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed the bounds of decency in a civilized society; namely by, inter alia, subjecting her to a racially & sexually hostile work environment which caused Plaintiff physical injuries when Manager Tamasi intentionally grabbed Plaintiff's vagina causing her to jump and have a slip and fall, unsafe working conditions without any third- party workers compensation insurance policy,

inability to provide Plaintiff with medical care and workers compensation benefits (weekly income for loss of wages, etc.) as Delta does not have any third- party workers compensation insurer, in violation of NY state workers compensation laws.

160. These actions were taken with intent to cause, or disregard for, the substantial probability of causing Plaintiff severe emotional distress.

161. As a direct and proximate result of Delta's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

162. Defendant's intentional conduct causing Plaintiff physical injuries was negligent, wanton, malicious, willful and/or cruel, entitling Plaintiff to an award of punitive damages.

### COUNT X- Sexual Battery/Battery (against Defendant Delta)

163. Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

164. Beginning in or around October 2018, Delta first became aware that Delta Manager Tamasi was sexually harassing Plaintiff.

165. In April 2019, Delta was aware that Delta Manager Tamasi was sexually harassing Plaintiff, as Delta suspended Plaintiff without pay in April 2019 for opposing Tamasi's sexually harassment, and threatened Plaintiff with termination if Plaintiff made any more complaint to Delta.

166.Delta Manager Tamasi, in her professional capacity, intentionally committed battery by sexually assaulting Plaintiff when Tamasi "spanked" Plaintiff in mid-2020. As described above, on multiple occasions Delta manager Tamasi intentionally touched Plaintiff in an offensive and sexual manner without her consent.

167. Delta manager Tamasi's actions constitute sexual offenses as defined in NewYork Penal Law Article 130, including but not limited to sexual misconduct as defined in Article 130.20, rape in the third degree as defined in Article 130.25, rape in the first degree as defined in Article 130.35, forcible touching as defined in Article 130.52, sexual abuse in the third degree as defined in Article 130.55, and sexual abuse in the first degree as defined in Article 130.65. See N.Y. C.P.L.R. § 214-g.

168. As a direct and proximate result of Delta manager Tamasi's criminal acts,Plaintiff has in the past and will in the future continue to suffer substantial damages, including extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

### COUNT XI- WHISTLEBLOWER RETALIATION under NYLL § 215 & § 740

169. Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

170. On March 25, 2021, Plaintiff participated in protected activity known to Delta when Plaintiff reported to HR Manager Kelly Nabors that Delta was intentionally violating NY state law statutes(Workers' Comp. Law WCL §2 , §3 and §51) by Delta's intentionally failure and refusal, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy for its' employees which presents a substantial and specific danger to public health and safety. Plaintiff also reported to Nabors that Delta's violations of N.Y. Workers' Comp. Law§51 as Delta never posted notice of workers compensation insurance coverage in their place of business at JFK airport , as Delta refused and failed to purchase any third-party workers compensation insurance coverage, as Delta was illegally uninsured employer.

171. Delta was aware that Plaintiff participated in protected activity in March 2021 when Plaintiff made a public report and/or provided information to NYS Workers Compensation Board notifying the state board that Delta was an illegally uninsured employer who was intentionally failed and refused, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy in violation of NYS' Workers' Comp. Law WCL §2 , §3 & §51.

172. On March 26, 2021, the very next day, Delta retaliated against Plaintiff by suspended Plaintiff without pay until terminating her employment on June 17, 2021.

173. Because Delta manager Susan Emerson has publicly admitted that Delta is self-insured for workers compensation coverage and because Delta publicly admits that it does not have a third party workers compensation insurance policy with any insurance company, Plaintiff, at all times, reasonably believed that Delta was violating the Labor Law and stated a complaint that violated the Labor Law.

174. Delta's violations of NYS' Workers' Comp. Laws WCL §2 , §3 & §51 creates and presents a substantial and specific danger to the public health and/or safety of the public and Delta's employees, such as Plaintiff, who work directly with the public.

175. Delta told Plaintiff, as Delta tells its other workers, that Plaintiff needed to use Medicaid to get medical treatment for her workplace injuries but Plaintiff objected to and refused to participate in Delta's illegal Medicaid/health care fraud, as this is Delta's standard operating procedure and regular practice, in violation of NYS and Federal laws.

### JURISDICTION AND VENUE

176.This SDNY Court has subject matter jurisdiction over Plaintiff's Section 1981 claims

1   under 28 U.S.C. § 1331. This Court has diversity and supplemental jurisdiction over
2   Plaintiff's NY and NYC state law claims under 28 U.S.C. § 1367.
3   177. This SDNY Court is empowered to issue a declaratory judgment by 28 U.S.C. §§ 2201
    and 2202.
4   178. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of
5   the events giving rise to the claims occurred in this district.

6                                    **PRAYER FOR RELIEF**

7   WHEREFORE, Plaintiff respectfully requests this Court find against Delta as follows:
8   a. Declare that Delta's acts, conduct, policies, and practices are unlawful and violate
9   the NYSHRL, the NYCHRL, 42 USC 1981 and Employment Contracts;
    b. Reinstate Plaintiff to her former position with lost wages;
10  c. Award Plaintiff the value of all compensation and benefits lost and that she lost
11  and will lose in the future as a result of Delta's unlawful conduct;
12  d. Award Plaintiff compensatory and punitive damages;
13  e. Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements,
    as provided by law;
14  f. Award Plaintiff such other make whole equitable, injunctive and legal relief as this
15  Court deems just and proper to fairly compensate Plaintiff;
16  g. Declaratory and injunctive relief
17  h.Defendants maliciously defamed Plaintiff to third parties
18  i:Plaintiff is suing Defendant for a total of $60,000,000.00
19  j:Award Plaintiff such other relief as this Court deems just and proper.

