**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X:
                                                         :
ERIKA LEE,                                               :
                                                         :
                    Plaintiff,                           :      No. 1:22-cv-8618 (GHW) (RWL)
                                                         :
        -against-                                        :
                                                         :
DELTA AIR LINES, INC.,                                   :
                                                         :
                    Defendant.                           :
-------------------------------------------------------- X

-------------------------------------------------------

<u>**DECLARATION OF DAVID NEEDHAM**</u>

STATE OF NEW YORK           )
                            )      ss:
COUNTY OF NASSAU            )

I, DAVID NEEDHAM, being duly sworn, declare under penalty of perjury under the laws of the

United States of America that the foregoing is true and correct:

    1. I have been employed by AMETEK Hughes-Treitler since 2022. I am currently Director,

Human Resources.

    2. From 2018 to 2022 I was employed as a Human Resources Manager for Delta Air Lines

("Delta") based in New York.

    3. I make this affidavit based on my personal knowledge.

    4. I have reviewed the Affidavit of Service of Initiating Papers (the "Affidavit of Service")

filed by Erika Lee which alleges that on July 16, 2023, I accepted personal service of a Summons

and Verified Complaint at a residence in Farmingdale, New York from a female named Cheline

Boyd.

    5. The statement is completely false. I do not live at the residence in Farmingdale, New

York listed in the Affidavit of Service and was not present there on July 16, 2023. Nor have I

ever interacted with an individual named Cheline Boyd.

6. On July 25, 2023, I received a package envelop at my place of employment containing what appears to be a summons and compliant in a case brought by someone named Erika Lee. A copy of the package of documents placed in the mailbox is attached hereto as Exhibit A. The package was not served personally on me.

7. I notified Delta Air Lines representatives of the documents on July 26, 2023.

8. On August 8, 2023, a masked individual on crutches came to my employer's lobby and dropped off a set of what appear to be the same papers. A copy of what was dropped in the lobby is attached as Exhibit B hereto.

9. Security cameras in my employer's building lobby and parking lot recorded the individual who dropped off the papers and still images captured by those security cameras are attached as Exhibit C hereto.

10. At no time was I personally served with any papers or documents related to Erika Lee.

David Needham

Sworn to and subscribed before me

this _11_ day of _August_, 2023

My commission expires: _5/23/2027_

NOEL THOMAS
Notary Public - State of New York
No. 01TH6085545
Qualified in Nassau County
My Comm. Expires May 23, 2027

Notary Public



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments.

Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; July 2022; All rights reserved.

FROM:

Cheline Byrd
1 E. 35th St.
Apt. 11A
New York, NY   100 16

TO:

AMETEK Hughes - Treittler
300 Endo Blvd
Garden City, NY ~~11550~~ 11530
Attention: Director of HR
DAVID NEEDHAM

Retail

US POSTAGE PAID
$13.70

Origin: 10002
07/19/23
3596130013-5

PRIORITY MAIL®

0 Lb 7.00 Oz
RDC 01

C040

EXPECTED DELIVERY DAY: 07/20/23

SHIP
TO:
300 ENDO BLVD
GARDEN CITY NY 11530-6708

USPS SIGNATURE® TRACKING #

9510 8140 0133 3200 6109 99

PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

free Package Pickup,
the QR code.

PRIORITY
MAIL

apply).*
ernational destinations.

ulred.

s see the

tions of coverage.

■ Expecte
■ Domesti
■ USPS Tı
■ Limited
■ When u
*Insurance d
Domestic Ma
** See Interna

FLAT
ONE RAT

TRAC

UNITED STATES POSTAL SERVICE®

PRIORITY MAIL®

FLAT RATE ENVELOPE

ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

TRACKED ■ INSURED



PS00001000014

EP14F July 2022
OD: 12 1/2 x 9 1/2

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

### for the

Southern District of New York

| | | |
|---|---|---|
| ERIKA LEE | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Plaintiff(s)_ | ) | Civil Action No. 1:22-cv-08618-GHW-RWL |
| v. | ) | |
| DELTA AIR LINES, INC. | ) | |
| DAVID NEEDHAM; | ) | |
| JOSE ROSADO | ) | |
| | ) | |
| | ) | |
| _Defendant(s)_ | ) | |

## SUMMONS IN A CIVIL ACTION

To: _(Defendant's name and address)_ DAVID NEEDHAM
c/o AMETEK Hughes-Treitler
300 Endo Blvd
Garden City, NY 11530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  ERIKA LEE
20 Confucius Plaza #10K
New York, NY 10002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

_CLERK OF COURT_

Date: _____          _____
                                                      _Signature of Clerk or Deputy Clerk_

Erika Lee (email: leeerikalatise@gmail.com)
20 Confucius Plaza #10k
NY, NY 10002
(Phone:646-552-8394)

- - - - - - - - - - - - - - - - - - - - - - - -X

**ERIKA LEE**

Plaintiff, Pro Se

-against-

**DELTA AIR LINES, INC.;**
**DAVID NEEDHAM; &**
**JOSE ROSADO**
                    Defendants

**US DISTRICT COURT**
**SOUTHERN DISTRICT OF NY**

**CASE: 22-cv-08618-GHW-RWL**

**SECOND AMENDED**
**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - -X

**IDENTITY OF PARTIES**

1. At all relevant times mentioned herein, Plaintiff Erika Lee ("Lee"), a New York City resident, was employed by Defendant Delta Air Lines, Inc. ("Delta").

2. At all relevant times mentioned herein, Delta was and is a corporation duly-organized and existing under the laws of Delaware and was and is authorized to do business in the County, City; and State of New York.

3. At all relevant times mentioned herein, DAVID NEEDHAM, was employed by Defendant Delta Air Lines, Inc. ("Delta") as"Chief HR professional for JFK Airport," and/or "Manager of Human Resources"

4. JOSE ROSADO, was employed by Defendant Delta Air Lines, Inc. ("Delta") as "General Manager Customer Service" at JFK Airport, in Queens,New York beginning in mid June 2021. Prior to mid June 2021, Jose Rosado was employed at Jetblue Airways.

**RELEVANT BACKGROUND**

5. Plaintiff began working her employment with Delta in September 2005 at JFK Airport as a Customer Service Agent.

6. At all relevant times herein, Plaintiff satisfactorily performed her job duties as a Customer Service Agent.

7. From January 2011- March 26, 2021, Plaintiff was never disciplined for any reason including but not limited to "reliability" (latenesses and/or absences) or poor performance, at any time. Additionally, Plaintiff did not have any form of "performance development" and/or "formal verbal coachings" and/or "written corrective action" in her personnel file at any time within the last 10 years of her employment with Delta.

8. From around December 2017 through 2020, Plaintiff was being sexually and racially harassed, as well as sexually assaulted, by Delta Manager Bernadette Tomasi.

9. In April 2019, Plaintiff had a telephonic meeting with Delta's HR/Equal Opportunity or "EO" Department and formally complained to Delta that because of Plaintiff's race and sex, Delta Manager Bernadette Tomasi was forcing Plaintiff to wear a skirt and "heels," as Tomasi demanded that Plaintiff "look sexy" because Manager Tomasi told Plaintiff, "I want to see them big black ass cheeks switching when you walk." Yet, the similarly situated white women who Tomasi also managed were not required to wear heels/skirts as Tomasi was demanding Plaintiff to do, as Delta's written uniform policy allows females to wear flat shoes, and Plaintiff was threatened with suspension and adverse employment actions and/or write-ups if she didn't wear heels, "look sexy" and/or acquiesce to Tomasi's sexual requests for lesbian sex.

10. In this same April 2019 telephonic meeting with Delta's HR/Equal Opportunity or "EO" Department,. Plaintiff also requested a reasonable accommodation, whereby Delta's EO Manager refused to engage in the interactive process and denied Plaintiff's request for a reasonable accommodation, while refusing to accept any medical documentation and refusing to explore any alternative options, as Delta had always done with similarly situated white female comparators, such as Tabitha Hutchinson, Jennifer Palmer, etc.

11. Immediately after Plaintiff made these formal complaints and engaged in protected activity to Delta's EO HR Manager in April 2019, Plaintiff was immediately suspended without pay for 2 weeks, whereby Plaintiff suffered economic harm in retaliation for opposing race/disability/sex discrimination and hostile work environment by Delta Manager Tomasi.

12. After Delta "EO" HR Department became aware of Manager Tomasi's illegal sexually and racially harassing behavior, Delta told Plaintiff that Plaintiff would have to continue to be subjected to Tomasi's sexually and racially harassing behavior if Plaintiff wanted to remain

SECOND AMENDED VERIFIED COMPLAINT page 2

employed at Delta because Delta had no reason to address the situation because Plaintiff was not being sexually harassed by a man, so Manager Tomasi, because of her sex, was empowered by Delta to continue her disgusting behavior any time she desired because of Plaintiff's sex. Delta's "EO" HR Manager tried to reduce this to a "petty cat-fight," as Delta's "EO" HR Manager told Plaintiff, "Bernadette sticking her tongue out at you and staring at your breasts and asking you about your vagina is just girl talk, women often touch each others breasts and make sexual comments about their vaginas to each other, it is just how females are with other females. You are not being sexually harassment because there is NO MAN involved." Not one action was taken by Delta to ensure that Plaintiff would not be subjected to Manager Tomasi's sexually and racially harassing behavior again.

13. After Plaintiff returned to work after Delta's 2 week suspension without pay in retaliation for opposing Tomasi's sexually and racially hostile work environment, Plaintiff was still being sexually and racially harassed by Delta Manager Tomasi from April 2019 through 2020, whereby Tomasi would stick her tongue out and move it in a rapid up and down motion to simulate the act of cunnilingus, where she would then ask Plaintiff if Plaintiff's pubic hair was "kinky" and if Plaintiff shaved her vagina, and telling Plaintiff that she couldn't wait to try Plaintiff's black vagina because she heard black vagina tastes like "fried chicken and collard greens."

14. At all times from 2019 through termination, Plaintiff was filled with fear every time she reported to work, given that Delta refused to address Tomasi's sexually aggressive conduct perpetuated on Plaintiff because of her sex and race, since Tomasi constantly told Plaintiff that Tomasi was going to penetrate Plaintiff's black vagina with Tomasi's "big white dildo" and Tomasi was tired of Plaintiff "playing hard to get."

15. In mid-2020, Manager Tomasi spanked Plaintiff's butt and made sexual comments while spanking Plaintiff butt.

16. From mid-2020 through March 2021, Plaintiff did not want to make any more complaints or report Manager Tomasi sexual harassment/violent sexual assault(spanking Plaintiff's butt) because Plaintiff did not want to be suspended without pay again and/or be terminated, as Delta threatened Plaintiff with suspension without pay or termination in April 2019 if Plaintiff made any more complaints about Tomasi's sex and race discrimination and the severely hostile work environment Delta intentionally subjected Plaintiff to.

17. On February 19, 2021, Delta's New York HR Manager David Needham called Plaintiff because Needham needed to ask Plaintiff if she had ever been sexually "spanked" by

SECOND AMENDED VERIFIED COMPLAINT page 3

Manager Tamasi in 2020 because he told Plaintiff, without revealing his source, that he had heard that Plaintiff was sexually "spanked by Manager Tamasi." However, it is 100% false that Plaintiff herself voluntarily "raised" these "complaints" that Plaintiff was "spanked" by Manager Tamasi in mid-2020 to David Needham or anybody at Delta in February 2021, as Plaintiff did not want to be retaliated against again.

18. In this telephonic February 2021 phone call between Delta's HR Manager David Needham and Plaintiff, Plaintiff NEVER specifically told Needham whether or not Plaintiff was sexually spanked and sexually assaulted by Manager Tamasi in mid-2020, as Plaintiff had not reported this to anyone at Delta and did not want to report it to anyone at Delta since Plaintiff was threatened with suspension and termination by Delta in April 2019 if she made any more complaints about discrimination, the hostile work environment, and the constant retaliation.

19. The first time that Plaintiff herself voluntarily "raised" these "complaints" that Plaintiff was "spanked" by Manager Tamasi in mid-2020 was on March 25, 2021 to Delta Equal Opportunity HR Manager, Kelly Nabors. On March 25, 2021, Plaintiff had a phone conversation with Delta "EO" HR Manager Kelly Nabors, whereby Plaintiff made another formal complaint where Plaintiff informed Nabors that Plaintiff was continuously and constantly sexually and racially harassed by Manager Tamasi after Plaintiff's last April 2019 complaint to Delta's Equal Opportunity, as Manager Tomasi "sexually spanked my butt in mid-2020 and continued to sexually and racially harass me, because Delta refused to intervene." During this March 25, 2021 conversation with Nabors, Plaintiff also requested a reasonable accommodation for her May 1, 2021 return to work, and Nabors refused to engage in a cooperative dialogue and failed to accommodate Plaintiff's disability from March 25, 2021 through June 17, 2021.

20. On March 26, 2021, in retaliation for opposing Delta Manager Tomasi's sex and race discrimination (including but not limited to the sexual spanking issue) and requesting a reasonable accommodation to Nabors on 03/25/2021, Plaintiff was suspended without pay, whereby Plaintiff suffered economic harm.

21. In February 2021, March 2021, April 2021, May 2021 and June 2021, Plaintiff requested reasonable accommodations for her disabilities, and at all times, Delta, again, refused to engage in the interactive process.

22. From March 26, 2021 through June 16, 2021, Plaintiff was suspended without pay.

23. On June 17, 2021, Delta and/or Jose Rosado and/or David Needham terminated

SECOND AMENDED VERIFIED COMPLAINT page 4

Plaintiff's employment in retaliation for opposing Delta Manager Tomasi's sex and race discrimination (including but not limited to the sexual spanking issue) to Delta's HR Managers, Danielle Kruit and Kelly Nabors on or around April 1, 2021, as well as requesting a reasonable accommodation from February 2021- June 2021.

24. The baseless, discriminatory, and defamatory reason offered for Plaintiff's June 17, 2021 termination was Plaintiff's "dishonest behavior" regarding Delta HR Managers Danielle Kruit and Kelly Nabors not believing that Plaintiff was sexually "spanked by Manager Tomasi in mid-2020," after Plaintiff first voluntarily "raised" this complaint to Kelly Nabors on March 25, 2021.

25. On Plaintiff's April 1, 2021 phone call with Delta HR Managers Danielle Kruit and Kelly Nabors, Plaintiff asked them if this call was about sexual harassment or about some other issue, at which point they dismissed Plaintiff's complaints regarding Tomasi sexually harassing Plaintiff, saying "we already investigated Tomasi spanking you in April 2019 and this issue was addressed already," Kruit and Nabors then both said that the call was solely about Plaintiff, at which point Plaintiff explained that it was impossible for Delta to have investigated Plaintiff being spanked by Tomasi at any time in 2019 because Plaintiff was not spanked until mid-2020, which silenced them.

26. Delta never contacted Plaintiff again after her call with Kruit and Nabors on April1, 2021, making it clear that Delta desired that Plaintiff stay out of its workplace to punish her for her complaints about Tomasi's sexually and racially harassing behavior and Delta's condonation of that harassment.

27. Attached as Exhibit 2 is a true and correct copy of Plaintiff's March 30, 2021 email to Delta HR Manager Danielle Kruit, where Plaintiff opposed discrimination and retaliation.

