UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIKA LEE,                                          :
                                                    :
                            Plaintiff,              :
                                                    :
            - against -                             :
                                                    :
                                                    :
DELTA AIR LINES, INC., DAVID NEEDHAM,               :
and JOSE ROSADO,                                    :
                                                    :
                            Defendants.             :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/29/2024

22-CV-08618 (DEH) (RWL)

**REPORT AND RECOMMENDATION
TO HON. DALE E. HO:
<u>MOTION TO DISMISS</u>**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Erika Lee ("Plaintiff" or "Lee"), proceeding pro se, asserts numerous claims stemming from her previous employment with Defendant Delta Air Lines, Inc. ("Defendant" or "Delta").  Lee alleges that, while employed at Delta, she was subjected to race and gender discrimination, sexual harassment, a hostile work environment, failure to accommodate a disability, failure to cooperate in addressing her request for accommodation, retaliation, defamation, negligence, negligent infliction of emotional distress, and battery.  Delta has moved to dismiss the Second Amended Verified Complaint ("SAC") at Dkt. 58 pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure based on failure to state a claim.  For the reasons that follow, the motion should be GRANTED IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

As required on a motion to dismiss pursuant to Rule 12(b)(6), the Court takes the well-pled facts alleged in the SAC as true and draws all reasonable inferences in favor of Lee, as the non-moving party.

Lee, a black woman, began working for Delta at JFK Airport in September 2005 as a customer service agent.  (SAC ¶¶ 5, 59.)  In 2013 or so, Lee entered into a contract with Delta for her service as a "Ready Reserve" employee.  (SAC ¶ 97.)  From December 2017 through 2020, Lee alleges, she was sexually and racially harassed, as well as sexually assaulted, by Delta Manager Bernadette Tamasi ("Tamasi").  (SAC ¶ 8.)

## A.    2019-2020

In April 2019, Lee had a telephone meeting with Delta's Human Resources ("HR") and Equal Opportunity ("EO") Department in which she "formally complained" that "because of Plaintiff's race and sex," Tamasi was forcing Lee to wear a skirt and heels. Tamasi "demanded that Plaintiff look sexy" and that she wanted "to see them big black ass cheeks switching when you walk."  According to Lee, Tamasi "threatened" Lee with "suspension and adverse employment actions and/or writeups" if Lee did not wear heels, look sexy, "and or acquiesce to Tamasi's sexual requests for lesbian sex."  Lee states that similarly situated white women who Tamasi also managed were not required to wear heels or skirts and that Delta's uniform policy permitted females to wear flat shoes.  (SAC ¶ 9.[1])  During the telephone meeting, Lee also "requested a reasonable accommodation" but does not specify the request made.  (SAC ¶ 10.)  Lee claims that after the meeting she was immediately suspended without pay for two weeks.  (SAC ¶ 11.)

Lee alleges that Delta's EO-HR Manager told Lee that Delta had no reason to address the situation because Lee was not being sexually harassed by a man.  More particularly, the manager told Lee that she was not being sexually harassed and that

---

[1] Where a citation to the record follows multiple sentences, the citation applies to all previous sentences without their own individual citation.

"Bernadette sticking her tongue out at you and staring at your breasts and asking you about your vagina is just girl talk, women often touch each other's breasts and make sexual comments about their vaginas to each other, it is just how females are with other females." (SAC ¶ 12.)

Lee alleges another incident took place in late June or early July 2019, when Tamasi "intentionally stuck her hand under Plaintiff's skirt in an attempt to intentionally grab Plaintiff's vagina." In attempting to avoid Tamasi, Lee slipped and fell over a chair causing injury to her neck, back, and legs. (SAC ¶ 151.)

On March 30, 2020, due to the COVID pandemic, Lee began a voluntary leave of absence from her position at JFK, which was extended per her request, and eventually was set to return from leave on May 1, 2021. (SAC ¶ 45 and Ex. 2 at ECF 34.) Lee claims, however, that after Lee returned from her two week suspension in April 2019 and through 2020, Tamasi continued to sexually and racially harass Lee, "whereby Tamasi would stick her tongue out and move it in a rapid up and down motion to simulate the act of cunnilingus, where she would then ask Plaintiff if Plaintiff's pubic hair was 'kinky' and if Plaintiff shaved her vagina, and telling Plaintiff that she couldn't wait to try Plaintiff's black vagina because she heard black vaginas taste like 'fried chicken and collard greens.'" (SAC ¶ 13.) Tamasi allegedly "constantly" told Lee that Tamasi "was going to penetrate Plaintiff's black vagina with Tamasi's 'big white dildo' and Tomasi [sic] was tired of Plaintiff's 'playing hard to get.'" (SAC ¶ 14.) And, in "mid-2020," when Lee was on leave and "not in her professional capacity as a Delta employee" (SAC ¶ 152), Tamasi "spanked Plaintiff's butt and made sexual comments while spanking Plaintiff's butt." (SAC ¶ 15.)

3

**B.    2021 – Suspension**

Lee asserts that she did not report the spanking incident to anyone at Delta because Lee was concerned that she would be suspended without pay again and/or terminated.  (SAC ¶¶ 16, 18.)  On February 19, 2021, however, David Needham ("Needham"), Delta's New York HR Manager, called Lee to ask her if she had ever been sexually spanked by Tamasi in 2020 because Needham had heard that such an incident occurred.  (SAC ¶ 17.)  Yet during the call Lee "NEVER specifically told Neeham whether or not Plaintiff was sexually spanked and sexually assaulted by … Tamasi in mid-2020." (SAC ¶ 18.)

Rather, the first time Lee raised her complaint about Tamasi's having spanked Lee was on March 25, 2021, during a call with EO-HR Manager Kelly Nabors.  During that call, Lee lodged a formal complaint that Tamasi had continued to sexually and racially harass her since April 2019 and spanked Lee in mid-2020 "because Delta refused to intervene."  (SAC ¶ 19.)  During that call, as well as in February, April, May, and June 2021, Lee again requested a reasonable accommodation that went unfulfilled.  (SAC ¶¶ 19, 21, 43.)  Lee alleges that the accommodation she requested was for a chair to sit on while performing her job and/or a transfer to a vacant cargo agent job.  (SAC ¶¶ 44, 52.) Lee further alleges that she reported to Nabors that Delta was intentionally violating New York State Workers Compensation Law by failing to provide workers' compensation insurance coverage.  (SAC ¶ 170.)

On March 26, 2021, Delta notified Lee by email that she was suspended without

pay.[2]  The email, from Delta HR Manager Danielle Kruit, noted that Lee was currently on voluntary leave and scheduled to return on May 1, 2021.  However, the email informed Lee that she was suspended effective immediately, "pending an investigation into dishonest behavior in which [Lee was] alleged to have engaged," and that Lee must cooperate with the investigation.  (SAC ¶ 20 and Ex. 1 at ECF 32; *see also* ¶ 44.)

On March 30, 2021, Lee sent an email to Kruit.  Lee's email claimed that the suspension was retaliation for her complaining about Tamasi's sexual  harassment.  Lee also referred to her suspension in April 2019 and also retaliation in 2018, and she again accused Delta of not accommodating her disability but did not specify her disability or requested accommodation.  Lee claimed that Delta discriminated against her on the basis of her race and gender and that white women employees who opposed sexual harassment by non-white men were not retaliated against whereas black women, including Lee and one other woman, were called dishonest and retaliated against.   (SAC Ex. 4 at ECF 40-41; *see also* SAC ¶ 62 (identifying several women by name who were not suspended or terminated when opposing sex discrimination).)  Lee's email made no accusation of retaliation in connection with Lee's having reported Delta's supposed lack of workers' compensation insurance coverage.

On April 1, 2021, Lee had a phone call with Nabors and Kruit.  Lee alleges that one or both of them told Lee that Delta "already investigated Tamasi spanking you in April 2019 and this issue was addressed already."  Lee responded that "it was impossible for Delta to have investigated [her] being spanked by Tamasi at any time in 2019 because

---

[2] Lee alleges that in March 2021 she entered into a contract with Delta to work as a full-time employee in July 2021.  (SAC ¶ 101.)  She has not alleged any information to support that conclusory allegation.

Case 1:22-cv-08618-DEH-RWL    Document 96    Filed 07/29/24    Page 6 of 62

[Lee] was not spanked until mid-2020." (SAC ¶ 25.) The following day, Lee sent an email to Kruit, copying Nabors. (SAC ¶ 56 and Ex. 3 at ECF 37.) Lee's email again mentioned her having asked for a reasonable accommodation in February and March 2021 without Delta engaging "in the interactive process." (SAC Ex. 3 at ECF 37.) Although Lee alleges that her April 2, 2021 email requests either a "chair" or a "transfer" as a reasonable accommodation (SAC ¶ 56), the email mentions neither. The email also accused Delta of invading her privacy. (SAC Ex. 3 at ECF 37.)

Over two months later, on June 8, 2021, while still suspended, Lee sent an email to Kruit again referring to her request for reasonable accommodation. Lee stated that she had asked Needham in February 2021 for transfer to a cargo position in California. Lee referred to her disability as "mobility impairment" but explained that she wanted to transfer to a cargo position because she "was allowed to sit down for almost the entire time." (SAC Ex. 2 at ECF 34-35.)

On June 11, 2021, Kruit responded to Lee's email. In the email, Kruit stated that Lee had taken a personal convenience leave of absence at her own request and had been set to return on May 1, 2021, but was suspended on March 26, 2021 pending an investigation into a complaint that Lee had made false statements in relation to Delta. The email indicated that the investigation was continuing. As to Lee's request for accommodation, Kruit noted that "Delta has no records of you requesting a transfer from your New York (JFK) position during the time you were on leave of absence." Kruit explained that Delta would not consider a transfer request made while Lee was on suspension but that if Lee were taken off suspension and returned to active status, "such a request would be reviewed and considered at that time." (SAC Ex. 2 at ECF 34.)

### C.    2021 – Termination

Lee remained suspended without pay until her termination, also an alleged act of

retaliation, on June 17, 2021.  (SAC ¶¶ 22-23.)    That day, Kruit sent an email to Lee

informing her of her termination and gave as reasons that Lee had not cooperated with

the investigation by failing to respond to a call requesting more information and that she

had been dishonest in regard to her reporting of Tamasi's behavior:

> Notwithstanding the lack of information or cooperation from
> you, we took steps to look into your new claims.  We note in
> April 2019, when you worked at [LaGuardia Airport], you
> made complaints regarding a variety of matters, including
> allegations against Ms. Tamasi.    Those complaints were
> investigated at the time, however, at that time, you did not
> raise the allegations you now have raised against Ms. Tamasi,
> including but not limited to the allegation that she "spanked"
> you.  Ms. Tamasi denies your claims and we find her credible.
> We do not find your allegations credible. … Based on the
> foregoing, we do not believe that the conduct alleged occurred
> and we are closing this matter.

(SAC Ex. D at ECF 30.)

Another email dated June 17, 2021, sent to Lee from Jose E. Rosado of Delta,

also informed Lee of her termination.  It too stated the reasons for Lee's termination as

dishonesty and insubordination for failing to cooperate in the investigation.  But Rosado's

email set forth a different, although related, incident of Lee's dishonesty than the incident

recounted in Kruit's email.   The email specifically referenced Lee's telephone call with

Needham on February 19, 2021:

> We received information that you falsely represented that you
> had had a conversation with David Needham (Senior Human
> Resources Manager for JFK in New York) on February 19,
> 2021 in which you allegedly made a variety of statements
> concerning an investigation he was conducting into
> complaints raised by you regarding another employee who
> worked in LaGuardia (LGA) in New York while you worked at

> LGA with her. … Based on the information we have collected
> at this time, your evasive demeanor during our interview and
> written exchanges, and the lack of cooperation by you during
> this investigation, we do not believe the alleged conversation
> with David occurred.    We also believe that your
> misrepresentation of that conversation was intentional.

(SAC Ex. B at ECF 28, 29.)

Lee asserts that Delta's reasons for termination are baseless.  (SAC ¶ 24.)

**D.    Defamation**

Lee alleges that Delta managers Needham, Kruit, Nabors, and Rosado "published" the March 26, 2021 and June 17, 2021 emails informing Lee of her suspension and termination by sending them to other Delta employees and to third parties.  (SAC ¶¶ 30-33.)  She claims third parties included Southwest employees and Jet Blue employees.  (SAC ¶¶ 30-31.)  But none of the third-party names Lee mentions are included as recipients or otherwise referenced in the emails to which Lee's allegations refer.  (Compare SAC ¶¶ 31-36 with Ex. A at ECF 27, Ex. B at ECF 28, Ex. F at ECF 31, and Ex 1 at ECF 32.)  Lee claims that Rosado sent his June 17, 2021 email informing Lee of her termination while he was an employee at JetBlue.  (SAC ¶¶ 32, 40.)  As support, Lee cites to Rosado's LinkedIn account showing that prior to becoming a Delta employee in June 2021, he was an employee at Jet Blue.  (SAC ¶ 32 and Ex. F at ECF 31.)  Elsewhere in the SAC, Lee alleges that Rosado was employed by Jet Blue at the beginning of June 2021.  (SAC ¶ 140.)

