# EXHIBIT B

```
                UNITED STATES DISTRICT COURT

               SOUTHERN DISTRICT OF NEW YORK


  --------------------------------------
  ERIKA LEE,                          CIVIL ACTION NO.:
                                      1:22-cv-8618-
              Plaintiff,                DEH-RWL

                  vs.                 Index No.
                                      22-cv-
  DELTA AIR LINES, INC, DAVID          08618
  NEEDHAM & JOSE ROSADO,

                  Defendants.
  --------------------------------------




              DEPOSITION OF ERIKA LEE

                New York, New York

              Tuesday, April 29, 2025





  Reported by:
  Jeremy Frank, MPM
  JOB NO. 1582745
```

```
 1                      Lee
 2        I can give you dates.
 3   _____
 4        A.  But I wasn't there long because
 5   I was being subjected to race, sex
 6   discrimination, hostile work environ-
 7   ment from Bernadette Tamasi.  It got to
 8   the point she would grope my breasts
 9   daily whenever I worked with her, she
10   would spank my behind.  She asked me
11   degrading questions, sexually harassing
12   questions such if my vagina tasted like
13   collard greens and fried chicken.  She
14   asked me questions such as if I shaved,
15   if my pussy hair was nappy.
16           It got to the point I had to
17   reach out to Henrietta Archie because
18   she said if I didn't let her perform
19   cunnilingus on me, she was going to
20   write me up.  And I reached out to
21   Henrietta Archie while I was telling
22   her the abuse I was, the sexual abuse
23   and sexual harassment and race
24   discrimination and harassment from
25   Bernadette Tamasi, as well as hostile
```

1                        Lee

2    work environment.  She stated she then

3    put me on two weeks suspension without

4    pay.  She takes away my flight

5    benefits, and she takes away all my

6    earned time.

7         Q. We will get to all that, I

8    promise you.

9            After you were at La Guardia

10   were you assigned to another airport?

11        A. I was not assigned to any other

12   airport, I had had to apply for another

13   position to get away from Bernadette

14   Tamasi.  Henrietta Archie did not

15   facilitate any, she did not investi-

16   gate, she did not, during my suspension

17   Bernadette Tamasi was not suspended.

18   And she did not do anything to take me

19   out, take her out of that work role

20   after I reported her sex, race

21   discrimination.

22        Q. I am going to ask you again just

23   please answer the questions I'm asking

24   you.

25        A. That is my answer.

```
 1                      Lee
 2         Q. Okay.
 3             My question was have you worked
 4    in any other airports after La Guardia?
 5         A. Objection, that was not your
 6    question, but I have worked at other
 7    airports after La Guardia, I worked at
 8    JFK.
 9         Q. Did you transfer to JFK?
10         A. Objection, sometime after I
11    reported to Henrietta Archie I received
12    my job back sometime in the summer,
13    late summer, late summer maybe.
14         Q. Of 2019?
15         A. Yes, because she would not
16    facilitate a reasonable accommodation
17    in the form of a transfer out away from
18    my sexual abuser and sexual assaultant
19    (sic) and hostile work environment, I
20    had to apply for another position once
21    it became available to leave.
22         Q. We are going to break for lunch
23    soon, before we do take, I want to
24    double back on something.
25             You said that Ashley Rangel took
```

```
 1
 2                C E R T I F I C A T E
 3    STATE OF NEW YORK    )
 4                         : ss.
 5    COUNTY OF NEW YORK   )
 6
 7         I, Jeremy Frank, a Notary Public within
 8    and for the State of New York, do hereby
 9    certify:
10         That ERIKA LEE, the witness whose
11    deposition is hereinbefore set forth, was duly
12    sworn by me and that such deposition is a true
13    record of the testimony given by the witness.
14         I further certify that I am not related
15    to any of the parties to this action by blood
16    or marriage, and that I am in no way
17    interested in the outcome of this matter.
18         IN WITNESS WHEREOF, I have hereby
19    set my hand on the 2nd day of May, 2025.
20
21                           _Jeremy Frank_
22                           JEREMY FRANK, MPM
23
24
25
```

```
 1   UNITED STATES U.S. DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   -------------------------------------------X
     ERIKA LEE,
 3
                        Plaintiff,
 4           -against-
                              CIVIL ACTION NO.:
 5                            #1:22-cv-8618-DEH-RWL

 6   DELTA AIR LINES, INC, DAVID NEEDHAM & JOSE ROSADO,

 7                  Defendants.
     -------------------------------------------X
 8
                 Morgan Lewis & Bockius LLP
 9               101 Park Avenue
                 New York, New York
10
                 DATE: April 29, 2025
11               TIME: 3:31 P.M.

12

13   CONTINUED VIDEOTAPED DEPOSITION of ERIKA LEE, the

14   Plaintiff herein, taken by the Defendant, pursuant to

15   Article 31 of the Civil Practice Law & Rules of

16   Testimony, held at the above-mentioned time and place,

17   before GABRIELLA TUTINO, a Stenographic Reporter and

18   Notary Public of the State of New York.

19

20

21

22

23

24

25
```

