```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIKA LEE,                                                  :
                                                            :
                          Plaintiff,                        :    22-CV-8618 (DEH) (RWL)
                                                            :
           - against -                                      :
                                                            :            ORDER
DELTA AIR LINES, INC. et al.,                               :
                                                            :
                          Defendants.                       :
------------------------------------------------------------X
```

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This order resolves the discovery issues raised by (1) Plaintiff Erika Lee's motion to re-open discovery and for leave to file default judgment against non-appearing defendants Jose Rosado and David Needham (Dkt. 153), and (2) Defendant Delta's letter motion for discovery sanctions against Lee (Dkt. 154). Lee's motion was filed in response to Delta's notice of intent to file a summary judgment motion as to Plaintiff's remaining claims. (Dkt. 152.)

## Lee's Motion To Re-Open Discovery

Lee's motion to re-open discovery is DENIED. Discovery closed on April 15, 2025, but was extended to June 13, and then July 18, 2025, solely so that Delta could obtain certain discovery from Lee, precipitated by Lee's last-minute cancellation of her own deposition and her refusal to answer various questions when she eventually was deposed. (*See* Dkts. 144, 148.) Discovery was not extended for Lee.

The reason cited by Lee for her request to re-open discovery is that on July 18, 2025, Delta filed supplemental discovery responses listing Delta employee Henrietta Archie as an individual whom Delta may use to support its defenses. Lee claims she did not have notice of Archie as a witness and that discovery should be reopened for

1

discovery about and from Archie. (Dkt. 153 at ECF 2.) That argument is disingenuous. Lee has known about Archie and her relation to this dispute throughout the litigation. Indeed, on February 10, 2025, Lee herself identified Archie as an individual whom (1) Lee believed possessed relevant information, (2) Lee had obtained or intended to obtain a written statement, and (3) Lee may call as a witness at trial. (Dkt. 154 Ex. A at ECF 4 (referring to "Henrietta in EO and/or Delta EO"), 6 (referring to "Delta EO representative in HR who Plaintiff made a complaint to on the approximate April 19, 2019 scheduled phone call"), 8 (referring to "Henrietta in Delta's EO department").) On top of that, Lee testified at her deposition about Archie's purported knowledge of Lee's internal complaints of discrimination and adverse actions directed toward Lee. (*See* Dkt. 154 Ex. B (excerpts of Lee deposition transcript Apr. 29, 2025).) According to Delta, Archie's name was mentioned a total of 91 times during Lee's deposition. (Dkt. 154 at 2.)

Courts have considerable discretion in determining whether to re-open discovery. *See Emamian v. Rockefeller University*, 823 F. App'x 40, 43 (2d Cir. 2020) (summary order) (affirming district court's denial of reopening discovery and stating that such ruling will only be reversed only "upon a clear showing of an abuse of discretion"); *Carroll v. Trump*, No. 22-CV-10016, 2023 WL 2006312, at *7 (S.D.N.Y. Feb. 15, 2023) ("A district court has broad discretion in deciding whether to re-open discovery") (internal quotation marks and citation omitted). In deciding whether to reopen discovery, courts consider a number of factors, including "(1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for

2

discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence." *Bakalar v. Vavra*, 851 F. Supp.2d 489, 493 (S.D.N.Y. 2011); *accord Yusupov-Millevoi v. Kingyum Transports LLC*, No. 24-CV-830, 2025 WL 1585687, at *3 (S.D.N.Y. May 28, 2025).

Here, although trial is not imminent, Delta is poised to file for summary judgment. Delta opposes the request and would be prejudiced by yet further delay in discovery proceedings largely due to Lee's evasive approach to discovery, which has persisted throughout this action. If Lee had wanted to take discovery from Archie, she could have done so. Given that Lee herself named Archie as a witness on whom she may rely for testimony, discovery from or about Archie was entirely foreseeable. For the same reason, Lee hardly can be deemed diligent in pursuing discovery of Archie. Under these circumstances, even assuming that Archie may be a source of relevant evidence, re-opening discovery is not warranted.[1]