20  Date: 07/06/2023
21
22
23                                                    ERIKA L. LEE,
24                                                    PRO SE PLAINTIFF
25
26
27
28

                    SECOND AMENDED VERIFIED COMPLAINT page 25

1

## VERIFICATION OF COMPLAINT

2

3    I, Erika L. Lee, being duly sworn, deposes and says that:

4

5    I am the Plaintiff in this action, representing myself Pro Se. I have read
6    the foregoing Second Amended Verified Complaint, and know the contents
7    thereof; the same is true to my personal knowledge, except these matters
8    which are stated to be alleged "upon information and belief, and as to those
9    matters which I believe them to be true or believed them to be true. I declare
10   under penalty of perjury under 28 U.S.C. 1746 and the laws of the United
11   States of America that the foregoing is true and correct.

12

13   Executed on 07/06/2023.

14

15

16

17                                          ERIKA L. LEE

18                                          PLAINTIFF, PRO SE

19

20

21

22

23

24

25

26

27

28

---

June 15, 2021

Erika:

On February 17, 2019, David Needham (Senior Human Resources Manager for JFK in New York) telephoned you in an effort to investigate new complaints made by you regarding Bernadette Tamasi (who worked in LaGuardia Airport (LGA) in New York while you worked in LGA with her). At that time, he left a message for you to call him back so that he could get additional information from you. You did not return his phone call as requested and have not provided additional information.

Notwithstanding the lack of information or cooperation from you, we took steps to look into your new claims. We note in April 2019, when you worked at LGA, you made complaints regarding a variety of matters, including allegations against Ms. Tamasi. Those complaints were investigated at the time, however, at that time, you did not raise the allegations you now have raised against Ms. Tamasi, including but not limited to the allegation that she "spanked" you. Ms. Tamasi denies your claims and we find her credible. We do not find your allegations credible.

Based on the foregoing, we do not believe that that the conduct alleged occurred and we are closing this matter.

Danielle Kruit
Danielle.kruit@delta.com
HR General Manager
Delta Air Lines, Inc.

# EXHIBIT A

Scanned with CamScanner

Scanned with CamScanner

June 17, 2021

Erika:

We initially reached out to you on March 26, 2021 to inform you that you were being suspended from your position at John F. Kennedy International Airport (JFK) in New York in connection with our investigation of a complaint that you had been dishonest in connection with your relations with Delta. We received information that you falsely represented that you had had a conversation with David Needham (Senior Human Resources Manager for JFK in New York) on February 19, 2021 in which he allegedly made a variety of statements concerning an investigation he was conducting into complaints raised by you regarding another employee who worked in LaGuardia Airport (LGA) in New York while you worked in LGA with her.

Based on the information we have collected at this time, your evasive demeanor during our interview and written exchanges, and the lack of cooperation by you during this investigation, we do not believe the alleged conversation with David occurred. We also believe that your misrepresentation of that conversation was intentional.

In light of the foregoing, Delta has decided to terminate your employment, effective immediately, on the grounds that it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta. Your failure to cooperate during the investigation also constitutes insubordination.

Please return to Pam Bissoondial any Delta materials in your possession, such as your Delta identification card and your parking permit if not already done so.

There is an appeal opportunity through the Equal Opportunity team via appeals.co@delta.com. Please provide a written request and be sure to include your employee number and your email address, mailing address, and telephone number. Your appeal will be reviewed, and a written response will be sent to you. If you have any questions about the appeal process, please contact your divisional leadership team.

Please note when an employee is terminated from the Company, they are no longer eligible for rehire at Delta or any Delta subsidiary. As a reminder, the Employee Assistance / Resources for Living can be reached 24/7 at 800-533-6939.

Feel free to contact me directly at jose.e.rosado@delta.com if you have any questions.

Jose Rosado

Sincerely,



EXHIBIT B

Scanned with CamScanner

Scanned with CamScanner

**Rosado, Jose E**
jose.e.rosado@delta.com

Hide details



To:
 leeerikalatise@gmail.com

 Lee, Erika L

Date: June 17, 2021, 3:12 PM

This message has been modified to fit your screen. Tap here to show original.

# EXHIBIT C

June 17, 2021

Erika:

We initially reached out to you on March 26, 2021 to inform you that you were being suspended from your position at John F. Kennedy International Airport (JFK) in New York in connection with our investigation of a complaint that you had been dishonest in connection with your relations with Delta. We received information that you falsely represented that you had had a conversation with David Needham (Senior Human Resources Manager for JFK in New York) on February 19, 2021 in which he allegedly made a variety of statements concerning an investigation he was conducting into complaints raised by you regarding another employee who worked in LaGuardia Airport (LGA) in New York while you worked in LGA with her.

Based on the information we have collected at this time, your evasive demeanor during our interview and written exchanges, and the lack of cooperation by you during this investigation, we do not believe that the alleged conversation with David occurred. We also believe that your misrepresentation of that conversation was intentional.

In light of the foregoing, Delta has decided to terminate your employment, effective immediately, on the grounds that it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta. Your failure to cooperate during the investigation also constitutes insubordination.

Please return to Pam Bissoondial any Delta materials in your possession, such as your Delta identification card and your parking permit if not already done so.

There is an appeal opportunity through the Equal Opportunity team via appeals.eo@delta.com. Please provide a written request and be sure to include your employee number and your email address, mailing address, and telephone number. Your appeal will be reviewed, and a written response will be sent to you. If you have any questions about the appeal process, please contact your divisional leadership team.