28. As a result of Defendant Delta's discriminatory conduct, Plaintiff has suffered the adverse effects of sexual and racial harassment and retaliation, the quality of her life has been irreparably damaged and her self-esteem, self-respect and well-being has been damaged because she were subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Plaintiff into the future, so that the quality of Plaintiff's life has been negatively impacted as a result of the discrimination to which Plaintiff were subjected by Delta.

29. The acts of Defendant were committed with reckless indifference in the face of a perceived risk that their actions would violate Plaintiff's protected rights under the New York City Human Rights Law so that, in addition to the damages inflicted upon Plaintiff and in addition to all the other measures of relief to which Plaintiffs may be properly entitled herein,

SECOND AMENDED VERIFIED COMPLAINT page 5

1   Defendant should also be required to pay punitive damages as punishment for their
2   discriminatory conduct, in order to deter Defendants and others similarly situated from
3   engaging in such conduct in the future.

### DEFAMATION (LIBEL PER SE & SLANDER PER SE)

4   30.Beginning around March 26, 2021 and continuing through July 2021, Delta managers
5   Danielle Kruit, David Needham, and Kelly Nabors published and republished Delta's
6   unprivileged, false statements of purported facts of and concerning Plaintiff to other Delta
7   employees and third parties, other airline industry colleagues, including but not limited to
8   JetBlue Airways employees Jose Rosado and Southwest Airlines employee Mayra
9   Amezquita, Ashley and Evan, etc., that Plaintiff is a "liar," a "fraud," was terminated for
10  having "engaged" in "dishonest behavior," that David Needham was "conducting...an
11  investigation...into complaints raised by you," that Plaintiff "had been dishonest in
12  connection with your relations with Delta," that Plaintiff was terminated for
13  "insubordination" and because Delta "lost trust in your ability to perform your duties in a
14  manner consistent with our policies and expectations, including the expectation of candor in
15  your relations with Delta," and that Plaintiff committed the crime of "workers comp
16  (insurance)fraud."
17  31.Attached as Exhibit 1 is a true and correct copy of Delta's March 26,2021 "Suspension
18  Letter," where Delta Manager Danielle Kruit published and republished Delta's unprivileged,
19  false, defamatory per se statements of purported facts of and concerning Plaintiff to
20  Southwest Airlines employee Mayra Amezquita, Ashley and Evan, and JetBlue Airways
21  employees Jose Rosado and Erik H., Aasir Azzarmi, John Gurney, etc. that Plaintiff
22  "engaged" in "dishonest behavior...Additionally, should the allegations be substantiated (with
23  or without your participation), your employment will be reviewed for disciplinary action, up
24  to, and including, termination," (LIBEL PER SE).
25  32. Attached as Exhibit F is a true and correct copy of Jose Rosado's LinkedIn account which
26  proves that he was employed by JetBlue Airways from March 2021 through around early
27  June 2021 and/or was not employed by Delta Air Lines, Inc. during this time period, yet he
28  published these false, unprivileged statements of purported facts of and concerning Plaintiff
29  to third parties of which Rosado had no personal knowledge of.
30  33. Attached as Exhibit B is a true and correct copy of Delta's June 17, 2021 termination
31  letter which Jose Rosado published Delta's false, unprivileged statements of purported facts
32  of and concerning Plaintiff to Southwest Airlines employee Mayra Amezquita on or around
33  July 1, 2021, Evan and Ashley, Aasir Azzarmi, John Gurney, etc. that "We initially reached

SECOND AMENDED VERIFIED COMPLAINT page 6

1  out to you on March 26, 2021 to inform you that you were suspended... in connection with
2  our investigation of a complaint that you had been dishonest in connection with your relations
3  with Delta. We received information that you falsely represented that you had had a
4  conversation with David Needham(Senior Human Resources Manager for JFK in New York)
5  on February 19, 2021 in which he allegedly made a variety of statements concerning an
6  investigation he was conducting into complaints raised by you regarding another employee
7  who worked in LaGuardia Airport(LGA) in New York while you worked in LGA with her...In
8  light of the foregoing, Delta has decided to terminate your employment, effective
9  immediately, on that grounds that it has lost trust in your ability to perform your duties in a
10 manner consistent with our policies and expectations, including the expectation of candor in
11 your relations with Delta. Your failure to cooperate during the investigation also constitutes
12 insubordination..."
13 34.As evidenced by Exhibit F, Jose Rosado has never had personal, firsthand knowledge of
14 the purported facts that he published and republished in Exhibits A, B, C', & D, as he was a
15 JetBlue employee in March 2021-June 2021 and never conducted any "interview" with
16 Plaintiff at any time.
17 35. In July 2021, Delta managing agents, Wendy Chau and Richard Lorich, in the course and
18 performance of their Delta HR Manager duties, published unprivileged, false, defamatory per
19 se statements of purported facts about Plaintiff to Southwest Airlines employee, Mayra
20 Amezquita, and other third parties, that Plaintiff is "a liar and a fraud who got caught lying
21 and committing workers compensation fraud on Delta by faking workplace injuries for years
22 to both steal money from Delta and to get paid time off from Delta. A few weeks ago, Delta
23 finally caught Erika lying and doing workers comp fraud while she was out on another
24 workers comp leave trying to steal more money from Delta without working, and Delta
25 suspended her and terminated her for lying and for workers comp fraud. Do you still talk to
26 Erika? Have you heard this about her? She's going to go to jail for doing this fraud and she's
27 going to have to pay Delta restitution. Everybody is talking about Erika in New York and LA.
28 Just the other day, one of the LAX gate agents, was like the fifth person to tell me this story
29 about how finally after all these years, Erika got caught committing workers comp
30 fraud." (SLANDER PER SE).
31 36. Attached as Exhibit A is a true and correct copy of Delta HR Manager Danielle Kruit's
32 unprivileged, false, statements of purported facts of and concerning Plaintiff that Delta
33 published and republished to Southwest Airlines employee, Mayra Amezquita, Ashley and
34 Evan ____, Aasir Azzarmi, John Gurney, etc. on or around July 1, 2021 that "On February 17,

SECOND AMENDED VERIFIED COMPLAINT page 7

2019, David Needham (Senior Human Resources Manager for JFK in New York) telephoned you in an effort to investigate new complaints made by you regarding Bernadette Tamasi (who worked in LaGuardia airport (LGA) in New York while you worked in LGA with her). At that time, he left a message for you to call him back so that he could get additional information from you. You did not return his phone call as requested and have not provided additional information.Notwithstanding the lack of information or cooperation from you, we took steps to look into your new claims. We note in April 2019, when you made complaints regarding a variety of matters, including allegations against Ms. Tamasi. Those complaints were investigated at the time, however, at that time, you did not raise the allegations you now have raised against Ms. Tamasi, including but not limited to the allegation that she "spanked" you. Ms. Tamasi denied your claims and we find her credible. We do not find your allegations credible. Based on the foregoing, we do not believe that the conduct alleged occurred and we are closing this matter."

37. In July 2021, Jose Rosado, who began working at Delta Air Lines in or around mid-June 2021, published unprivileged, false statements of facts about Plaintiff to JetBlue Airways employee, Erik Hildebrandt, that, "I fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee." (SLANDER PER SE)

38. After Jose Rosado,in the course and performance of his Delta HR Manager duties, published these false, unprivileged statements of purported facts about Plaintiff to Jetblue Airways employee Erik Hildebrandt in July 2021,Plaintiff witnessed JetBlue manager Erik H. republish Jose Rosado's false, statements that Jose Rosado "fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee" to third parties, John Gurneye and Aasir Azzarmi.

39. After Plaintiff discovered that Jose Rosado published these false, defamatory statements to JetBlue Airways employee Erik H in July 2021, Plaintiff sent Jose Rosado an email, on or around July 19, 2021, demanding that he, Jose Rosado, cease and desist from publishing these false, unprivileged statements of purported facts of and concerning Plaintiff to third parties.

40. Because Jose Rosado published these false, defamatory statements to Delta Airlines employees on and/or before June 17, 2021 and/or before being employed at Delta Air Lines, Inc., Plaintiff was harmed in her profession, as Plaintiff was terminated from Delta Air Lines, Inc., causing Delta Air Lines, Inc. to cancel their March 2021 contract with Plaintiff that was set to begin in July 2021, causing Plaintiff special damages.

SECOND AMENDED VERIFIED COMPLAINT page 8

Case 1:22-cv-08618-DEH-RWL    Document 71    Filed 08/15/23    Page 15 of 64

Case 1:22-cv-08618-GHW-RWL    Document 58    Filed 07/06/23    Page 9 of 6?

41. Because Jose Rosado, later employed as Delta Manager, published these unprivileged, false, defamatory statements to JetBlue Airways employee Erik H in July 2021 of and concerning Plaintiff, Plaintiff was harmed in her profession, as she was unable to obtain employment at JetBlue Airways and/or any other airline, causing Plaintiff special damages.

**FAILURE TO ENGAGE/FAILURE TO ACCOMMODATE/RETALIATION**

42. Since 2012-present, Plaintiff's actual and perceived non-transitory disabilities of mobility impairment, depression, anxiety, PTSD, & obesity, are disabilities covered by the NYCHRL.

43. In February 2021, March 2021, April 2021, May 2021 and June 2021, on multiple occasions, Plaintiff made formal and informal reasonable accommodation (via telephone(oral) and email (written)) requests to Delta HR Managers *David Needham*, Kelly Nabors, and Danielle Kruit.

44. Because Plaintiff has a disability and requested a reasonable accommodation of "a chair to sit down in while performing the essential functions of her job" and/ or a transfer in February 2021 to David Needham, and again to Delta's Equal Opportunity HR Manager Kelly Nabors on March 25, 2021, Plaintiff was immediately suspended without pay on March 26, 2021, causing Plaintiff economic harm.

45. On or around the end of April 2021, Plaintiff's local manager, Shelonda, called Plaintiff to return to work on May 1, 2021, as Plaintiff was on a voluntary, unpaid, COVID leave from around April 2020 through April 30, 2021.

46. Because Plaintiff emailed HR Manager Danielle Kruit requesting a reasonable accommodation and again opposed discrimination/retaliation, Plaintiff was suspended again without pay in retaliation from May 1, 2021 through June 17,2021, which caused Plaintiff to suffer further economic harm.

47. At all times herein, Plaintiff was qualified to perform all of the essential functions of her job at Delta Air Lines, Inc., with or without a reasonable accommodation.

48. The essential functions of Plaintiff's job as a Customer Service Agent, in Dept.125, at Delta, were to "greet Delta's customers and guide and assist them with the ticketing and baggage check-in process; use computers to sell, print, and reissue tickets. Manage the check-in process, ensuring the customers have the proper documentation for travel;Tagging baggage and occasionally perform lifting tasks that involved transferring baggage from scales to conveyor belts; Practices safety- conscious behaviors in all operational processes and procedures; help Delta customers with routing, trip planning and gate boarding; use computers to assist customers with seat availability; gate announcements with regard to the boarding process, flight status, checking and handling baggage, managing and initiating the

**SECOND AMENDED VERIFIED COMPLAINT page 9**

boarding process; operate jetways to place them in position prior to aircraft arrival and lifting, opening, closing and securing aircraft doors."

49. Attached as Exhibit 7 is a true and correct copy of a photo that Plaintiff took with her cell phone on 10/09/2021 around 5pm at Terminal 2, JFK Airport of a similarly situated, white female Delta employees who was provided a "chair to sit down in while performing the essential functions of her job," yet Delta has always denied Plaintiff, because of her race and disability, this same "chair" as a reasonable accommodation for Plaintiff's disability.

50. Attached as Exhibit 6 are true and correct copies of photo that Delta employee Bajhi Adams took with her cell phone in or around 2016 at Delta's ATL airport in Georgia of a similarly situated Delta employees who Delta provided more than 1 "chair to sit down in while performing the essential functions" of their job.

51. Attached as Exhibit 5 are true and correct copies of Delta's online job postings that Delta posted on it's website and publicly advertised on delta.com in April 2021 through June 17, 2021.

52. Plaintiff's February 2021-June 2021 reasonable accommodation requests for a "transfer" to a vacant Cargo agent position and for a "chair" did not produce any undue hardship to Delta because Delta was publicly advertising on delta.com that Delta was looking to fill these Cargo agent job vacancies and Delta regularly provides "chairs" to similarly situated, non-disabled employees at JFK Airport in New York and ATL Airport in Georgia.

53. At all times from February 2021 through June 17, 2021, Delta failed and refused to both engage in a cooperate dialogue about the "chair" and "transfer" to reasonably accommodate Plaintiff's disabilities.

54. Attached as Exhibit 2 is a true and correct copy of Delta HR Manager Danielle Kruit's June 11, 2021 email response to Plaintiff's June 8, 2021 reasonable accommodation email requests for a "chair" and "transfer" to the vacant position that Delta was publicly advertising on delta.com since April 2021.

55. As evidenced by the emails in Exhibits 2-4, from April 2021 through June 11, 2021, Delta HR Manager Danielle Kruit refused and failed to ever have a cooperative dialogue, nor did Kruit address the "chair" as a reasonable accommodation in her June 11, 2021 email response and summarily dismissed Plaintiff's "transfer" as a form of reasonable accommodation by stating "that is not a request Delta would consider."

56. Attached as Exhibit 3 is a true and correct copies of Plaintiff's April 2,2021 reasonable accommodation email requests for a "chair" and "transfer" where Plaintiff is opposing the fact that since February 2021, David Needham, Kelly Nabors and Danielle Kruit "have still

SECOND AMENDED VERIFIED COMPLAINT page 10

refused to engage in the interactive process" after Plaintiff made formal reasonable accommodation requests to them in late February 2021 (before suspension without pay) on March 25, 2021 (before suspension without pay), on March 30, 2021, and on April 1, 2021.

57. Attached as Exhibit C is a true and correct copy of Jose Rosado's June 17,2021 email to Plaintiff at 3:12 PM, which Plaintiff personally received by email from Jose Rosado's email account, jose.e.rosado@delta.com, which was on Defendant Delta's server, which is materially different than Exhibit B, which Delta published and republished to Southwest Airlines employee Mayra Amezquita and other third parties, beginning around July 1, 2021 and after July 1, 2021.

**COUNT 1- INTENTIONAL RACE DISCRIMINATION (IN VIOLATION OF 42 USC 1981 & New York City Human Rights Law, N.Y.C. Admin. Code, § 8-107 , & New York State Human Rights Law(N.Y. Exec. Law § 296) (ALL DEFENDANTS)**

58. Plaintiff realleges the above paragraphs and incorporates them by reference as if they were fully restated herein.The New York State Human Rights Law ("NYSHRL"), NY Exec. Law § 290, et seq., establishes that it is unlawful, because of an individual's race, "to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). The New York City Human Rights Law ("NYCHRL"), NYC Admin Code § 8- 101, et seq., establishes that it is unlawful, because of an individual's race, "to bar or to discharge from employment such person," or to "discriminate against such person in compensation or in terms, conditions or privileges of employment." NYC Admin Code§ 8-107.