Lee also alleges that on or around June 17, 2021, the same day she received a termination email from Rosado, Rosado informed her that Needham had informed Rosado when he was still working at JetBlue that "Delta was made aware that Erika Lee has an Only Fans page where she performs daily sex acts on camera with random men

for money and then gets paid more money by her subscribers who have a fetish for big black women." (SAC ¶ 138.) The statement attributed to Needham is false. (SAC ¶ 139.)

Additionally, Lee claims that in July 2021, Delta HR Managers Wendy Chau and Richard Lorich made statements to third parties, including a Southwest employee, that Lee is "a liar and a fraud who got caught lying and committing workers compensation fraud on Delta by faking workplace injuries for years to both steal money from Delta and to get paid time off from Delta." Further, Lee says, Chau and Lorich said Lee "is going to jail" and that "one of the LAX gate agents was like the fifth person to tell me this story." (SAC ¶ 35.) Lee does not allege by what means Chau and Lorich made such statements or how Lee even became aware of them.

Lee also claims that in July 2021, Rosado made false statements about Lee to JetBlue manager Erik Hildebrandt that Rosado "fired Erika Lee from Delta because she is a liar and a fraud, who has a documented history of being an incompetent, uncooperative, and insubordinate employee." (SAC ¶¶ 37, 41.) Lee purports to have witnessed Hildebrandt republish Rosado's statements to two individuals named John Gurneye and Aasir Azzarmi. (SAC ¶ 38.) Lee claims to have then sent an email on July 19, 2021 to Rosado demanding that he stop making false statements to third parties. (SAC ¶ 39.) Lee does not attach any such email to her pleading.

## PROCEDURAL BACKGROUND

Prior to bringing the instant action, Lee filed suit against Delta in the United States District Court for the Central District of California. *Lee v. Delta Air Lines Inc.*, No. 20-CV-8754 (C.D. Cal.) ("*Lee I*"). In that case, Lee asserted various federal and state claims arising from many of the same facts alleged in the instant case. On May 13, 2022 – after

9

Lee's filing of four amended complaints, and multiple failures to comply with the Rules of Civil Procedure, the district's Local Rules, and the Court's previous orders to adhere to the pleading rules – the court granted Delta's motion to dismiss the entire action.  (*See Lee I* Dkts. 29, 56, 139, 157.)

Lee then filed the instant action in New York state court on June 13, 2022, and Delta filed a notice of removal on October 11, 2022.  (Dkt. 1.)  On January 11, 2023, Delta moved to dismiss the case with prejudice on the basis that Lee's claims were barred by the California action pursuant to the doctrine of res judicata.  (Dkt. 25.)  The Court denied Delta's motion on June 8, 2023, as the California action was not an adjudication on the merits.  (Dkt. 53.)

Lee filed the SAC on July 6, 2023.  The SAC alleges 10 claims for relief:  (1) race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL) (Counts I and IV); (2) gender discrimination, sexual harassment, and hostile work environment in violation of NYSHRL and NYCHRL (Count II); (3) retaliation in violation of Section 1981, NYSHRL, and NYCHRL (Count III); (4) failure to accommodate a disability in violation of NYSHRL and NYCHRL (Count V); (5) failure to engage in cooperative dialogue in violation of NYSHRL and NYCHRL (Count VI); (6) defamation / defamation per se (Count VII); (7) negligence / negligence per se (Count VIII); (8) negligent infliction of emotional distress (Count IX); (9) sexual battery / battery (Count X); and 10 whistleblower retaliation in violation of the New York Labor Law §§ 215 and 740 (Count XI).  Lee seeks declaratory relief, reinstatement, and $60 million in  lost wages and benefits, compensatory damages, punitive damages, pre-judgment interest, attorney's fees and costs.  (SAC at ECF 25.)

On February 22, 2024, Delta filed the instant motion to dismiss.[3]  (Dkt. 84.)  Delta asserts that each of Lee's purported claims fails to state a plausible claim for relief.  Delta further argues that many of Lee's allegations are contradicted by the documents she attached to and referenced in the SAC, and that some of the factual events alleged are fabrications as Delta previously determined during its investigation of Lee's complaints.

Lee initially filed an opposition brief on February 27, 2024, that, at the equivalent of 66 pages double-spaced, exceeded the 25-page limit for principal briefs set by this Court's individual rules.  (Dkt. 86.)  The Court granted Defendants' motion to strike Lee's brief, noting that Lee, although pro se, "is no stranger to the importance of complying with procedural rules, having been chastised many times for violations in her previous case in federal court in California, which was dismissed for failing to comply with such rules."  (Dkt. 89.)  Then, in response to the Court's order that Lee could refile an opposition brief of no longer than 25 double-spaced pages, Lee again transgressed by filing a 25-page, double-spaced brief together with what purported to be a 17-page declaration, 13 pages of which is single-line spaced and comprised largely of material that appeared previously in Lee's stricken brief.  (Dkt. 90.)  Defendant again moved to strike, and the Court struck pages 26-42 of Lee's improper filing, noting that Lee had yet again acted with "flagrant defiance of the Court's rules and orders."  (Dkt. 93.)

The motion is now fully briefed, and the matter has been referred to me for a report and recommendation.  (Dkt. 10.)

---

[3] Although Delta previously filed a motion to dismiss on res judicata grounds, the Court granted Delta permission to file a second motion to dismiss.

**LEGAL STANDARDS**

A.    **Motion to Dismiss For Failure To State A Claim**

Federal Rule of Civil Procedure 12(b)(6) permits motions to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (*quoting Twombly*, 550 U.S. at 557).

In considering a motion to dismiss for failure to state a cause of action, a district court "accept[s] all factual claims in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."  *Lotes Co., Ltd. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  This tenet, however, is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678. "Rather, the complaint's [f]actual allegations must be enough to raise a right to relief above the speculative level ... i.e., enough to make the claim plausible."  *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court generally is confined to the facts alleged in the complaint. *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider additional materials, including documents attached to the complaint, documents incorporated into the complaint by reference, and public records.[4] *See Kleinman v. Elan Corp., PLC*, 706 F.3d 145, 152 (2d Cir. 2013) (quoting *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). And, if "a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Group Inc.*, No. 11-CV-559, 2012 WL 1027639, at *2 (S.D.N.Y. March 27, 2012) (citing *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)); *Amidax Trading Group v. S.W.I.F.T. SCRL*, 607 F. Supp.2d 500, 502 (S.D.N.Y. 2009), *aff'd*, 671 F.3d 140 (2d Cir. 2011).

Similarly, courts are under no obligation to accept as true allegations that are internally inconsistent, *e.g., Pierce v. Fordham University, Inc.*, No. 15-CV-4589, 2016 WL 3093994, at *2 n.1 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ("It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the

---

[4] As she did in connection with Delta's first motion to dismiss, Lee asserts that Delta's motion should be converted into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d). (Response In Opposition To Defendants' 12(b)(6) Motion To Dismiss ("Lee Mem."), Dkt. 90 at 2.) And, as with the first motion, conversion to a summary judgment motion is unwarranted. The instant motion relies on the documents Lee attached to the SAC as well as judicial filings of which the Court may take judicial notice. Accordingly, there is no need to convert the motion to one for summary judgment.

pleadings as true in deciding a motion to dismiss) (internal quotation marks and citation omitted), or that conflict with a plaintiff's prior allegations, *e.g.*, *Palm Beach Strategic Income, LP v. Salzman, P.C.*, No. 10-CV-261, 2011 WL 1655575 at *5-7 (E.D.N.Y. May 2, 2011), *aff'd*, 457 F. App'x 40 (2d Cir. 2012) (declining to accept plaintiff's new allegations that conflicted with those in three previous versions of plaintiff's complaint and granting defendant's motion to dismiss).

B.    **Review Of *Pro Se* Pleadings**

"*Pro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Federal Bureau Of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)). "[T]he Second Circuit, as a general matter, is solicitous of *pro se* litigants, enforcing standards of procedural leniency rather than holding them to the rigidities of federal practice." *Massie v. Metropolitan Museum of Art*, 651 F. Supp.2d 88, 93 (S.D.N.Y. 2009); *see also Weixel v. Board of Education*, 287 F.3d 138, 141 (2d Cir. 2002) (reversing dismissal where district court failed to construe pro se plaintiff's complaint liberally); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) ("Once a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel.").

The Court has applied those standards in reviewing the SAC. Moreover, the Court has taken into consideration factual assertions in Lee's opposition brief. *See Adkins v. City of New York*, No. 19-CV-3628, 2020 WL 2950979, at *5 (S.D.N.Y. Jan. 3, 2020) (stating that "the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition

memorandum to supplement the allegations in the complaint") (internal quotation marks omitted) (collecting cases), *R. & R. adopted*, 2020 WL 1031130 (S.D.N.Y. March 3, 2020).

That said, "*pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (internal quotation marks and citation omitted).  Thus, "even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level,'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965), and must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Perry v. Mary Ann Liebert, Inc.*, 765 F. App'x 470, 473 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974); *see also Cagle v. Weill Cornell Medicine*, 680 F.Supp.3d 428, 434 (S.D.N.Y. 2023) ("pro se plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible").

## DISCUSSION

### A.    Discrimination Based On Race Or Gender (Counts I, II, & IV)

Lee asserts claims for racial discrimination under 28 U.S.C. § 1981 (Count IV) and racial and gender discrimination under the NYSHRL and NYCHRL (Counts I and II).[5] (SAC ¶¶ 58-84, 96-114.)

---

[5] Count II also includes claims for sexual harassment and hostile work environment under the NYSHRL and NYCHRL, both of which are discussed below.

### 1.   Applicable Legal Standards

Section 1981, a civil rights statute, guarantees non-white citizens equal protection of the law and the same right to make and enforce contracts.[6]  "[T]he NYSHRL similarly prohibits employers from 'discriminating against [an] individual in compensation or in terms, conditions or privileges of employment.'" *Tolbert v. Smith*, 790 F.3d 427, 436 (2d Cir. 2015) (quoting N.Y. Exec. Law § 296(1)(a)).   The pleading requirements for employment discrimination claims pursuant to Section 1981 and the NYSHRL are generally the same.  *Bautista v. PR Gramercy Square Condominium*, 642 F. Supp.3d 411, 424 (S.D.N.Y. 2022); *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *16 (S.D.N.Y. Oct. 24, 2020).  At this early stage of the litigation, the plaintiff's prima facie requirements are "relaxed." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  Specifically, at the pleading stage, the Court does not "'require a plaintiff to plead facts establishing a prima facie case.'" *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).  Instead, "absent direct evidence of discrimination," to survive a motion to dismiss, a plaintiff must plead facts sufficient to show that she "(1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by

---

[6] The statute reads in part:  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 28 U.S.C. § 1981(a).

discriminatory intent." *Buon*, 65 F.4th at 79 (internal quotation marks and citation omitted).[7]

The NYCHRL applies a more liberal standard than the NYSHRL or federal discrimination law.   "Section 8-107(1)(a) of the NYCHRL makes it 'an unlawful discriminatory practice for an employer or an employee or agent thereof, because of the [protected characteristic] of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.'" *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting N.Y.C. Admin. Code § 8-107(1)(a)) (brackets and ellipsis omitted).   More succinctly, the NYCHRL requires a plaintiff to establish that she "was subject to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic."   *Baptiste v. City University of New York*, 680 F.Supp.3d 415, 422 (S.D.N.Y.  2023) (quotation marks and citation omitted).  Notwithstanding the more liberal NYCHRL standard, threadbare allegations are insufficient to state a claim for discrimination even under the more permissive NYCHRL standard.   *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 509 (2d Cir. 2020).   And, as with Section 1981 and the NYSHRL, "an NYCHRL plaintiff must still allege facts supporting an inference of

---

[7] Although *Buon* addressed a claim of discrimination pursuant to Title VII, "[c]ourts in this Circuit analyze federal and state discrimination claims together, and apply the same standard of proof with respect to both Title VII and NYSHRL claims. *Lambert v. Trump International Hotel & Tower*, 304 F. Supp.3d 405, 417 (S.D.N.Y. 2018) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003)); *see also Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) ("claims under Title VII and the NYSHRL 'are generally treated as 'analytically identical,' and addressed together.'" (quoting *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)).

discrimination" to survive a motion to dismiss. *Baptiste*, 680 F.Supp.3d at 422 (citing *Cooper v. Franklin Investors*, 22-CV-2763, 2023 WL 3882977 (2d Cir. June 8, 2023)).