1  required it, then that would be something else I would
2  have to take up with somebody else.
3      Q.   Your doctor provided additional documents to
4  Delta after you had that conversation with him?
5      A.   Objection.  Actually I did, I did get a
6  doctor's note and my doctor took off my restriction
7  because he was quite leery. I told him I have a copy of
8  my, the job description.  I said you know what, it's not
9  required for me to lift anything.  So you can take that
10 right off of my, right off of my, you can take that off
11 that. You can provide a notice saying that I don't have
12 to lift and that I also was able to not use the, I could
13 use the taxi service.
14     Q.   After you provided that information to Delta
15 you were permitted to return to work; is that correct?
16     A.   Objection.  That had nothing to do with my two
17 weeks unpaid suspension.  I was suspended because I
18 opposed sex race discrimination hostile work
19 environment.
20     Q.   What's the basis for that believe?
21     A.   What do you mean what's the basis for that
22 belief.
23     Q.   Who told you you were being suspended?
24     A.   Objection.  Henrietta Archie suspended me.
25     Q.   When did she tell you that?

1      A.    Objection.  I was told that on my phone, on
2  the phone call.
3      Q.    When did she tell you?
4      A.    Are you asking me the day.
5      Q.    The phone call, the April 2019 phone call, Ms.
6  Archie told you you were being suspended?
7      A.    Objection.  On the phone call that I had with
8  Henrietta Archie when I told her about the sex race
9  discrimination hostile work environment, that's the day
10 that I was suspended by Henrietta Archie.
11     Q.    What did Ms. Archie tell you that you're
12 claiming was notification that you were being suspended?
13     A.    She told me that she was going to suspend me
14 pending some form of investigation but I was the only
15 one being suspended.  Bernadette Tomasi could stay in
16 the work place.  I never got any information based on
17 any investigation that happened and I asked her, I said,
18 well, since you're suspending me for this, is there any
19 way you could give me reasonable accommodation out of
20 this work force since I'm here, I want to continue to
21 work but during your investigation.  She stated no, that
22 I'm going to be suspended and they were supposedly
23 investigating but they never investigated and then she
24 told me two weeks later that I could return to work.
25 After that she took two weeks of my pay, she took all my

1   time earned, and she revoked my travel privileges and no
2   investigation was made. Bernadette Tomasi did not have
3   to leave the work place and then she did not have to
4   either get suspended or lose her time, lose any money
5   when I --
6        Q.   Let's take this one step at a time, all right.
7   What specifically did Ms. Archie say to you that you're
8   claiming, the specific words that she said that you're
9   claiming was notice that you were being suspended?
10       A.   Objection.  2019 has been a long time ago.  I
11  will tell you in my words what she said because I can't
12  give you verbatim of what Ms. Archie said from 2019.
13  But she said Erika, you're being suspended because you
14  are reporting workplace, hostile workplace, sex race
15  discrimination and hostile work environment.
16       Q.   What was --
17       A.   Hold on, I'm not finished.
18       Q.   What was Ms. Archie's role at that time?
19       A.   She worked for HR, EEOC.
20       Q.   She was on the accommodations team, wasn't
21  she?
22       A.   I consider it all the same, EEOC. Let me look
23  at what you gave me. She's a lead program manager for
24  the EO accommodations.
25       Q.   Okay.  And Delta had --