### Lee's Motion For Leave To File For Default

Lee's motion for leave to file for default judgment against Defendants Rosado and Neeham also is DENIED. "It is well-established that a default judgment entered by a court that lacks personal jurisdiction over the parties is void." *CKR Law LLP v. Anderson Investments International, LLC*, 544 F. Supp.3d 474, 479 (S.D.N.Y. 2021) (citing *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011)). Accordingly, "before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading*

---

[1] In reply, Lee recasts her request to re-open discovery as an alternative to excluding Archie from testifying as a discovery sanction or a motion in limine. (Dkt. 155 at ECF 2.) Regardless of characterization, Lee's motion is denied for the reasons provided above.

3

*Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). The Court does not have personal jurisdiction over a defendant who has not properly been served with a valid summons and complaint. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (lawful exercise of personal jurisdiction requires that "service of process upon the defendant" is "procedurally proper"). To be valid, a summons must be "signed by the clerk" and "bear the court's seal." Fed. R. Civ. P. 4(a)(1)(F), (G).

Here, Lee did not serve either Rosado or Needham with a valid summons. In each instance, the summons was neither signed by the Clerk of Court nor bore the seal of the Court. (*See* Dkts. 71 at ECF 6 (unsigned, undated summons to Needham), 72 at ECF 5 (unsigned, undated summons to Rosado).) Those defects are fatal to the propriety of service on Rosado and Needham. *See Crossen v. Bernstein*, No. 91-CV-3501, 1994 WL 281881, at *3 (S.D.N.Y. June 23, 1994) ("while a summons that contains minor technical defects may be amended *nunc pro tunc* ..., service of an unsigned and unsealed summons is generally thought to demonstrate a flagrant disregard for the rules and, thus, to provide a basis for denying leave to amend"); *Gianna Enterprises v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1358 (S.D.N.Y. 1982) (holding that serving an unsigned and unsealed summons is a "serious infraction" that "may demonstrate a flagrant disregard for the rules and fails to assure the person served that the summons was in fact issued by the clerk of a court and not by the plaintiff or his attorney")

In some instances, service of a summons without the Clerk of Court's signature and seal may be overlooked as a technical matter. *See DeLuca v. AccessIT Group, Inc.*, 695 F. Supp.2d 54, 65 (S.D.N.Y. 2010) (comparing cases in which omission of clerk's signature and seal was "flagrant" so as to render service invalid with those in which it was

4

found merely "technical" and not invalidating). Here, however, Lee's failure to obtain a properly signed and sealed summons was fatal to proper service. In a submission to the Court on July 26, 2023, Delta expressly identified the faulty summonses. (Dkt. 64.) Yet, Lee never remedied the defective service. Instead, she ignored the issue, consistent with her history of disregard for court rules and orders.[2]

Moreover, the period for service has long since elapsed, even allowing for reasonable extension by the Court. *See* Fed. R. Civ. P. 4(m) (requiring service of process within 90 days of filing of complaint but allowing mandatory extension for an "appropriate period" if plaintiff demonstrates good cause). Despite having commenced this case in June 2022 (in state court prior to removal by Delta) and having named Rosado and Needham as defendants at least as of July 6, 2023 (Dkt. 58), Lee has done nothing to effect proper service since then. Nor did Lee ever claim good cause that would have warranted an extension for the time for service. *See Robb v. Brewster*, No. 20-CV-10521, 2022 WL 1137140, at *5 (S.D.N.Y. Apr. 18, 2022) (plaintiff's service of a summons without the Clerk of Court's signature was flagrant where Plaintiff was "given ample notice, time, and opportunity to amend the defective service" but failed to do so).

Lee argues that Delta has no standing to make arguments on behalf of Rosado and Needham as they are not represented by Delta's counsel, and, in any event, Rosado and Needham failed to appear. (Dkt. 153 at ECF 3.) Both arguments miss the point.

---

[2] Although pro se, Lee has been warned on multiple occasions about her flagrant disregard of court rules and her obligation to adhere to them. (*See, e.g.*, Dkts. 89 ("Although Plaintiff is pro se, she is no stranger to the importance of complying with procedural rules, having been chastised many times for violations in her previous case in federal court in California, which was dismissed for failing to comply with such rules"), 93 (striking Lee's pleading, which was "nothing more than another flagrant defiance of the Court's rules and orders").)