Please note when an employee is terminated from the Company, they are no longer eligible for rehire at Delta or any Delta subsidiary. As a reminder, the Employee Assistance / Resources for Living can be reached 24/7 at 800-533-6939.

Feel free to contact me directly at jose.e.rosado@delta.com if you have any questions.

Sincerely,

Jose E. Rosado

Scanned with CamScanner

Scanned with CamScanner

From: **Kruit, Danielle R** <danielle.kruit@delta.com>
Date: Thursday, June 17, 2021
Subject: Investigation
To: Erika Lee <leeerikalatise@gmail.com>, "Lee, Erika L" <Erika.L.Lee@delta.com>

Erika:

On February 17, 2019, David Needham (Senior Human Resources Manager for JFK in New York) telephoned you in an effort to investigate new complaints made by you regarding Bernadette Tamasi (who worked in LaGuardia Airport (LGA) in New York while you worked in LGA with her). At that time, he left a message for you to call him back so that he could get additional information from you. You did not return his phone call as requested and have not provided additional information.

Notwithstanding the lack of information or cooperation from you, we took steps to look into your new claims. We note in April 2019, when you worked at LGA, you made complaints regarding a variety of matters, including allegations against Ms. Tamasi. Those complaints were investigated at the time, however, at that time, you did not raise the allegations you now have raised against Ms. Tamasi, including but not limited to the allegation that she "spanked" you. Ms. Tamasi denies your claims and we find her credible. We do not find your allegations credible.

Based on the foregoing, we do not believe that that the conduct alleged occurred and we are closing this matter.

Danielle Kruit

HR General Manager

Delta Air Lines, Inc.

# EXHIBIT D

View Gmail in: **Mobile** | Older version | Desktop
© 2021 Google



Scanned with CamScanner

Scanned with CamScanner



Q Search



⋮

**Jose Rosado**
General Manager at Delta Air Lines
Baruch College · Delta Air Lines
Miami-Fort Lauderdale Area · 398 connections

( Connect )    ( 🔒 Message )

## About

A results-oriented professional, recognized
for a collaborative leadership st  ...See more

## Activity
397 followers

 So proud of our PrimeFlight Aviation
Services team as we continue to grow...
Jose Rosado liked this

**See all**

## Experience

 **General Manager Customer Service**
Delta Air Lines
Jun 2021 – Present · 2 mos
JFK Internatlonal Airport

**JetBlue**
13 yrs 11 mos

○  **General Manager**
Jan 2020 – Jun 2021 · 1 yr 6 mos

   **Manager Business Partner Compliance
   & Aircraft Repoitioning**
   Aug 2007 – Jun 2021 · 13 yrs 11 mos
   FLL-Hollywood Int'l Airport Terminal 3 Fort
   Lauderdale, Fl. 33315
   ≣ Manager FLL BUSINESS PARTNER
   COMPLIANCE 2019
   Contract evaluation and administer
   adherence through regularly sch ...more

**Manager**
Joluro Inc.

🏠          👥          ➕          🔔          💼
Home    My Network    Post    Notifications    Jobs

Scanned with CamScanner

**▲DELTA**

**Danielle Kruit**
General Manager
Human Resources
East Region

**Delta Air Lines, Inc.**
2600 WorldGateway Place
Human Resources
Rm T3-047, Mezz Level
F. +1 404 677 7016
M. +1 734 604 9405
Danielle.kruit@delta.com

**SUSPENSION LETTER**
**Conduct**

March 26, 2021

**UPS Overnight Delivery**

Erika Lee
13163 Fountain Park Dr
B417
Playa Vista, CA 90094



Dear Erika:

As you know, you are currently on a voluntary leave of absence scheduled to return on May 1, 2021. Effective immediately, you are suspended pending an investigation into dishonest behavior in which you are alleged to have engaged. You are directed to participate in the investigation regarding your alleged dishonest behavior. Please contact me on April 1, 2021 at 1:00pm EST at 734-604-9405 to discuss the allegations with me and another member of management.

As you know, The Way We Fly requires Delta employees to fully cooperate in company investigations. This includes providing truthful and accurate answers to questions, as well as documents or other information requested by the company. Accordingly, due to the seriousness of these allegations, failure to contact me on April 1, 2021 at 1:00pm EST at 734-604-9405 and participate in the investigation will be considered insubordination and your employment will be reviewed for disciplinary action, up to, and including, termination. If you are unavailable at this date and time, please contact me, in writing, upon your receipt of this letter with the circumstances of your conflict. Based on the circumstances of your conflict, we will consider rescheduling the investigation to a different date or time; however, it is imperative that we discuss the allegations with you as soon as possible. Additionally, should the allegations be substantiated (with or without your participation), your employment will be reviewed for disciplinary action, up to, and including, termination.

Should you require assistance, Delta's Employee Assistance Program provides confidential services at no cost as a resource to support you in managing issues you may be dealing with in or out of the workplace. For EAP assistance, you may call (800) 533-6939.

Thank you and I look forward to speaking with you.

Danielle Kruit
cc:  Erika Lee Employee File

Scanned with CamScanner

'Reaso...

Automatic reply: [EXTERNAL] Re: Reasonable Accommodation Request   Inbox

**Kruit, Danielle R**
danielle.kruit@delta.com
Hide details

To: E Erika Lee

Date: April 2, 2021, 2:09 PM

I will be on vacation from Friday, April 2nd - Friday April 9th. If you need immediate assistance, please reach out to David Needham at 718-704-2716.

I will respond as soon as possible.