59. Plaintiff is a black(African-American) woman .

60. Plaintiff performed satisfactorily since her job performance met or exceeded the Defendants' expectations.

61. Because of Plaintiff's race, Plaintiff suffered adverse employment actions (several suspensions without pay, termination, failure to hire, breach of contract)by Rosado and/or David Needham and/or Delta Air Lines, Inc., because she opposed Manager Tomasi's racially hostile work environment from late February 2021 through June 17, 2021.

62. Similarly situated non-black female Delta comparators such as Erin Pieroni, Delgado, Eileen Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc, because of their race, were not suspended or terminated when opposing sex discrimination.

63. Delta violated the NYSHRL, NYCHRL & 42 USC 1981 by suspending and terminating Plaintiff from employment and discriminating against her in compensation and in terms, conditions, or privileges of employment, because of her race, as similarly situated non-black

female Delta comparators such as Erin Pietroni, Delgado, Eileen Kosakowski, Maria
Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc, because of their race,
were never suspended without pay or terminated when opposing sex discrimination.

64. Plaintiff has suffered damages as a result of Defendants violation of the NYSHRL,
NYCHRL and 42 USC 1981 as Defendants conduct, as alleged herein, constituted unlawful
discriminatory practices and unlawful discrimination on the basis of race.

65. Defendants subjected Plaintiff to adverse employment actions(suspensions and
termination and refusal to hire) on account of her race and color by denying her equal
opportunity and treatment in the conditions of employment.

66. By the acts and practices described above, all Defendants directly and/or through
employees and/or agents, subjected Plaintiff to discrimination in violation of the New York
State Human Rights Laws, New York City Human Rights Laws, & 42 USC 1981.

67. At all times, all Delta ratified and approved of its managers discriminatory acts by failing
to take corrective action against Managers Tomasi, David Needham and Jose Rosado.

68. As a result of Defendants discrimination in violation of the New York City & State
Human Rights Laws, & 42 USC 1981, Plaintiff has been denied employment opportunities
providing substantial compensation and benefits, entitling her to injunctive and equitable
monetary relief, and she has suffered anguish, humiliation, distress, inconvenience, and loss
of enjoyment of life impacting her in NYC, entitling her to compensatory damages.

69. In Defendants race-based discriminatory actions alleged in violation of New York City &
State Human Rights Laws, Defendants acted with malice or deliberate indifference to the
rights of Plaintiff, thereby entitling her to an award of punitive damages.

70. Defendant engaged in conduct, as alleged herein, that constituted unlawful
discriminatory practices and unlawful discrimination on the basis of race and color in
violation of the New York City Human Rights Law, N.Y.C. Admin. Code. § 8-107 et seq.
Plaintiff, therefore, seeks compensatory, punitive, emotional damages plus prejudgment
interest, and all fees and costs of this action.

**COUNT II- INTENTIONAL Gender Discrimination, Sexual Harassment, and Hostile
Work Environment in Violation of the New York State (§ 296 )Human Rights Law &
New York City Human Rights Law N.Y.C. Admin. Code §§ 8-107(1)**

71. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if
fully set forth herein.

72. The entirety of the acts which constitute and form this Cause of Action, as set forth above,
all of which are deemed repeated and re-alleged herein as though said paragraphs were

SECOND AMENDED VERIFIED COMPLAINT page 12

specifically set forth herein, were perpetrated upon Plaintiff while she was in the course of
her employment with Delta here in NYC, which impacted Plaintiff here in NYC.

73. The conduct that Defendants took against Plaintiff that forms the basis of this Cause of
Action was unwelcome to her, a fact which Delta knew, or should have known, as a result of
Plaintiff's response & actual nature of the conduct.

74. Delta is liable to Plaintiff for the sexual harassment she suffered in her workplace,
because the unlawful conduct was permitted and condoned by Delta management and
supervisory personnel, who allowed and condoned a workplace permeated with intimidation
and harassment that altered the terms, conditions and privileges of Plaintiff's employment
and created an abusive, threatening and hostile work environment where Plaintiff was treated
less well because of her gender.

75. The aforementioned acts of Defendants constitute unlawful gender discrimination against
Plaintiff in violation of Chapter 1, Title 8 of the Administrative Code of the City of New
York, §8- 107(1)(a) (referred to as "The New York City Human Rights Law"),which provides
inter alia, that: It shall be unlawful discriminatory practice: (a) For an employer or an
employee or agent thereof, because of the . . . gender . . . of any person to discriminate against
such a person in compensation or in terms, conditions or privileges of employment.

76.Defendants discriminated against Plaintiff on the basis of her gender, sexually harassed
Plaintiff, and/or caused Plaintiff to experience a hostile work environment in violation of the
NYCHRL by treating Plaintiff less favorably than her male colleagues, making harassing or
discriminatory comments to Plaintiff based on her gender, and/or by sexually harassing and
assaulting Plaintiff.

77. Defendants knew of the general discrimination and sexual harassment perpetrated against
Plaintiff, or at a minimum, should have known about the harassment, based on the pervasive
atmosphere of sexual harassment that Plaintiff reported to Delta's HR managers (Omojole,
Rangel, David Needham, Nabors, Kruit, etc)from 2018 through June 2021.

78. The sexual harassment perpetrated against Plaintiff by Delta's manager Tomasi affected a
term, condition, and the privileges of her employment, impacting Plaintiff in NYC.

79. As a result of Defendants gender discrimination and sexual harassment of Plaintiff in
violation of the New York City & State Human Rights Law, Plaintiff has been denied
employment opportunities providing substantial compensation and benefits, entitling her to
injunctive and equitable monetary relief, and she has suffered anguish, humiliation, distress,
inconvenience, and loss of enjoyment of life here in NYC due to Defendants' actions,
entitling her to compensatory damages.

**SECOND AMENDED VERIFIED COMPLAINT page 13**

80. In their gender-based discriminatory actions alleged in violation of the NYCHRL & NYSHRL, Defendants acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

81. As a result of Delta's violation of NYCHRL & NYSHRL, Delta is liable to Plaintiff pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established. Under N.Y.C. Admin. Code § 8-120, Plaintiff is entitled to recover reasonable fees and costs .

82. As a proximate result of Delta's conduct, Plaintiff has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Plaintiff believes Delta's conduct, complained of herein, has and will continue to have a devastating effect upon her career and the quality of her life.

83. Here, the acts of Delta were so reprehensible and were done with reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the New York City & State Human Rights Laws, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measures of relief to which Plaintiff may properly be entitled herein, Delta should additionally be required to pay punitive damages as punishment for its discriminatory conduct in order to deter Delta and others similarly situated from engaging in such conduct in the future.

84. Plaintiff, therefore, seeks compensatory, emotional, damages, plus prejudgment interest, and any and all fees and costs of this action.

**COUNT III- Retaliation (42 USC 1981 , New York State Human Rights Law N.Y. Exec. Law § 296 –, NYC HRL § 8-107 e)**

85. Plaintiff repeats, realleges and incorporates the above paragraphs of thisComplaint, as though fully set forth at length herein.

86. From around late April 2019 and/or from February 19, 2021 through around June 17, 2021, Plaintiff engaged in protected activity under 42 USC 1981, New York State Human Rights Law N.Y. Exec. Law § 296, & New York City Human Rights Law, of which Delta was aware, when Plaintiff made multiple written and oral complaints to HR Managers David Needham, Kelly Nabors, & Danielle Kmit about the hostile work environment (race and sex), sexual harassment, discrimination (race, sex, and disability) that Delta's managers subjected her to on account of her race and her gender and her disability and by seeking to be protected against those same discriminatory acts.

87. As a proximate result of Plaintiff engaging in protected activity under the NYS HRL, NYCHRL, & 42 USC 1981, Plaintiff suffered adverse employment actions, including

1   multiple suspensions without pay, subjecting her to a hostile work environment, termination,
2   refusing to contract with Plaintiff, failure to hire that were all causally connected to her
3   complaints of hostile work environment(sexual and racial), harassment (sexual and racial),
4   discrimination(sex, race, & disability) and Delta's failure to engage in the interactive process
5   after Plaintiff requested a reasonable accommodation, which was summarily denied.
6   88. Defendants' adverse employment actions on or around March 26, 2021, May 1, 2021, &
7   June 17, 2021 were a direct and proximate result of Plaintiff's protected complaints & reports
8   & request for reasonable accommodations to Delta's managers regarding their discriminatory
9   & retaliatory conduct against Plaintiff.
10  89. As a result of the Defendants' illegal conduct, Plaintiff has suffered anguish,
11  humiliation, distress, inconvenience, and loss of enjoyment of life, as well as lost
12  wages and work opportunities, and Plaintiff believes that the injuries inflicted upon
13  her, which were a direct result of the occurrences complained of herein, have and will
14  continue to cause Plaintiff damage, entitling her to compensatory damages.
15  90. The aforementioned acts of Defendants constitute unlawful retaliation against Plaintiff in
16  violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(7)
17  of the New York City Human Rights Law, which provides, inter alia, that: It shall be unlawful
18  discriminatory practice for any person engaged in any activity to which this chapter applies to
19  retaliate or discriminate in any manner against any person because such person has (i)
20  opposed any practice forbidden under this chapter . . .
21  91. As a direct and proximate result of Defendants violation of NYCHRL, Defendants are
22  liable to Plaintiff pursuant to §8-502, §8-502(f) of said statute for"damages," costs and fees.
23  92.Pursuant to N.Y.C. Admin. Code § 8-502(c) & § 40-d,Plaintiff is providing the NYCHRC
24  & Office of the Attorney General notice of her claims under NYCHRL & NYSHRL.
25  93. As a direct and proximate result of Defendants conduct complained of herein, and as
26  alleges in this Cause of Action, as well as the conduct set forth in this Complaint,Plaintiff has
27  suffered emotional and compensatory damages, injuries and losses here in NYC, which
28  includes the emotional pain and suffering she has been caused to suffer and continues to
    suffer, plus prejudgment interest, the costs of this action.
    94.Here, the acts of Defendants were so reprehensible and were done with malice, reckless
    indifference in the face of a perceived risk that its actions would violate Plaintiff's a protected
    rights under the New York City Human Rights Law, New York State Human Rights Law, and
    42 USC 1981, that, in addition to all the damages inflicted upon Plaintiff and in addition to all
    the measures of relief to which Plaintiff may properly be entitled herein, Defendants should

1    additionally be required to pay punitive damages as punishment for its discriminatory &
2    retaliatory conduct in the further amount of Six Million ($6,000,000) Dollars, in order to
3    deter Defendants and others similarly situated from engaging in such conduct in the future.
4    95. Defendants knew that Plaintiff had engaged in protected activity.
                        COUNT IV- 42 U.S.C. § 1981
5    96. Plaintiff incorporates by reference the allegations in all preceding paragraphs. Delta and/
6    or Needham and/or Jose Rosado intentionally discriminated against Plaintiff on the basis of
7    her race, as similarly situated white female Delta employees, Erin Pieroni, Delgado, Eileen
8    Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz,etc. were
9    never suspended without pay and/or terminated for opposing discrimination and/or retaliation
10   and/or hostile work environment (filing verbal and/or written complaints and/or lawsuit) and/
11   or for making and enforcing contracts and/or for suing(filing lawsuit) and/or being parties (to
12   a lawsuit) and/or giving evidence and/or for exercising the full and equal benefit of all laws
13   and proceedings for the security of persons and property under 42 U.S.C. § 1981(a).
     97. In or around 2013, Plaintiff had previously made and/or formed and/or entered into a
14   binding Ready Reserve contract (CONTRACT 1)with Defendant Delta Air Lines, Inc.,
15   whereby Delta contracted Plaintiff to work for Delta as a Ready Reserve employee, who
     Delta did not consider to be full time Delta employees.
16   98. But for Plaintiff's race, on or around May 1, 2021, Delta and/or Manager Needham would
17   have *enforced* Plaintiff's *Ready Reserve contract* (CONTRACT 1) to have returned Plaintiff
     to work on May 1, 2021 from Plaintiff's 1 year voluntary COVID leave of absence(a
18   contract), as Defendants allowed similarly situated Hispanic and/or white and/or Asian
19   employees to return to work in 2020 and/or 2021 after their voluntary COVID leave of
20   absences.
21   99. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have *terminated*
     Plaintiff's *Ready Reserve contract* (CONTRACT 1)on or around June 17, 2021.
22   100. In March 2021, Plaintiff made and/or formed and/or entered into a new employment
23   contract (CONTRACT 2) with Delta, where Delta contracted with Plaintiff to begin working
24   for Delta as a full time employees with benefits beginning in July 2021.
25   101 But for Plaintiff's race, Delta and/or Needham and/or Rosado would have *enforced* the
26   *March 2021 Full-Time employee contract (CONTRACT 2)* that Plaintiff made/formed with
     Delta in March 2021, that was set to begin in or around July 2021.
27   102. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have
28

                    SECOND AMENDED VERIFIED COMPLAINT page 16

*terminated* Plaintiff's *Full-Time employee contract* contract (CONTRACT 2) on or around June 17, 2021, which Plaintiff made/formed/entered into with Delta in March 2021.

103. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have impaired and/or interfered with Plaintiff's **Ready Reserve contract** (CONTRACT 1) on or around May 1, 2021 and then again on or around June 17, 2021.

104. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have impaired and/or interfered with Plaintiff's *Full-Time employee contract* (CONTRACT 2) on or around June 17, 2021.

105. Plaintiff is a person within the jurisdiction of the United States, who has the right to make and enforce contracts in the United States and is entitled to the full and equal benefits of the law.

106. At no time from 2018 through June 17, 2021 did Plaintiff ever violate any written Delta policy to warrant any suspension without pay in 2021 and/or termination on June 17, 2021.

107. At no time from 2018 through June 17, 2021 did Delta ever inform Plaintiff that Plaintiff violated any written Delta policy nor did Delta ever discipline Plaintiff by using any steps in Delta's progressive discipline policy that Delta uses for similarly situated employees.

108. From around March 2021- July 2021 and continuing, But for Plaintiff's race(black), Defendants would not have intentionally racially discriminated against Plaintiff by interfering with and impairing Plaintiff's employment contracts, causing Plaintiff to suffer irreparable injury and harm.

109. Attached as Exhibit 13 is a true and correct copy of the "Ready Reserve contract," aka "EMPLOYMENT CONTRACT 1," that Plaintiff and Delta had entered into from around 2005, which was contractually set to end on June 30, 2021.

110. Attached as Exhibit 14 is a true and correct copy of an independent, mutually exclusive, separate employment agreement("FULL TIME EMPLOYMENT CONTRACT 2") that Plaintiff and Delta entered into on March 3, 2021, whereby Plaintiff was to become a full-time Delta employee on July 1, 2021.

111. Plaintiff performed all of her obligations under the March 3, 2021 contract (CONTRACT 2) and satisfied all conditions precedent to Delta's obligations under the contract.

112. Under the March 3, 2021 employment contract, Defendant could only terminate Plaintiff's employment "for Cause" only if certain circumstances existed.