At least for purposes of the instant motion, Delta does not contest that Lee is a member of a protected class or qualified for her position. The Court therefore addresses the other elements of Lee's prima facie case of discrimination: adverse action and inference of discrimination.

### 2. Adverse Employment Action

An adverse employment action has been described as "a materially adverse change in the terms and conditions of employment such as termination, demotion evidenced by a decrease in salary or wage, being given a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or some other action deleterious to the plaintiff's current or future employment."[8] *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 43 (2d Cir. 2019) (quotation, citations, and emphasis omitted). Lee alleges three such adverse actions: her alleged two-week suspension in

---

[8] On April 17, 2024, the Supreme Court held that to establish the adverse action prong of a Title VII discrimination claim, a plaintiff alleging that she was discriminatorily transferred from one job to another only "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024). The Court went on to clarify that, "the transferee does not have to show … that the harm incurred was significant … or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Id*. To the extent that standard carries over to § 1981, it is uncertain whether the Supreme Court's "some" harm standard and overruling of the "material" harm standard applies to discrimination claims beyond the involuntary transfer context. It may well. *See Anderson v. Amazon.com, Inc.*, No. 23-CV-8347, 2024 WL 2801986, at *10 (S.D.N.Y. May 31, 2024) (concluding that materiality is not required even outside the transfer context). Regardless, the adverse actions alleged by Lee – suspension and termination – satisfy either standard.

April 2019, her suspension on March 26, 2021, and termination on June 17, 2021. (Lee Mem. at 7.)

Delta does not argue that the 2021 suspension and termination are not adverse employment events. Delta does, however, advance two arguments as to why the alleged April 2019 suspension may not serve as an actionable adverse action. Neither argument passes muster. First, Delta argues that the alleged April 2019 suspension falls outside the three-year statute of limitations for NYSHRL and NYCHRL claims because Lee filed the instant action on June 13, 2022.[9] (Delta Mem. at 7.[10]) Lee correctly points out, however, that during the Covid-19 pandemic, Governor Cuomo signed an executive order tolling the statute of limitations for what became a period of 228 days. *See* N.Y. Comp. Codes R. & Regs. Tit. 9 §§ 8.202.67, 8.202.8 (2020) (tolling the statute of limitations for state law claims from March 20, 2020 through November 3, 2020); *Perez v. City of New York*, No. 23-CV-0447, 2024 WL 898943, at *7 (S.D.N.Y. Feb. 29, 2024) (calculating total tolling period as 228 days). As a result, the limitations date for Lee's state law discrimination claims is pushed back to on or about October 28, 2018, thus rendering timely her claim based on the alleged April 2019 suspension.

Delta's second argument, raised on reply, fares no better. Delta asserts that the alleged April 2019 suspension is a complete fabrication that never happened and which

---

[9] As Delta acknowledges, the Section 1981 claim is governed by a four-year statute of limitations, which period encompasses the alleged April 2019 suspension. (*See* Delta Mem. at 7 (citing *Paupaw-Myrie v. Mount Vernon City School District*, 653 F. Supp.3d 80, 95 (S.D.N.Y. 2023)).)

[10] "Delta Mem." refers to Memorandum Of Law In Support Of Delta's Motion To Dismiss The Second Amended Complaint filed Feb. 22, 2024 at Dkt. 84.

the Court should disregard.  (Delta Reply at 2-3.[11])  As support, Delta notes the absence of any corroborating documentary material (as distinct from the 2021 suspension and termination emails attached to the SAC) and the absence of any such allegation in the "first and second iterations" of the pleadings Lee filed in *Lee I*.  Delta relies on the legal proposition that the Court need not rely on alleged facts contradicted by other pleadings or documents upon which the pleadings rely or for which the Court may take judicial notice.  (*Id.*)  Although, as discussed below, that principle is fatal to some of Lee's claims, it is not in this instance.  A reasonable inference can be drawn that Lee would be less likely to have retained a notice of suspension from 2019 than from 2021 when she was terminated; not to mention, that, depending on the context, the mere absence of a document does not mean that the event did not happen.  And while omission of the alleged 2019 suspension from her initial pleadings in *Lee I* casts suspicion over Lee's addition of it in later pleadings, the Court cannot conclude that they are fatally contradictory on the present record.  Accordingly, all three alleged adverse actions remain at issue.

### 3.  Inference Of Discrimination

Delta's principal argument as to why Lee's discrimination claims should be dismissed is that she has not plausibly pled facts "suggesting that she was suspended or terminated because of her race or gender."  (Delta Mem. at 7.)  Put differently, Lee has not "connected any adverse action to illegal discrimination."  (Delta Reply at 3.)  At the pleading stage, the plaintiff bears only a "minimal burden of showing facts suggesting an

---

[11] "Delta Reply" refers to Reply Memorandum Of Law In Further Support Of Defendant's Motion To Dismiss filed May 14, 2024 at Dkt. 94.

inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311. The inference "can arise from circumstances including ... the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Id*. at 312. "[A]n inference of discrimination also arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Id*. at 312–13 (citations omitted). "[T]he inference should not be used to foreclose [discrimination] claims at the motion-to-dismiss stage if the plaintiff has otherwise set forth allegations that support a plausible inference of discrimination." *Buon*, 65 F.4th at 85.

The SAC does not meet even the minimal burden required to plausibly raise an inference of discrimination based on race or gender with respect to the adverse actions alleged. Lee does not allege that Delta replaced her with a non-Black or male employee. She does not allege that supervisors criticized her performance in ethnically or gender-based degrading terms. Nor does she allege that her supervisors made invidious comments about other Black or female employees. To be sure, the alleged statements and conduct by Tamasi are crude and both sexually and racially charged (*see* SAC ¶¶ 9, 13-14), but Lee has not alleged that Tamasi had anything to do with Lee's alleged suspension in 2019 or her suspension and termination in 2021. *See Toney v. Probation Department*, 2016 WL 859381, at *5-6 (E.D.N.Y. Jan. 28, 2016), *R. & R. adopted*, 2016 WL 868206 (E.D.N.Y. March 4, 2016) ("Because by definition, non-decisionmakers play no part in the decision to terminate employment, their biases generally provide no basis for imputing to the decisionmaker an invidious motivation for the discharge") (internal

quotation marks and brackets omitted); *Soloviev v. Goldstein*, 104 F. Supp.3d 232, 249 (E.D.N.Y. 2015) (dismissing discrimination claims in part because plaintiff failed to allege that "anyone with control over the decision to fire [the plaintiff] made [the alleged discriminatory] comments").

Instead, the inference of discrimination that Lee seeks to draw is based on her allegations that other similarly situated employees were not suspended or terminated for similar conduct.  Although not entirely clear, Lee appears to identify two types of similarly situated employees: those who opposed discriminatory or other illegal conduct, and those who Delta "alleged engaged in dishonesty and/or insubordination." (Lee Mem. at 16-17.) As to the first category, Lee alleges "[s]imilarly situated non-black female Delta comparators such as Erin Pieroni, Delgado, Eileen Kosakowski, Maria Tamburrini, Donna LaCrioux, Priscilla Ivanoff, Hosana Wurtz, etc., because of their race, were not suspended or terminated when opposing sex discrimination," retaliation, or hostile work environment. (SAC ¶¶ 62, 63, 96.)   And in opposing Delta's motion, Lee argues that the Court cannot dismiss any of her discrimination claims because the "SAC raised an inference of discrimination based on [Delta]'s treatment of other similarly situated individuals," both non-black and male who were not suspended or terminated when opposing discrimination.  (Lee Mem. at 16.)  With respect to the second category of employees, Lee asserts that she identified "similarly situated non-black comparators (Ivanoff, Wurtz, Roy, Sullivan, Kosakowski) who Delta alleged engaged in dishonesty and/or insubordination, and were not suspended without pay and/or terminated", and that Lee "only had to make a showing of similarly situated comparators who Delta believed were

dishonest or honest when opposing a sexually hostile work environment." (Lee Mem. at 17.)

Under either category, the SAC fails to plausibly plead facts that, if true, would establish that any of the employees Lee names were similarly situated to her. Lee's allegations merely recite the "similarly situated" standard and assert no facts that would allow the Court to determine that the persons identified were similarly situated to Lee. "Comparators must be similarly situated 'in all material respects' – they must be 'subject to the same performance evaluation and discipline standards' as [the plaintiff] and must have engaged in 'comparable conduct.'" *Balogun v. New York State Division of Human Rights*, 2023 WL 8446743, at *2 (2d Cir. Dec. 6, 2023) (quoting *Graham v. Long Island Railroad*, 230 F.3d 34, 39-40 (2d Cir. 2000)). This requires "a reasonably close resemblance of ... facts and circumstances." *Graham*, 230 F.3d at 40.

Neither the SAC nor Lee's opposition brief identifies anything to plausibly indicate that any of the individuals she names were subject to the same standards governing performance or discipline or that they engaged in comparable conduct. The SAC alleges nothing about the performance and discipline standards applicable to either Lee or any of the other individuals she names; nor does the SAC offer any factual allegations about the conduct of the other individuals to plausibly plead that they engaged in conduct comparable to that of Lee other than generally opposing discrimination. The SAC also does not identify any individual's position, job responsibilities, business unit, geographical location, or other indicia from which the Court could reasonably infer that they were similarly situated. *See Cooper v. Templeton*, 629 F. Supp.3d 223, 231 (S.D.N.Y. 2022) (stating that "Plaintiff has not pled that she and the three comparators she has identified

were similarly situated in terms of position, seniority, job responsibilities, business unit, performance, length of experience, or even geography, and "thus failed to demonstrate that her selected comparators were subject to the same performance evaluation and discipline standards") (quotation marks and citation omitted), *aff'd sub nom. Cooper v. Franklin Templeton Investors*, No. 22-2763-CV, 2023 WL 3882977 (2d Cir. June 8, 2023); *Littlejohn*, 795 F.3d at 312 ("to the extent Littlejohn attempts to rely on adverse employment actions taken against other employees who worked for different agencies and who had different jobs … the district court correctly concluded that adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination"); *cf. Brown v. Daikin America Inc.*, 756 F.3d 219, 230-31 (2d Cir. 2014) (finding discrimination claim plausible where plaintiff alleged that he worked in the New Business Development Group with three Japanese employees, two of whom reported to the same supervisor as he did).  And with respect to the second category of allegedly similarly situated employees in particular, the SAC does not allege whether Delta found, as it did with Lee, that the employee had actually engaged in the misconduct with which they were charged.  If Delta had found the charges unsubstantiated, then the fact that the employee was not suspended or terminated is meaningless as a comparison.[12]

The SAC does not even minimally connect Lee's race and gender to her suspensions and termination and thus fails to assert a plausible claim for either racial or

---

[12] To be clear, for purposes of the instant motion, the Court does not accept Delta's assertions that Lee in fact engaged in dishonesty and insubordination.  Lee asserts that Delta's findings that Lee was dishonest and insubordinate were false and merely pretext for terminating her.  (Lee Mem. at 13-14.)  That is a disputed issue, and pretext is not a required element of Lee's prima facie case.

gender discrimination.  Counts I and IV should be dismissed, as should that portion of count II alleging gender discrimination.

**B.**     **Sexual Harassment And Hostile Work Environment (Count II)**

In Count II of the SAC, Lee alleges that Delta is liable for sexual harassment and a hostile work environment under both the NYSHRL and NYCHRL based on Tamasi's words and conduct toward Lee and Delta's failure to redress the matter.  These claims should not be dismissed.

**1.**     **Sexual Harassment And Hostile Environment Legal Standards**

"A plaintiff seeking relief against an employer for sexual harassment in the work place can proceed under two theories: quid pro quo harassment and a hostile work environment."  *Distasio v. Perkin Elmer Corp*., 157 F.3d 55, 62 (2d Cir. 1998) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64-65 (1986)). "The so-called quid pro quo sexual harassment occurs when an employer alters an employee's job conditions or withholds an economic benefit because the employee refuses to submit to sexual demands. The second type of sexual harassment, called hostile environment, occurs when an employer's conduct 'has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.'"  *Bermudez v. City of New York*, 783 F. Supp.2d 560, 579 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *Carrero v. New York City Housing Authority*, 890 F.2d 569, 577 (2d Cir.1989)).