1      A.    That's equal opportunity.
2      Q.    But she did accommodations work; is that
3  correct?
4      A.    Yes.
5      Q.    That why you were communicating with her in
6  the first instance, in that exhibit that you're looking
7  at there, exhibit --
8      A.    That's F.  That's her title.  She worked in
9  equal opportunity.  So I told her what was going on and
10 how Bernadette Tomasi was treating me, how she was
11 sexually abusing me, assaulting me, racially
12 discriminating me and harassing me.  And that's why I
13 was suspended and she gave me two weeks suspension and
14 she took away all my flight benefits, my pay, it was
15 unpaid. And she also told me that, and she denied all
16 the reasonable accommodations that I had asked for.  She
17 didn't necessarily have to deny them because that wasn't
18 a part of the, lifting weights was not a part of my job
19 description, as well as taking a taxi was my option.
20 So, during that timeframe she suspended me for opposing
21 race sex discrimination and hostile work environment
22 against Bernadette Tomasi.
23     Q.    Ms. Tomasi, I'm sorry, Ms. Archie told you
24 that you were being put out on leave because they could
25 not offer you a reasonable accommodation; correct?

1      A.   Objection.  That's incorrect.  I just told you
2   why she put me on leave, why are you now putting words
3   in my mouth.  I told you because she's putting me on
4   leave when I oppose sex race discrimination.  When I
5   spoke to her I told her how, everything that Bernadette
6   Tomasi was doing to me.  And she stated to me that I'm
7   going to get put out on suspension and was suspended for
8   two weeks without pay.  I was given, she took away all
9   my flight benefits and she took away all my earned time,
10  all the time I earned so I could take off and get paid
11  was taken away.
12     Q.   How many shifts were you scheduled to work in
13  the two weeks you claim you were suspended?
14     A.   Objection.  I worked five days a week.
15     Q.   How many days were you scheduled in that two
16  week period?
17     A.   Objection. I'm scheduled to work five days a
18  week, so during that two week period, 10 days.
19     Q.   You don't recall if anyone else was present
20  during this meeting?
21     A.   Objection.  I do not.  It was quite some time
22  ago.
23     Q.   So it's your testimony that it's just a
24  coincidence that once your doctor submitted the notes to
25  Delta you were allowed, removing your lifting

1    Q.   What is the disability that you have?
2    A.   Objection.  HIPAA.
3    Q.   That's not a proper objection either.  What's
4  the nature of the disability that you have?
5    A.   Objection. HIPAA.
6    Q.   Will you answer any questions about the
7  disability that you claim to?
8    A.   Objection. I will not be answering anything
9  about my medical.
10   Q.   Are you claiming emotional distress damages in
11 connection with this action?
12   A.   Objection. Yes, I am.
13   Q.   Did you seek treatment from any doctors for
14 the alleged emotional distress?
15   A.   Objection. I am, I have.
16   Q.   Which doctors?
17   A.   I have seen Dr. Shah and I've seen Dr.
18 Michaels.
19   Q.   Any other doctor?
20   A.   Objection. No.
21   Q.   Does your disability prevent you from working?
22   A.   Objection.  HIPAA.
23   Q.   Does your disability prevent you from working
24 you're claiming is a HIPAA issue?
25   A.   Objection. Yes.

```
 1                    C E R T I F I C A T E

 2   STATE OF NEW YORK   )
                         : 
 3   COUNTY OF NEW YORK

 4

 5        I, Gabriella Tutino, a Notary Public within and for

 6   the State of New York, do hereby certify:

 7        THAT Erika Lee the witness whose deposition is

 8   hereinbefore set forth, was duly sworn by me and that

 9   such deposition is a true record of the testimony given

10   by such witness.

11        I further certify that I am not related to any of

12   the parties to this action by blood or marriage; and

13   that I am in no way interested in the outcome of this

14   matter.

15        IN WITNESS WHEREOF, I have hereunto set my hand

16   this 29 of April 2025.

17

18

19                     *Gabriella Tutino*

20                        GABRIELLA TUTINO

21

22

23

24

25
```