5

Rosado and Needham, having never been properly served, had no obligation to appear at any time. And, the Court cannot grant default judgment if it determines that personal jurisdiction is lacking. Here, the absence of personal jurisdiction is clear from the face of the unsigned, undated summonses. This Court therefore has no jurisdiction over Rosado and Needham, and any motion for default judgment would be futile.

## Delta's Motion For Discovery Sanctions

Delta seeks discovery sanctions pursuant to Federal Rule of Civil Procedure 37 due to Lee's disclosure, after the close of discovery, of a medical provider, Dr. Robins (or "Robbins"), whom Lee claims treated her in connection with her alleged emotional distress. Delta seeks dismissal of the action, or, alternatively, precluding Lee from seeking emotional distress damages. (Dkt. 154 at 2-4.) The motion is GRANTED IN PART, insofar as the Lee will be precluded from introducing any evidence and testimony from any medical provider to support her claim of emotional distress.

### A.     Legal Standards For Discovery Sanctions Pursuant To Rule 37

Sanctions may be imposed under Rule 37 for a variety of discovery transgressions, including failure to comply with a court order and failure to comply with a discovery request even in the absence of a court order. Rule 37(b)(2)(A) establishes the power of the court where the action is pending to award sanctions for disobeying a discovery order. Such sanctions may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;

6

> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A); *see generally Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) ("If a party fails to obey an order to provide or permit discovery, a district court may sanction the transgressing party in numerous ways of varying severity") (citing Fed. R. Civ. P. 37(b)(2)(A)).

In the absence of a court order, Rule 37(c)(1) permits sanctions to be imposed when a party fails to provide information or identify a witness as required by Rule 26(a) or (e). Rule 37(c)(1) provides that:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order the payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 37's sanctions serve three purposes: "[f]irst, they ensure that a party will not benefit from its own failure to comply. Second, they are specific deterrents and seek to obtain compliance with the particular order issued. Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party

7

against whom they are imposed was in some sense at fault." *Roberts v. Bennaceur*, 658 F. App'x 611, 614 (2d Cir. 2016) (summary order) (quoting *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)).  Whether and to what extent to impose sanctions under Rule 37 is within the court's "wide discretion." *Ayinola v. Lajaunie*, 855 F. App'x 30, 32 (2d Cir. 2021) (summary order); *accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37").  Exercise of that discretion is guided by several factors: (1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance; and (4) whether the non-compliant party had been warned that non-compliance would be sanctioned. *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017).  "These factors are not exclusive and none is dispositive, '[b]ecause the text of [Rule 37] requires only that the district court's orders be just,' and 'because the district court has wide discretion in imposing sanctions under Rule 37.'" *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2012 WL 1255276, at *8 (S.D.N.Y. Apr. 13, 2012) (alteration in original) (quoting *Southern New England Telephone*, 624 F.3d at 144).

Any sanction imposed under Rule 37(b) must be "just," and its severity "must be commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007).  "A court should always seek to impose the least harsh sanction that will remedy the discovery violation and deter such conduct in the future." *Grammar v. Sharinn & Lipshie, P.C.*, No. 14-CV-6774, 2016 WL 525478, at *3 (S.D.N.Y. Feb. 8, 2016) (citing *Hawley v. Mphasis Corp.*, 302 F.R.D. 37, 46 (S.D.N.Y. 2014)).

8

**B.     Discussion**

Lee egregiously violated a court discovery order and, regardless, shirked her discovery obligations with respect to disclosure of Dr. Robins as someone on whom Lee intends to rely to support her claim for emotional distress damages. To understand the significance of Lee's lapse, it is useful to delineate the different levels of emotional distress damages and the evidentiary burdens that go along with them.