Thanks,

Danielle Kruit



Exhibit 2

Reply          Forward

View Gmail in: **Mobile** | Older version | Desktop
© 2021 Google

Scanned with CamScanner

# Exhibit 2

From: **Kruit, Danielle R** <danielle.kruit@delta.com>
Date: Friday, June 11, 2021
Subject: Re:Reasonable Accommodation Request
To: Erika Lee <leeerikalatise@gmail.com>

Dear Ms. Lee,

As you know, on March 30, 2020, you started a personal convenience leave of absence from your Ready Reserve Agent position in New York (JFK), which was extended per your request. You were set to return from leave on May 1, 2021. However, on March 26, 2021, you were suspended pending an investigation into a complaint that you made false statements in relation to Delta. We expect to conclude that investigation soon and will send you communication about its conclusion at that time.

Delta has no records of you requesting a transfer from your New York (JFK) position during the time you were on a leave of absence. To the extent you are seeking a transfer while on suspension, that is not a request Delta would consider. If you are taken off suspension and returned to active status, such a request would be reviewed and considered at that time.

Additionally, because you elected a nonpaid personal convenience leave of absence for the prior year, there is no monetary difference between that and your current suspension status. Moreover, as a Ready Reserve Agent in JFK, you are not eligible for vacation or health benefits. This is also true for the Ready Reserve positions you mention below.

Thanks,

Danielle


**From:** Erika Lee <leeerikalatise@gmail.com>
**Sent:** Tuesday, June 08, 2021 11:15 AM
**To:** Kruit, Danielle R <danielle.kruit@delta.com>
**Cc:** Nabors, Kelley <Kelley.Nabors@delta.com>

Scanned with CamScanner

**Subject:** [EXTERNAL] Re:Reasonable Accommodation Request

This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.

Hello Danielle,

In regards to my request Reasonable Accommodation of a transfer for my disability (mobility impairment), I had asked David Needham in February 2021 for transfer to any open Cargo position in California, as I have experience in Cargo and I was allowed to sit down for almost the entire time, which accommodated my disability. David Needham told me to ask you, his boss, about accommodating my disability because he said he has no authority. So I made several reasonable accommodation requests over 2 months ago before and after Being suspended , yet Nobody at Delta has ever gotten back to me about my Reasonable accommodation requests that I made in February and March 2021, it is now June 2021 . There are open Ready Reserve Cargo positions in SFO and OAK on delta.com that I asked for and would definitely accommodate my disability of mobility impairment upon return from suspension. When am I coming off suspension ? How long is this suspension expended to last ? Because of this retaliatory suspension , I'm being economically harmed , yet I'm still employed at Delta, you took away all my benefits and I even had PPT and paid vacation time that began on April 1, 2021 that I earned previously. Are you paying me out for this while keeping me on suspension? Please advise. Thanks.

Sincerely,

Erika Lee

On Friday, April 2, 2021, Kruit, Danielle R <danielle.kruit@delta.com> wrote:

I will be on vacation from Friday, April 2nd - Friday April 9th. If you need immediate assistance, please reach out to David Needham at 718-704-2716.

I will respond as soon as possible.



Exhibit 2

Scanned with CamScanner

Thanks,

Danielle Kruit

View Gmail in: **Mobile** | Older version | Desktop
© 2021 Google

# Exhibit 2

Scanned with CamScanner

# EXHIBIT 3

From: **Erika Lee** <leeerikalatise@gmail.com>
Date: Friday, April 2, 2021
Subject: Re: Reasonable Accommodation Request
To: "Kruit, Danielle R" <danielle.kruit@delta.com>
Cc: Kelley.nabors@delta.com

Danielle,

What were the exact questions you had that you want me to respond to in writing ?  Please email them to me.

I asked for a Reasonable Accommodation for my disability  in February 2021 and in March 2021 and Delta and you and David and HR and Equal Opportunity have still refused to engage in the interactive process once again.

I don't recall ever  telling you Personally or anyone at Delta that  I have a "voicemail left by David on February 17, 2021 "and "phone records documenting the phone calls" so please cease and desist from  harassing me about my Personal cell phone records that you are not privy to . This is an invasion of my privacy . Delta does not own my phone nor does Delta pay my cellular phone bills so You have no right to demand to see my personal cell phone records or to be asking me who I'm dating, living with , sleeping with or communicating with when I am not in my profession capacity and/or not an active Delta employee.  You have no right to know who I'm dating, living with , sleeping with or communicating with when I am not in my professional capacity at Delta and/or not an active Delta employee.  Shall you not cease and desist from harassing me about my personal phone records , I will get a Court Order for you to stop harassing me, as this is an invasion of privacy , as you are not a law enforcement agency and you must cease and desist fromStalking me and putting me under constant surveillance. Also  , I never once told you that I called David from my personal cell phone. I called him from an airport phone, so I wouldn't have access to those phone records.  Once again, if you continue to harass me and demand  personal phone records that you are not privy to , I will seek a restraining order against you.  You have no right to know anything about my off duty conduct, as I have been on a leave of absence for almost

Scanned with CamScanner

Scanned with CamScanner

a year. My personal cell phone records have nothing to do with me Opposing The illegal discrimination and retaliation and hostile work environment that Delta Managers subjected me to.

Sincerely

Erika Lee

# Exhibit 3

From: **Kruit, Danielle R** <danielle.kruit@delta.com>
Date: Wednesday, March 31, 2021
Subject: Suspension for "dishonest behavior"
To: Erika Lee <leeerikalatise@gmail.com>

Dear Erika,

Thank you for your email response.  As indicated previously, please contact me tomorrow
Thursday April 1, 2021 at 1:00pm EST at 734-604-9405 to discuss the allegations of dishonest
behavior with me and another member of management.  I look forward to receiving your call then.