113. None of the circumstances that would have justified a termination "for Cause" actually existed.

114. Because Defendants Jose Rosado and/or David Needham terminated Plaintiff on June

SECOND AMENDED VERIFIED COMPLAINT page 17

17, 2021 impairing the Ready Reserve Contract (Contract 1) , Plaintiff was never able to enforce the terms and conditions of the binding "FULL TIME EMPLOYMENT (CONTRACT 2)," which were set to begin on July 1, 2021. (FAILURE TO HIRE CLAIM)

**COUNT V-Failure to Accommodate in Violation of the New York City& State Human Rights Law (N.Y.C. Admin. Code §§ 8-101, et seq.)**

115. Plaintiff realleges above paragraphs and incorporates them by reference as if they were fully restated herein.

116. Plaintiff qualifies as "person with a disability" per the NYCHRL. N.Y.C. Admin. Code § 8-102. At all times relevant to this action, Defendants has been covered entities and employers within the meaning of N.Y.C. Admin. Code § 8-102.

117. N.Y.C. Admin. Code § 8-107(1)(a)(3) makes it an unlawful discriminatory practice for an employer to discriminate against an employee with a disability in the "terms, conditions or privileges of employment."

118. N.Y.C. Admin. Code § 8-107(15) makes it an unlawful discriminatory practice for an employer "not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right[s]" of the position, provided that the disability is known or should have been known by the employer. N.Y.C. Admin. Code § 8- 107(15)(a).

119. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be a person aggrieved by an unlawful discriminatory practice" on the basis of her disability.

120. Defendant knew of Plaintiff's disability and unreasonably failed to provide reasonable accommodations, despite her multiple requests.

121. By the acts and practices described above, Defendant unlawfully discriminated against Plaintiff due to her disability, in violation of the NYCHRL & NYSHRL.

122 As a result of these violations, pursuant to N.Y.C. Admin. Code § 8-502, Plaintiff is entitled to recover compensatory damages, declaratory and injunctive relief, fees and costs, and other appropriate relief as determined by this court.

**COUNT VI-Failure to Engage in Cooperative Dialogue in Violation of the New York City & State Human Rights Law (N.Y.C. Admin. Code § 8-107)**

124. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

125. N.Y.C. Admin. Code § 8-107(28)(a) makes it an unlawful discriminatory practice for an employer to fail to engage in a cooperative dialogue within a reasonable time

SECOND AMENDED VERIFIED COMPLAINT page 18

with an employee who requests a disability-related accommodation or to fail to engage in a
cooperative dialogue if the covered entity has notice that an individual
may require an accommodation.

126. The term "cooperative dialogue" per the NYCHRL "means the process by which
a covered entity and a person entitled to an accommodation, or who may be entitled
to an accommodation under the law, engage in good faith in a written or oral
dialogue concerning the person's accommodation needs; potential accommodations
that may address the person's accommodation needs, including alternatives to a
requested accommodation; and the difficulties that such potential accommodations
may pose for the covered entity." N.Y.C. Admin. Code § 8- 102.

127. Defendant was obligated to engage in a cooperative dialogue independently of
their related obligation to provide a reasonable accommodation to Plaintiff pursuant
to N.Y.C. Admin. Code § 8-107(15).

128. Defendants failed to engage in a cooperative dialogue with Plaintiff regarding
her need for a reasonable accommodation to allow her to use a "chair" at work and
by granting a transfer to a vacant position and by failing to communicate in good faith
and in an effective manner with Plaintiff concerning her need for accommodations
and failing to communicate with Plaintiff regarding her specific needs with regard to
her chair accommodations despite being on notice for many years that she required
such an accommodation, in violation of N.Y.C. Admin. Code § 8-107(28)(a).

129. Defendants failed to engage in a cooperative dialogue with Plaintiff following
her formal requests for reasonable accommodations regarding the chair and transfer,
in violation of N.Y.C. Admin. Code § 8-107(28)(a).

130. Defendants failed to provide Plaintiff with a written, final determination ident-ifying any
accommodation granted or denied. N.Y.C. Admin. Code § 8-107(28)(d).

131. By the acts and practices described above, Defendants unlawfully discriminated
against Plaintiff because of her disability in violation of the NYCHRL.

132. As a result of these violations, pursuant to N.Y.C. Admin. Code § 8-502 & NYSHRL,
Plaintiff is entitled to recover compensatory damages, declaratory and injunctive relief, fees
and costs, and other appropriate relief as determined by this court.

### COUNT VII- Defamation Per Se/Defamation

133. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in
all of the preceding paragraphs as if fully set forth herein.

SECOND AMENDED VERIFIED COMPLAINT page 19

134. As described above, Delta and/or Defendants have stated false facts to third parties,
regarding, inter alia, the circumstances surrounding it's reasons for suspending and
terminating Plaintiff's employment, and/or employment contracts, and/or Plaintiff having
committed workers compensation insurance fraud against an unknown/unnamed third party
insurance company, and that Plaintiff is an unchaste sex worker.

135. These statements were untrue and defamatory in that they falsely reported,
inter alia, that Plaintiff is a "liar" and a "fraud," and/or that Plaintiff engaged in "dishonest
behavior," and/or that Plaintiff committed "workers compensation insurance fraud," etc..

136. Defendants knew or should have known that such defamatory statements were false.

137. Defendants defamatory statements were published with knowledge of their falsity and/or
with a reckless disregard for their truth or falsity.

138. On or around June 17, 2021, Jose Rosado, informed Plaintiff that Defendant Needham,
in the course and performance of his Delta HR Manager duties, had published unprivileged
statements of purported facts of and concerning Plaintiff to third party, Jose Rosado, a few
days earlier while Rosado was still working at JetBlue Airlines, that *Delta was made aware
that Erika Lee has an OnlyFans page where she performs daily sex acts on camera with
random men for money and then gets paid more money by her subscribers who have a
fetish for big black women."*

139. It is 100% false that Plaintiff "has an OnlyFans page where she performs daily sex acts
on camera with random men for money and then gets paid more money by her subscribers
who have a fetish for big black women."

140.  In the beginning of June 2021, Jose Rosado was employed at JetBlue Airlines and/or
was not employed by Delta Air Lines, Inc. at all times in the month of June 2021.

141. Defendants statements constitute defamation per se because they impugn Plaintiff's
honesty, trustworthiness, dependability, and professional fitness and abilities by falsely
claiming, inter alia, that Plaintiff engaged in "dishonest behavior," that Plaintiff committed the
crime of "insurance fraud," and imputing unchastity to Plaintiff, by alleging that Plaintiff is
some type of a prostitute or sex worker or some kind of internet porn star on OnlyFans.com.

142. At all times relevant herein, Delta did not have a third party workers compensation
insurance policy with any third party insurance company, as Delta has been self-insured for
workers compensation claims for many years.

143. Defendants defamatory per se statements have harmed Plaintiff's professional
reputation and standing in her industry, have caused her economic harm, have caused her to
incur special damages in the form of actual pecuniary loss, including lost weekly income,

SECOND AMENDED VERIFIED COMPLAINT page 20

yearly salary of approximately $50, 000.00, failure to be hired by Delta Air Lines, Inc. as a full time employee beginning on July 1, 2021, termination of her Ready Reserve employment contract on June 17, 2021, loss pf pass travel benefits, yearly profit sharing, 401k, health insurance benefits, monthly bonuses, overtime, job security and opportunities for career advancement and have caused her embarrassment, humiliation and emotional injury.

144. As a direct and proximate result of Defendant's defamation per se, Plaintiff has suffered, and continues to suffer, from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and emotional distress.

145. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and continues to suffer harm entitling her to an award of monetary damages and other relief.

146. Defendant's defamatory per se statements were malicious, willful, wanton, and done with reckless disregard for Plaintiff's rights. As such, Plaintiff is entitled to an award of punitive damages.

**COUNT VIII- Negligence Per Se/Negligence(against Defendant Delta)**

147. N.Y. Workers' Comp. Law WCL. §2 , 3 and §51 is designed to protect NY employees.

148. Plaintiff is in the class of people that N.Y. Workers' Comp. Laws§2, §3 and §51 were designed to protect.

149. Delta's intentionally caused Plaintiff harm by Delta's intentional violation of NY state statutes(Workers' Comp. Law WCL. §2 , §3 and §51 is negligence per se since Delta intentionally failed and refused, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy for its' employees, which included Plaintiff; Delta violated N.Y. Workers' Comp. Law§51 as Delta never posted notice of workers compensation insurance coverage in their place of business, as Delta never had third-party workers compensation insurance coverage.

150. Delta's intentional violation of N.Y. Workers' Comp. Laws§2, §3 and §51 was the proximate cause of Plaintiff's injuries and damages

151. Around late June/ earlyJuly 2019, when Delta manager Tomasi, in her professional capacity, intentionally stuck her hand under Plaintiff's skirt in an attempt to intentionally grab Plaintiff's vagina, causing Plaintiff to jump to distance herself from her sexual assaulter, Tomasi. Manager Tomasi's act of intentionally grabbing Plaintiff's vagina caused Plaintiff to slip and fall over a chair, causing intentionally injury to Plaintiff's neck, back, and legs.

152. Delta manager Tomasi, in her professional capacity, committed battery and sexually assault against Plaintiff in mid 2020 (while Plaintiff was not in her professional capacity as a Delta employee, as Plaintiff was on an unpaid, COVID leave )when Manager Tomasi

SECOND AMENDED VERIFIED COMPLAINT page 21

1   intentionally "spanked" Plaintiff of her sexual pleasure, which Delta was aware of but
2   negligently failed to prevent.
3   153. Prior to, during, and after Plaintiff's employment with Delta, Delta owed Plaintiff
4   and all of Delta's employees, a cognizable duty to ensure that Delta's employees were not
5   exposed to unsafe working conditions, and if Delta owed Plaintiff a cognizable duty of care
6   to have a third-party workers compensation insurance policy to provide Plaintiff with medical
7   treatment for her workplace injuries that resulted from any unsafe working conditions that
8   Delta exposed Plaintiff to.
9   154 As a result of Delta's conduct where Delta unreasonably exposed Plaintiff to unsafe
10  working conditions without third-party workers compensation insurance policy, Plaintiff was
11  at actual risk of immediate physical injury and Plaintiff actually sustained workplace injuries
12  in 2017, 2019 and 2020.
13  155. Delta breached it's duty of care by failing to purchase a third workers compensation
14  insurance policy, which would've provided Plaintiff with medical treatment, monetary
15  compensation for her workplace injuries, and monetary compensation for lost weekly wages.
16  156. Plaintiff suffered damages (financial, emotional, personal injury to leg, back and
17  neck)as a proximate result of Delta's intentional failure to purchase a third-party
18  workers compensation insurance policy to provide Plaintiff with medical treatment for
19  her workplace injuries, monetary compensation for her workplace injuries, and
20  monetary compensation for her lost weekly wages.
21        **COUNT IX-Negligent Infliction of Emotional Distress(3 year Statute of**
22  **Limitations)**
23  157. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in
24  all of the preceding paragraphs as if fully set forth herein.
25  158. From December 2018 through June 17, 2021, Defendant Delta breached a duty of care
26  to Plaintiff that unreasonably endangered Plaintiff's physical safety, caused Plaintiff to fear
27  for her physical safety and caused Plaintiff to sustain physical and emotional injuries when
28  Manager Tamasi intentionally grabbed Plaintiff's vagina directly causing Plaintiff to jump
29  and sustain a slip and fall injury.
30  159. Delta engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed
31  the bounds of decency in a civilized society; namely by, inter alia, subjecting her to a racially
32  & sexually hostile work environment which caused Plaintiff physical injuries when Manager
33  Tamasi intentionally grabbed Plaintiff's vagina causing her to jump and have a slip and fall,
34  unsafe working conditions without any third- party workers compensation insurance policy,

inability to provide Plaintiff with medical care and workers compensation benefits (weekly income for loss of wages, etc.) as Delta does not have any third- party workers compensation insurer, in violation of NY state workers compensation laws.

160. These actions were taken with intent to cause, or disregard for, the substantial probability of causing Plaintiff severe emotional distress.

161. As a direct and proximate result of Delta's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress.

162. Defendant's intentional conduct causing Plaintiff physical injuries was negligent, wanton, malicious, willful and/or cruel, entitling Plaintiff to an award of punitive damages.

### COUNT X- Sexual Battery/Battery (against Defendant Delta)

163. Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

164. Beginning in or around October 2018, Delta first became aware that Delta Manager Tamasi was sexually harassing Plaintiff.

165. In April 2019, Delta was aware that Delta Manager Tamasi was sexually harassing Plaintiff, as Delta suspended Plaintiff without pay in April 2019 for opposing Tamasi's sexually harassment, and threatened Plaintiff with termination if Plaintiff made any more complaint to Delta.

166. Delta Manager Tamasi, in her professional capacity, intentionally committed battery by sexually assaulting Plaintiff when Tamasi "spanked" Plaintiff in mid-2020. As described above, on multiple occasions Delta manager Tamasi intentionally touched Plaintiff in an offensive and sexual manner without her consent.

167. Delta manager Tamasi's actions constitute sexual offenses as defined in New York Penal Law Article 130, including but not limited to sexual misconduct as defined in Article 130.20, rape in the third degree as defined in Article 130.25, rape in the first degree as defined in Article 130.35, forcible touching as defined in Article 130.52, sexual abuse in the third degree as defined in Article 130.55, and sexual abuse in the first degree as defined in Article 130.65. See N.Y. C.P.L.R. § 214-g.

168. As a direct and proximate result of Delta manager Tamasi's criminal acts, Plaintiff has in the past and will in the future continue to suffer substantial damages, including extreme emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem, and invasion of her privacy.

### COUNT XI- WHISTLEBLOWER RETALIATION under NYLL § 215 & § 740

SECOND AMENDED VERIFIED COMPLAINT page 23

169. Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

170. On March 25, 2021, Plaintiff participated in protected activity known to Delta when Plaintiff reported to HR Manager Kelly Nabors that Delta was intentionally violating NY state law statutes(Workers' Comp. Law WCL §2 , §3 and §51) by Delta's intentionally failure and refusal, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy for its' employees which presents a substantial and specific danger to public health and safety. Plaintiff also reported to Nabors that Delta's violations of N.Y. Workers' Comp. Law§51 as Delta never posted notice of workers compensation insurance coverage in their place of business at JFK airport , as Delta refused and failed to purchase any third-party workers compensation insurance coverage, as Delta was illegally uninsured employer.

171. Delta was aware that Plaintiff participated in protected activity in March 2021 when Plaintiff made a public report and/or provided information to NYS Workers Compensation Board notifying the state board that Delta was an illegally uninsured employer who was intentionally failed and refused, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy in violation of NYS' Workers' Comp. Law WCL §2 , §3 & §51.

172. On March 26, 2021, the very next day,  Delta retaliated against Plaintiff by suspended Plaintiff without pay until terminating her employment on June 17, 2021.

173. Because Delta manager Susan Emerson has publicly admitted that Delta is self-insured for workers compensation coverage and because Delta publicly admits that it does not have a third party workers compensation insurance policy with any insurance company,  Plaintiff, at all times, reasonably believed that Delta was violating the Labor Law and stated a complaint that violated the Labor Law.

174. Delta's violations of NYS' Workers' Comp. Laws WCL §2 , §3 & §51 creates and presents a substantial and specific danger to the public health and/or safety of the public and Delta's employees, such as Plaintiff, who work directly with the public.

175. Delta told Plaintiff, as Delta tells its other workers,  that Plaintiff needed to use Medicaid to get medical treatment for her workplace injuries but Plaintiff objected to and refused to participate in Delta's illegal Medicaid/health care fraud, as this is Delta's standard operating procedure and regular practice, in violation of NYS and Federal laws.