"Whether a claim in a complaint is cast as alleging sexual harassment or hostile work environment, the defendant's offending conduct must have been keyed to a protected characteristic of the plaintiff."  *Yost v. Everyrealm, Inc.*, 657 F. Supp.3d 563,

578 (S.D.N.Y. 2023) (collecting cases).  To state a sexual harassment claim under the NYCHRL, a plaintiff need only demonstrate "'that she has been treated less well than other employees because of her gender.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) (quoting *Mihalik*, 715 F.3d at 110); or, put differently, that she "was subjected to 'unwanted gender-based conduct.'" *Id.* (quoting *Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15-CV-1398, 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015)).  A plaintiff need not establish that discriminatory animus was the but-for cause or even the primary motivation of their alleged mistreatment, only that they were "'treated less well at least in part because of [their] gender.'" *Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F. Supp.3d 173, 182 (S.D.N.Y. 2023) (quoting *Mihalik*, 715 F.3d at 110 (emphasis omitted)).  Unlike federal law under Title VII, actionable conduct under the NYCHRL need not be severe or pervasive.  *See Mihalik,* 715 F.3d at 114 (reversing dismissal of NYCHRL claim because district court applied Title VII standards).

At the same time, "district courts must be mindful that the NYCHRL is not a general civility code," *McHenry*, 510 F. Supp.3d at 66, and does not apply to conduct that "a reasonable victim would consider petty slights and trivial inconveniences," *Williams v. New York City Housing Authority*, 61 F.4th 55, 69 (2d Cir. 2023) (citation omitted); *see*, *e.g., Magnoni v. Smith & Laquercia, LLP*, 701 F. Supp.2d 497, 505–06 (S.D.N.Y. 2010) (finding that a plaintiff could not sustain a sexual harassment claim under the NYCHRL where her supervisor "[told] a crude anecdote from his sex life with another woman, and occasionally refer[ed] to [the plaintiff] as voluptuous and knock[ed] her knee"); *Ellis v. City of New York*, No. 08-CV-7605, 2011 WL 3279057, at *8 (S.D.N.Y. July 28, 2011) (finding

the defendant's sniff and kiss of the plaintiff's hand to be a petty slight).  "Generalized hostility or generally uncivilized behavior is not actionable."  *Yost*, 657 F. Supp.3d at 580.

Until about five years ago, the standards for asserting sexual harassment or a hostile work environment under the NYSHRL were the same as those under Title VII and required a showing of severe or pervasive conduct.  *Yost*, 657 F.Supp.3d at 578 (citing *Williams,* 61 F.4th at 68–69; *McHenry*, 510 F. Supp.3d at 66)).  Specifically, to prevail on a NYSHRL hostile work environment claim, a plaintiff was required to establish "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and [2] that a specific basis exist[ed] for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (internal quotation marks and citations omitted).

"The hostile work environment test has both objective and subjective elements. The conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *McHenry*, 510 F. Supp.3d at 65 (internal quotation marks and alteration omitted) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)). "In determining whether a plaintiff suffered a hostile work environment," the Court "must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *McHenry,* 510 F. Supp.3d at 65 (citing *Love v. Premier Util. Servs., LLC*, 186 F. Supp. 3d 248, 253 (E.D.N.Y. 2016)). "As a general rule, incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed

pervasive.'" *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002)).

Effective October 11, 2019, however, the NYSHRL was amended to adopt "a more lenient standard of liability that has been likened to that of the NYCHRL." *Yost*, 657 F. Supp.3d at 578 (citing *Mondelo v. Quinn, Emanuel, Urquhart & Sullivan, LLP*, No. 21-CV-02512, 2022 WL 524551, at *9 (S.D.N.Y. Feb. 22, 2022)) (noting that amendment removed "severe and pervasive" requirement)).  Under the amended statute, a plaintiff need only show that she was subjected "to inferior terms, conditions or privileges of employment because of [her] membership in one or more … protected categories." N.Y. Exec. Law § 296(1)(h); *Wheeler v. Praxair Surface Technologies, Inc.*, 694 F.Supp.3d 432, 451 (S.D.N.Y. 2023). "This more lenient standard brings state law closer to the standard to establish a hostile work environment claim under the [NYCHRL], under which a plaintiff need only show that he was treated 'less well than other employees' because of their protected class."[13] *Wheeler*, 694 F. Supp.3d at 451.  The amended NYSHRL, however, is not retroactive and therefore does not apply to conduct preceding the amendment's effective date, October 11, 2019. *Id.* at 452; *McHenry*, 510 F. Supp.3d at 68-69; *Wellner v. Montefiore Medical Center*, No. 17-CV-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019); *see also Phillips v. Fashion Institute of Technology*, No. 23-

---

[13] "The case law … has yet to definitively resolve whether the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler*, 694 F. Supp.3d at 451; *see also Yost*, 2023 WL 2224450, at *11.  The parties' briefs do not engage with this issue.  "The Court will assume arguendo, for purposes of this motion, that the amended NYSHRL tracks the NYCHRL, without prejudice to [Defendant]'s right to later attempt to demonstrate that NYSHRL sets a more rigorous standard."  *Wheeler*, 694 F. Supp.3d at 452.

375, 2024 WL 1005500, at *1 n.1 (2d Cir. March 8, 2024) (in summary order, applying pre-amendment NYSHRL standard to cause of action accruing before effective date).

Some of the alleged acts of sexual harassment alleged by Lee, namely those in April 2019 and the ensuing five months, occurred before the amendment's effective date, and some, namely those in mid-2020 and later occurred after the effective date.  Courts have taken different approaches to what standard or standards apply in similar situations where the alleged offending acts straddle the effective date of the NYSHRL amendment. Some courts have evaluated conduct occurring before October 11, 2019 under the more restrictive NYSHRL standard, while evaluating conduct that occurred after October 11, 2019, under the more lenient amended NYSHRL standard.  *See, e.g., Wheeler*, 694 F. Supp.3d at 453-55; *Syeed v. Bloomberg L.P.*, 568 F.Supp.3d 314, (S.D.N.Y. 2021) (same), *rev'd on other grounds*, 2024 WL 2813563 (2d Cir. June 3, 2024).  Others have defaulted to applying the post-amendment standard to conduct both pre-dating October 11, 2019 and conduct post-dating October 11, 2019.  *See, e.g.*, *Mercado v. Mount Sinai Beth Israel*, No. 21-CV-10467, 2023 WL 5975322, at *7 n. 12 (S.D.N.Y. Sept. 14, 2023) (stating that "[o]ut of an abundance of caution, the Court will apply the lower NYCHRL standard to Plaintiff's NYSHRL discrimination, hostile work environment, and retaliation claims for purposes of this Opinion" and citing cases for the proposition that the NYCHRL sets a floor such that a plaintiff's claims rise or fall with the NYCHRL claim and standard). Still other courts have skirted the issue by finding that the alleged conduct violated both the less restrictive and more restrictive standards.  *See, e.g.*, *Ahmad v. New York City Health and Hospitals Corporation*, No. 20-CV-675, 2021 WL 1225875, at *12 n.5 (S.D.N.Y. March 31, 2021) (stating that "the Court does not have occasion to consider

the consequence of any conduct that straddles the amendment's effective date ... because [plaintiffs] have stated claims under the more rigorous pre-amendment standard"). As explained below, the Court finds that the allegations of the SAC, if proven, meet both the pre- and post-amendment NYSHRL standards. Accordingly, as in *Ahmad*, the Court need not resolve the "straddle" issue.

> **2.    Application To Lee's Claim Of Sexual Harassment And Hostile Work Environment**

Lee's claim for sexual harassment and hostile work environment centers on the conduct of Delta employee Tamasi. According to the SAC, at least some time during or prior to April 2019, Tamasi demanded that Lee "look sexy" and wear heeled shoes because Tamasi wanted "to see them big ass black ass cheeks switching when you walk." (SAC ¶ 9.) The SAC refers to Tamasi as a "Manager" but does not expressly allege that Tamasi managed or supervised Lee. A reasonable inference can be made that Tamasi did manage or supervise Lee in some capacity, however, as Lee "was threatened with suspension and adverse employment actions and/or write-ups" if she did not wear heels, look sexy, or "acquiesce to Tamasi's sexual requests for lesbian sex." *Id.* After Tamasi returned from the two-week suspension in April 2019, Tamasi's conduct allegedly continued from April 2019 through 2020, whereby Tamasi would "simulate the act of cunnilingus," ask if Lee's pubic hair was kinky and whether Lee shaved her vagina, and that Tamasi wanted to "try Lee's black vagina." (SAC ¶ 13.) Tamasi allegedly "constantly told" Lee that Tamasi was going to penetrate Lee's vagina with a dildo, and that Tamasi was tired of Lee "playing hard to get." (SAC ¶ 14.) In late June, early July, Lee alleges, Tamasi "intentionally stuck her hand under [Lee's] skirt in an attempt to intentionally grab

[Lee]'s vagina."  (SAC ¶ 151.)  And, in mid-2020, Tamasi allegedly spanked Lee "and made sexual comments" while doing so.  (SAC ¶ 15.)

Lee's allegations have components of both quid pro quo sexual harassment – Lee was threatened with adverse employment action if she did not submit to Tamasi's sexual demands – and hostile work environment – Lee was subject to repeated sexual comments and overtures by Tamasi.  Regardless of how characterized, the alleged conduct, if true, would demonstrate that Lee "was subjected to 'unwanted gender-based conduct,'" *McHenry*, 510 F. Supp.3d at 66, and that she was "'treated less well at least in part because of [her] gender.'" *Delo*, 685 F. Supp.3d at 183.  Likewise, the same conduct – repeated incidents of unwanted touching and repeated overtures for sexual acts – also are appropriately characterized as both severe and pervasive sufficient to satisfy the NYSHRL under both its former incarnation and its more lenient amended form.  The frequent verbal sexual comments and overtures alleged, if proven, cannot fairly be characterized as merely "petty slights and trivial inconveniences."  (*See* Delta Reply at 5 (arguing that the conduct alleged by Lee is "too minimal in scope and duration to support an actionable harassment claim").)  Moreover, the SAC directly implicates Delta with allegations that Lee complained about Tamasi's conduct to Delta managers who did nothing, at least in response to the episode reported in 2019, and told her she would have to endure Tamasi's conduct as "just girl talk" and "that is just how females are with other females."  (SAC ¶ 12.)  And, when Lee raised her concerns about having been "spanked'

and "constantly" sexually harassed in March 2021, she was then suspended and ultimately terminated.[14]  (SAC ¶¶ 19-23.)

To be sure, Lee's allegations may well be fiction.  Lee asserts that Tamasi constantly sexually harassed her "through 2020" (SAC ¶ 13), even though Lee was on leave as an inactive employee since March 2020.  (SAC ¶ 45; *see* SAC Ex. 2 at ECF 34.).)  It is difficult to fathom how Tamasi sexually harassed Lee when Lee was not even working or on site.[15]  And, although Lee quotes specific language that Tamasi is purported

_____

[14] Delta casts doubt on the plausibility of Lee's allegations and the basis for Delta's liability by focusing on Lee's concessions in the SAC that during her phone call with HR Manager Needham in February 2021, Lee "NEVER specifically told Needham whether or not Lee was sexually spanked and sexually assaulted by Manager Tamasi in mid-2020."  (SAC ¶¶ 18-19.)  Lee alleges that she did not report Tamasi's conduct earlier for fear of retaliation.  (SAC ¶¶ 16, 18.)  Delta's argument ignores that Lee, according to the SAC, did report her concerns about Tamasi HR Manager Nabors on March 25, 2021, and only then was suspended (for the second time) and terminated.  (SAC ¶ 19.)  Delta's argument also ignores Lee's allegations that she lodged a complaint about Tamasi's conduct in April 2019 and that Delta did nothing about it.  (SAC ¶¶ 8-12.)

[15] Delta also asserts that by the time Lee began her leave of absence, she had relocated to JFK Airport while Tamasi remained based out of LaGuardia Airport.  (Delta Mem. at 12.)  Delta cites Kruit's January 11 email to Lee, which alludes to Tamasi being based at LaGuardia and to the timing of Lee's later transfer to JFK.  (SAC Ex. 2 at ECF 34.)  Although the statements in the email are hearsay, Lee does not appear to dispute that at some point she transferred to JFK while Tamasi remained at LaGuardia.  The Court cannot accept as true, however the assertions in Kruit's June 15, 2021 email to Lee that Delta investigated Lee's claims, determined them to be complete fabrications, and did not receive Lee's cooperation in the investigation.  (*See* Delta Reply at 6-7.)  Those facts may well prove true, and the Court accepts as true that Delta sent the email to Lee making statements to that effect (SAC Ex. A at ECF 27); but the statements are disputed by Lee as pretextual.  (*See* Lee Mem. at 13.)  The Court therefore cannot accept the facts as true for the instant motion.  *See Yousef v. County of Westchester*, 2020 WL 2037177, at * n.9 (S.D.N.Y. Apr. 28, 2020) ("Where a plaintiff alleges that a document attached to or referenced in a complaint is false, the Court may consider that document for the fact of the statements contained in it, not for the truth of those statements"); *In re Lehman Brothers Securities and ERISA Litigation*, 903 F. Supp.2d 152, 168-69 (S.D.N.Y. 2012) ("a document that is integral to a complaint in the sense that the plaintiff had actual notice of and relied upon it in framing the complaint, is properly considered, albeit not for the truth of the matters asserted, notwithstanding that it has not been attached to or incorporated by reference into the complaint") (citations omitted).

to have uttered and provides general time frames, she does not identify any specific date when Tamasi said something sexually harassing; nor does she identify any particular place where any of the alleged conduct occurred.