The Second Circuit recognizes three categories of damages for emotional distress: (1) garden variety; (2) significant; and (3) egregious. *Sooroojballie v. Port Authority of New York & New Jersey*, 816 F. App'x 536, 546 (2d Cir. 2020) (summary order). "Garden-variety" claims are those in which "the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms." *Ravina v. Columbia University*, No. 16-CV-2137, 2019 WL 1450449, at *11 (S.D.N.Y. March 31, 2019) (internal quotation marks omitted) (quoting *Emamian v. Rockefeller University*, No. 07-CV-3919, 2018 WL 2849700, at *16 (S.D.N.Y. June 8, 2018)). "Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration." *Duarte v. St. Barnabas Hospital*, 341 F. Supp.3d 306, 319 (S.D.N.Y. 2018) (internal quotation marks and citation omitted); *see, e.g.*, *id.* at 321 ("Plaintiff's vague and subjective complaints of insomnia, lower self-esteem, depression, anxiety, and stomach aches and headaches – unsupported by medical corroboration – establish no more than 'garden variety' emotional distress").

"Significant or substantial emotional distress claims ... consist of more substantial harm, usually evidenced through medical testimony or documentation." *Manson v. Friedberg*, No. 08-CV-3890, 2013 WL 2896971, at *7 (S.D.N.Y. June 13, 2013); *accord*

*Ravina*, 2019 WL 1450449, at *11 ("Significant" emotional distress claims "are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses") (internal quotation marks and citation omitted); *see, e.g., Lore v. City of Syracuse*, 670 F.3d 127, 178-81 (2d Cir. 2012) (upholding "significant" compensatory damages award of $250,000 for reputational harm and emotional distress where evidence included medical treatment evidence as well as testimony from the plaintiff and her mother that she suffered from "tension headaches, abdominal pain, insomnia, anxiety, and depression"). Lastly, "egregious emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff." *Ravina*, 2019 WL 1450449, at *12 (internal quotation marks omitted) (quoting *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp.2d 546, 560 (S.D.N.Y. 2012)).

      Lee claims both emotional distress and physical injury from the discrimination she allegedly experienced. The Court has made clear to Lee on multiple occasions that she must disclose any medical provider who treated her in connection with any injuries she is asserting in this case, including both mental and physical health. For instance, on January 15, 2025, the Court held a hearing at which that very issue was discussed. (Dkt. 138 at 9-11; 21-22.) In the context of discussing the need for Lee to supplement her interrogatory answers, the Court informed Lee that "[t]o the extent you are claiming any injuries or harm, either mentally or physically, you need to identify any of the medical professionals … you have gone to about those concerns, and you would have to identify

10

them." (*Id.* at 22.) In response to the Court's asking Lee "[d]o you understand that?" Lee stated, "Yes, Your Honor." (*Id.*)

Lee then provided supplemental interrogatory responses dated January 27, 2025. In response to the interrogatory asking her to identify all medical providers, Lee identified only one such provider: "Plaintiff only responds that Plaintiff visited Dr. Mark Michaels from around 2020-2024 for depression, anxiety, trauma, and severe emotional distress as a result of the hostile work environment and sexual assault and sexual harassment." (Dkt. 135-1 at ECF 8.) Given numerous objections accompanying that response, Delta wrote to Lee apprising her that her response was deficient. (Dkt. 154 Ex. J.) On January 30, 2025, Lee represented that there were no other relevant medical providers: "All of my interrogatory responses were complete and I gave you all potential witness names. … I will get my HIPAA medical release for my one and only doctor notarized. THERE ARE NO OTHER DOCTORS RELEVANT!" (*Id.*)

Delta, concerned that Lee's sworn interrogatory answer did not definitively disclose whether Dr. Michaels was the only medical provider Lee saw, sought the assistance of the Court in a letter motion to compel. (Dkt. 135.) As Delta explained:

> Delta has attempted to secure confirmation from Plaintiff that she has identified all of her medical providers, but Plaintiff continues to provide evasive responses. For example, in recent email correspondence, Plaintiff referred to a "whole file from Sedgwick" that she claims Delta has in its possession. *See* Email from Plaintiff, dated January 30, 2025, attached as Ex. B. No such file has been produced. She also claims that "THERE ARE NO OTHER DOCTORS RELEVANT!" *See id.* (emphasis in original). Additionally, the only HIPAA release that Plaintiff provided to Delta is for a "Dr. Mark Michael" (i.e., not "Michaels"). Plaintiff has not provided any contact information for Dr. Michael/Michaels, such that Delta can confirm who the provider is or contact the provider to provide the release and obtain Plaintiff's records.