Danielle Kruit

**From:** Erika Lee <leeerikalatise@gmail.com>
**Sent:** Tuesday, March 30, 2021 6:12 PM
**To:** Kruit, Danielle R <danielle.kruit@delta.com>
**Subject:** [EXTERNAL] Suspension for "dishonest behavior"



# Exhibit 4

Scanned with CamScanner

Scanned with CamScanner

This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.

# Exhibit 4

Hello Ms. Kruit,

I received the Suspension letter into my alleged "dishonest behavior." I don't believe I have never met you before. Are you based in Detroit or Atlanta ? I have never worked in Detroit or Atlanta. Who told you I was "dishonest" or committed some "dishonest behavior?" I am just really confused as to how I am "dishonest" or how or when I committed some "dishonest behavior" and how this warranted me being suspended. This is clearly retaliation for my recent February 2021 complaint to HR of sexual harassment/sexual assault by Delta Manager Bernadette Komasi who has been asking me to show her my "black cat" since 2017 , amongst other things and who even spanked my butt in 2020. Less than 1 month ago I reported that to HR and now , in retaliation, I'm suspended and Delta took away my pass travel benefits to retaliate against me for complaining about sexual harassment.  The truth is I, a black woman, am being retaliated against for not wanting to be sexually harassed at work by a white lesbian Delta Manager.  I would like to know who exactly is making these "allegations" that I'm "dishonest."

So should I call you on April 1,2021 as it states in that Suspension letter ? I'm on the West Coast so please dont move the time before PST business hours. Also , I recently became a full time employee and was expecting to begin receiving health care benefits , which I need for my disability. So I'm requesting a reasonable accommodation that any health insurance benefits not be interrupted as I have a disability that I will need to see a doctor and get medication. Are the health insurance benefits going to be Also taken away as well ? How long am I suspended for ? Am I coming back to work on May 1?

I remember when I last opposed sexual harassment by Manager Bernadette Komasi in April 2019 to Delta's Equal Opportunity Department, Delta suspended me for 2 weeks and caused me to lose income to retaliate against me. So now . Am I only being suspended for 2 weeks again like last time for opposing sexual assault (being spanked) by Manager Bernadette Komasi or is this suspension going to be longer than 2 weeks ?   In 2018 , when I opposed sexual harassment by Manager Bernadette Komasi to Ashley Rangel, I was retaliated against and had my swapping benefits revoked, pass travel benefits revoked ,seniority shift bidding privileges revoked , denial of FMLA . denied me ability to pick up hours to earn income. The retaliation is relentless because

Scanned with CamScanner

I'm a black women with a disability.   What is really disturbing is how Delta allows white women (Erin Pieroni , Delgado, Maria Tamburrini, etc ) employees to oppose sexual harassment by non white men (Neil Muhammed and Joe Jackson ) in the workplace without any retaliation (suspensions or benefits taken away ) but when black women (me , Donya Williams ) make a complaint about being sexually harassed , we are called names, labeled "dishonest" and immediately retaliated against by Delta and/or racially hostile white HR managers such as yourself. This is racial discrimination. Why are black women at Delta never treated equally at Delta?    If I were white like those white women (Erin Pieroni , Delgado , etc ) who accused Joe Jackson , a black male Manager , without any evidence , I would never be branded "dishonest" as Erin Pieroni etc were never told by HR Manager William Ittounas that  they were "dishonest.". Then, Joseph Jackson , a black man , was terminated based solely on Erin Pieroni's word because she's a pretty blond white female , she is automatically considered "honest" but when I , a black woman , complain about a white lesbian women sexually harassing me and sexually assaulting me (with witnesses ) I'm labeled "dishonest" by white HR Managers at Delta who don't even know me and were not there at the time.   You and Delta are perpetuating violence against black women.   Because of my race and gender I'm being disparately disciplined and disparately retaliated against for the same exact protected  "conduct" that white women Erin Pieroni Maria Tamburrini and Delgado engaged in , but who were never suspended for .   It's not a surprise that many  people are publicly boycotting Delta this week , as Delta continues publicly perpetuating racism to disenfranchise blacks and poc and society is now aware of Delta's racism and protesting it.

Sincerely,

Erika Lee

# Exhibit 4

View Gmail in: **Mobile** | Older version | Desktop
© 2021 Google

Scanned with CamScanner

 

☰   ▲ OUR TEAMS    Register    [LOG IN]

# Cargo - Customer Service Agent (Seasonal Ready Reserve) - SFO

📍 UNITED STATES, CALIFORNIA, SAN FRANCISCO
🏢 CARGO
📅 16-APR-2021
💼 REF #: 6291

## HOW YOU'LL HELP US KEEP CLIMBING (OVERVIEW & KEY RESPONSIBILITIES)

As a Seasonal Ready Reserve Cargo Customer Service Agent, you serve as the face of Delta Cargo. In this role, you will communicate directly with the customer both face to face and over the telephone, and will be expected to utilize various cargo and system computer programs used to book, accept and track cargo along with other relative cargo operational applications. You practice safety-conscious behaviors in all customer service and operational processes while performing under time constraints.

- Prepare and process shipping documentation, both domestic and international, as needed to meet industry, company and government requirements.
- Work and cooperate with various government agencies to include the FAA, TSA, US Customs the USPS and the USDA.