**JURISDICTION AND VENUE**

176.This SDNY Court has subject matter jurisdiction over Plaintiff's Section 1981 claims

SECOND AMENDED VERIFIED COMPLAINT page 24

1  under 28 U.S.C. § 1331. This Court has diversity and supplemental jurisdiction over
2  Plaintiff's NY and NYC state law claims under 28 U.S.C. § 1367.
3  177. This SDNY Court is empowered to issue a declaratory judgment by 28 U.S.C. §§ 2201
   and 2202.
4  178. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of
5  the events giving rise to the claims occurred in this district.
6                              **PRAYER FOR RELIEF**
7  WHEREFORE, Plaintiff respectfully requests this Court find against Delta as follows:
8  a. Declare that Delta's acts, conduct, policies, and practices are unlawful and violate
9  the NYSHRL, the NYCHRL, 42 USC 1981 and Employment Contracts;
10 b. Reinstate Plaintiff to her former position with lost wages;
   c. Award Plaintiff the value of all compensation and benefits lost and that she lost
11 and will lose in the future as a result of Delta's unlawful conduct;
12 d. Award Plaintiff compensatory and punitive damages;
13 e. Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements,
14 as provided by law;
   f. Award Plaintiff such other make whole equitable, injunctive and legal relief as this
15 Court deems just and proper to fairly compensate Plaintiff;
16 g. Declaratory and injunctive relief
17 h.Defendants maliciously defamed Plaintiff to third parties
18 i:Plaintiff is suing Defendant for a total of $60,000,000.00
19 j:Award Plaintiff such other relief as this Court deems just and proper.

20 Date: 07/06/2023
21
22
23                                              ERIKA L. LEE,
24                                              PRO SE PLAINTIFF
25
26
27
28

                    **SECOND AMENDED VERIFIED COMPLAINT page 25**

**VERIFICATION OF COMPLAINT**

I, Erika L. Lee, being duly sworn, deposes and says that:

I am the Plaintiff in this action, representing myself Pro Se. I have read the foregoing Second Amended Verified Complaint, and know the contents thereof; the same is true to my personal knowledge, except these matters which are stated to be alleged "upon information and belief, and as to those matters which I believe them to be true or believed them to be true. I declare under penalty of perjury under 28 U.S.C. 1746 and the laws of the United States of America that the foregoing is true and correct.

Executed on 07/06/2023.

_____
ERIKA L. LEE
PLAINTIFF, PRO SE

SECOND AMENDED VERIFIED COMPLAINT page 26

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

~~District of~~ Southern District of New York

| | |
|---|---|
| ERIKA LEE | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No. 1:22-cv-08618-GHW-RWL |
| DELTA AIR LINES, INC. | ) |
| DAVID NEEDHAM; | ) |
| JOSE ROSADO | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

DAVID NEEDHAM
To: *(Defendant's name and address)* c/o AMETEK Hughes-Treitler
300 Endo Blvd
Garden City, NY 11530

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  ERIKA LEE
20 Confucius Plaza #10K
New York, NY 10002

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

Erika Lee (email: leeerikalatise@gmail.com)
20 Confucius Plaza #10k
NY, NY 10002
(Phone:646-552-8394)

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**ERIKA LEE**

Plaintiff, Pro Se

-against-

**DELTA AIR LINES, INC.;
DAVID NEEDHAM; &
JOSE ROSADO**
Defendants

US DISTRICT COURT
SOUTHERN DISTRICT OF NY

CASE: 22-cv-08618-GHW-RWL

**SECOND AMENDED
VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**IDENTITY OF PARTIES**

1. At all relevant times mentioned herein, Plaintiff Erika Lee ("Lee"), a New York City resident, was employed by Defendant Delta Air Lines, Inc. ("Delta").

2. At all relevant times mentioned herein, Delta was and is a corporation duly-organized and existing under the laws of Delaware and was and is authorized to do business in the County, City; and State of New York.

3. At all relevant times mentioned herein, DAVID NEEDHAM, was employed by Defendant Delta Air Lines, Inc. ("Delta") as"Chief HR professional for JFK Airport," and/or "Manager of Human Resources"

4. JOSE ROSADO, was employed by Defendant Delta Air Lines, Inc. ("Delta") as "General Manager Customer Service" at JFK Airport, in Queens,New York beginning in mid June 2021. Prior to mid June 2021, Jose Rosado was employed at Jetblue Airways.

**RELEVANT BACKGROUND**

5. Plaintiff began working her employment with Delta in September 2005 at JFK Airport as a Customer Service Agent.

SECOND AMENDED VERIFIED COMPLAINT page 1

6. At all relevant times herein, Plaintiff satisfactorily performed her job duties as a Customer Service Agent.

7. From January 2011- March 26, 2021, Plaintiff was never disciplined for any reason including but not limited to "reliability" (latenesses and/or absences) or poor performance, at any time. Additionally, Plaintiff did not have any form of "performance development" and/or "formal verbal coachings" and/or "written corrective action" in her personnel file at any time within the last 10 years of her employment with Delta.

8. From around December 2017 through 2020, Plaintiff was being sexually and racially harassed, as well as sexually assaulted, by Delta Manager Bernadette Tomasi.

9. In April 2019, Plaintiff had a telephonic meeting with Delta's HR/Equal Opportunity or "EO" Department and formally complained to Delta that because of Plaintiff's race and sex, Delta Manager Bernadette Tomasi was forcing Plaintiff to wear a skirt and "heels," as Tomasi demanded that Plaintiff "look sexy" because Manager Tomasi told Plaintiff, "I want to see them big black ass cheeks switching when you walk." Yet, the similarly situated white women who Tomasi also managed were not required to wear heels/skirts as Tomasi was demanding Plaintiff to do, as Delta's written uniform policy allows females to wear flat shoes, and Plaintiff was threatened with suspension and adverse employment actions and/or write-ups if she didn't wear heels, "look sexy" and/or acquiesce to Tomasi's sexual requests for lesbian sex.

10. In this same April 2019 telephonic meeting with Delta's HR/Equal Opportunity or "EO" Department,. Plaintiff also requested a reasonable accommodation, whereby Delta's EO Manager refused to engage in the interactive process and denied Plaintiff's request for a reasonable accommodation, while refusing to accept any medical documentation and refusing to explore any alternative options, as Delta had always done with similarly situated white female comparators, such as Tabitha Hutchinson, Jennifer Palmer, etc.

11. Immediately after Plaintiff made these formal complaints and engaged in protected activity to Delta's EO HR Manager in April 2019, Plaintiff was immediately suspended without pay for 2 weeks, whereby Plaintiff suffered economic harm in retaliation for opposing race/disability/sex discrimination and hostile work environment by Delta Manager Tomasi.

12. After Delta "EO" HR Department became aware of Manager Tomasi's illegal sexually and racially harassing behavior, Delta told Plaintiff that Plaintiff would have to continue to be subjected to Tomasi's sexually and racially harassing behavior if Plaintiff wanted to remain

SECOND AMENDED VERIFIED COMPLAINT page 2

employed at Delta because Delta had no reason to address the situation because Plaintiff was not being sexually harassed by a man, so Manager Tomasi, because of her sex, was empowered by Delta to continue her disgusting behavior any time she desired because of Plaintiff's sex. Delta's "EO" HR Manager tried to reduce this to a "petty cat-fight," as Delta's "EO" HR Manager told Plaintiff, "Bernadette sticking her tongue out at you and staring at your breasts and asking you about your vagina is just girl talk, women often touch each others breasts and make sexual comments about their vaginas to each other, it is just how females are with other females. You are not being sexually harassment because there is NO MAN involved." Not one action was taken by Delta to ensure that Plaintiff would not be subjected to Manager Tomasi's sexually and racially harassing behavior again.

13. After Plaintiff returned to work after Delta's 2 week suspension without pay in retaliation for opposing Tomasi's sexually and racially hostile work environment, Plaintiff was still being sexually and racially harassed by Delta Manager Tomasi from April 2019 through 2020, whereby Tomasi would stick her tongue out and move it in a rapid up and down motion to simulate the act of cunnilingus, where she would then ask Plaintiff if Plaintiff's pubic hair was "kinky" and if Plaintiff shaved her vagina, and telling Plaintiff that she couldn't wait to try Plaintiff's black vagina because she heard black vagina tastes like "fried chicken and collard greens."

14. At all times from 2019 through termination, Plaintiff was filled with fear every time she reported to work, given that Delta refused to address Tomasi's sexually aggressive conduct perpetuated on Plaintiff because of her sex and race, since Tomasi constantly told Plaintiff that Tomasi was going to penetrate Plaintiff's black vagina with Tomasi's "big white dildo" and Tomasi was tired of Plaintiff "playing hard to get."

15. In mid-2020, Manager Tomasi spanked Plaintiff's butt and made sexual comments while spanking Plaintiff butt.

16. From mid-2020 through March 2021, Plaintiff did not want to make any more complaints or report Manager Tomasi sexual harassment/violent sexual assault(spanking Plaintiff's butt) because Plaintiff did not want to be suspended without pay again and/or be terminated, as Delta threatened Plaintiff with suspension without pay or termination in April 2019 if Plaintiff made any more complaints about Tomasi's sex and race discrimination and the severely hostile work environment Delta intentionally subjected Plaintiff to.

17. On February 19, 2021, Delta's New York HR Manager David Needham called Plaintiff because Needham needed to ask Plaintiff if she had ever been sexually "spanked" by

SECOND AMENDED VERIFIED COMPLAINT page 3

1  Manager Tamasi in 2020 because he told Plaintiff, without revealing his source, that he had

2  heard that Plaintiff was sexually "spanked by Manager Tamasi." However, it is 100% false

3  that Plaintiff herself voluntarily "raised" these "complaints" that Plaintiff was "spanked" by

4  Manager Tamasi in mid-2020 to David Needham or anybody at Delta in February 2021, as

5  Plaintiff did not want to be retaliated against again.

6  18. In this telephonic February 2021 phone call between Delta's HR Manager David

7  Needham and Plaintiff, Plaintiff NEVER specifically told Needham whether or not Plaintiff

8  was sexually spanked and sexually assaulted by Manager Tomasi in mid-2020, as Plaintiff

9  had not reported this to anyone at Delta and did not want to report it to anyone at Delta since

10  Plaintiff was threatened with suspension and termination by Delta in April 2019 if she made

11  any more complaints about discrimination, the hostile work environment, and the constant

12  retaliation.

13  19. The first time that Plaintiff herself voluntarily "raised" these "complaints" that Plaintiff

14  was "spanked" by Manager Tamasi in mid-2020 was on March 25, 2021 to Delta Equal

15  Opportunity HR Manager, Kelly Nabors. On March 25, 2021, Plaintiff had a phone

16  conversation with Delta "EO" HR Manager Kelly Nabors, whereby Plaintiff made another

17  formal complaint where Plaintiff informed Nabors that Plaintiff was continuously and

18  constantly sexually and racially harassed by Manager Tamasi after Plaintiff's last April 2019

19  complaint to Delta's Equal Opportunity, as Manager Tomasi "sexually spanked my butt in

20  mid-2020 and continued to sexually and racially harass me, because Delta refused to

21  intervene." During this March 25, 2021 conversation with Nabors, Plaintiff also requested a

22  reasonable accommodation for her May 1,2021 return to work, and Nabors refused to engage

23  in a cooperative dialogue and

24  failed to accommodate Plaintiff's disability from March 25, 2021 through June 17, 2021.

25  20. On March 26, 2021, in retaliation for opposing Delta Manager Tomasi's sex and race

26  discrimination (including but not limited to the sexual spanking issue) and requesting a

27  reasonable accommodation to Nabors on 03/25/2021, Plaintiff was suspended without pay,

28  whereby Plaintiff suffered economic harm.

21. In February 2021, March 2021, April 2021, May 2021 and June 2021, Plaintiff requested

reasonable accommodations for her disabilities, and at all times, Delta, again, refused to

engage in the interactive process.

22. From March 26, 2021 through June 16, 2021, Plaintiff was suspended without pay.

23. On June 17, 2021, Delta and/or Jose Rosado and/or David Needham terminated

SECOND AMENDED VERIFIED COMPLAINT page 4

Plaintiff's employment in retaliation for opposing Delta Manager Tomasi's sex and race discrimination (including but not limited to the sexual spanking issue) to Delta's HR Managers, Danielle Kruit and Kelly Nabors on or around April 1, 2021, as well as requesting a reasonable accommodation from February 2021- June 2021.

24. The baseless, discriminatory, and defamatory reason offered for Plaintiff's June 17, 2021 termination was Plaintiff's "dishonest behavior" regarding Delta HR Managers Danielle Kruit and Kelly Nabors not believing that Plaintiff was sexually "spanked by Manager Tomasi in mid-2020," after Plaintiff first voluntarily "raised" this complaint to Kelly Nabors on March 25, 2021.

25. On Plaintiff's April 1, 2021 phone call with Delta HR Managers Danielle Kruit and Kelly Nabors, Plaintiff asked them if this call was about sexual harassment or about some other issue, at which point they dismissed Plaintiff's complaints regarding Tomasi sexually harassing Plaintiff, saying "we already investigated Tomasi spanking you in April 2019 and this issue was addressed already," Kruit and Nabors then both said that the call was solely about Plaintiff, at which point Plaintiff explained that it was impossible for Delta to have investigated Plaintiff being spanked by Tomasi at any time in 2019 because Plaintiff was not spanked until mid-2020, which silenced them.

26. Delta never contacted Plaintiff again after her call with Kruit and Nabors on April 1, 2021, making it clear that Delta desired that Plaintiff stay out of its workplace to punish her for her complaints about Tomasi's sexually and racially harassing behavior and Delta's condonation of that harassment.

27. Attached as Exhibit 2 is a true and correct copy of Plaintiff's March 30, 2021 email to Delta HR Manager Danielle Kruit, where Plaintiff opposed discrimination and retaliation.

28. As a result of Defendant Delta's discriminatory conduct, Plaintiff has suffered the adverse effects of sexual and racial harassment and retaliation, the quality of her life has been irreparably damaged and her self-esteem, self-respect and well-being has been damaged because she were subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Plaintiff into the future, so that the quality of Plaintiff's life has been negatively impacted as a result of the discrimination to which Plaintiff were subjected by Delta.

29. The acts of Defendant were committed with reckless indifference in the face of a perceived risk that their actions would violate Plaintiff's protected rights under the New York City Human Rights Law so that, in addition to the damages inflicted upon Plaintiff and in addition to all the other measures of relief to which Plaintiffs may be properly entitled herein,

SECOND AMENDED VERIFIED COMPLAINT page 5

Defendant should also be required to pay punitive damages as punishment for their discriminatory conduct, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

## DEFAMATION (LIBEL PER SE & SLANDER PER SE)

30. Beginning around March 26, 2021 and continuing through July 2021, Delta managers Danielle Kruit, David Needham, and Kelly Nabors published and republished Delta's unprivileged, false statements of purported facts of and concerning Plaintiff to other Delta employees and third parties, other airline industry colleagues, including but not limited to JetBlue Airways employees Jose Rosado and Southwest Airlines employee Mayra Amezquita, Ashley and Evan, etc., that Plaintiff is a "liar," a "fraud," was terminated for having "engaged" in "dishonest behavior," that David Needham was "conducting...an investigation...into complaints raised by you," that Plaintiff "had been dishonest in connection with your relations with Delta," that Plaintiff was terminated for "insubordination" and because Delta "lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta," and that Plaintiff committed the crime of "workers comp (insurance)fraud."