Nonetheless, based on the facts alleged and considering the totality of circumstances – *e.g.*, demanding that Lee dress a certain way to be "sexy," threatening consequences if she did not engage in lesbian sex, expressing desire to penetrate Lee's vagina, spanking her butt, and attempting to grab her vagina – the SAC plausibly states a claim of sexual harassment and hostile work environment under both the NYCHRL and NYSHRL. *See Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 607 (2d Cir. 2006) (reversing grant of motion to dismiss and stating, in Title VII case, "[t]hreats or insinuations that employment benefits will be denied based on sexual favors are, in most circumstances, quintessential grounds for sexual harassment claims"); *Girardi v. Ferrari Express Inc.*, 20-CV-4298, 2023 WL 2744027, at *6 (S.D.N.Y. 2023) (finding sexual harassment and hostile work environment claim sufficiently stated based on multiple allegations of sexual misconduct, including regular and continued unwelcome sexual advances, and unwanted touching of a sexual nature); *Bermudez*, 783 F. Supp.2d at 568-69, 585 (finding sufficient basis for claims of sexual harassment under NYCHRL and NYSHRL where defendant officer pressed himself against plaintiff's body, expressed desire to hug plaintiff without her vest on, told plaintiff "you have a nice body" and "I like the way you dress," and threatened to report plaintiff internally in reaction to believing plaintiff had slept with another officer)

Delta's arguments to the contrary are not persuasive. First, Delta again makes an errant statute of limitations argument. Delta asserts that any conduct occurring before

June 13, 2019 falls outside the three-year statute of limitations for the NYSHRL and
NYCHRL and therefore are not actionable.  (Delta Mem. at 11.)  As explained above,
however, in the context of Lee's discrimination claims based on race, the correct statute
of limitations cutoff is October 18, 2018.  Conduct occurring after that date is therefore
fair game.  As for conduct preceding that date, the only relevant allegation appearing in
the SAC is a conclusory allegation that "[f]rom around December 2017 through 2020,
Plaintiff was sexually … harassed by … Tamasi."  (SAC ¶ 8.)  The SAC does not describe
any examples of Tamasi's conduct from anywhere close to the 2017 timeframe; rather,
the first date mentioned is April 2019 in reference to Lee's lodging a complaint about
Tamasi at that time.  (SAC ¶ 9.)  Thus, the only plausible allegations of conduct fall within
the limitations period.[16]

Delta next argues that the SAC fails to state a same-sex sexual harassment claim
because "while the conduct that [Lee] alleges Tamasi engaged in, admittedly, was crude,
there are no allegations that Tamasi harbored any animus toward [Lee] because of her
gender or that Tamasi treated male employees any differently than she treated [Lee]."
(Delta Mem. at 12.)  The Court agrees that Lee's claim is necessarily a same-sex sexual
harassment claim as Lee and Tamasi are both female.  *See Nachamy v. FXCM, Inc.*,
No.16-CV-225, 2020 WL 178413, at *4 (S.D.N.Y. Jan. 9, 2020) ("Because the alleged
perpetrator of the harassive behavior and Plaintiff are both male, Plaintiff must sufficiently
allege claims for same-sex harassment").  But Delta's argument is flawed.

---

[16] For this reason, the parties' dispute about whether acts preceding the statute of
limitations may be considered under the "continuous violation" doctrine is moot, and the
Court need not address it.

In *Oncale v. Sundowner Offshore Services, Inc.,* the Court set forth three examples of actionable same-sex sexual harassment: "(1) the harasser is homosexual (and, therefore, presumably motivated by sexual desire); (2) a victim is 'harassed in such sex-specific and derogatory terms by someone of the same gender as to make it clear that the harasser is motivated by general hostility to the presence of someone of the same gender in the workplace; or (3) there is 'direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.'" *Barrows v. Seneca Foods Corp.*, 512 F. App'x 115, 117 (2d Cir. 2013) (quoting *Oncale*, 523 U.S. 75, 80-81 (1998). Lee's allegations – such as Tamasi having made "sexual requests for lesbian sex" – align with the first scenario. (SAC ¶ 9.) Delta's argument, however, addresses the second and third examples and ignores the first.

Delta's reliance on *Nachamy* is flawed for the same reason. In *Nachamy*, the plaintiff alleged four instances of sexual harassment by his male managers: "1) the posting of a derogatory message on a centrally-located white board; 2) Defendant Leonard's changing of Plaintiff's computer background to an image of a 'naked male' …; 3) Defendant Leonard's drawing onto a photograph of Plaintiff an offensive sexual image …; and 4) that Plaintiff was 'exposed to and often berated with' phrases and depictions of very offensive slang terms." 2020 WL 178413 at *6. Judge Batts dismissed the plaintiff's Title VII, NYSHRL, and NYCHRL claims, finding that the plaintiff's allegations did not support a conclusion that men were exposed to disadvantageous terms and conditions as compared to women and did not allow the court to draw an inference that the alleged conduct occurred because the plaintiff was a male. *Id.* at *6-7. Delta, however, overlooks the key distinction in *Nachamy*: unlike Lee, the plaintiff in *Nachamy*

"ma[de] no reference to the sexual orientation of the Defendants, foreclosing *Oncale*'s first example."  *Id.* at 6.

Delta's third argument also fails, at least in part.  Delta contends that Lee "has not established that the alleged conduct 'alter[ed] the conditions of [Plaintiff's employment]' or 'creat[ed] an abusive working environment.'"  (Delta Mem. at 12 (citing *Camarda v. City of New York*, No. 11-CV-2629, 2015 WL 5458000, at *7 (E.D.N.Y. Sept. 16, 2015), *aff'd sub nom.*, *Camarda v. Selover*, 673 F.  App'x 26 (2d Cir. 2016).)  Delta bases its argument on Lee's concession in the SAC that Lee was on leave since March 30, 2020, and so the conduct alleged did not occur in Lee's work environment and took place when Lee "was not in her professional capacity as a Delta employee."  (SAC ¶ 152.)  As noted above, the Court agrees that Lee's allegations of Tamasi's sexual harassment at a time that Lee was on leave is dubious.  Even so, Delta's characterization of the conduct at issue as "the incident" (referring to the alleged spanking incident) is artificially constrained in time and scope.  (*See* Delta Mem. at 12-13.)  The SAC alleges that Lee was sexually harassed in or around April 2019 and, after her return from a two-week suspension in April 2019, that harassment continued into 2020.  (SAC ¶ 13.)  There thus is a period of almost a year where Lee was not on leave but alleges to have been sexually harassed.

Again, Lee's salacious allegations may prove meritless, but they are sufficient to state a plausible claim.  Lee's claims of sexual harassment and hostile work environment under the NYCHRL and NYSHRL should not be dismissed at this juncture.

## C.    Retaliation (Count III)

Count III of the SAC asserts claims for retaliation pursuant to Section 1981, the NYSHRL, and the NYCHRL.  (SAC ¶¶ 85-95.)  Lee claims that she was suspended in

April 2019 in retaliation for reporting racial and gender discrimination and sexual harassment by Tamasi and for requesting disability accommodation. (SAC ¶¶ 9-11.) Lee also claims that she was suspended and terminated in early 2021 for the same reasons. (SAC ¶¶ 17-23.)

As an initial matter, Lee's claim of retaliation in violation of Section 1981 must be dismissed to the extent it is based on Lee's complaints about sexual harassment and gender discrimination. Section 1981 only prohibits discrimination and retaliation on the basis of race and national origin. 42 U.S.C. § 1981(a); *Anderson v. Conboy*, 156 F.3d 167, 170 ("It is also settled that Section 1981 does not prohibit discrimination on the basis of gender"); *Gordon-Mallett v. Mount Sinai Hospitals Group, Inc.*, No. 22-CV-1159, 2024 WL 1513910, at *9, *20 (S.D.N.Y. April 8, 2024) (stating that "Section 1981 … proscribe[s] only race-based discrimination" and "does not protect against ... retaliation on the basis of sex or gender") (internal quotation marks and citation omitted).

Retaliation claims brought under the § 1981, the NYSHRL, and NYCHRL are generally subject to the same legal framework. *Banks v. General Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (stating that § 1981 and NYSHRL retaliation claims are subject to same standards); *Santiago v. ACACIA Network, Inc.*, 634 F. Supp.3d 143, 156 (S.D.N.Y. 2022) (stating that retaliation claims under Title VII, § 1981, NYSHRL, and NYCHRL claims are governed by the same framework). To establish a prima facie case of retaliation under these statutes, a plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Murillo-Roman v. Pension Boards – United Church of Christ*, 2024

WL 246018, at *13 (S.D.N.Y. Jan. 23, 2024) (quoting *Torre v. Charter Communications, Inc.*, 493 F. Supp.3d 276, 288–89 (S.D.N.Y. 2020)).

"If an employee 'complains or is critical about the discriminatory employment practices of her employer, that employee has engaged in a protected activity.'" *Murillo-Roman*, 2024 WL 246018, at *13 (quoting *Littlejohn*, 795 F.3d at 318). "For retaliation, an adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Santiago*, 634 F. Supp.3d at 156 (internal quotation marks and citation omitted).  Retaliation claims under Section 1981 and the NYSHRL require a showing of but-for causation. *Banks*, 81 F.4th at 275.  The plaintiff need not prove "that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega v. Hempstead Union Free School District*, 801 F.3d 72, 90–91 (2d Cir. 2015).  A plaintiff can establish causation "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment ... or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. New York City Board of Education*, 232 F.3d 111, 117 (2d Cir. 2000).  As with discrimination claims, plaintiff's burden at the prima facie state is "minimal."  *Braunstein v. Sahara Plaza, LLC*, No. 21-CV-2030, 2022 WL 17480962, at *3 (2d Cir. Dec. 7, 2022) (quoting *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834, 844 2d Cir. 2013).

Although analyzed under a similar framework, retaliation claims under the NYCHRL "are subject to a broader standard" than those under federal and state law. *Kraiem v. JonesTrading Institutional Services. LLC*, 571 F. Supp.3d 53, 60 (S.D.N.Y. 2021) (quoting *McHenry*, 510 F. Supp.3d at 66).  "The NYCHRL … defines the activities

38

protected against retaliation more broadly than the NYSHRL[, and] "[r]ather than requiring a plaintiff to show an adverse employment action, [the NYCHRL] only requires [her] to show that something happened that was reasonably likely to deter a person from engaging in protected activity."  *McHenry*, 510 F. Supp.3d at 67.  Further, a plaintiff satisfies the causal relation requirement "by 'show[ing] that retaliation played any role in the defendants' alleged adverse actions.'" *Gordon-Mallet*, 2024 WL 1513910, at *19 (quoting *Cardwell*, 2023 WL 2049800, at *35).

Retaliation claims, like discrimination claims, follow the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Zann Kwan*, 737 F.3d at 843.  "Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the adverse employment action.  If the defendant carries this burden, the plaintiff must then present evidence demonstrating that retaliation was a 'but-for' cause of the adverse action." *Giurca v. Bon Secours Charity Health Systems*, No. 23-200, 2024 WL 763388, at *2 (2d Cir. Feb. 26, 2024) (internal quotation marks and brackets omitted) (quoting *Zann Kwan*, 737 F.3d at 845).  At the motion to dismiss stage, however, a plaintiff may state a plausible claim merely with allegations sufficiently addressing the first step.  For retaliation claims, "[a]s with discrimination claims, at the motion to dismiss stage, 'the allegations in the complaint need only give plausible support to the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of [an NYSHRL] litigation.'" *McHenry*, 510 F. Supp.3d at 66-67 (quoting *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018), in turn quoting *Littlejohn*, 795 F.3d at 316).  Accordingly, "[f]or a retaliation claim to survive a motion to dismiss, 'the plaintiff must plausibly allege that: (1) defendants

discriminated – or took an adverse employment action – against [her], (2) because [s]he has opposed any unlawful employment practice.'" *McHenry*, 519 F. Supp.3d at 66 (brackets in original) (quoting *Duplan*, 888 F.3d at 625, in turn quoting *Vega*, 801 F.3d at 90).