11

(*Id.* at 2.)

On February 4, 2025, the Court issued an order compelling Lee to provide a verified amended interrogatory response either confirming that Dr. Michael/Michaels is the only medical provider she saw in connection with her claims in this action or identifying any other such providers:

> Plaintiff shall provide to Delta a verified amended response to Delta's interrogatories that either (a) confirms that the only medical provider from whom Plaintiff sought treatment, either physical or psychological, in connection with her claims in the instant action from January 13, 2017, to the present is "Dr. Mark Michaels" or "Dr. Mark Michael"; or (b) identifies all such medical providers in addition to Dr. Mark Michael(s). The verified amended response shall also identify the contact information (office address and phone number) for Dr. Mark Michael(s) and any additional providers identified.

(Dkt. 137 ¶ 1.) The Court ordered that Lee provide the supplementary response no later than February 12, 2025, and expressly warned Lee about the consequences of failing to comply with the Court's order: "Failure to comply with the foregoing will result in sanctions, which may include adverse inferences, dismissal of her case, or any other sanctions that are warranted under the circumstances." (*Id.* ¶¶ 5, 7.)

The only other doctor Lee identified in discovery is a Dr. Shah. Lee repeatedly represented to Delta, including under oath, that there were no other relevant doctors. During the first day of her deposition on April 29, 2025, Lee testified that she saw no doctors other than Drs. Shah and Michaels:

> Q. Did you seek treatment from any doctors for the alleged emotional distress?
>
> A. Objection. I am, I have.
>
> Q. Which doctors?

12

> A. I have seen Dr. Shah and I've seen Dr. Michaels.
>
> Q. Any other doctor?
>
> A. Objection. No.

(Dkt. 154 Ex. B at 355:13-20.)

At the continuation of her deposition on June 26, 2025, Lee was asked similar questions and again gave unequivocal testimony that she saw no medical providers other than Dr. Shah and Dr. Michaels:

> Q. Have you ever received treatment from a medical provider for the alleged emotional distress?
>
> A. Yes, I have. Dr. Shah and Dr. Michaels, you have my medical records from them.
>
> Q. Any other doctors?
>
> A. No.
>
> Q. Any social workers?
>
> A. No.
>
> Q. Any counselors?
>
> A. No.
>
> Q. Any therapists?
>
> A. No.

(Dkt. 154 Ex. H at 28:5-17.)

On July 20, 2025, however, Lee emailed Delta "amended" discovery responses purporting to identify a "Dr. Robins" and "Antonella" as providers, who, along with Dr. Shah and Dr. Michaels, treated her for alleged emotional distress.[3]  (Dkt. 154 Exs. C-F.)

---

[3] It is not entirely clear whether "Dr. Robins" and "Antonella" are one and the same or two different people. Lee's late-breaking disclosures suggest they are one and the same, but

13

Lee further indicated that she intends to use Dr. Robins's testimony and medical records to support her case. (Dkt. 154 Ex. C.) In her own bid to re-open discovery (discussed above), Lee suggested that Delta may want to also re-open discovery so Delta could obtain discovery about Dr. Robins. (Dkt. 153 at ECF 2.)

Lee's disclosure of additional providers comes far too late and, in any event, is completely at odds with Lee's previously repeated, unequivocal representations that she saw no other doctors for her alleged emotional distress other than Dr. Shah and Dr. Michaels. Moreover, in disclosing Dr. Robins and Antonella only now, Lee violated the Court's order requiring her to disclose any and all treating doctors in her interrogatory answers by February 12, 2025. (Dkt. 137 ¶¶ 1, 5.) Re-opening discovery at this juncture would unduly protract proceedings as it would require obtaining medical records from Dr. Robins and Antonella and potentially their depositions. Doing so would be all the more prejudicial to Delta as it is prepared to shortly file its motion for summary judgment.