Exhibit 5

Scanned with CamScanner

≡  ▲ OUR TEAMS   Register   LOG IN



# Customer Service Agent, Ticket/Gate (Seasonal Ready Reserve)

◉ UNITED STATES, CALIFORNIA, SANTA ANA

▨ AIRPORT CUSTOMER SERVICE

📅 12-APR-2021

📋 REF #: 6136

---

### HOW YOU'LL HELP US KEEP CLIMBING (OVERVIEW & KEY RESPONSIBILITIES)

As a Customer Service Agent, you will be central in demonstrating Delta's commitment to our customers by making their travel experience as smooth and pleasant as possible. At Delta, our brand is critical to our continued success. As a Seasonal Ready Reserve Customer Service Agent, you play a key part in keeping our brand strong by demonstrating strict adherence to uniform compliance, maintaining professionalism, and exhibiting a positive attitude inside and outside of work.

Seasonal Ready Reserve Customer Service Agents work between 150 and 1,400 hours per year, serving our customers in both the ticketing and gate areas at airport locations.



Scanned with CamScanner



≡   ▲ OUR TEAMS   Register   LOG IN

# Customer Service Agent, Ticket/Gate (Seasonal Ready Reserve)

📍 UNITED STATES, CALIFORNIA, SACRAMENTO

🖥 AIRPORT CUSTOMER SERVICE

📅 12-APR-2021

💼 REF #: 6194

---

### HOW YOU'LL HELP US KEEP CLIMBING (OVERVIEW & KEY RESPONSIBILITIES)

As a Customer Service Agent, you will be central in demonstrating Delta's commitment to our customers by making their travel experience as smooth and pleasant as possible. At Delta, our brand is critical to our continued success. As a Seasonal Ready Reserve Customer Service Agent, you play a key part in keeping our brand strong by demonstrating strict adherence to uniform compliance, maintaining professionalism, and exhibiting a positive attitude inside and outside of work.

Seasonal Ready Reserve Customer Service Agents work between 150 and 1,400 hours per year, serving our customers in both the ticketing and gate areas at airport locations.



Exhibit 5

Scanned with CamScanner



# Customer Service Agent, Ticket/Gate (Seasonal Ready Reserve)

**◉ UNITED STATES, CALIFORNIA, SAN DIEGO**
**▣ AIRPORT CUSTOMER SERVICE**
**📅 12-APR-2021**
**▮ REF #: 6188**



### HOW YOU'LL HELP US KEEP CLIMBING (OVERVIEW & KEY RESPONSIBILITIES)

As a Customer Service Agent, you will be central in demonstrating Delta's commitment to our customers by making their travel experience as smooth and pleasant as possible. At Delta, our brand is critical to our continued success. As a Seasonal Ready Reserve Customer Service Agent, you play a key part in keeping our brand strong by demonstrating strict adherence to uniform compliance, maintaining professionalism, and exhibiting a positive attitude inside and outside of work.

Seasonal Ready Reserve Customer Service Agents work between 150 and 1,400 hours per year, serving our customers in both the ticketing and gate areas at airport locations.

Scanned with CamScanner



OUR TEAMS    Register    LOG IN

# Customer Service Agent, Ticket/Gate (Seasonal Ready Reserve) - OAK

📍 UNITED STATES, CALIFORNIA, OAKLAND

🖥 AIRPORT CUSTOMER SERVICE

📅 12-APR-2021

📖 REF #: 6180

---

## HOW YOU'LL HELP US KEEP CLIMBING (OVERVIEW & KEY RESPONSIBILITIES)

As a Customer Service Agent, you will be central in demonstrating Delta's commitment to our customers by making their travel experience as smooth and pleasant as possible. At Delta, our brand is critical to our continued success. As a Seasonal Ready Reserve Customer Service Agent, you play a key part in keeping our brand strong by

Scanned with CamScanner



Scanned with CamScanner



Scanned with CamScanner



# Exhibit 6

Scanned with CamScanner



Scanned with CamScanner



Scanned with CamScanner



Scanned with CamScanner



Scanned with CamScanner

  https://apps.delta.com/  

Lee, Erika L.

You forwarded this message on 7/7/2019 3:13 PM

Sent:    Sunday, July 07, 2019 9:13 PM
To:      Onken, Ashley; Vogel, Randy
Cc:      Johnson, Natalie
Attachments:    ... [] []_a_JLLaCLULAD [Lorem Ridae Page], [] BuILIaC/RLLIE [Lorem Ris Page]

Hello Ashley,

I have attached **paychecks** issued 6/21 and 7/6 when you look in the comments area time earned stated 13,305.73 and 13,359.73 respectively. Going by my paystub calculations the increase is delayed by 2 pay periods and should **reflect** for 3.73 hours for the 6/21 paycheck and for my entire paycheck 7/6. For the pay increase to **reflect** 6/29 will I get difference for the hours when it wasn't in effect, I am not sure with your response will I get the rate change for those 2 checks?

Thank you,

Erika L Lee

# Exhibit 8

From: Onken, Ashley
Sent: Sunday, July 07, 2019 9:23 AM
To: Vogel, Randy
Cc: Lee, Erika L.; Johnson, Natalie
Subject: RE: Pay Increase

Pay increase effective 6/29/2019 which should be reflected on PPE 07 12 19

Status details

| Date | | Action | | Reason | Status | | Last Day Worked |
|------|---|--------|---|--------|--------|---|-----------------|
| 06-29-2019 | | Z7-Change in Pay | | XG-Step Increase | A-Active | | |

| Date | PS Group | PS Level | Off Scale Indicator | Rate of Pay | Payroll Area | WS Hours | Reason |
|------|----------|----------|---------------------|-------------|--------------|----------|--------|
| 06-29-2019 | CSA | 12 | 03-Ready Reserve | 26.75/Hourly | B1-Bi-Weekly (Delta) | 25.00 | Step Increase |
| 06-15-2019 | CSA | 11 | | 24.77/Hourly | B1-Bi-Weekly (Delta) | 25.00 | |