31. Attached as Exhibit 1 is a true and correct copy of Delta's March 26,2021 "Suspension Letter," where Delta Manager Danielle Kruit published and republished Delta's unprivileged, false, defamatory per se statements of purported facts of and concerning Plaintiff to Southwest Airlines employee Mayra Amezquita, Ashley and Evan, and JetBlue Airways employees Jose Rosado and Erik H., Aasir Azzarmi, John Gurney, etc. that Plaintiff "engaged" in "dishonest behavior...Additionally, should the allegations be substantiated (with or without your participation), your employment will be reviewed for disciplinary action, up to, and including, termination," (LIBEL PER SE).

32. Attached as Exhibit F is a true and correct copy of Jose Rosado's LinkedIn account which proves that he was employed by JetBlue Airways from March 2021 through around early June 2021 and/or was not employed by Delta Air Lines, Inc. during this time period, yet he published these false, unprivileged statements of purported facts of and concerning Plaintiff to third parties of which Rosado had no personal knowledge of.

33. Attached as Exhibit B is a true and correct copy of Delta's June 17, 2021 termination letter which Jose Rosado published Delta's false, unprivileged statements of purported facts of and concerning Plaintiff to Southwest Airlines employee Mayra Amezquita on or around July 1, 2021, Evan and Ashley, Aasir Azzarmi, John Gurney, etc. that "We initially reached

out to you on March 26, 2021 to inform you that you were suspended... in connection with our investigation of a complaint that you had been dishonest in connection with your relations with Delta. We received information that you falsely represented that you had had a conversation with David Needham(Senior Human Resources Manager for JFK in New York) on February 19, 2021 in which he allegedly made a variety of statements concerning an investigation he was conducting into complaints raised by you regarding another employee who worked in LaGuardia Airport(LGA) in New York while you worked in LGA with her...In light of the foregoing, Delta has decided to terminate your employment, effective immediately, on that grounds that it has lost trust in your ability to perform your duties in a manner consistent with our policies and expectations, including the expectation of candor in your relations with Delta. Your failure to cooperate during the investigation also constitutes insubordination..."

34. As evidenced by Exhibit F, Jose Rosado has never had personal, firsthand knowledge of the purported facts that he published and republished in Exhibits A, B, C, & D, as he was a JetBlue employee in March 2021-June 2021 and never conducted any "interview" with Plaintiff at any time.

35. In July 2021, Delta managing agents, Wendy Chau and Richard Lorich, in the course and performance of their Delta HR Manager duties, published unprivileged, false, defamatory per se statements of purported facts about Plaintiff to Southwest Airlines employee, Mayra Amezquita, and other third parties, that Plaintiff is "a liar and a fraud who got caught lying and committing workers compensation fraud on Delta by faking workplace injuries for years to both steal money from Delta and to get paid time off from Delta. A few weeks ago, Delta finally caught Erika lying and doing workers comp fraud while she was out on another workers comp leave trying to steal more money from Delta without working, and Delta suspended her and terminated her for lying and for workers comp fraud. Do you still talk to Erika? Have you heard this about her? She's going to go to jail for doing this fraud and she's going to have to pay Delta restitution. Everybody is talking about Erika in New York and LA. Just the other day, one of the LAX gate agents, was like the fifth person to tell me this story about how finally after all these years, Erika got caught committing workers comp fraud." (SLANDER PER SE).

36. Attached as Exhibit A is a true and correct copy of Delta HR Manager Danielle Kruit's unprivileged, false, statements of purported facts of and concerning Plaintiff that Delta published and republished to Southwest Airlines employee, Mayra Amezquita, Ashley and Evan _____, Aasir Azzarmi, John Gurney, etc. on or around July 1, 2021 that "On February 17,

SECOND AMENDED VERIFIED COMPLAINT page 7

2019, David Needham (Senior Human Resources Manager for JFK in New York) telephoned you in an effort to investigate new complaints made by you regarding Bernadette Tamasi (who worked in LaGuardia airport (LGA) in New York while you worked in LGA with her). At that time, he left a message for you to call him back so that he could get additional information from you. You did not return his phone call as requested and have not provided additional information.Notwithstanding the lack of information or cooperation from you, we took steps to look into your new claims. We note in April 2019, when you worked at LGA, you made complaints regarding a variety of matters, including allegations against Ms. Tamasi. Those complaints were investigated at the time, however, at that time, you did not raise the allegations you now have raised against Ms. Tamasi, including but not limited to the allegation that she "spanked" you. Ms. Tamasi denied your claims and we find her credible. We do not find your allegations credible. Based on the foregoing, we do not believe that the conduct alleged occurred and we are closing this matter."

37. In July 2021, Jose Rosado, who began working at Delta Air Lines in or around mid-June 2021, published unprivileged, false statements of facts about Plaintiff to JetBlue Airways employee, Erik Hildebrandt, that, "I fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee." (SLANDER PER SE)

38. After Jose Rosado,in the course and performance of his Delta HR Manager duties, published these false, unprivileged statements of purported facts about Plaintiff to JetBlue Airways employee Erik Hildebrandt in July 2021,Plaintiff witnessed JetBlue manager Erik H. republish Jose Rosado's false, statements that Jose Rosado "fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee" to third parties, John Gurneye and Aasir Azzarmi.

39. After Plaintiff discovered that Jose Rosado published these false, defamatory statements to JetBlue Airways employee Erik H in July 2021, Plaintiff sent Jose Rosado an email, on or around July 19, 2021, demanding that he, Jose Rosado, cease and desist from publishing these false, unprivileged statements of purported facts of and concerning Plaintiff to third parties.

40. Because Jose Rosado published these false, defamatory statements to Delta Airlines employees on and/or before June 17, 2021 and/or before being employed at Delta Air Lines, Inc., Plaintiff was harmed in her profession, as Plaintiff was terminated from Delta Air Lines, Inc., causing Delta Air Lines, Inc. to cancel their March 2021 contract with Plaintiff that was set to begin in July 2021, causing Plaintiff special damages.

SECOND AMENDED VERIFIED COMPLAINT page 8

41. Because Jose Rosado, later employed as Delta Manager, published these unprivileged, false, defamatory statements to JetBlue Airways employee Erik H in July 2021 of and concerning Plaintiff, Plaintiff was harmed in her profession, as she was unable to obtain employment at JetBlue Airways and/or any other airline, causing Plaintiff special damages.

**FAILURE TO ENGAGE/FAILURE TO ACCOMMODATE/RETALIATION**

42. Since 2012-present, Plaintiff's actual and perceived non-transitory disabilities of mobility impairment, depression, anxiety, PTSD, & obesity, are disabilities covered by the NYCHRL..

43. In February 2021, March 2021, April 2021, May 2021 and June 2021, on multiple occasions, Plaintiff made formal and informal reasonable accommodation (via telephone(oral) and email (written)) requests to Delta HR Managers *David Needham*, Kelly Nabors, and Danielle Kruit.

44. Because Plaintiff has a disability and requested a reasonable accommodation of "a chair to sit down in while performing the essential functions of her job" and/ or a transfer in February 2021 to David Needham, and again to Delta's Equal Opportunity HR Manager Kelly Nabors on March 25, 2021, Plaintiff was immediately suspended without pay on March 26, 2021, causing Plaintiff economic harm.

45. On or around the end of April 2021, Plaintiff's local manager, Shelonda, called Plaintiff to return to work on May 1, 2021, as Plaintiff was on a voluntary, unpaid, COVID leave from around April 2020 through April 30, 2021.

46. Because Plaintiff emailed HR Manager Danielle Kruit requesting a reasonable accommodation and again opposed discrimination/retaliation, Plaintiff was suspended again without pay in retaliation from May 1, 2021 through June 17,2021, which caused Plaintiff to suffer further economic harm.

47. At all times herein, Plaintiff was qualified to perform all of the essential functions of her job at Delta Air Lines, Inc., with or without a reasonable accommodation.

48. The essential functions of Plaintiff's job as a Customer Service Agent, in Dept.125, at Delta, were to "greet Delta's customers and guide and assist them with the ticketing and baggage check-in process; use computers to sell, print, and reissue tickets. Manage the check-in process, ensuring the customers have the proper documentation for travel;Tagging baggage and occasionally perform lifting tasks that involved transferring baggage from scales to conveyor belts; Practices safety- conscious behaviors in all operational processes and procedures; help Delta customers with routing, trip planning and gate boarding; use computers to assist customers with seat availability; gate announcements with regard to the boarding process, flight status, checking and handling baggage, managing and initiating the

SECOND AMENDED VERIFIED COMPLAINT page 9

boarding process; operate jetways to place them in position prior to aircraft arrival and lifting, opening, closing and securing aircraft doors."

49. Attached as Exhibit 7 is a true and correct copy of a photo that Plaintiff took with her cell phone on 10/09/2021 around 5pm at Terminal 2, JFK Airport of a similarly situated, white female Delta employees who was provided a "chair to sit down in while performing the essential functions of her job," yet Delta has always denied Plaintiff, because of her race and disability, this same "chair" as a reasonable accommodation for Plaintiff's disability.

50. Attached as Exhibit 6 are true and correct copies of photo that Delta employe Bajhi Adams took with her cell phone in or around 2016 at Delta's ATL airport in Georgia of a similarly situated Delta employees who Delta provided more than 1 "chair to sit down in while performing the essential functions" of their job.

51. Attached as Exhibit 5 are true and correct copies of Delta's online job postings that Delta posted on it's website and publicly advertised on delta.com in April 2021 through June 17, 2021.

52. Plaintiff's February 2021-June 2021 reasonable accommodation requests for a "transfer" to a vacant Cargo agent position and for a "chair" did not produce any undue hardship to Delta because Delta was publicly advertising on delta.com that Delta was looking to fill these Cargo agent job vacancies and Delta regularly provides "chairs" to similarly situated, non-disabled employees at JFK Airport in New York and ATL Airport in Georgia.

53. At all times from February 2021 through June 17, 2021, Delta failed and refused to both engage in a cooperate dialogue about the "chair" and "transfer" to reasonably accommodate Plaintiff's disabilities.

54. Attached as Exhibit 2 is a true and correct copy of Delta HR Manager Danielle Kruit's June 11, 2021 email response to Plaintiff's June 8, 2021 reasonable accommodation email requests for a "chair" and "transfer" to the vacant position that Delta was publicly advertising on delta.com since April 2021.

55. As evidenced by the emails in Exhibits 2-4, from April 2021 through June 11, 2021, Delta HR Manager Danielle Kruit refused and failed to ever have a cooperative dialogue, nor did Kruit address the "chair" as a reasonable accommodation in her June 11, 2021 email response and summarily dismissed Plaintiff's "transfer" as a form of reasonable accommodation by stating "that is not a request Delta would consider."

56. Attached as Exhibit 3 is a true and correct copies of Plaintiff's April 2,2021 reasonable accommodation email requests for a "chair" and "transfer" where Plaintiff is opposing the fact that since February 2021, David Needham, Kelly Nabors and Danielle Kruit "have still

SECOND AMENDED VERIFIED COMPLAINT page 10

refused to engage in the interactive process" after Plaintiff made formal reasonable accommodation requests to them in late February 2021 (before suspension without pay) on March 25, 2021 (before suspension without pay), on March 30, 2021, and on April 1, 2021.

57. Attached as Exhibit C is a true and correct copy of Jose Rosado's June 17,2021 email to Plaintiff at 3:12 PM, which Plaintiff personally received by email from Jose Rosado's email account, jose.e.rosado@delta.com, which was on Defendant Delta's server, which is materially different than Exhibit B, which Delta published and republished to Southwest Airlines employee Mayra Amezquita and other third parties, beginning around July 1, 2021 and after July 1, 2021.

**COUNT I- INTENTIONAL RACE DISCRIMINATION (IN VIOLATION OF 42 USC 1981 & New York City Human Rights Law, N.Y.C. Admin. Code, § 8-107 , & New York State Human Rights Law(N.Y. Exec. Law § 296) (ALL DEFENDANTS)**

58.Plaintiff realleges the above paragraphs and incorporates them by reference as if they were fully restated herein.The New York State Human Rights Law ("NYSHRL"), NY Exec. Law § 290, et seq., establishes that it is unlawful, because of an individual's race, "to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1) (a). The New York City Human Rights Law ("NYCHRL"), NYC Admin Code § 8- 101, et seq., establishes that it is unlawful, because of an individual's race, "to bar or to discharge from employment such person," or to "discriminate against such person in compensation or in terms, conditions or privileges of employment." NYC Admin Code§ 8-107.

59. Plaintiff is a black(African-American) woman .

60. Plaintiff performed satisfactorily since her job performance met or exceeded the Defendants' expectations.

61. Because of Plaintiff's race, Plaintiff suffered adverse employment actions (several suspensions without pay, termination, failure to hire, breach of contract)by Rosado and/or David Needham and/or Delta Air Lines, Inc., because she opposed Manager Tomasi's racially hostile work environment from late February 2021 through June 17, 2021.

62. Similarly situated non-black female Delta comparators such as Erin Pieroni, Delgado, Eileen Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc, because of their race, were not suspended or terminated when opposing sex discrimination.

63. Delta violated the NYSHRL, NYCHRL & 42 USC 1981 by suspending and terminating Plaintiff from employment and discriminating against her in compensation and in terms, conditions, or privileges of employment, because of her race, as similarly situated non-black

SECOND AMENDED VERIFIED COMPLAINT page 11

female Delta comparators such as Erin Pieroni, Delgado, Eileen Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc, because of their race, were never suspended without pay or terminated when opposing sex discrimination.

64. Plaintiff has suffered damages as a result of Defendants violation of the NYSHRL, NYCHRL and 42 USC 1981 as Defendants conduct, as alleged herein, constituted unlawful discriminatory practices and unlawful discrimination on the basis of race.

65. Defendants subjected Plaintiff to adverse employment actions(suspensions and termination and refusal to hire) on account of her race and color by denying her equal opportunity and treatment in the conditions of employment.

66. By the acts and practices described above, all Defendants directly and/or through employees and/or agents, subjected Plaintiff to discrimination in violation of the New York State Human Rights Laws, New York City Human Rights Laws, & 42 USC 1981.

67. At all times, all Delta ratified and approved of its managers discriminatory acts by failing to take corrective action against Managers Tomasi, David Needham and Jose Rosado.

68. As a result of Defendants discrimination in violation of the New York City & State Human Rights Laws, & 42 USC 1981, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, entitling her to injunctive and equitable monetary relief, and she has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life impacting her in NYC, entitling her to compensatory damages.

69. In Defendants race-based discriminatory actions alleged in violation of New York City & State Human Rights Laws, Defendants acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

70. Defendant engaged in conduct, as alleged herein, that constituted unlawful discriminatory practices and unlawful discrimination on the basis of race and color in violation of the New York City Human Rights Law, N.Y.C. Admin. Code, § 8-107 et seq. Plaintiff, therefore, seeks compensatory, punitive, emotional damages plus prejudgment interest, and all fees and costs of this action.