The SAC plausibly states a claim for retaliation, both with respect to events in 2019 and 2021. With respect to the April 2019 episode, Lee alleges that (1) she engaged in protected activity – for example, complaining to a Delta EO HR Manager about Tamasi's sexual harassment (SAC ¶ 9); (2) Delta knew of her protected activity – by virtue of having complained about it to an EO HR Manager (SAC ¶ 9); (3) Lee was subject to an adverse employment action – suspension without pay for two weeks (SAC ¶ 11); and (4) the suspension was causally related to her complaints – as inferred from the immediacy with which suspension followed her complaints (SAC ¶ 11). Similar allegations are made with respect to 2021. After making repeated requests for a reasonable accommodation, and after complaining to Delta EO HR Manager Nabors on March 25, 2021 about Tamasi's conduct, Lee was suspended on March 26, 2021 without pay and ultimately was terminated. (SAC ¶¶ 19-22.)

Delta raises several arguments as to why Lee has not stated a plausible claim for retaliation. First, Delta argues that the April 2019 suspension is both time-barred and unsupported by the "contemporaneous" record, citing to Lee's second amended complaint in the California action. (Delta Mem. at 13; Delta Reply at 7.) As explained previously in connection with Lee's discrimination claims, neither argument is sound.

Second, Delta asserts that Lee has not alleged any facts indicative of retaliatory animus in connection with her suspensions and termination and instead supports her

claim only with conclusory statements. (Delta Mem. at 14; Delta Reply at 7.) Lee implicitly concedes the absence of allegations about retaliatory animus, arguing that she was not required to plead any such facts because temporal proximity between her complaints and Delta's actions suffice. (Lee Mem. at 20.) Lee cites Supreme Court and Second Circuit cases recognizing that, as the Court has recited above, causation may be shown by either direct evidence of animus or inference through temporal proximity. (*Id.*)

Delta's response is that "temporal proximity is not an automatic free pass to bring specious retaliation claims." (Delta Reply at 7-8.) That proposition is true as stated – no amount of temporal proximity can save a claim found to be specious. But the suggestion that temporal proximity alone cannot suffice to support a plausible claim at the motion to dismiss stage is incorrect. In support of its statement, Delta cites a single case. *McDowell v. North Shore-Long Island Jewish Health Systems, Inc.*, 788 F. Supp.2d 78, 82 (E.D.N.Y. 2011). *McDowell*, however, is materially distinguishable. There, a gap of greater than three months separated the plaintiff's protected activity and plaintiff's termination. Here, at least based on the allegations of the SAC, the temporal proximity between Lee's complaints in April 2019 and her two-week suspension, and her March 2021 suspension culminating in termination, were each but a single day. The Court is not prepared to hold that a single day is not sufficient temporal proximity to infer causation in this case.

Significantly, *McDowell*'s procedural posture was a motion for summary judgment, not to dismiss at the pleading stage. The Second Circuit has recognized that the sufficiency of temporal proximity alone is different at those two stages: "The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such

temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2000), *abrogated in part on other grounds* by *University of Texas Southwest Medical Center v. Nassar*, 570 U.S. 338 (2013); *Green v. Mount Sinai Health Systems, Inc.*, 826 F. App'x 124, 126 (2d Cir. 2020) (quoting *El Sayed*).

In other words, allegations of temporal proximity can suffice to state a plausible claim of causation for retaliation but not as proof alone to satisfy the third step of the *McDonnell Douglas* burden-shifting framework.   The second and third steps of the *McDonnell Douglas* burden-shifting framework are irrelevant at the motion to dismiss stage.  Delta's remaining arguments rest on factual disputes that are not appropriate for resolution on this motion to dismiss, or they are otherwise inapt.   Delta argues, for instance, that Lee was terminated as a result of Delta's investigation of Lee and because of Lee's failure to cooperate (a fact issue); that during her leave Lee "[a]t all times remained eligible to return to work" (inapt given Lee's allegation of being suspended the day after she complained on March 25, 2021); that Lee in fact raised her complaints in 2021 earlier than she alleges (a fact issue); and that Lee "created" temporal proximity by intentionally fabricating allegations and failing to cooperate (fact issues and credibility). (Delta Mem. at 14; Delta Reply at 8.)

The Court again emphasizes that Lee's allegations about the 2019 suspension, Tamasi's actions, and when Lee first raised complaints in 2021, may prove entirely made up.  But the Court cannot conclude that is so at this stage of the proceedings.  Lee has stated a plausible claim for retaliation under § 1981 (but only with respect to complaints based on race), the NYSHRL, and the NYCHRL.

**D.    Failure To Accommodate And Engage In Interactive Process (Counts V & VI)**

Count V of the SAC alleges that Delta violated both the NYCHRL and NYSHRL by failing to provide Lee a reasonable accommodation for her disability.  (SAC ¶¶ 115-22.)  Count VI alleges that Delta violated both statutes by not having engaged in a cooperative dialogue, also known as the interactive process, regarding her request for accommodation.  (SAC ¶¶ 124-32.)  The NYSHRL does not provide an independent cause of action for failing to engage in the interactive process.  *Greenbaum v. New York Transit Authority*, No. 21-1777, 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) ("there is no independent cause of action under … the NYSHRL for a failure to properly engage in the interactive process"); *Cruz v. City of New York*, No. 21-CV-1999, 2021 WL 5605139, at *6 (S.D.N.Y. Nov. 30, 2021) ("There is no freestanding right of action under the … NYSHRL for failure to engage in an interactive process").  Count VI, as it pertains to alleged violation of NYSHRL must be dismissed for that reason alone.  Count V and the portion of Count VI concerning the NYCHRL should be dismissed for other reasons.

"The NYSHRL and the NYCHRL make it unlawful, among other things, for any employer to fail to provide reasonable accommodations for known disabilities of their employees." *Vangas v. Montefiore Medical* Center, 6 F. Supp.3d 400, 412 (S.D.N.Y. 2014); *see* NYSHRL § 296(3)(a); NYCHRL § 8-107(15)(a).  Employers are not, however, required to provide accommodations that would subject the employer to undue hardship. *Vangas*, 6 F. Supp.3d at 412; *see* NYSHRL § 296(3)(b); NYCHRL § 8-102(18).  Both statutes require the employer to engage in a good faith interactive process to identify a reasonable accommodation that will permit the employee to continue in the position.  *See Greenbaum*, 2022 WL 3347893, at *5.  To state a prima facie failure-to-accommodate

claim under the NYSHRL and NYCHRL a plaintiff must show that: "'(1) plaintiff is a person with a disability under the meaning of [the NYSHRL or NYCHRL]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" *Gaughan v. Rubenstein*, 261 F. Supp.3d 390, 419 (S.D.N.Y. 2017) (quoting *Nieblas–Love v. New York City Housing Authority*, 165 F. Supp.3d 51, 73 (S.D.N.Y. 2016)).

Lee alleges that in each month of February to June 2021 she requested, by phone or email, accommodations for a "mobility" impairment, specifically "a chair to sit down in while performing the essential functions of her job" and/or a transfer to a cargo-related position in Los Angeles. (SAC ¶¶ 21, 43-44.) She further asserts that on each occasion Delta "failed and refused to engage in a cooperative dialogue" about her request for accommodation. (*E.g.*, SAC ¶ 53.) At all times Lee alleges she made accommodation requests, however, she was not an active employee. In February up until March 26, 2021, she was on a year-long voluntary leave due to return on May 21, 2021 (SAC ¶ 45), while in the last days of March through June 2021, she was on suspension pending Delta's investigation into her alleged misconduct (SAC ¶ 46). In response to Lee's June 8, 2021 email mentioning a transfer request, Delta informed Lee that if and when Lee was taken off suspension and returned to active status, Lee's request for a transfer would be considered. (SAC Ex. 2 at ECF 34-35.)

Lee's failure-to-accommodate claims do not even make it past the first required element: that Lee actually has a disability. Lee alleges in conclusory fashion that since 2012 to the present, she has had "actual and perceived non-transitory disabilities of

mobility, impairment, depression, anxiety, PTSD & obesity."  (SAC ¶ 42.)  Other than that conclusory statement, Lee asserts no facts to even plausibly claim that she had any of those disabilities, and the only disability even mentioned in the emails attached to the SAC is her general reference to a "mobility impairment."  (SAC Ex. 2 at ECF 35.)  Even then, the SAC does not include any allegations about the nature of the mobility impairment.  Nor does it include any allegations that Lee could not perform her job without a reasonable accommodation.  *See Shankar v. Accenture, LLP*, No. 21-CV-3045, 2023 WL 2908660, at *4 (S.D.N.Y. Feb. 14, 2023) (dismissal of failure to accommodate claim warranted in part because "Plaintiff has not pled enough factual content for the Court to conclude that his 'stomach issue' was a disability within the meaning of the NYSHRL or the NYCHR"), *R. & R. adopted*, 2023 WL 2557315 (S.D.N.Y., March 17, 2023); *Gaughan*, 261 F. Supp.3d at 406 (dismissing failure to accommodate claim in part because amended complaint was "silent as to whether [plaintiff]'s alleged disabilities affected her ability to move files in the office," an essential function of her job).

Moreover, Lee's allegations are contradicted by the very emails on which she relies and attaches to the SAC.  None of the emails suggest that she ever requested a chair as an accommodation.  Lee alleges that she requested a "chair" and "transfer" in her April 2, 2021 email to Danielle Kruit.  (SAC ¶ 56.)  Not so.  Lee's April 2, 2021 email does state generally that Lee "asked for a Reasonable Accommodation for [her] disability" for which Delta had not engaged in the interactive process; but, it does not say anything about requesting or having requested a chair or transfer or that she had any disability for which she would need to sit.  (SAC Ex. 3 at ECF 37.)  Similarly, Lee alleges that she requested a "chair" and "transfer" as an accommodation in her June 8, 2021 email.  (SAC

¶ 54.)  But Lee's email mentions only a transfer; it does not refer at all to a chair (or, for that matter, her inability to perform the functions of her job with or without accommodation).  (SAC Ex. 2 at ECF 35.)  Kruit's responding June 11, 2021 email thus did not ignore any such request as Lee suggests.  (SAC ¶ 55.)

Lee's allegations that Delta refused her accommodation request or to even engage in the interactive process is also contradicted by the email on which Lee relies.  In particular, Lee alleges that in the June 11, 2021 email, Kruit "dismissed" Lee's transfer request "by stating that is not a request Delta would consider."  (SAC ¶ 55.)  That allegation misleadingly characterizes the email, which made clear that the transfer request would be considered if Lee returned to active status.  Kruit thus stated, "To the extent you are seeking a transfer while on suspension, that is not a request Delta would consider.  If you are taken off suspension and returned to active status, such a request would be reviewed and considered at that time."  (SAC Ex.2 at ECF 34.)

In short, Lee's allegations of failure to accommodate and to engage in the interactive process are contradicted by the very documents on which she relies and attached to the SAC.  Lee therefore does not set forth a plausible claim in either respect.[17]

---

[17]  Delta additionally argues that Lee has no Article III standing to assert her accommodation claims: "Because Plaintiff admits she was on leave during the period when she allegedly requested an accommodation, she does not plausibly allege that she suffered a concrete injury." (*See* Delta Mem. at 16-17.)  Delta does not cite any authority for that proposition, and the Court need not entertain it given the other reasons for dismissal set forth above.  Moreover, courts recognize claims based on requests for accommodation made while an employee is on leave, at least where, unlike here, the accommodation sought is for additional leave.  *See Parker v. Columbia Pictures Industries*, 204 F.3d 326, 338-39 (2d Cir. 2000) ("At the very least … an employee who proposes an accommodation while still on short-term leave … triggers a responsibility on the employer's part to investigate that request and determine its feasibility.  An employee who fails to do so, and instead terminates the employee based on exhaustion of leave, has discriminated 'because of' disability").

*See, e.g.*, *Sander v. Enerco Group, Inc.*, 2023 WL 1779691, at *4 (S.D.N.Y. Feb. 6, 2023) (dismissing complaint because of contradictions between allegations of second amended complaint and report referenced and attached); *Stern v. Rocket Mortgage, LLC*, 666 F.Supp.3d 234, 246 (E.D.N.Y. 2023) (dismissing claim and stating that "despite the Complaint sufficiently alleging the elements of a breach of contract claim, that claim ultimately fails because those allegations are contradicted by the documents upon which they rely"); *In re Bristol-Myers Squibb Securities Litigation*, 312 F.Supp.2d 549, 566 (S.D.N.Y. 2004) (dismissing claim and finding that "Plaintiffs' legal characterization of the sales at issue as consignment sales is rejected because it is inconsistent with the documents upon which the Complaint is based").  In light of those contradictions, Counts V and VI should be dismissed with prejudice.