Lee acted in bad faith, and there is no reasonable basis to conclude otherwise. Lee asserts that she only recalled Dr. Robins and Antonella at her deposition. (Dkt. 155 at ECF 7.) That simply is not credible given the repeated junctures at which the issue was addressed and Lee's repeatedly unequivocal denial of seeing any doctors other than Dr. Shah and Dr. Michaels. The notion that Lee all of a sudden remembered the additional providers at her deposition is a fiction. As described above, Lee testified at both her April and June depositions that she saw no doctors other than Dr. Shah and Dr. Michaels. In conjunction with serving her further amended disclosures, on July 20, 2025

---

Lee's opposition to Delta's instant motion refers to them as separate individuals. (Dkt. 155 at ECF 7.) Whether they are one or two people makes no difference to the outcome.

– almost a month after the June deposition – Lee included an errata sheet purporting to change her deposition testimony. Specifically, for the question asking her whether she saw any doctors other than Dr. Shah and Dr. Michaels, Lee changed her previous unequivocal "No" to "yes, Dr. Robbins." (*See* Dkt. 156 Exs. A, B.) Lee thus did not have a sudden flash of memory at her deposition.

In short, disclosing medical providers other than Dr. Shah and Dr. Michaels at this late date violates the Court's February 4, 2025 order requiring Lee to disclose any and all mental health and other medical providers whom she saw by February 18, 2025. Lee clearly understood her obligations, and the Court expressly warned her of consequences for failing to comply. Regardless of whether her conduct violated the Court's order, Lee failed to comply with her discovery obligations under the Federal Rules of Civil Procedure. Her conduct was willful and in bad faith, particularly coming after she repeatedly represented to Delta and swore on three separate occasions (in the supplemental interrogatory response required by the Court and in two separate deposition sessions) that she did not receive treatment from any other medical providers.[4] Such circumstances warrant Rule 37 sanctions.

The sanctions Delta seeks, however, are not commensurate with Lee's non-compliance. Dismissal of the case would be drastic. *See Shcherbakovskiy*, 490 F.3d at 140 (explaining that sanction of dismissal "is a drastic remedy that should be imposed

---

[4] "Noncompliance with discovery orders is considered wilful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control." *Baba v. Japan Travel Bureau International, Inc.*, 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996) (Sotomayor, J.), *aff'd*, 111 F.3d 2 (2d Cir. 1997); *accord Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2019 WL 4727537, at *32 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 2020 WL 1479018 (S.D.N.Y. March 26, 2020).

15

only in extreme circumstances, usually after consideration of alternative, less drastic sanctions") (internal quotation marks and citation omitted).  Preventing Lee from claiming any damages for emotional distress would be unduly punitive.  Rather, the commensurate and proportional sanction is to preclude Lee from offering any medical testimony or evidence in support of her emotional distress damages claims, which effectively limits her to garden variety emotional distress damages.  Excluding evidence only from Dr. Robins would not be a sufficient sanction.  Dr. Robins's records and/or Dr. Robins's testimony could bolster Lee's emotional distress claim, but it could also undermine it.  Either way, Delta would be at an unfair disadvantage in challenging testimony or evidence from Drs. Shah and Michaels.

Accordingly, testimony and evidence of treatment by any medical provider, including but not limited to Drs. Robins, Shah and Michaels, will be excluded.  Lee is precluded from offering any medical testimony or evidence in support of her claim for emotional distress damages.

### Delta's Request For A Summary Judgment Briefing Schedule

Delta may proceed with its intended motion for summary judgment.  The motion shall be filed by September 4, 2025.  Lee's opposition shall be filed by October 6, 2025.  Delta's reply, if any, shall be filed by October 21, 2025.

The Clerk of Court is respectfully directed to terminate the motions at Dkts. 153 and 154.

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:    August 4, 2025
          New York, New York

The Court respectfully requests the Clerk of Court to mail a copy of this Order to the pro se Plaintiff:

Erika Lee
20 Confucius Plaza, Apt. 10K
New York, NY 10002