From: Lee, Erika L.
Sent: Friday, July 05, 2019 2:21 PM
To: Vogel, Randy; Johnson, Natalie; Onken, Ashley
Subject: Pay increase
Importance: High

Hello,

I just finished speaking with the employee service center and I was informed I needed to speak to someone on the local level about my pay increase. Two pay periods ago I worked over 13,308 hours and I am entitled to pay increase for that amount of hours. I have attached to ready reserve pay scale and at this point I have been shorted 65 hours at the new pay scale. I am sending this email with great urgency. I do see that there was an update but it is for the current pay rate of $24.77 not $26.75 which is what the ready reserve pay scale states I should be receiving

Best Regards,

Erika Lee

Scanned with CamScanner

# Read and Sign Acknowledgement

**△DELTA**

### Ready Reserve / Seasonal Ready Reserve Calendar Year

All Ready Reserve/Seasonal Ready Reserve (SRR) employees are required to work a <u>minimum of **300**</u> hours and may not work more than <u>1300</u> hours per calendar year. The calendar for Ready Reserves is defined as: October 1 – September 30. All of the following will count towards the calculation of hours "worked" and will be included in calculation of the 300 minimum and 1300 maximum hours worked:

- Actual hours worked (including swap hours)
- Jury Duty
- Military Leave (MLOA)
- Family Medical Leave (FMLA)
- Training (new hire or recurrent)[1]
- Travel Time



As a Ready Reserve/SRR you are expected to monitor your hours to meet these requirements. You are also required to bid a set work schedule or if an SRR, possess the ability to be scheduled on an on call/vacation relief basis when requested.

The following applies to all Ready Reserve/SRRs:

- I understand that I cannot work more than 1300 hours per calendar year (Oct – Sep )as a Ready Reserve/SRR and it is my responsibility to manage my hours so I do not "time out" (or reach 1300 hours) before the end of the calendar year (Oct – Sep). If I time out, I will no longer be permitted to work for the remainder of the calendar year (Oct – Sep) and my employment status will be shown as "inactive". As an inactive employee, I will continue to receive Delta travel privileges until I am terminated. There is no guarantee I will return to work the following calendar year (Oct – Sep) as my return will be based on operational needs and available openings at the time.

- If I become "inactive," I understand that I must immediately, return the SIDA (or airport badge) provided to me, as well as my Delta ID. If I am returned to active status, those badges will be returned to me (I may have to reapply for local SIDA badges which may delay my return to work).

- I also understand that I must work a minimum of at least 300 hours in a calendar year (Oct – Sep) and my employment may be terminated if I fail to do so.

- As a Ready Reserve/SRR, I understand that I am expected to promptly respond to any attempts made by my leaders to contact me. If I fail to respond to any messages, emails or other attempts to contact me and/or fail to report to work when I am needed or scheduled, I may be subject to corrective action, up to and including termination. I understand that my leaders will try to notify me at least 30 days in advance of my work schedule.

- If I return from being "inactive" (i.e., the following calendar year Oct – Sep), I understand that I may be scheduled by my leaders to work a different shift and/or have different regular days off than I had before I become "inactive".

---

[1] Working hours also include paid time off where required by state or local law.



Delta 3:15-cv-020-.IAM--001652

Scanned with CamScanner

## ▲Delta

### NOTICE CONCERNING EMPLOYMENT AS A READY RESERVE EMPLOYEE

I understand that if I am hired as a Ready Reserve employee, I will be working for Delta Air Lines, Inc. (hereafter "Delta") on an on-call basis for such times as may be requested by Delta, performing such duties as I may be assigned. My job classification with Delta is that of "Ready Reserve employee". I understand that my sole compensation will be a specific hourly pay rate, and that rate will be communicated to me at or before the time that a verbal offer for employment may be extended. I also understand that while I am working as a Ready Reserve employee, I am not eligible to receive, nor will I become eligible to receive, any benefits provided by Delta to any of its other employees including, but not limited to, healthcare benefits, sick time and disability benefits, survivor benefits, retirement benefits, holiday pay, and vacation pay. I further understand that I will not be eligible for any increase in pay which Delta may grant to its other personnel. I understand that Delta may, in its discretion, grant me limited travel privileges, but that I have no vested right to such travel privileges. I further understand and agree that if Delta grants me limited travel privileges, these privileges will be given, received and used in accordance with policies set forth in the Company's Human Resource Practices Manual for employees in my job category of Ready Reserve employee.

I acknowledge that I have received no promises or representations from Delta regarding the number of hours or the times when I may be requested by the Company to work. I further acknowledge that Delta has no obligation whatsoever to call me for work, that my employment is at will, and that I may be released from employment by Delta at any time that Delta may, in its sole discretion, choose to do so. I also acknowledge that if I am offered and and choose to accept employment, my employment will be governed by the terms and conditions of employment out as stated on my Application For Employment, and as contained within Delta's Human Resource Practices Manual as applicable to my job classification which may be revised from time to time.

| | |
|---|---|
| _7/30/2010_ | |
| DATE | WITNESS SIGNATURE |
| _Sharon L._ (signature) | |
| APPLICANT SIGNATURE | WITNESS PRINT NAME |
| _Sharon Lewis_ | |
| APPLICANT PRINT NAME | WITNESS DEPARTMENT # and LOCATION |

# Exhibit 13

Ready Reserve Form-
Revised 01/20/2004



EXHIBIT
9/14/17
Lewis     K.P.