**COUNT II- INTENTIONAL Gender Discrimination, Sexual Harassment, and Hostile Work Environment in Violation of the New York State (§ 296 )Human Rights Law & New York City Human Rights Law N.Y.C. Admin. Code §§ 8-107(1)**

71. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

72. The entirety of the acts which constitute and form this Cause of Action, as set forth above, all of which are deemed repeated and re-alleged herein as though said paragraphs were

SECOND AMENDED VERIFIED COMPLAINT page 12

specifically set forth herein, were perpetrated upon Plaintiff while she was in the course of her employment with Delta here in NYC, which impacted Plaintiff here in NYC

73. The conduct that Defendants took against Plaintiff that forms the basis of this Cause of Action was unwelcome to her, a fact which Delta knew, or should have known, as a result of Plaintiff's response & actual nature of the conduct.

74. Delta is liable to Plaintiff for the sexual harassment she suffered in her workplace, because the unlawful conduct was permitted and condoned by Delta management and supervisory personnel, who allowed and condoned a workplace permeated with intimidation and harassment that altered the terms, conditions and privileges of Plaintiff's employment and created an abusive, threatening and hostile work environment where Plaintiff was treated less well because of her gender.

75. The aforementioned acts of Defendants constitute unlawful gender discrimination against Plaintiff in violation of Chapter 1, Title 8 of the Administrative Code of the City of New York, §8- 107(1)(a) (referred to as "The New York City Human Rights Law"),which provides inter alia, that: It shall be unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the . . . gender . . . of any person to discriminate against such a person in compensation or in terms, conditions or privileges of employment.

76.Defendants discriminated against Plaintiff on the basis of her gender, sexually harassed Plaintiff, and/or caused Plaintiff to experience a hostile work environment in violation of the NYCHRL by treating Plaintiff less favorably than her male colleagues, making harassing or discriminatory comments to Plaintiff based on her gender, and/or by sexually harassing and assaulting Plaintiff.

77. Defendants knew of the general discrimination and sexual harassment perpetrated against Plaintiff, or at a minimum, should have known about the harassment, based on the pervasive atmosphere of sexual harassment that Plaintiff reported to Delta's HR managers (Omojole, Rangel, David Needham, Nabors, Kruit, etc)from 2018 through June 2021.

78. The sexual harassment perpetrated against Plaintiff by Delta's manager Tomasi affected a term, condition, and the privileges of her employment, impacting Plaintiff in NYC.

79. As a result of Defendants gender discrimination and sexual harassment of Plaintiff in violation of the New York City & State Human Rights Law, Plaintiff has been denied employment opportunities providing substantial compensation and benefits, entitling her to injunctive and equitable monetary relief, and she has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life here in NYC due to Defendants' actions, entitling her to compensatory damages.

---

SECOND AMENDED VERIFIED COMPLAINT page 13

80. In their gender-based discriminatory actions alleged in violation of the NYCHRL & NYSHRL, Defendants acted with malice or deliberate indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

81. As a result of Delta's violation of NYCHRL & NYSHRL, Delta is liable to Plaintiff pursuant to §8-502(a) of said statute for "damages" and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established. Under N.Y.C. Admin. Code § 8-120, Plaintiff is entitled to recover reasonable fees and costs .

82. As a proximate result of Delta's conduct, Plaintiff has been adversely affected in her employment, emotional well-being, the quality of her life and in her normal life's pursuits, and Plaintiff believes Delta's conduct, complained of herein, has and will continue to have a devastating effect upon her career and the quality of her life.

83. Here, the acts of Delta were so reprehensible and were done with reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the New York City & State Human Rights Laws, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measures of relief to which Plaintiff may properly be entitled herein, Delta should additionally be required to pay punitive damages as punishment for its discriminatory conduct in order to deter Delta and others similarly situated from engaging in such conduct in the future.

84. Plaintiff, therefore, seeks compensatory, emotional, damages, plus prejudgment interest, and any and all fees and costs of this action.

COUNT III- Retaliation (42 USC 1981 , New York State Human Rights Law N.Y. Exec. Law § 296 –, NYC HRL § 8-107 e)

85. Plaintiff repeats, realleges and incorporates the above paragraphs of thisComplaint, as though fully set forth at length herein.

86. From around late April 2019 and/or from February 19, 2021 through around June 17, 2021, Plaintiff engaged in protected activity under 42 USC 1981, New York State Human Rights Law N.Y. Exec. Law § 296, & New York City Human Rights Law, of which Delta was aware, when Plaintiff made multiple written and oral complaints to HR Managers David Needham, Kelly Nabors, & Danielle Kruit about the hostile work environment (race and sex), sexual harassment, discrimination (race, sex, and disability) that Delta's managers subjected her to on account of her race and her gender and her disability and by seeking to be protected against those same discriminatory acts.

87. As a proximate result of Plaintiff engaging in protected activity under the NYS HRL, NYCHRL, & 42 USC 1981,  Plaintiff suffered adverse employment actions, including

SECOND AMENDED VERIFIED COMPLAINT page 14

multiple suspensions without pay, subjecting her to a hostile work environment, termination, refusing to contract with Plaintiff, failure to hire that were all causally connected to her complaints of hostile work environment(sexual and racial), harassment (sexual and racial), discrimination(sex, race, & disability) and Delta's failure to engage in the interactive process after Plaintiff requested a reasonable accommodation, which was summarily denied.

88. Defendants' adverse employment actions on or around March 26, 2021, May 1, 2021, & June 17, 2021 were a direct and proximate result of Plaintiff's protected complaints & reports & request for reasonable accommodations to Delta's managers regarding their discriminatory & retaliatory conduct against Plaintiff.

89. As a result of the Defendants' illegal conduct, Plaintiff has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, as well as lost wages and work opportunities, and Plaintiff believes that the injuries inflicted upon her, which were a direct result of the occurrences complained of herein, have and will continue to cause Plaintiff damage, entitling her to compensatory damages.

90. The aforementioned acts of Defendants constitute unlawful retaliation against Plaintiff in violation of Chapter I, Title 8 of the AdministratiVe Code of the City of New York, §8-107(7) of the New York City Human Rights Law, which provides, inter alia, that: It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . .

91. As a direct and proximate result of Defendants violation of NYCHRL, Defendants are liable to Plaintiff pursuant to §8-502, §8-502(f) of said statute for"damages," costs and fees.

92. Pursuant to N.Y.C. Admin. Code § 8-502(c) & § 40-d,Plaintiff is providing the NYCHRC & Office of the Attorney General notice of her claims under NYCHRL & NYSHRL.

93. As a direct and proximate result of Defendants conduct complained of herein, and as alleges in this Cause of Action, as well as the conduct set forth in this Complaint,Plaintiff has suffered emotional and compensatory damages, injuries and losses here in NYC, which includes the emotional pain and suffering she has been caused to suffer and continues to suffer, plus prejudgment interest, the costs of this action.

94. Here, the acts of Defendants were so reprehensible and were done with malice, reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's s protected rights under the New York City Human Rights Law, New York State Human Rights Law, and 42 USC 1981, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measures of relief to which Plaintiff may properly be entitled herein, Defendants should

SECOND AMENDED VERIFIED COMPLAINT page 15

additionally be required to pay punitive damages as punishment for its discriminatory & retaliatory conduct in the further amount of Six Million ($6,000,000) Dollars, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

95. Defendants knew that Plaintiff had engaged in protected activity.

### COUNT IV- 42 U.S.C. § 1981

96. Plaintiff incorporates by reference the allegations in all preceding paragraphs. Delta and/ or Needham and/or Jose Rosado intentionally discriminated against Plaintiff on the basis of her race, as similarly situated white female Delta employees, Erin Pieroni, Delgado, Eileen Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz,etc. were never suspended without pay and/or terminated for opposing discrimination and/or retaliation and/or hostile work environment (filing verbal and/or written complaints and/or lawsuit) and/ or for making and enforcing contracts and/or for suing(filing lawsuit) and/or being parties (to a lawsuit) and/or giving evidence and/or for exercising the full and equal benefit of all laws and proceedings for the security of persons and property under 42 U.S.C. § 1981(a).

97. In or around 2013, Plaintiff had previously made and/or formed and/or entered into a binding Ready Reserve contract (CONTRACT I) with Defendant Delta Air Lines, Inc., whereby Delta contracted Plaintiff to work for Delta as a Ready Reserve employee, who Delta did not consider to be full time Delta employees.

98. But for Plaintiff's race, on or around May 1, 2021, Delta and/or Manager Needham would have *enforced* Plaintiff's *Ready Reserve contract* (CONTRACT 1) to have returned Plaintiff to work on May 1, 2021 from Plaintiff's 1 year voluntary COVID leave of absence(a contract), as Defendants allowed similarly situated Hispanic and/or white and/or Asian employees to return to work in 2020 and/or 2021 after their voluntary COVID leave of absences.

99. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have *terminated* Plaintiff's Ready Reserve contract (CONTRACT 1) on or around June 17, 2021.

100. In March 2021, Plaintiff made and/or formed and/or entered into a new employment contract (CONTRACT 2) with Delta, where Delta contracted with Plaintiff to begin working for Delta as a full time employees with benefits beginning in July 2021.

101 But for Plaintiff's race, Delta and/or Needham and/or Rosado would have *enforced* the *March 2021 Full-Time employee contract (CONTRACT 2)* that Plaintiff made/formed with Delta in March 2021, that was set to begin in or around July 2021.

102. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have

---

SECOND AMENDED VERIFIED COMPLAINT page 16

*terminated* Plaintiff's *Full-Time employee contract contract* (CONTRACT 2) on or around June 17, 2021, which Plaintiff made/formed/entered into with Delta in March 2021.

103. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have **impaired and/or interfered with Plaintiff's Ready Reserve contract** (CONTRACT 1) on or around May 1, 2021 and then again on or around June 17, 2021.

104. But for Plaintiff's race, Delta and/or Needham and/or Rosado would not have **impaired and/or interfered with Plaintiff's Full-Time employee contract** (CONTRACT 2) on or around June 17, 2021.

105. Plaintiff is a person within the jurisdiction of the United States, who has the right to make and enforce contracts in the United States and is entitled to the full and equal benefits of the law.

106. At no time from 2018 through June 17, 2021 did Plaintiff ever violate any written Delta policy to warrant any suspension without pay in 2021 and/or termination on June 17, 2021.

107. At no time from 2018 through June 17, 2021 did Delta ever inform Plaintiff that Plaintiff violated any written Delta policy nor did Delta ever discipline Plaintiff by using any steps in Delta's progressive discipline policy that Delta uses for similarly situated employees.

108. From around March 2021- July 2021 and continuing, But for Plaintiff's race(black), Defendants would not have intentionally racially discriminated against Plaintiff by interfering with and impairing Plaintiff's employment contracts, causing Plaintiff to suffer irreparable injury and harm.

109. Attached as Exhibit 13 is a true and correct copy of the "Ready Reserve contract," aka "EMPLOYMENT CONTRACT 1," that Plaintiff and Delta had entered into from around 2005, which was contractually set to end on June 30, 2021.

110. Attached as Exhibit 14 is a true and correct copy of an independent, mutually exclusive, separate employment agreement("FULL TIME EMPLOYMENT CONTRACT 2") that Plaintiff and Delta entered into on March 3, 2021, whereby Plaintiff was to become a full-time Delta employee on July 1, 2021.

111. Plaintiff performed all of her obligations under the March 3, 2021 contract (CONTRACT 2) and satisfied all conditions precedent to Delta's obligations under the contract.

112. Under the March 3, 2021 employment contract, Defendant could only terminate Plaintiff's employment "for Cause" only if certain circumstances existed.

113. None of the circumstances that would have justified a termination "for Cause" actually existed.

114. Because Defendants Jose Rosado and/or David Needham terminated Plaintiff on June

SECOND AMENDED VERIFIED COMPLAINT page 17

17, 2021 impairing the Ready Reserve Contract (Contract 1) , Plaintiff was never able to enforce the terms and conditions of the binding "FULL TIME EMPLOYMENT (CONTRACT 2)," which were set to begin on July 1, 2021. **(FAILURE TO HIRE CLAIM)**

**COUNT V-Failure to Accommodate In Violation of the New York City& State Human Rights Law (N.Y.C. Admin. Code §§ 8-101, et seq.)**

115. Plaintiff realleges above paragraphs and incorporates them by reference as if they were fully restated herein.

116. Plaintiff qualifies as "person with a disability" per the NYCHRL. N.Y.C. Admin. Code § 8-102. At all times relevant to this action, Defendants has been covered entities and employers within the meaning of N.Y.C. Admin. Code § 8-102.

117. N.Y.C. Admin. Code § 8-107(1)(a)(3) makes it an unlawful discriminatory practice for an employer to discriminate against an employee with a disability in the "terms, conditions or privileges of employment."

118. N.Y.C. Admin. Code § 8-107(15) makes it an unlawful discriminatory practice for an employer "not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right[s]" of the position, provided that the disability is known or should have been known by the employer. N.Y.C. Admin. Code § 8- 107(15)(a).

119. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be a person aggrieved by an unlawful discriminatory practice" on the basis of her disability.

120. Defendant knew of Plaintiff's disability and unreasonably failed to provide reasonable accommodations, despite her multiple requests.

121. By the acts and practices described above, Defendant unlawfully discriminated against Plaintiff due to her disability, in violation of the NYCHRL & NYSHRL.

122 As a result of these violations, pursuant to N.Y.C. Admin. Code § 8-502, Plaintiff is entitled to recover compensatory damages, declaratory and injunctive relief, fees and costs, and other appropriate relief as determined by this court.

**COUNT VI-Failure to Engage in Cooperative Dialogue in Violation of the New York City & State Human Rights Law (N.Y.C. Admin. Code § 8-107)**

124. Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

125. N.Y.C. Admin. Code § 8-107(28)(a) makes it an unlawful discriminatory practice for an employer to fail to engage in a cooperative dialogue within a reasonable time

with an employee who requests a disability-related accommodation or to fail to engage in a cooperative dialogue if the covered entity has notice that an individual may require an accommodation.

126. The term "cooperative dialogue" per the NYCHRL "means the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8- 102.

127. Defendant was obligated to engage in a cooperative dialogue independently of their related obligation to provide a reasonable accommodation to Plaintiff pursuant to N.Y.C. Admin. Code § 8-107(15).

128. Defendants failed to engage in a cooperative dialogue with Plaintiff regarding her need for a reasonable accommodation to allow her to use a "chair" at work and by granting a transfer to a vacant position and by failing to communicate in good faith and in an effective manner with Plaintiff concerning her need for accommodations and failing to communicate with Plaintiff regarding her specific needs with regard to her chair accommodations despite being on notice for many years that she required such an accommodation, in violation of N.Y.C. Admin. Code § 8-107(28)(a).

129. Defendants failed to engage in a cooperative dialogue with Plaintiff following her formal requests for reasonable accommodations regarding the chair and transfer, in violation of N.Y.C. Admin. Code § 8-107(28)(a).

130. Defendants failed to provide Plaintiff with a written, final determination ident-ifying any accommodation granted or denied, N.Y.C. Admin. Code § 8-107(28)(d).