**E.     Defamation (Count VII)**

In Count VII, Lee alleges claims of defamation and defamation per se against Delta.  (SAC ¶¶ 133-46.)  To state a claim for defamation under New York law, a plaintiff must plausibly plead five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."  *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).  "In addition, a plaintiff must allege the time, place and manner of the false statement and identify to whom the false statement was made."  *Thompson v. Bosswick*, 855 F. Supp.2d 67, 76 (S.D.N.Y. 2012).

The statements Lee alleges as defamatory generally fall into either of two categories:  communications by Delta employees or supervisors to other Delta employees or supervisors, or communications by Delta employees to third parties, such as

employees of Southwest and JetBlue. The statements included the emails informing Lee of her suspension and termination (SAC ¶¶ 30-33); statements about Lee's sexual behavior allegedly made by Needham to Rosado when he was still employed by JetBlue (SAC ¶ 138); statements calling Lee a "liar and fraud" who "is going to jail" allegedly made by two Delta HR Managers to a Southwest employee (SAC ¶ 35); and statements allegedly made by Rosado when he was with Delta to a JetBlue manager saying that Lee was fired from Delta for being a liar and a fraud as well as incompetent, uncooperative, and insubordinate (SAC ¶¶ 37, 41).

The SAC does not state a plausible claim for defamation against Delta. First, the statements made by Delta employees in their communications with each other and with Lee concern her employment. (SAC ¶¶ 31, 33, 36, 37.) As such, those statements are protected by New York's qualified privilege for "allegedly defamatory statements made between persons who share a common interest in the subject matter." *Williams v. Metro North Railroad*, No. 16-CV-1141, 2016 WL 4400307, at *4 (S.D.N.Y. Aug. 17, 2016) (quoting *Vaughn v. American Multi Cinema, Inc.*, No. 09-CV-8911, 2010 WL 3835191, at *3 (S.D.N.Y. Sept. 13, 2010)), *R. & R. adopted*, 2016 WL 5390904 (S.D.N.Y. Sept. 26, 2016). In the employment context, "[c]ommunications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for employee's discharge, fall within the privilege."[18] *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001). Accordingly, none of the internal Delta communications about Lee are actionable.

---

[18] "The privilege may be forfeited if the defendant makes a false, defamatory statement with "malice" of either the common-law or constitutional variety. Common-law malice means spite or ill will and defeats the privilege only if it is the one and only cause for the

As for the statements allegedly published to third parties, Lee's allegations that the email about her suspension and termination were sent to third parties is belied by the emails she attaches, which do not include any non-Delta employees. (*See* SAC Ex. A at ECF 27, Ex. B at ECF 28, Ex. F at ECF 31, and Ex 1 at ECF 32.) And her allegation that Rosado was still an employee of JetBlue when he sent Lee notice of termination is not plausible on its face and is contradicted by the email to which she refers bearing Rosado's Delta email address. (SAC Ex. C at ECF 29.)

In any event, Lee's allegations of defamatory statements made to third parties both before and after her employment at Delta ended, including those about her sexual behavior and dishonesty, do not allege facts sufficient to hold Delta liable. To hold an employer vicariously liable for the conduct of its employees, "a plaintiff must plead facts showing, among other things, that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Chau v. Donovan*, 357 F. Supp.3d 276, 290 (S.D.N.Y. 2019). In determining whether an employee is engaged in conduct within the scope of his employment, the following factors are relevant:

> (1) whether the employee's act fell within the discretion and control of the employer; (2) whether the employee acted under the express or implied authority of the employer; (3) whether the employee's act was in furtherance of the employer's interests; (4) whether the employee's acts were in the 'discharge of duty' to the employer; (5) whether the act was in execution of the employer's orders or part of the work

---

publication. Constitutional or "actual" malice means publication with knowledge that the statement was false or reckless disregard of whether it was false or not. Under New York defamation law, mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Vaughn*, 2010 WL 3835191, at *3 (internal quotation marks and citations omitted). The SAC does not assert any facts, let alone non-speculative ones, to plausibly defeat the privilege.

> assigned by the employer; and (6) whether the acts were so
> closely connected with what the employee was hired to do,
> and so fairly and reasonably incidental to it, that they may be
> regarded as methods, even though quite improper ones, of
> carrying out the objectives of employment.

*Cruz v. Marchetto*, No. 11-CV-8378, 2012 WL 4513484, at *7 (S.D.N.Y. Oct. 1, 2012)

(internal quotation marks and citation omitted). The SAC does not set forth facts

indicating that the defamatory statements allegedly made by Needham or others were

made within the scope of their employment by Delta. Instead, Lee merely recites the legal

standard that the individuals were "acting in the course and performance of [their] …

duties." (*E.g.*, SAC ¶¶ 35, 38, 138.) Such a "formulaic recitation" of a claim element is

precisely the sort of allegation that does not suffice to state a plausible claim and which

the court should disregard. *Clean Energy Experts v. Benhammou*, No. 23-CV-1940, 2024

WL 196507, at *2 (S.D.N.Y. Jan. 18, 2024) (quoting *Sacerdote v. New York University*, 9

F.4th 95, 107 (2d Cir. 2021)); *see also Lutzker v. Novo Nordisk Pharmaceuticals, Inc.*,

2008 WL 905040, at *6 (E.D.N.Y. Apr. 2, 2008) (stating that "the complaint's description

of these comments as 'in the scope of [Sciallo's] employment as a supervisor at [Novo]

Nordisk,' is a legal conclusion couched as a factual allegation, and I give it no effect")

(modifications in original).

Put another way, Lee does not adequately plead that any of the statements or

communications she alleges were made to third parties constitute defamation on behalf

of Delta. *See Cruz*, 2012 WL 4513484, at *7 (dismissing third-party claim for defamation

against employer in part based on failure to allege facts demonstrating the allegedly

defamatory statement was made within course of speaker's employment); *Cullen v.

Citibank, N.A.*, 08-CV-10317, 2010 WL 11712913, at *5 (S.D.N.Y. Sept. 30, 2010)

(dismissing defamation claim against employer and finding that plaintiff had "not sufficiently pled facts plausibly demonstrating the alleged statements were made by Citibank employees in the course of performance of their duties").  Count VII of the SAC should be dismissed.

## F.    Negligence (Counts VIII & IX)

Count VIII claims negligence and Count IX claims negligent infliction of emotional distress.  Both claims should be dismissed as precluded by the New York Workers' Compensation Law ("WCL").

The WCL precludes an employee from bringing a claim for negligence or even gross negligence against an employer arising out of the employment relationship.  The WCL is the "exclusive remedy to an employee … when such employee is injured … by the negligence or wrong of another in the same employ").  N.Y. WCL § 29; *see Pasqualini v. MortgageIT, Inc.*, 498 F. Supp.2d 659, 666 (S.D.N.Y. 2007) (holding as barred by the WCL's exclusivity provision an employee's claims against employer and supervisors for grossly negligent hiring, supervision, retention, and infliction of emotional distress, arising from sexual harassment in the workplace); *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp.2d 522, 533 (S.D.N.Y. 1998) (holding negligence claims arising out of sexual harassment barred by exclusive remedy provisions of WCL).  "[S]tate common law negligence claims are therefore precluded by the exclusive remedy provisions of New York's Workers' Compensation statute." *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001).

In support of her negligence claims in Count VIII, Lee asserts that Delta failed and refused to provide workers' compensation insurance, failed to post notice as to the same, and negligently failed to prevent Tamasi from committing battery and sexual assault

against Lee.  (SAC ¶¶ 149, 152.)  For negligent infliction of emotional distress in Count IX, Lee alleges that Delta "subject[ed] her to a racially and sexually hostile work environment which caused Plaintiff physical injuries … without any third-party workers compensation insurance policy[.]"  (SAC ¶ 159.)  All of Lee's negligence claims are precluded by the WCL's exclusivity.

First, the Court does not find well-pled Lee's allegations about Delta's not having workers' compensation insurance.  Those allegations are entirely at odds with the public records of New York's Workers' Compensation Board (the "Board").  The Board's official website features a "Does Employer Have Coverage" search tool,[19] which informs the public that Delta has, and had at all relevant times, Workers' Compensation Insurance.[20] The Court takes judicial notice of those governmental records.  *See Mira v. Kingston*, 218 F. Supp.3d 229, 234 (S.D.N.Y. 2016) ("The Court may take judicial notice of any publicly available documents"), *aff'd*, 715 F. App'x 28 (2d Cir. 2017).  Lee has not provided any plausible basis to allege that Delta does not have workers' compensation insurance.  Her claim is "factually frivolous."  *See Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (explaining that a court may dismiss a claim as "factually frivolous" if the pleaded facts are "clearly baseless" or "fanciful").

Second, because Lee has not plausibly pled that Delta does not maintain workers' compensation insurance, her negligence claims are barred by WCL's exclusivity.  Lee

---

[19] New York State Workers Compensation Board, *Does Employer Have Coverage?* https://www.wcb.ny.gov/icpocinq/icpocdisclaimer.jsp [https://perma.cc/S4HX-3MX8].

[20] https://www.wcb.ny.gov/icpocinq/icpoccov.jsp?empnum=1212796&name=DELTA+AIR +LINES+INC&city=ATLANTA%2C+GA        [https://perma.cc/UUS6-DXW9].        Lee characterizes the link cited by Delta as "fraudulent" and "non-existent."  (Lee Mem. at 3.) That is plainly not the case; the Court readily accessed the designated URL.

argues in opposition that the exclusivity rule is an affirmative defense that cannot be considered at the motion to dismiss stage and that she should not have had to anticipate.[21]  (Lee Mem. at 2.)  Putting aside that the SAC is essentially Lee's seventh pleading (having had four prior pleading opportunities in California), she is incorrect about the law.  *See, e.g.*, *Cohen v. Avanade, Inc.*, 874 F. Supp.2d 315, 328 (S.D.N.Y. 2012) (granting defendants' motion to dismiss, explaining that "Plaintiff's negligence and negligent misrepresentation claims are clearly barred" by workers' compensation exclusivity); *Wilson v. Danka Corp.*, No. 01-CV-10592, 2002 WL 31929120, at *6 (S.D.N.Y. Jan. 28, 2003) (granting motion to dismiss claim that employer acted negligently by failing to warn employee about another employee's past behavior).  As they are barred by the exclusivity rule, Lee's negligence claims should be dismissed with prejudice.

## G.    Sexual Battery (Count X)

Count X of the SAC seeks to hold Delta liable for Tamasi's alleged intentional touching of Lee pursuant to New York Penal Law Article 130.  (SAC ¶¶ 163-168.)  Lee's claim is a non-starter.  That is because "New York courts regularly conclude, as a matter of law, that employers are not vicariously liable for sexual assaults by their employees." *PC-41 Doe v. Poly Prep Country Day School*, 590 F. Supp.3d 551, 566 n.14 (E.D.N.Y.

---

[21] Lee does not argue that she was not an employee during the relevant time period, although the SAC ambiguously alleges that at the time of the alleged "spanking" incident by Tamasi in mid-2020, Lee "was not in her professional capacity as a Delta employee, as [she] was on unpaid, COVID leave."  (SAC ¶ 152.)  Either way Lee's claim is not viable.  Either she was an employee at the time, and therefore had standing to sue Delta as her employer for discrimination, hostile work environment, and the like but is therefore also subject to workers' compensation exclusivity; or, she was not an employee at the time and therefore has no employment-related claims or any claim for alleged negligence in failing to maintain workers' compensation insurance.

2021).  As the Second Circuit has explained, "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context." *Swarna v. Al-Awadi*, 622 F.3d 123, 144-45 (2d Cir. 2010); *see also Doe v. Alsaud*, 12 F. Supp.3d 674, 677 (S.D.N.Y. 2014) (granting defendants' motion to dismiss plaintiff's vicarious liability claim, explaining that "[n]o decision in New York ha[d] been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault," and collecting cases declining to impose vicarious liability); *Doe v. City of New York*, No. 09-CV-09895, 2013 WL 796014, at *4 (S.D.N.Y. March 4, 2013) (noting "[a]s a matter of law sexual misconduct cannot give rise to vicarious liability," and granting defendants' motion to dismiss plaintiff's vicarious liability claim premised on a defendant officer's rape and sexual assault of plaintiff), *aff'd*, 558 F. App'x 75 (2d Cir. 2014).