DELTA000022

Scanned with CamScanner

# EXHIBIT 14

From: **Lee, Erika L** <Erika.L.Lee@delta.com>
Date: Friday, March 26, 2021
Subject: Fw: Important Updates for all CSA and Ready Reserve Employees – Action Needed
To: "Leeerikalatise@gmail.com" <Leeerikalatise@gmail.com>

---

From: **ACSCGOCOMM** <AcsCgoComm.ACS@delta.com>
**Sent:** Wednesday, March 3, 2021 1:13 PM
**Subject:** Important Updates for all CSA and Ready Reserve Employees – Action Needed



| To: | ACS and Cargo Operations Team Members - U.S.-based and SJU Employees |
| From: | CSA 2021 Project Team |
| Date: | March 3, 2021 |
| Subject: | Important Updates for all CSA and Ready Reserve Employees – Action Needed |

ACS and Cargo Operations Team Member,

As previously shared, effective July 2021 we will move to one, benefit-eligible, Customer Service

Scanned with CamScanner

Scanned with CamScanner

Agent (CSA) employee group and sunset the existing Ready Reserve program for both ACS and Cargo. We will also maintain a Seasonal Agent workforce to support the operation as needed.

Looking ahead to July, we want to ensure that current CSA and Ready Reserve employees have more details on the CSA role requirements for benefit eligibility as well as the updated Seasonal Agent role. Based on feedback, we are providing all current CSA and Ready Reserve employees with the opportunity to consider what works best for them by enabling an opt-in for a Seasonal Agen role.

As an important note, ACS and Cargo Operations lines and bids will continue to follow the schedule and bids will remain seniority based as we come together as one CSA workgroup on July 1, 2021. While we plan to offer CSA lines ranging from 20 hours up to 40 hours, lines will vary based on location and based on what an employee can hold with their seniority.

Please review the CSA / Seasonal Agent role comparison chart and take the time to consider what role may be right for you. As a current CSA or Ready Reserve, if you decide that you would prefer to have a Seasonal Agent role come July 1, please make your selection known by completing the opt-i form by midnight ET on March 21. If you decide to remain in your current CSA or Ready Reserve role, no action is needed as you will transition to a CSA effective July 1.

International Ready Reserve employees (currently only in SJU), will receive additional information regarding next steps. Any questions should be directed to local leaders or an HR Business Partner.

**Key Dates to Remember**


EXHIBIT 14

- **March 3**: Role comparison chart shared and Opt-In Form available in Self Service.
- **March 3 – March 21**: The Seasonal Agent Opt-In Form will remain open for current CSA and Ready Reserve employees to submit. The form closes at midnight ET on March 21. During thi time, current CSA and Ready Reserve employees can opt-in, or retract an opt-in, if they change their mind.
- **March 24 – 30**: This week is set aside as one final opportunity for any current CSA or Ready Reserve who has opted-in to be a Seasonal Agent to revoke their decision.
- **March 31**: all decisions for Seasonal Agent Opt-In will be final. This is to ensure we have

Scanned with CamScanner

Scanned with CamScanner

ample time to prepare changes and transitions coming on July 1.

Please visit and bookmark the CSA 2021 Program on Deltanet to track the latest information, key dates, employee actions, FAQs and other resources. Also, we have created a helpful video which explains the main changes from the comparison chart. Any remaining questions not already answered in the FAQs may be sent to CSAProgram2021@delta.com.

Thank you for what you are doing each and every day to make ACS and Cargo Operations at Delta the best in the business.

CSA 2021 Project Team



EXHIBIT 14

Scanned with CamScanner

Scanned with CamScanner



# Exhibit 15

David Needham, SPHR, Ed.D 

Human Resources Director Ametek
University of Southern California · AMETEK Hughes-Treitler
Farmingdale, Nueva York, Estados Unidos ·
Más de 500 contactos

**Conectar**    🔒 **Enviar mensaje**

## Acerca de

Extremely efficient and detail-focused professional with extensive experience analyzing operations and executing strategies to decrease backlog, reduce budgetary spending, and increase productivity. Superior interpersonal skills utilized in client interactions, political press conferences, and general conflict resolution. Articulate and dynamic individual with strong desire for continued professional growth and development.<br><br>Specialties: Change Management — Communications — Consulting — Restructuring — Strategic Planning — Team Leadership/Motivation — Vendor Relations — Cost Reduction — Scheduling — Budgeting — Expense Control Presentations — Customer Service — Public Relations

    

**Delta Air Lines**
4 años 5 meses

# Exhibit 15

- **Senior Human Resources Manager**
  **Northeast**
  mar. de 2021 - oct. de 2022 · 1 año 8 meses
  Nueva York, Estados Unidos

  Leading a team of HR Professionals in supporting the Airport Customer Service and Cargo divisions in NY (JFK and LGA), BOS, DCA and IAD Airports.

- **Manager of Human Resources**
  jun. de 2018 - mar. de 2021 · 2 años 10 meses

  Chief HR professional for JFK Airport Customer Service and Cargo divisions. Lead performance management along with local training and development. Conduct investigations and ... más

**Manager Labor and Employee Relations**
JetBlue Airways
may. de 2013 - jun. de 2018 · 5 años 2 meses

Liaison between over 550 Supervisors and the Leadership of multiple workgroups. Serve as a subject matter expert for workgroup Vice Presidents on Labor Relation issues. Advise workgroup Supervisors on coaching and disciplinary issues.<br><br>Liaison for the Airports Values Committee, an employee peer elected committee representing 6,500+ employees, that works with leaders to advance collaboration on policies, procedures and workplace concerns. <br><br>Created a cadence of meetings for each workgroup to advise of issues/concerns and how to preserve a Direct Relationship<br><br>Structured a Cross-Functional Supervisor Advisory Committee as well

 Inicio

 Mi red

 Publicar

 Notificaciones

 Empleos

🔒 linkedin.com