131. By the acts and practices described above, Defendants unlawfully discriminated against Plaintiff because of her disability in violation of the NYCHRL..

132. As a result of these violations, pursuant to N.Y.C. Admin. Code § 8-502 & NYSHRL, Plaintiff is entitled to recover compensatory damages, declaratory and injunctive relief, fees and costs, and other appropriate relief as determined by this court.

**COUNT VII- Defamation Per Se/Defamation**

133. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

SECOND AMENDED VERIFIED COMPLAINT page 19

134. As described above, Delta and/or Defendants have stated false facts to third parties, regarding, inter alia, the circumstances surrounding it's reasons for suspending and terminating Plaintiff's employment, and/or employment contracts, and/or Plaintiff having committed workers compensation insurance fraud against an unknown/unnamed third party insurance company, and that Plaintiff is an unchaste sex worker.

135. These statements were untrue and defamatory in that they falsely reported, inter alia, that Plaintiff is a "liar" and a "fraud," and/or that Plaintiff engaged in "dishonest behavior," and/or that Plaintiff committed "workers compensation insurance fraud," etc..

136. Defendants knew or should have known that such defamatory statements were false.

137. Defendants defamatory statements were published with knowledge of their falsity and/or with a reckless disregard for their truth or falsity.

138. On or around June 17, 2021, Jose Rosado, informed Plaintiff that Defendant Needham, in the course and performance of his Delta HR Manager duties, had published unprivileged statements of purported facts of and concerning Plaintiff to third party, Jose Rosado, a few days earlier while Rosado was still working at JetBlue Airlines, that ***Delta was made aware that Erika Lee has an OnlyFans page where she performs daily sex acts on camera with random men for money and then gets paid more money by her subscribers who have a fetish for big black women."***

139. It is 100% false that Plaintiff "has an OnlyFans page where she performs daily sex acts on camera with random men for money and then gets paid more money by her subscribers who have a fetish for big black women."

140. In the beginning of June 2021, Jose Rosado was employed at JetBlue Airlines and/or was not employed by Delta Air Lines, Inc. at all times in the month of June 2021.

141. Defendants statements constitute defamation per se because they impugn Plaintiff's honesty, trustworthiness, dependability, and professional fitness and abilities by falsely claiming, inter alia, that Plaintiff engaged in "dishonest behavior," that Plaintiff committed the crime of "insurance fraud," and imputing unchastity to Plaintiff, by alleging that Plaintiff is some type of a prostitute or sex worker or some kind of internet porn star on OnlyFans.com.

142. At all times relevant herein, Delta did not have a third party workers compensation insurance policy with any third party insurance company, as Delta has been self-insured for workers compensation claims for many years.

143. Defendants defamatory per se statements have harmed Plaintiff's professional reputation and standing in her industry, have caused her economic harm, have caused her to incur special damages in the form of actual pecuniary loss, including lost weekly income,

SECOND AMENDED VERIFIED COMPLAINT page 20

1  yearly salary of approximately $50, 000.00, failure to be hired by Delta Air Lines, Inc. as a
2  full time employee beginning on July 1, 2021, termination of her Ready Reserve employment
3  contract on June 17, 2021, loss pf pass travel benefits, yearly profit sharing, 401k, health
4  insurance benefits, monthly bonuses, overtime, job security and opportunities for career
   advancement and have caused her embarrassment, humiliation and emotional injury.
5  144. As a direct and proximate result of Defendant's defamation per se, Plaintiff has
6  suffered, and continues to suffer, from humiliation, loss of standing in the community,
7  loss of self-esteem and public esteem, public disgrace and emotional distress.
   145.As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and
8  continues to suffer harm entitling her to an award of monetary damages and other relief.
9  146. Defendant's defamatory per se statements were malicious, willful, wanton, and done
10 with reckless disregard for Plaintiff's rights. As such, Plaintiff is entitled to an award of
11 punitive damages.
12       **COUNT VIII- Negligence Per Se/Negligence(against Defendant Delta)**
13 147. N.Y. Workers' Comp. Law WCL §2 , 3 and §51 is designed to protect NY employees.
   148. Plaintiff is in the class of people that N.Y. Workers' Comp. Laws§2, §3 and §51 were
14 designed to protect.
15 149. Delta's intentionally caused Plaintiff harm by Delta's intentional violation of NY state
16 statutes(Workers' Comp. Law WCL. §2 , §3 and §51 is negligence per se since Delta
17 intentionally failed and refused, at all times, to provide workers' compensation insurance
   coverage for Delta's employees by purchasing a third party workers compensation insurance
18 policy for its' employees, which included Plaintiff; Delta violated N.Y. Workers' Comp.
19 Law§51 as Delta never posted notice of workers compensation insurance coverage in their
20 place of business, as Delta never had third-party workers compensation insurance coverage.
21 150. Delta's intentional violation of N.Y. Workers' Comp. Laws§2, §3 and §51 was the
22 proximate cause of Plaintiff's injuries and damages
   151. Around late June/ earlyJuly 2019, when Delta manager Tomasi, in her professional
23 capacity, intentionally stuck her hand under Plaintiff's skirt in an attempt to intentionally
24 grab Plaintiff's vagina, causing Plaintiff to jump to distance herself from her sexual assaulter,
25 Tomasi. Manager Tomasi's act of intentionally grabbing Plaintiff's vagina caused Plaintiff to
26 slip and fall over a chair, causing intentionally injury to Plaintiff's neck, back, and legs.
27 152. Delta manager Tomasi, in her professional capacity, committed battery and sexually
   assault against Plaintiff in mid 2020 (while Plaintiff was not in her professional capacity as a
28 Delta employee, as Plaintiff was on an unpaid, COVID leave )when Manager Tomasi

SECOND AMENDED VERIFIED COMPLAINT page 21

intentionally "spanked" Plaintiff of her sexual pleasure, which Delta was aware of but
negligently failed to prevent.

153. Prior to, during, and after Plaintiff's employment with Delta, Delta owed Plaintiff
and all of Delta's employees, a cognizable duty to ensure that Delta's employees were not
exposed to unsafe working conditions, and if Delta owed Plaintiff a cognizable duty of care
to have a third-party workers compensation insurance policy to provide Plaintiff with medical
treatment for her workplace injuries that resulted from any unsafe working conditions that
Delta exposed Plaintiff to.

154 As a result of Delta's conduct where Delta unreasonably exposed Plaintiff to unsafe
working conditions without third-party workers compensation insurance policy, Plaintiff was
at actual risk of immediate physical injury and Plaintiff actually sustained workplace injuries
in 2017, 2019 and 2020.

155. Delta breached it's duty of care by failing to purchase a third workers compensation
insurance policy, which would've provided Plaintiff with medical treatment, monetary
compensation for her workplace injuries, and monetary compensation for lost weekly wages.

156. Plaintiff suffered damages (financial, emotional, personal injury to leg, back and
neck)as a proximate result of Delta's intentional failure to purchase a third-party
workers compensation insurance policy to provide Plaintiff with medical treatment for
her workplace injuries, monetary compensation for her workplace injuries, and
monetary compensation for her lost weekly wages.

**COUNT IX-Negligent Infliction of Emotional Distress(3 year Statute of
Limitations)**

157. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in
all of the preceding paragraphs as if fully set forth herein.

158. From December 2018 through June 17, 2021,  Defendant Delta breached a duty of care
to Plaintiff that unreasonably endangered Plaintiff's physical safety, caused Plaintiff to fear
for her physical safety and caused Plaintiff to sustain physical and emotional injuries when
Manager Tamasi intentionally grabbed Plaintiff's vagina directly causing Plaintiff to jump
and sustain a slip and fall injury.

159. Delta engaged in conduct toward Plaintiff that is extreme and outrageous so as to exceed
the bounds of decency in a civilized society; namely by, inter alia, subjecting her to a racially
& sexually hostile work environment which caused Plaintiff physical injuries when Manager
Tamasi intentionally grabbed Plaintiff's vagina causing her to jump and have a slip and fall,
unsafe working conditions without any third- party workers compensation insurance policy,

SECOND AMENDED VERIFIED COMPLAINT page 22

1   inability to provide Plaintiff with medical care and workers compensation benefits (weekly

2   income for loss of wages, etc.) as Delta does not have any third- party workers compensation

3   insurer, in violation of NY state workers compensation laws.

    160. These actions were taken with intent to cause, or disregard for, the substantial

4   probability of causing Plaintiff severe emotional distress.

5   161. As a direct and proximate result of Delta's extreme and outrageous conduct, Plaintiff has

6   suffered severe emotional distress.

7   162. Defendant's intentional conduct causing Plaintiff physical injuries was negligent,

    wanton, malicious, willful and/or cruel, entitling Plaintiff to an award of punitive damages.

8              **COUNT X- Sexual Battery/Battery (against Defendant Delta)**

9   163. Plaintiff repeats and re-alleges the allegations stated above as if fully set forth

10  herein.

11  164. Beginning in or around October 2018, Delta first became aware that Delta Manager

12  Tamasi was sexually harassing Plaintiff.

13  165. In April 2019, Delta was aware that Delta Manager Tamasi was sexually harassing

    Plaintiff, as Delta suspended Plaintiff without pay in April 2019 for opposing Tamasi's

14  sexually harassment, and threatened Plaintiff with termination if Plaintiff made any more

15  complaint to Delta.

16  166.Delta Manager Tamasi, in her professional capacity, intentionally committed battery by

17  sexually assaulting Plaintiff when Tamasi "spanked" Plaintiff in mid-2020. As described

18  above, on multiple occasions Delta manager Tamasi intentionally touched Plaintiff in an

    offensive and sexual manner without her consent.

19  167. Delta manager Tamasi's actions constitute sexual offenses as defined in NewYork Penal

20  Law Article 130, including but not limited to sexual misconduct as defined in Article 130.20,

21  rape in the third degree as defined in Article 130.25, rape in the first degree as defined in

22  Article 130.35, forcible touching as defined in Article 130.52, sexual abuse in the third degree

    as defined in Article 130.55, and sexual abuse in the first degree as defined in Article 130.65.

23  See N.Y. C.P.L.R. § 214-g.

24  168. As a direct and proximate result of Delta manager Tamasi's criminal acts,Plaintiff has

25  the past and will in the future continue to suffer substantial damages, including extreme

26  emotional distress, humiliation, fear, psychological trauma, loss of dignity and self-esteem,

    and invasion of her privacy.

27           **COUNT XI- WHISTLEBLOWER RETALIATION under NYLL § 215 &**

28  **§ 740**

---

                      SECOND AMENDED VERIFIED COMPLAINT page 23

169. Plaintiff repeats and re-alleges the allegations stated above as if fully set forth herein.

170. On March 25, 2021, Plaintiff participated in protected activity known to Delta when Plaintiff reported to HR Manager Kelly Nabors that Delta was intentionally violating NY state law statutes(Workers' Comp. Law WCL §2 , §3 and §51) by Delta's intentionally failure and refusal, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy for its' employees which presents a substantial and specific danger to public health and safety. Plaintiff also reported to Nabors that Delta's violations of N.Y. Workers' Comp. Law§51 as Delta never posted notice of workers compensation insurance coverage in their place of business at JFK airport , as Delta refused and failed to purchase any third-party workers compensation insurance coverage, as Delta was illegally uninsured employer.

171. Delta was aware that Plaintiff participated in protected activity in March 2021 when Plaintiff made a public report and/or provided information to NYS Workers Compensation Board notifying the state board that Delta was an illegally uninsured employer who was intentionally failed and refused, at all times, to provide workers' compensation insurance coverage for Delta's employees by purchasing a third party workers compensation insurance policy in violation of NYS' Workers' Comp. Law WCL §2 , §3 & §51.

172. On March 26, 2021, the very next day,  Delta retaliated against Plaintiff by suspended Plaintiff without pay until terminating her employment on June 17, 2021.

173. Because Delta manager Susan Emerson has publicly admitted that Delta is self-insured for workers compensation coverage and because Delta publicly admits that it does not have a third party workers compensation insurance policy with any insurance company,  Plaintiff, at all times, reasonably believed that Delta was violating the Labor Law and stated a complaint that violated the Labor Law.

174. Delta's violations of NYS' Workers' Comp. Laws WCL §2 , §3 & §51 creates and presents a substantial and specific danger to the public health and/or safety of the public and Delta's employees, such as Plaintiff, who work directly with the public.

175. Delta told Plaintiff, as Delta tells its other workers,  that Plaintiff needed to use Medicaid to get medical treatment for her workplace injuries but Plaintiff objected to and refused to participate in Delta's illegal Medicaid/health care fraud, as this is Delta's standard operating procedure and regular practice, in violation of NYS and Federal laws.

**JURISDICTION AND VENUE**

176.This SDNY Court has subject matter jurisdiction over Plaintiff's Section 1981 claims

SECOND AMENDED VERIFIED COMPLAINT page 24

1    under 28 U.S.C. § 1331. This Court has diversity and supplemental jurisdiction over
2    Plaintiff's NY and NYC state law claims under 28 U.S.C. § 1367.
3    177. This SDNY Court is empowered to issue a declaratory judgment by 28 U.S.C. §§ 2201
     and 2202.
4    178. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of
5    the events giving rise to the claims occurred in this district.
6                          **PRAYER FOR RELIEF**
7    WHEREFORE, Plaintiff respectfully requests this Court find against Delta as follows:
8    a. Declare that Delta's acts, conduct, policies, and practices are unlawful and violate
9    the NYSHRL, the NYCHRL, 42 USC 1981 and Employment Contracts;
     b. Reinstate Plaintiff to her former position with lost wages;
10   c. Award Plaintiff the value of all compensation and benefits lost and that she lost
11   and will lose in the future as a result of Delta's unlawful conduct;
12   d. Award Plaintiff compensatory and punitive damages;
13   e. Award Plaintiff prejudgment interest and attorneys' fees, costs and disbursements,
14   as provided by law;
     f. Award Plaintiff such other make whole equitable, injunctive and legal relief as this
15   Court deems just and proper to fairly compensate Plaintiff;
16   g. Declaratory and injunctive relief
17   h. Defendants maliciously defamed Plaintiff to third parties
18   i: Plaintiff is suing Defendant for a total of $60,000,000.00
19   j: Award Plaintiff such other relief as this Court deems just and proper.

20   Date: 07/06/2023
21
22
23                                           ERIKA L. LEE,
24                                           PRO SE PLAINTIFF
25
26
27
28

              SECOND AMENDED VERIFIED COMPLAINT page 25

1
2
3              **VERIFICATION OF COMPLAINT**
4
5          I, Erika L. Lee, being duly sworn, deposes and says that:
6
7          I am the Plaintiff in this action, representing myself Pro Se. I have read
8  the foregoing Second Amended Verified Complaint, and know the contents
9  thereof; the same is true to my personal knowledge, except these matters
10  which are stated to be alleged "upon information and belief, and as to those
11  matters which I believe them to be true or believed them to be true. I declare
12  under penalty of perjury under 28 U.S.C. 1746 and the laws of the United
13  States of America that the foregoing is true and correct.

Executed on 07/06/2023.

ERIKA L. LEE

PLAINTIFF, PRO SE

---

SECOND AMENDED VERIFIED COMPLAINT page 26







This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.