Lee's allegation that Delta "was aware" of Tamasi's previous conduct in 2019 (SAC ¶ 165) is of no moment since Lee does not assert any plausible allegations that Tamasi's purported sexual touching fell within her professional responsibilities or furthered Delta's business.  *See PC-41 Doe*, 590 F.Supp.3d at 566 n.14 (stating that although "Plaintiff alleges that Poly Prep was aware of – and in some cases tolerated or covered up – Foglietta's sexual abuse, the Complaint does not plausibly allege that, for example, Foglietta's assaults 'furthered [Poly Prep's] business interests,' that the sexual assaults were 'part of any actual responsibility [Foglietta] had to [Poly Prep],' or that '[Foglietta's] job and [Poly Prep's] business included sex crimes'") (quoting *Alsaud*, 12 F. Supp.3d at 678).

No amendment can cure the legal deficiency of Count X.  Accordingly, it should be dismissed with prejudice.

## H.    Whistleblower Retaliation Under New York Labor Law (Count XI)

In Count XI, Lee claims that Delta retaliated against her in violation of NYLL Sections 215 and 740 after she reported violations of the WCL.  In particular, Lee claims that she reported to HR Manager Nabors and the New York State Workers' Compensation Board that Delta did not provide its employees Workers' Compensation insurance and thus was "illegally uninsured" in violation of WCL §§ 2, 3, and 51.  (SAC ¶¶ 170-73.)  The whistleblower claims should be dismissed.

Section 215 prohibits retaliation against an employee who lodges a complaint that their "employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of the NYLL."  NYLL § 215 (1)(a).  The provisions about which Lee complained, however, are not part of the NYLL.  Rather, they are part of the WCL, an entirely distinct statute.  Lee therefore has no plausible claim under NYLL § 215.

Section 740 of NYLL prohibits an employer from retaliating against disclosure of an employer's activity, policy, or practice "that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety.[22]  "Whether a belief is

---

[22] Section 740 was amended, effective January 26, 2022, to broaden its reach.  *Pierce v. Better Holdco, Inc.*, No. 22-CV-4748, 2023 WL 6386920, at *4 (S.D.N.Y. Sept. 29, 2023).  Among other changes, rather than requiring an employee to allege that an employer's conduct violates a law, rule, or regulation, *and* also poses a threat to public safety, the 2022 amendments require only one *or* the other; moreover, the amendments only require that the employee "reasonably believe" one or the other is true.  *See* NYLL § 740 (McKinney 2022).  Delta argues that the amendments do not apply retroactively.  Delta Mem. at 24 n.11.)  The two federal cases they cite, however, do not directly address the issue, and the one state case they cite supports application of the statute as amended

'reasonable' contains both subjective and objective components.  That is, plaintiff must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." *Callahan v. HSBC Securities (USA) Inc.*, No. 22-CV-8621, 2024 WL 1157075, at *4 (S.D.N.Y. March 18, 2024) (internal quotation marks and citations omitted).   "A mistaken belief does not defeat a whistleblower claim … provided that their mistaken belief was both subjectively and objectively reasonable."  *Id.*   "[T]he objective prong of the reasonable belief test focuses on the basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience." *Id.* (citing *Nielsen v. AECOM Technology Corp.*, 762 F.3d 214, 221 (2d Cir. 2014)).

Although what someone reasonably believed often is a question of fact, Lee has not plausibly pled that she reasonably believed either that Delta's insurance status violated the law or posed a substantial and specific public threat.  First, Lee admits in the SAC that she knew that Delta at least was self-insured.  Lee has not stated any basis for

---

because Lee filed the instant action in June 2022, **after** the effective date of the amendments.  *See Martin v. Niagara Mohawk Power Corp.*, 217 A.D.3d 1503, 1504, 192 N.Y.S.3d 810, 811 (2023) (deeming the § 740 amendments not applicable because the action was filed prior to their effective date).  The Second Circuit has not yet ruled on retroactive application of the amendments, and the few courts that have explicitly considered the issue have been divided.  *See Callahan v. HSBC Securities (USA) Inc.*, No. 22-CV-8621, 2024 WL 1157075, at *6 (S.D.N.Y. March 18, 2024) (collecting cases, applying the amendments retroactively, and observing that "the legislative history strongly supports the view that the 2021 amendments had a remedial purpose intended to correct the restrictive nature of the prior statutory requirements"); *Zhang v. Centene Management. Co.*, LLC, No. 21-CV-5313, 2023 WL 2969309, at *16 (E.D.N.Y. Feb. 2, 2023) (applying the amendments retroactively); *but see Zennamo v. County of Oneida*, No. 21-CV-840, 2022 WL 4328346, at *9 (N.D.N.Y. Sept. 19, 2022) (applying the earlier version of §740 to a claim that pre-dated the amendments).  Regardless, Lee does not state a plausible § 740 claim under either the pre- or post-amendment version.

a reasonable belief that an employer had to have third-party insurance and could not be self-insured.   (SAC ¶ 173.)   Nor could she.   A simple look at the New York Worker Compensation Board's website expressly recognizes that employers can apply to be self-insured.[23]   Second, as set forth above in discussing Lee's negligence claims, the same website, on its "Does Employer Have Coverage" search tool, informs the public that Delta has, and had at all relevant times, Workers' Compensation Insurance.[24]   Accordingly, Lee could not have had an objectively reasonable belief that Delta was not properly insured for workers' compensation.   For the same reasons, Lee also could not have had a reasonable belief that Delta's insurance status posed a substantial and specific danger to the public health or safety.

Accordingly, Lee has not stated a plausible claim under either NYLL § 215 or NYLL § 740.   Any amendment cannot cure that failure, and Count XI should be dismissed with prejudice.

## I.   Individual Defendants Needham And Rosado

Finally, the Court should dismiss the action sua sponte as against Defendants Needham and Rosado.   No affidavit of service appears in the record for either individual. Neither is represented by Delta's counsel, and neither has appeared in the case.   "If a defendant is not served within 90 days after the complaint is filed, the court – on motion

---

[23]   New York State Workers' Compensation Board, *Individual Self-Insurance*, https://www.wcb.ny.gov/content/main/SelfInsureds/selfins_wc.jsp#:~:text=An%20employer%20who%20wishes%20to,to%20self%2Dinsure%20those%20benefits [https://perma.cc/6Q4J-EPEE].

[24] New York State Workers Compensation Board, *Does Employer Have Coverage?* https://www.wcb.ny.gov/icpocinq/icpocdisclaimer.jsp [https://perma.cc/S4HX-3MX8].

or on its own after notice to the plaintiff[25] – must dismiss the action without prejudice against the defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).   After more than two years of litigating this case, Lee has not served either individual Defendant; instead, she has served only Delta. Lee has had well more than the 90-day period afforded for service, and she has not even requested additional time, let alone shown good cause, for an extension.  The individual Defendants therefore should be dismissed from the case without prejudice.

## J.    Dismissal With Or Without Prejudice

In discussing Lee's individual claims above, the Court has indicated specific ones that should be dismissed with prejudice because no amendment can cure the deficiency as a matter of law or because of irreconcilable contradictions in Lee's pleading and the documents she attaches to it.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (stating that dismissal with prejudice is appropriate where "[t]he problem with [plaintiff's] causes of action is substantive" such that amendment would be futile).  Those claims are Count V (failure to accommodate); Count VI (failure to engage in cooperative dialogue); Count VIII (negligence); Count IX (negligent infliction of emotional distress); Count X (battery); and Count XI (whistleblower retaliation).  Two claims should not be dismissed,

---

[25] Lee has been put on notice by Delta's moving brief asserting that neither individual Defendant has been properly served with process.  (Delta Mem. at 1 n.1; *see also* Delta Reply at 10 n.6.)   Indeed, in her opposition, Lee directly addresses the issue, errantly citing several cases for the proposition that a defendant's general appearance or other affirmative activity in an action waives objection to personal jurisdiction.  (Lee Mem. at 5.) Those cases are inapt as, explained above, neither individual Defendant has appeared at all for any purpose.

namely Count II as it pertains to sexual harassment and hostile work environment, and, most of Count III for retaliation.

That leaves four counts for which the Court deems dismissal warranted for lack of sufficient pleading; namely, Count I (racial discrimination); Count II as it pertains to gender discrimination; Count IV (racial discrimination under § 1981); and Count VII (defamation) (collectively, the "Insufficient Claims").  The question follows whether the Insufficient Claims – which reduce to claims for discrimination and defamation – should be dismissed with or without prejudice to leave to amend.  The answer is that they should be dismissed without leave to amend.

The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)."  *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 107 (2d Cir. 2022).  The rules of procedure direct that the Court "should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Accordingly, leave to amend to address the deficiencies raised by the Court ordinarily should be granted at least once, particularly for pro se parties.  *See Garcia v. Superintendent of Great Meadow Correctional Facility*, 841 F.3d 581, 583 (2d Cir. 2016) (stating that, generally, a court "should not dismiss a pro se complaint without granting leave to amend at least once") (citation omitted).  In its discretion, however, the court may "deny leave to amend 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'"  *MSP Recovery Claims, Series LLC v. Hereford Insurance Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Estate Of Umar*, 2 F.4th 70, 81 (2d Cir. 2021)).

Here, accounting for both *Lee I* and the instant case, Lee has already had six opportunities to amend.[26]  She has had more than her fair share of bites at the proverbial apple to assert plausible claims.  See *Barlow v. Nationstar Mortgage LLC*, No. 18-CV-956, 2021 WL 1960522, at *3 (W.D.N.Y. May 17, 2021) (denying pro se plaintiff leave to amend after having "had three chances to raise a viable claim: the action he commenced in 2016, his complaint in this case, and now his amended complaint"), *aff'd* 2022 WL 950949 (2d Cir. March 30, 2022); *Best v. City of New York*, No. 12 CV 7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) (denying leave to amend where plaintiff had already been given two opportunities to do so, and noting that "the Court can only afford [plaintiff] so many bites at the apple"); *Harris v. Westchester County Medical Center*, No. 08-CV-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011) (denying leave to amend as futile "because plaintiff has already had two bites at the apple and they have proven fruitless").  Moreover, other than asking for leave to amend (Lee Mem. at 25), Lee's opposition brief does not provide any basis to indicate that she can cure the many deficiencies plaguing her discrimination and defamation claims.  *See Jahad v. Holder*, No. 19-CV-4066, 2023 WL 8355919, at *10 (S.D.N.Y. Dec. 1, 2023) ("leave to amend is properly denied where all indications are that the pro se plaintiff will be unable to state a valid claim").

Given the likely futility of any further amendment, combined with Lee's repeated disregard of court rules and orders and the consequent prejudice that poses in terms of legal cost to Delta and resources of the Court, further amendment is not warranted.

---

[26] The total of six opportunities counts the initial Complaint in the instant case, which came after the fourth amended complaint in *Lee I* and thereby presented an opportunity for Lee to amend at the outset of the instant case.

**CONCLUSION**

To the extent not discussed herein, the Court has considered all of the parties'
arguments and determined them to be moot or without merit.   For the foregoing reasons,
Delta's motion to dismiss should be GRANTED IN PART and DENIED IN PART.
Specifically:

1. Count I (racial discrimination under NYSHRL and NYCHRL) should be
   dismissed.

2. Count II (gender discrimination, sexual harassment, and hostile work
   environment) should be dismissed with respect the claim for gender
   discrimination; Count II's claims for sexual harassment and hostile work
   environment should not be dismissed.

3. Count III (retaliation under 42 U.S.C. § 1981, NYSHRL, and NYCHRL) should
   not be dismissed, except as to 42 U.S.C. § 1981 insofar as applied to retaliation
   for complaints based on disability, gender, or sex, which should be dismissed.

4. Count IV (racial discrimination under 42 U.S.C. § 1981) should be dismissed.

5. Count V (failure to accommodate under NYSHRL and NYCHRL) should be
   dismissed.

6. Counts VI (failure to engage in cooperative dialogue under NYSHRL and
   NYCHRL) should be dismissed.

7. Count VII (defamation) should be dismissed.

8. Counts VIII and IX (negligence) should be dismissed.

9. Count X (battery / sexual battery) should be dismissed.

10. Count XI (whistleblower retaliation under NYLL should be dismissed.

11. Individual Defendants Needham and Rosado should be dismissed without
    prejudice due to Plaintiff's failure to serve process.

**DEADLINE FOR OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the
Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written

objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Dale E. Ho, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Ho.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review**.

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: July 29, 2024

Copies transmitted to all counsel of record.  The Court respectfully requests the Clerk of Court to mail a copy of this Report and Recommendation to the pro se Plaintiff:

Erika Lee
20 Confucius Plaza, Apt. 10K
New York, NY 10002