1

2  Erika Lee
   20 Confucius Plaza #10K
3  New York, NY, 10002
   646-552-8394. Email: leeerikalatise@gmail.com
   ERIKA LEE, PRO SE

4

5

6                    UNITED STATES DISTRICT COURT

7                  SOUTHERN DISTRICT OF NEW YORK

8

9  - - - - - - - - - - - - - - - - - - - - - - - -X

10     **ERIKA LEE**                          **CASE:1:22-cv-08618-DEH-**
                                               **RWL**
11

12            Plaintiff, Pro Se              **RESPONSE &**
                                            **OBJECTIONS IN**
13         -against-                        **OPPOSITION TO**
                                            **DEFENDANT'S**
14                                          **MOTION FOR**
                                            **SUMMARY**
15     **DELTA AIR LINES, INC.,**           **JUDGMENT; CROSS**
       **DAVID NEEDHAM & JOSE**             **MOTION FOR**
16     **ROSADO**                           **PARTIAL JUDGMENT**
                                            **AS A MATTER OF**
17                                          **LAW(RULE 50(a)) OR,**
            Defendants                      **IN THE ALTERNATIVE**
18                                          **PARTIAL SUMMARY**
                                            **JUDGMENT(RULE 56)**
19

20

21

22

23

24

25

26

27  - - - - - - - - - - - - - - - - - - - - - - - -X

28

**RESPONSE TO DELTA'S MSJ & CROSS MOTION FOR PARTIAL JMOL
UNDER RULE 50(a) OR RULE 56        page 1**

**PLAINTIFF'S CROSS MOTIONS UNDER RULE 50(a) FOR (PARTIAL) JUDGMENT AS A MATTER OF LAW("JMOL") ON RETALIATION CLAIMS, OR, IN THE ALTERNATIVE, PARTIAL MOTION FOR SUMMARY JUDGMENT UNDER RULE 56 BASED ON JUDICIAL ADMISSIONS**

## INTRODUCTION

Pro se litigants are entitled to have their pleadings read liberally.See Haines v. Kemer, 404 U.S. 519, 520-21 (1972).Because Plaintiff is pro se and a civil rights litigant, the Court must read Plaintiff's motions with liberality. see Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) (The solicitude afforded to pro se litigants takes a variety of forms, including liberal construction of papers, "relaxation of the limitations on the amendment of pleadings, " leniency in the enforcement of other procedural rules, and "deliberate, continuing efforts to ensure that a pro se litigant understands what is required of him.).

Because of Delta's new formal, unambiguous, binding judicial admissions in their Rule 56 motion, Plaintiff does not have to met any legal burden on any/all of the retaliation claims, based on Opposing Counsel's conclusive binding, judicial admissions to the Court. Because Delta judicially admitted and conceded throughout Rule 56 motion briefs, for first time ever, that Delta actually suspended plaintiff without pay on March 26, 2021 for Plaintiff's opposing discrimination by petitioning(First Amendment)the government (California's DFEH and EEOC), which was protected activity, and later terminating Plaintiff on June 17, 2021 for same reason, Plaintiff moves the court under Federal Rule of Civil Procedure 50(a)(1) for Judgment as a Matter of Law.   This was a clear, unequivocal, formal, unambiguous judicial admission to the Court warranting a directed verdict and/ or judgment as a matter of law.  Delta intentionally made these formal, clear, binding judicial admissions when Delta argues and factually admits that Delta only suspended and terminated Plaintiff, not for Plaintiff opposing discrimination to Delta and/or Delta managers(which Plaintiff did as well) but because Plaintiff opposed discrimination by filing a charge with DFEH & EEOC, which Delta didn't like and/or didn't believe were true. However, It is of no legal consequence whether Delta decries that Delta believes that Plaintiff made false statements to the DFEH and/or EEOC, Delta is still liable for retaliation . see Cf. Sanders v. Madison Square Garden, 525 F. Supp. 2d 364, 367 (S.D.N.Y. Sept. 5, 2007) ("[I]f an employer chooses to fire an employee for making false or bad accusations, he does so at his peril, and takes the risk that a jury will later disagree with his characterization.");Deravin v. Kerik, 335 F. 3d 195, 208 (2d Cir: 2003)(Holding that when one "opposes any practice made an unlawful employment practice :::: or because he has made a charge, testified, assisted, or *participated in any manner* in an investigation, proceeding, or hearing" it is protected activity to establish legal element of retaliation claim because "the explicit language of § 704(a)'s participation clause is expansive and seemingly contains no limitations."). Also, Delta's

argument that Plaintiff was "evasive" and not "credible" in Delta's internal investigation conducted in conjunction with the February 2021 formal EEOC discrimination charge does not negate the fact that Plaintiff engaged in protected activity that Delta was aware of, irrespective of whether or not Plaintiff remained silent and refused to answer Delta's question about allegations in the EEOC charge. see Townsend v. Benjamin Enter., Inc., 679 F.3d 41, 49 (2nd Cir. 2012) (However, participation in an internal investigation becomes protected activity if it is in conjunction with a formal EEOC charge of discrimination.); Crawford v. Nashville, 555 U.S. 271 (2009)(*"for if an employee reporting discrimination in answer to an employer's questions could be penalized with no remedy, prudent employees would have a good reason to keep quiet about Title VII offenses*…)("This is no imaginary horrible given the documented indications that "[f]ear of retaliation is the leading reason why people stay silent instead of voicing their concerns about bias and discrimination… If the employee reported discrimination in response to the enquiries, the employer might well be free to penalize her for speaking up…*We have never suggested that employees have a legal obligation to report discrimination., let alone lose statutory protection by failing to speak*…an employee claiming retaliation may be able to establish causation simply by showing that, within some time period prior to the adverse action, the employer, by some indirect means, became aware of the views that the employee had expressed. "); Clark County School Dist.v. Breeden, 532 U. S. 268, 273 (2001) (per curiam) (noting that some cases "accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case").

Under the participation and opposition clauses, Plaintiff's engaged in protected activity by filing complaints with DFEH & EEOC. Townsend v. Benjamin Enters. Inc., 679 F.3d 41, 49 (2d Cir. 2012). ("*See, e.g.,* 42 U.S.C. §§ 2000e–5, 2000e–8, 2000e–9. An "investigation ... under this subchapter" thus plainly refers to an investigation that "occur[s] in conjunction with or after the filing of a formal charge with the EEOC;); Crawford v. Nashville, 555 US 271 (2009);McMenemy v. City of Rochester, 241 F.3d 279, 283-84 (2d Cir. 2001)(adopted the EEOC's position that "[a]n individual is protected against retaliation for participation in employment discrimination proceedings involving a different entity.") Plaintiff's opposing discrimination (sex race disability) to Federal & State governments in 2021 was still, as a matter of law, protected activity that makes Delta legally liable for retaliation claims, since Delta now formally and clearly judicially admits this to the Court on paper (which Plaintiff will show to the jury) and  no reasonable jury would ever return a verdict on the Retaliation claims in favor of Delta. Rather, the jury would return a verdict for Plaintiff on all retaliation claims, but especially Plaintiff's *42 USC 1981 retaliation claim* as Delta judicially admits Plaintiff opposed racial discrimination to Delta and the DFEH & EEOC, which Delta was aware of and is the reason Delta suspended Plaintiff without pay, revoked material benefits and terminated Plaintiff. see Shahrivar v. City of San Jose, 752 Fed.Appx. 415 , 5 419 (9th Cir. 2018)(*"Shahrivar's*

*Equal Employment Opportunity Commission ("EEOC") and DFEH complaints constitute protected activity for the purposes of § 1981*...As a result, the district court's order dismissing Shahrivar's § 1981 retaliation claims arising after March 10, 2006 against Tsao, Sykes, and Allen was improper. The order is vacated as to those claims and the case is remanded for further proceedings... See Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) ("[A]n employer's awareness is essential to showing a causal link." (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) ) ); Miller v. Fairchild Industries, Inc., 885 F.2d 498, 505 (9th Cir. 1989) (upholding jury's inference of retaliation based on timing because the defendants "who participated in the decisions to lay off [the plaintiffs] were aware that the appellants had filed EEOC charges")

    Delta's now judicially admits the **undisputed material facts** that Plaintiff engaged in protected activity in February 2021 & March 25, 2021(filed complaints with Delta, DFEH & EEOC opposing discrimination), which Delta admit to being aware of, and then immediately suspended Plaintiff without pay on March 26, 2021, revoked material benefits, revoked promotion,  and then terminated Plaintiff in June 2021 for the same reason(filing DFEH & EEOC complaints). It is well settled that when a state fair employment agency ("FEP") has a worksharing agreement with the EEOC, the charges filed with state FEP, such as the DFEH, are deemed to be constructively filed with the EEOC. Green v. Los Angeles County Superintendent of Schools,883 F.2d 1472, 1476 (9th Cir. 1989); Equal Employment Opportunity Commission v. Dinuba Medical Clinic, 222 F.3d 580, 585 (9th Cir.2000); see Surrell 518 F.3d at 1104; Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172, 1175-76 (9th Cir. 1999). The DFEH has a worksharing agreement with the EEOC. See Downs v. Department of Water and Power, 58 Cal. App. 4th 1093, 1097 (Cal.Ct.App.1998) (*"The EEOC and the DFEH each designated the other as its agent for receiving charges and agreed to forward to the other agency copies of all charges potentially covered by the other agency's statute"*).

### ***DELTA'S JUDICIAL ADMISSIONS THAT DELTA RETALIATED AGAINST PLAINTIFF(SUSPENSION WITHOUT PAY & TERMINATION) IN 2021 FOR PLAINTIFF ENGAGING IN PROTECTED ACTIVITY(First Amendment Petitioning & Opposing Discrimination to DFEH & EEOC) WARRANTS JUDGMENT AS A MATTER OF LAW UNDER RULES 50(a) or 56 ON RETALIATION CLAIMS***

In ECF#163, pages14-16 of Delta's Summary Judgment Motion, ***Delta judicially admits that:*** *"On or around February 23, 2021, Ms. Lee filed a complaint with California Department of Fair Employment and Housing ("DFEH"). 56.1 ¶ 89; Fleming Decl., Ex. D (DFEH Complaint).In the DFEH complaint, Ms. Lee alleged to have had a phone call with Mr. Needham on February 19, 2021, during which, according to Ms. Lee, she raised detailed and graphic allegations regarding harassment by Ms. Tamasi in 2020. 56.1 ¶ 90; DFEH Complaint...:On March 25, 2021, Mr. Needham emailed Senior HR Manager Danielle Kruit regarding the allegations Ms. Lee made in her DFEH Complaint. 56.1 ¶ 92; Kruit Decl., Ex. A. Mr. Needham explained that the allegations Ms.*

*Lee made about conversations she had with Mr. Needham were false, that he had never spoken with Ms. Lee, and had only left her a voicemail in an effort to obtain information regarding allegations she had made in a prior court filing, but had never made to Delta. 56.1 ¶ 92; Kruit Decl., Ex. A. ... More importantly, based on the investigation, Delta determined that Ms. Lee intentionally fabricated the alleged February 19, 2021 telephone conversation with Needham in her DFEH Complaint. Id. Accordingly, on June 17, 2021, Delta terminated Ms. Lee's employment "on the grounds that [Delta had] lost trust in [Ms. Lee's] ability to perform [her] duties in a manner consistent with [Delta's] policies and expectations, including the expectation of candor in [Ms. Lee's] relations with Delta" and for failing to cooperate during the investigation, which Delta determined constituted insubordination. Id. ¶ 10" (see ECF#163, pages14- 16)*

### **PLAINTIFF HEREBY TIMELY ENTERS DELTA'S JUDICIAL ADMISSIONS INTO EVIDENCE UNDER Fed. R. Evid. 801(d)(2)(D)**

Plaintiff timely enters Delta's following judicial admissions of facts located in Delta's Summary Judgment brief into evidence. *see Feld v. Primus Technologies Corp., Civ. No. 4:12-cv-01492 (M.D. Pa. 2015)(holding that statements made in plaintiffs' pretrial memoranda were admissible as party admissions pursuant to Fed. R. Evid. 801(d)(2)(D) because they were made by their attorney acting within the scope of her authority);United States v. Yildiz, 355 F.3d 80, 81 (2d Cir. 2004) (noting that FRE 801(d)(2) makes no distinction between governmental and other parties).* The admissions doctrine exists because "the party said the words and should be stuck with them, regardless of their accuracy."*United States v. Ballou, 59 F. Supp. 3d 1038, 1074 (D.N.M. 2014)* (citing Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual §801.02(6)(f)(ii), 801-50 (2011);*United States v. McKeon, 738 F.2d 26, 32–33 (2d Cir. 1984).*("Why probative value and reliability carry so little weight in the case of the admissions rule is not clear, particularly since the use of admissions may be the trial equivalent of a deadly weapon. In all probability, these aspects of the rule are derived vestigially from an older, rough and ready view of the adversary process which leaves each party to bear the consequences of its own acts, no matter how unreliable these acts may be as proof.");*United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1118 (D.N.M. 2012). (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 62–63 (2006))* (**"*Placing additional hurdles to the admission of this evidence would run counter to the policies behind the rule governing admissions by party opponents.*"**)American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-227 (9th Cir. 1988)( held "that statements of fact contained in a brief may be considered admissions of the party in the discretion of the court." But the court cautioned that the statement must be timely introduced into evidence);Gospel Missions of America v. City of Los Angeles, 328 F.3d 548, 557 (9th Cir. 2003);Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528-29 (2d Cir. 1985) ("A party's **assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.**");US v. Fruehauf, 365 U.S. 146 (1961). Plaintiff has timely and sufficiently entered her judicial admissions as evidence under *Fed. R. Evid. 801(d)(2)(D)* in support of her Rule 50 Motion and Rule 56 Motion, as well as in opposition to Delta's Rule 56 Motion for Summary Judgment.

### **LEGAL STANDARD**

The Court has legal authority to and enter a Rule 50(a) Partial Judgment as a Matter of Law("JMOL") or, in the alternative, a Rule 56 Partial Summary Judgment verdict in

favor of Plaintiff based solely on Delta's judicial admissions in Delta's Summary Judgment brief, which Delta judicially admits are all facts. (see ECF#163, pages14-16 of Delta's Summary Judgment Motion). At this point in litigation, Delta is bound by their own judicial admissions Delta represents are facts and the Court must enter judgment in favor of Plaintiff, as "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Plaintiff is entitled to judgment as a matter of law without a jury trial on her Retaliation claims as courts fully embrace the view that "no constitutional question arises when the court withdraws from the jury a case in which there is no issue of fact requiring the jury's determination." Galloway v. United States, 319 U.S. 372 (1943).

At this point, Plaintiff does not have to met any legal burden on her Retaliation claims as Delta's *intentional, clear, and unambiguous* judicially admitted facts comprise all of the legal elements for Plaintiff to be granted judgement on all Retaliation claims, nor does Plaintiff have to submit a Rule 56.1 statement to be granted Partial Summary Judgment, as Plaintiff is using only Delta's judicial admissions in the record.. The Court can not subject Delta's judicially admitted facts to any form of scrutiny on Plaintiff's motions herein or look at any evidence in the record or any evidence to the contrary. As a matter of law, the Court must accept and act in the disposition of the trial upon the facts conceded by Delta's counsel as undisputed facts and evidence produced by Defendant Delta. Delta's judicially admitted facts herein are conclusive and Plaintiff does not need any proof to the contrary. Also, Delta's judicially admitted facts render Delta's Motion for Summary Judgment on the Retaliation claims as moot and dead on arrival, as the Court can not grant Summary Judgment to Delta on Retaliation claims based on Delta's formal, unambiguous, factual judicial admissions. See Jones v. Morehead, 68 U.S. 155, 165 (1835) (holding that *despite evidence to the contrary,* a client is bound by his counsel's statements).Facts admitted by a party "are judicial admissions that bind th[at] [party] throughout th[e] litigation." Gibbs ex rel. Estate of Gibbs v. CIGNA Corp., 440 F.3d 571, 578 (2d Cir. 2006); see also Oscanyan v. Arms Co., 103 U.S. 261, 263, 26 L.Ed. 539 (1881) (*"The power of the court to act in the disposition of a trial upon facts conceded by counsel is as plain as its power to act upon the evidence produced."*); 2 McCormick on Evid. § 254 (6th ed. 2006) ("Judicial admissions are not evidence at all. Rather, they are formal concessions in the pleadings in the case or stipulations by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission….is conclusive in the case. . . ." );Ali v. Reno, 22 F.3d 442 (2d Cir. 1994)("A distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission."); Roman v. Mukasey, 553 F.3d 184, 186-87 (2d Cir. 2009) (per curiam) (same); Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir.1994)(held that *"[a] court can appropriately treat statements in briefs as binding judicial admissions of fact."*); Shim-Larkin v. City of New York, No.

16CV6099AJNKNF, 2020 WL 5534928, at *17 (S.D.N.Y. Sept. 14 2020);Cox v. German Kitchen Ctr. LLC. No. 17CV6081GBDKNF. 2020 WL 5235748. at * 10 (S.D.N.Y. Sept. 2. 2020( ruled that uncontested language featured in an amended complaint regarding a worker's role in a kitchen and his duties constituted a "formal judicial admission.");Pillars v. General Motors LLC (In re Motors Liquidation Co.), 957 F.3d 357, 360–. 61 (2d Cir. 2020)(" *A judicial admission is a statement made by a party or its counsel which **has the effect of withdrawing a fact from contention and which binds the party making it throughout the course of the proceeding**…* To constitute a judicial admission, the statement must be one of fact. Today we join our sister circuits and hold that in order for a statement to constitute a judicial admission it must not only be a formal statement of fact but must also be intentional, clear, and unambiguous. This requirement finds its roots in a 19th century Supreme Court case, *Oscanyan v. Arms Co*., in which the Court explained that a court may act "upon facts conceded by counsel.").

The Court must accept Delta's judicially admitted facts that Plaintiff presents herein as conclusive, binding evidence, as the Court has no legal authority to subject Delta's free and formal judicially admitted facts to any scrutiny as the Second Circuit mandates a "rule of non-inquiry" and this Court must be bound by them as it "promotes efficiency and judicial economy by facilitating the concession of specific issues."see Hoodho v. Holder, 558 F.3d 184 (2d Cir. 2009)("Admissions by parties are not subject to judicial scrutiny to ensure that the admissions are fully supported by the underlying record. Cf. Gibbs, 440 F.3d at 578 ("Having agreed on a set of facts, the parties who adopted the stipulation, and this Court, must be bound by them; we are not free to pick and choose at will." ***This rule of non-inquiry promotes efficiency and judicial economy by facilitating the concession of specific issues, thereby "provid[ing] notice to all litigants of the issues remaining in dispute, identify[ing] those that can be eliminated from the case and those that cannot be, narrow[ing] the scope of discovery to disputed matters and thus reduc[ing] trial time."*** Banks v. Yokemick, 214 F.Supp.2d 401, 405-06 (S.D.N.Y.2002):) Because Delta is bound by its intentional, formal, clear and unambiguous judicially admitted facts which are conclusive and which the the Court can not subject to any scrutiny, Plaintiff is entitled to judgment as a matter of law under Rule 50(a) and/or Rule 56 on all Plaintiff's Retaliation claims.

Plaintiff is entitled to Judgment as a Matter of Law under Rule 50 and/or Rule 56 based on Delta's judicial admissions.See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986);Alexander v. C.I.R., 926 F.2d 197, 197 (2d Cir.1991) (affirming grant of summary judgment based on default admissions); A party's admissions , including admissions derived from a party's failure to respond, may be used for Rule 56 summary judgment. Virga v. Big Apple Const. & Restoration Inc., 590 F. Supp. 2d 467, 471 (S.D.N.Y. 2008) ("The Second Circuit permits admissions.., to be used for summary judgment." (citing Donovan v. Carls Drug Co., 703 F.2d 650, 651 (2d Cir. 1983))); SEC v. Batterman, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, at *5 (S.D.N.Y. Sept. 30, 2002).Federal Rule of Civil Procedure 50(a)(1) provides in pertinent part that, "[i]f during a trial  jury a party has been fully heard on an issue

and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party." A motion under Rule 50(a) may be made "at any time before submission of the case to the jury." Fed. R. Civ. P. 50(a)(2).see Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 250 (1940) (**"[Rule 50] was adopted for the purpose of speeding litigation and preventing unnecessary retrials."**);Binder v. Long Island Lighting Co., 57 F.3d 193 (2d Cir. 1995)((reversing and ordering judgment as a matter of law in a discrimination case…)"the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.' " Sir Speedy, Inc. v. L & P Graphics, Inc., 957 F.2d 1033, 1038-39 (2d Cir. 1992) (quoting Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir. 1970):Southern Ry. Co. v. Walters, 284 U.S. 190, 194 (1931). Rule 50 judgments on evidentiary grounds continue to be a commonplace feature of federal practice. See, e.g., Clark v. Brien,59 F.3d 1082, 1086-89 (10th Cir. 1995); Favorito v. Pannell, 27 F.3d 716, 719-22 (1st Cir. 1994); Bankers Trust Co. v. Lee Keeling & Assocs., Inc., 20 F.3d 1092, 1099-1101 (10th Cir 1994); Peus v. Allstate Ins. Co., 15 F.3d 506, 513-19 (5th Cir.), cert. denied, 115 U.S. 573 (1994); Jordan-Milton Mach. v. F/V Teresa Marie, II, 978 F.2d 32, 34-36 (1st Cir. 1992); Garrett v. Barnes, 961 F.2d 629, 631-35 (7th Cir. 1992); PPM Am., Inc. v. Marriott Corp.,875 F. Supp. 289, 293-304 (D. Md. 1995); Jones v. Lederle Lab., 785 F. Supp. 1123, 1125-27 (E.D.N. Y. 1992), aff d, 982 F.2d 63 (2d Cir. 1992);Townsend v. Benjamin. Enters., Inc., 679 F.3d 41, 49 (2d Cir. 2012)("We review a district court's denial of a motion for judgment as a matter of law de novo. *See Parrot v. Guardian Life Ins. Co. of Am.,* 338 F.3d 140, 142 (2d Cir.2003). "We will reverse the denial of judgment as a matter of law only if, notwithstanding making all credibility assessments and drawing all inferences in favor of [the non-moving party], a reasonable juror would be compelled to accept the view of [the moving party]." *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,* 290 F.3d 98, 109 (2d Cir.2002)"). For the reasons above, the Court must grant judgment in Plaintiff's favor under Rule 50(a) and/or, in the alternative, under Rule 56. In the very very least, the Court can not grant Delta's Rule 56 motion on Plaintiff's Retaliation claims based on Delta's binding, conclusive judicial admissions.

## RESPONSE & OBJECTIONS IN OPPOSITION TO DELTA'S MOTION FOR SUMMARY JUDGMENT

## COURT LACKS SUBJECT MATTER JURISDICTION TO ADJUDICATE DELTA'S ISSUES/DEFENSES & 56.1 FACTS WHICH OCCURED IN CALIFORNIA AND HAVE NO RELEVANCE TO PLAINTIFF'S CLAIMS

Plaintiff objects to Delta use of complaints in other cases in which this court has no jurisdiction and which is irrelevant ( Erika Lees complaint in CACD, and Aasir Azzarmi complaint in CACD) to this case. Because Tomasi did not live in California or work with plaintiff in California, Plaintiff clearly had no legal basis (lack of personal jurisdiction) to include Tomasi in any California case, so all of Delta's arguments regarding Tomasi not being in CACD case are frivolous.

**Plaintiff makes subject matter jurisdiction objections.**Because the NYSHRL and NYCHRL only involves claims in the jurisdictions of New York City and/or New York State, this Court has no subject matter jurisdiction to adjudicate any moot, non-existent, futile, extra-judicial Reasonable Accommodate request issue, involving the Doctor's Note of Dr. Van de Walle because this Reasonable Accommodation request involving the 11/20/2018 Doctor's Note of Dr. Van de Walle ONLY ENCOMPASSED Plaintiff's employment in Los Angeles, CA, which ended on 11/30/2018. Yet majority of Delta's 56.1 Facts are about Reasonable Accommodation request from California which was moot, non-existent and which Platiniff withdrew on 11/30/2018, as it didn't apply to NYC employment at LGA Airport for many reasons. see Syeed v. Bloomberg L.P., 58 F.4th 64, 71 (2d Cir. 2023)("he impact requirement confines the protections of the NYCHRL to those who are meant to be protected -those who work in the city... Hoffman therefore sets forth two ways... "" (1) working in New York or(2) establishing that the challenged conduct had some impact on the plaintiff within the respective New York geographic boundaries.") Delta is attempting to litigate California issues and Reasonable Accommodation rights under California. However, this Court has no personal or subject matter jurisdiction to litigate the California claims/issues that Delta raises in its Summary Judgment motion, which Plaintiff did not raise in her complaint. Also, Because the Court dismissed all of Plaintiff's Disability claims and Delta is legally prohibited from defending claims, which no longer exist and which this New York Federal Court has no jurisdiction over, the Court must strike EVERY 56.1 FACT that involves the first Reasonable Accommodation request made in October 2018 which involves the Doctor's Note of Dr. Van de Walle, as this Reasonable Accommodation request was moot and non-existent beginning on 11/30/2018, as Plaintiff withdrew it when she was hired in New York on 12/1/2018. The Court has no jurisdiction over the issues Delta raises and Delta can not raise them unilaterally as Delta did not file a cross-complaint and Delta can't do a frivolous Summary Judgment motion on claims and issues that don't exist and which Delta isn't being sued for. This Summary Judgment motion is 100% frivolous. Delta "lacks standing to sue" or raise these issues. The Court can't engage in hypothetical jurisdiction and adjudicate Delta's Rule 56 motion as the Court would be giving an advisory opinions on Delta's non-existent issues that occurred in California and under California law. The Court can only adjudicate live cases and controversies and Delta's 56.1 facts are not based on a live case or live controversy. see Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998)("Standing is the "irreducible constitutional minimum" necessary to make a justiciable "case" or "controversy" under Article I1, §2. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560. It contains three requirements: injury in fact to the plaintiff, causation of that injury by the defendant's complained-of conduct, and a likelihood that the requested relief will redress that injury. E.g., ibid... In a long and venerable line of cases, this Court has held that, without proper juris-diction, a court cannot proceed at all, but can only note the jurisdictional defect and dismiss... It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i. e., the courts' statutory or constitutional power to adjudicate the case... Hypothetical jurisdiction produces nothing more than a hypothetical judg- ment-which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning. Musk- rat v. United States, 219 U. S. 346, 362 (1911);This Court declines to endorse the "doctrine of hypothetical jurisdiction,"...That doctrine carries the courts beyond the bounds of authorized judicial action and thus offends fundamental separation-of-powers principles. In a long and venerable line of

1   cases, this Court has held that, without proper juris- diction, a court cannot proceed at all, but can
2   only note the jurisdictional.")
                                    **INTRODUCTION**
3         Besides the fact that Delta's Rule 56 motion is procedurally deficient and does not meet the
4   legal standard to be granted summary judgment as Delta's 56.1 Statements does not include any
    genuinely undisputed facts which are essential elements of Plaintiff's claims,  Delta is simply not
5   entitled to judgment based on the entire record, as there are genuinely disputed facts. see Beard v.
6   Banks, 548 U.S. 521, 126 S. Ct.2572 (2006).(that "as the plurality recognizes, there is more to the
    summary judgment standard than the absence of any genuine issue of material fact; the moving party
7   must also show that he is 'entitled to a judgment as a matter of law.'"(Ginsburg, J., dissenting) (citing
8   FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-55 (1986)). Also, Delta
    main arguments, which frivolous, are that Plaintiff has no evidence(which isn't true)  to support her
9   claims, except  Plaintiff's own self-serving testimony, which Delta argues is not enough to survive
10  summary judgment.  However, Delta is legal and factual incorrect on both of these arguments, as
    Plaintiff's VERIFIED COMPLAINT is EVIDENCE to be relied upon to oppose Delta's Rule 56
11  motion. See Patterson v. County of Oneida, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified
12  pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment.");
    Fitzgerald v. Henderson, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely
13  on [his verified amended complaint] in opposing summary judgment"), cert. denied, 536 U.S. 922
14  (2002); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as
    an affidavit for summary judgment purposes."); see also Celotex Corp. v. Catrett, 477 U.S. 317
15  (1986)(Primary Holding: A defendant cannot get summary judgment through a conclusory assertion
16  that the plaintiff does not have evidence to support the complaint. Instead, the defendant must show
    the absence of evidence in the discovery record.); Knox v. CRC Management Co., LLC, 134 F.4th
17  39 (2d Cir. 2025)("the district court erroneously found that "a plaintiff's self-serving statement,
    without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for
18  summary judgment." Knox v. CRC Mgmt. Co., LLC, No. 20-cv-4073, 2023 WL 22605, at *10
19  (S.D.N.Y. Jan. 3, 2023) (internal quotation marks omitted). To the contrary, "[a]t summary judgment,
    [a plaintiff is] entitled to rely on his own testimony to establish his . claim." Rentas v. Ruffin, 816
20  F.3d 214, 221 (2d Cir. 2016); see also Bellamy v. City of New York, 914 F.3d 727, 746 (2d Cir. 2019)
21  (a "plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material
    fact"). Testimony, of course, includes sworn statements made in depositions or declarations under the
22  penalty of perjury. See 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4). "There is nothing in [Federal Rule
23  of Civil Procedure 56(c)] to suggest that nonmovants' affidavits alone cannot—as a matter of law—
    suffice to defend against a motion for summary judgment." Danzer v. Norden Sys., Inc., 151 F.3d 50,
24  57 (2d Cir. 1998). And "[t]o hold . that the nonmovant's allegations of fact are (because 'self-
    serving') insufficient to fend off summary judgment would be to thrust the courts—at an
25  inappropriate stage—into an adjudication of the merits." Id. To the extent the district court's analysis
26  discounted Knox's sworn statements for being "self-serving," doing so was error. "). Additionally,
    Delta frivolously argues that Delta is entitled to summary judgment because Plaintiff's allegations are
27  "fantastical" and basically, unbelievable or not credible.  However, the Second Circuit stressed that
    where the ascertainment of the facts turns on *credibility, a triable issue of fact is present, and the*
28  *granting of summary judgment is improper*.see Colby v. Klune, 178 F.2d 872, 873 (2nd Cir. 1949),

as the Second Circuit, in particular, adopted a standard which precluded the granting of summary judgment where there was the "slightest doubt" as to whether the plaintiff could prevail at trial. See Dolgow v. Anderson, 438 F.2d 825, 830 (2d Cir. 1970)In the court's view: That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them.see Arnstein v. Porter, 154 F.2d 464, 475 n.34 (2d Cir. 1946) (quoting Sprague v. Vogt,150 F.2d 795 (8th Cir. 1945)). The Second Circuit, a few months ago, just reaffirmed this holding in Knox v. CRC Management Co., LLC, 134 F.4th 39 (2d Cir. 2025)(*"As we must at the summary-judgment stage, we view the record in the light most favorable to the non-movant, Knox, and describe the facts accordingly.* See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (*"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."*). ") Therefore, as legal matter, on this motion, the Court must view the record and describe the facts in the light most favorable to Plaintiff and Plaintiff's evidence must be "believed," as the Court is precluded from making credibility determinations as Delta is improperly requesting the Court to do.

## DELTA DID NOT MEET THEIR RULE 56 SUMMARY JUDGMENT LEGAL BURDEN & AS A MATTER OF LAW CAN NOT BE GRANTED SUMMARY JUDGMENT, EVEN ON A DEFAULT

Delta did not meet it's Rule 56 Summary Judgment burden as Delta was required to but failed to "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Delta alleged facts in its 56.1 Statement about *Plaintiff's disability, reasonable accommodation, and third parties opinions about Plaintiff's disability* have *no legal relevance* to any of Plaintiff's claims that were not dismissed and thus Delta failed to demonstrate any undisputed MATERIAL FACTS. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of the City of New York, 746 F.3d 538, 544 (2d Cir. 2014). First of all, Delta's facts in their 56.1 Statement of Facts are not material facts and are NOT UNDISPUTED MATERIAL FACTS, they are just random, irrelevant facts which do not defend against any of Plaintiff's claims. Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005),("The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).")Material facts are those necessary to the proof or defense of a claim, and are determined by referring to substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Delta's frivolous 56.1 Statement of Facts and Memorandum Motion for Summary Judgment go on a tangent about issue and claims that are irrelevant to this case. For example, Delta attempts to resurrect a narrative and all of these brand new alleged facts pertaining to Plaintiff's Reasonable Accommodation requests. However, the Court already dismissed Plaintiff's Disability claims. Therefore, Plaintiff OBJECTS and the Court must ignore, disregard all Delta's alleged arguments, facts, and evidence pertaining to Plaintiff's already dismissed Reasonable Accommodation requests. Additionally, Delta then only floods its Rule 56 motion with Documents, Affidavits, and Alleged facts that were never produced during discovery and were manufactured solely for the purpose of Delta's Rule 56 motion. Thus, Plaintiff objects as Delta's Documents,

Affidavits, and Alleged facts do not meet the Rule 56 standard. see Whitfield v. Scully, 241 F.3d 264 (2d Cir. 2001)("Yet the filing of a deposition transcript necessarily means a court will "use" it, *since summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file,... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."* Fed. R. Civ. P. 56(c) (emphases added); see also Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995) (Fed. R. Civ. P. 56(c) provides for "a review of the entire record").:) Delta's Documents, Affidavits, and Alleged facts are not *"pleadings, depositions, answers to interrogatories, and admissions on file" under FRCP 56(c).*

    Moreover, Delta even admits and concedes in its 56.1 statement footnote 1 that *"In submitting this Rule 56.1 Statement, Delta does not concede that every fact set forth herein is "material"; however, in the interest of completeness and in anticipation of the arguments Defendant expects Plaintiff Erika Lee ("Plaintiff") will make in opposition, Defendant has included certain statements which cannot raise a material issue sufficient to defeat summary judgment. Furthermore, Defendant does not concede that the allegations testified to by Plaintiff as set forth herein are true or undisputed for any purpose other than summary judgment, including without limitation to the extent a trial, if any, is to be held in this matter."* Thus, Delta is essentially admitting that it's 56.1. Statement of alleged facts are all disputed and are not material, while also being speculative solely based. *"in anticipation of the arguments Defendant expects Plaintiff Erika Lee ("Plaintiff") will make in opposition."* As a matter of law, Delta can't use a 56.1 statement to set forth only frivolous conclusory arguments, which are not material facts, that Delta only "anticipates" Plaintiff will now make for the first time in her opposition. If Delta did not have these alleged facts in discovery and none of these irrelevant facts were ever raised by either party during discovery, Delta can't invent and raise these new alleged facts for first time solely for the purposes of this Rule 56 motion. Clearly, Delta's concession that it is only raising these new "issues" and new "facts," most of which Plaintiff never heard or seen before, solely in anticipation of how Plaintiff might respond in opposition, is a clear and unequivocal admission that Delta's Motion for Summary Judgment can not be granted as it is frivolous, speculative, not based on any relevant material facts, and definitely not based on any relevant undisputed facts. Delta's arguments lacked citations to controlling case law, defective declarations were not admissible evidence, and 56.1 Statement did not negate or even address any of the legal elements of Plaintiff's claims. Delta's Motion for Summary Judgment was not properly supported under Rule 56. Thus, Plaintiff was not required to respond to Defendants' defective motion for Summary Judgment. See Adickes v. S. H. Kress & Co., 398 U.S. 144, 160 (1970)(*"Because [the mov-ing party] did not meet its initial burden ..., [the non- moving party] here was not required to come forward with suitable opposing [evidence]."*). Delta did not meet their burden on this motion. The burden of showing the absence of any such genuine issue rests with the moving party and **only if the moving party, Delta,** meets its initial responsibility, does the burden then shift to the opposing party to establish that a genuine issues to any material fact actually does exist. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c)(1) (*"A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."*).Here, the burden never shifted to Plaintiff, requiring Plaintiff to even respond to Delta's Motion for Summary Judgment. In Jackson v. Federal Express, 766 F.3d 189 (2d Cir. 2014),the Second Circuit held that a court may not

grant summary judgment by default when a motion is unopposed, if the moving party did not meet its'burden. Notwithstanding Defendants' failure to meet their burden under FRCP Rule 56, there are genuinely disputed material facts. (See Plaintiff's 56.1 Counterstatement). However, even if Plaintiff never opposed Delta's Rule 56 motion, the Court is still precluded from granting Summary Judgment to Delta, as a matter of law, as Delta's motion is defective as Delta's unsupported allegations are not material facts, and Delta failed to prove that these alleged material facts are undisputed with citations to evidence. see Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).("unsupported allegations do not create a material issue of fact" ). In sum, Delta list of facts in 56.1 Statement of Facts are clearly not undisputed, not genuine material facts, and Delta failed to cite to the evidence to prove to the Court that these alleged facts are undisputed. Most of Delta's 56.1 facts only cite to evidence from Delta and Delta's employees, which means that Delta knew before filing its Rule 56 Motion that Delta has no evidence to cite or prove that these facts are undisputed by both parties.

### Pretext

The Court can not grant Defendant Summary Judgment on the Retaliation claims, as pretext is for the jury to decide, as the ONLY the jury can decide if Delta's pretextual reasoning(for suspending and terminating Plaintiff, revoking material benefits and revoking promotion and new job offer on July 1,2021. Plaintiff has provided evidence from Delta own documents (see Exhibits M and N; Declaration of Azzarmi, Verified Complaint; Declaration of Plaintiff) that Delta has a systemic pattern and practice of NOT suspending or terminating similarly situated non-black females(Ivanoff, Wurtz,etc) who intentionally make 100% knowingly false accusations about discrimination, physical assault, and hostile work environment that occurred in the workplace.  Yet, Delta deviated from their own polices and skipped all level of performance development and went straight to suspension without pay and termination when Delta has no evidence to prove that Plaintiff ever made any false statements. Delta has the video tapes and the phone records to prove that Plaintiff had a phone call with Needham but Delta refused to produce them. Plaintiff is entitled to see a jury as a jury would reject Delta's asserted reasons, as a trier may thus generally infer discrimination when it finds that the employer's explanation is unworthy of credence. See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 142 (2d Cir. 1993) (" [A] plaintiff may meet [the] ultimate burden of proof by combining her proof of the elements constituting a prima facie case with evidence that defendant's proffered reasons for its acts were false."); Binder v. Long Island Lighting Co., 57 F.3d 193 (2d Cir. 1995)(InSt. Mary's Honor Center v. Hicks, --- U.S. ----, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993), the Supreme Court reaffirmed its longstanding rule that "rejection of the [employer's] proffered reasons ... will permit the trier of fact to infer the ultimate fact of intentional discrimination." Id. at ----, 113 S. Ct. at 2749. If the trier of fact rejects the proffered legitimate nondiscriminatory reason, "no additional proof of discrimination is required." Id.. The Supreme Court granted certiorari in Hicks to resolve a split among the circuits as to whether rejection of the defendant's reasons by the trier of fact compels judgment for the plaintiff. Id. at ----, 113 S. Ct. at 2750. The Court held that while a trier of fact's rejection of the employer's asserted reasons does not compel a finding for the plaintiff, it permits the trier to infer discrimination. Put another way, "rejection of the defendant's proffered reasons is enough at law to sustain a finding of discrimination." Id. at ---- n. 4, 113 S. Ct. at 2749 n. 4 This reading of Hicks is consistent with our previous caselaw. In Cabrera v. Jakabovitz, 24 F.3d 372, 385 (2d Cir.) , cert. denied, --- U.S. ----, 115 S. Ct. 205, 130 L. Ed. 2d 135 (1994), we made the following observation:[The employer] misreads the Supreme Court's statement in Hicks that once a defendant

produces evidence of a legitimate, nondiscriminatory reason for his or her action, the plaintiff must then establish that the defendant's actions were intentionally discriminatory.... Justice Scalia took pains to preclude such an interpretation of the Court's decision when he observed that, upon rejection of the defendant's proffered reasons for its action, no additional proof of discrimination is required… ***A trier may thus generally infer discrimination when it finds that the employer's explanation is unworthy of credence.*** See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 142 (2d Cir. 1993) (" ***[A] plaintiff may meet [the] ultimate burden of proof by combining her proof of the elements constituting a prima facie case with evidence that defendant's proffered reasons for its acts were false.***"), cert. denied, --- U.S. ----, 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994); DeMarco v. Holy Cross High Sch., 4 F.3d 166, 170 (2d Cir. 1993)."

## GENUINE MATERIAL DISPUTE OVER JOB REQUIREMENTS

Because there are genuine material disputes over whether or not Plaintiff had to lift any bags and/or the job requirements of the SkyClub job, the Court can not grant Summary Judgment to Delta as the "requirements" of a program are is an issue of fact. See, e.g., Majors v. Housing Auth., 652 F.2d 454, 458 (5th Cir. Unit B Aug.3, 1981) (vacating summary judgment because of genuine issue of material fact).

## ORAL COMPLAINTS MET THE EVIDENCE STANDARD

Delta argues that Plaintiff doesn't have any hard evidence to prove discrimination, which isn't true. However, oral complaints are sufficient to oppose a Rule 56.motion. Plaintiff's oral complaints opposing sex and race and disability discrimination to Henrietta Archie in April 2019, David Needham in February 2021 and Kelly Nabors & Danielle Kruit in March & April 2021 and to Jose Rosado on June 17, 2021 constituted protected activity as a matter of law. See *Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325 (2011)(held in 2011 that an oral complaint can meet the requirement of "filed a complaint" if it is "sufficiently clear and detailed.")

## RELEVANT FACTUAL BACKGROUND2

**I.    In 2005, Delta Hired Ms. Lee and Employed Her for Over Fifteen Years.**

Plaintiff objects and disputes all of Delta's alleged immaterial facts which are not genuine. See Plaintiff's attached Declaration.

**II. In 2019, Delta Engaged in an Interactive Process with Ms. Lee Regarding a Job Accommodation.**

Plaintiff objects on basis of law of the case doctrine as the Court already dismissed Plaintiff's Disability Discrimination/Reasonable Accommodation/Failure to Interact claims and Delta has no valid legal basis to resurrect and relitigate the law or facts pertaining to these claims.  "The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same litigation absent cogent and compelling reasons, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' It does not rigidly bind a court to its former decisions, but cautions that 'litigants [who] once battled for the court's decision . . . ***should neither be required, nor without good reason permitted, to battle for***

*it again.'."* Mazzei v Money Store, 2023 U.S. App. LEXIS 27213, at *7 [2d Cir Oct. 13, 2023, No. 22-1959]. See also Daniel v T&M Protection Resources, LLC, 2023 U.S. App. LEXIS 12321, at *3-4 [2d Cir May 19, 2023, No. 22-1614] ("The law-of-the-case doctrine provides that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise.'"). The Court must ignore, disregard and strike all of Delta's alleged facts and legal arguments pertaining to Disability Discrimination/Reasonable Accommodation/Failure to Interact claims as they are irrelevant and NOT APPLICABLE TO ANY OTHER NON-DISMISSED CLAIMS.  On the other hand, for the sake of opposing this motion, Plaintiff further objects and disputes all of Delta's alleged immaterial facts in this section, which are not genuine issues of material facts. See Plaintiff's attached Declaration.

### III. Delta Thoroughly Investigated Ms. Lee's Claims of Disability-Based Retaliation and Racial Discrimination Against Bernadette Tamasi and Found No Evidence to Support Those Claims.

   Plaintiff objects on basis of law of the case doctrine as the Court already dismissed Plaintiff's Race Discrimination/Disability Discrimination/Reasonable Accommodation/Failure to Interact claims and Delta has no valid legal basis to resurrect and relitigate the law or facts pertaining to these claims. "The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same litigation absent cogent and compelling reasons, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' It does not rigidly bind a court to its former decisions, but cautions that 'litigants [who] once battled for the court's decision . . . *should neither be required, nor without good reason permitted, to battle for it again.'."* Mazzei v Money Store, 2023 U.S. App. LEXIS 27213, at *7 [2d Cir Oct. 13, 2023, No. 22-1959]. See also Daniel v T&M Protection Resources, LLC, 2023 U.S. App. LEXIS 12321, at *3-4 [2d Cir May 19, 2023, No. 22-1614] ("The law-of-the-case doctrine provides that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise.'"). The Court must ignore, disregard and strike all of Delta's alleged facts and legal arguments pertaining to Disability Discrimination/Reasonable Accommodation/Failure to Interact claims as they are irrelevant and NOT APPLICABLE TO ANY OTHER NON-DISMISSED CLAIMS.  However, let the record reflect for purposes of Delta's **JUDICIAL ADMISSIONS**, that Delta judicially admitted that Plaintiff engaged in protected activity and formally opposed racial discrimination and disability discrimination and made complaints opposing disability discrimination and race discrimination.. Plaintiff testified in Verified Complaint and in Deposition that similarly situated NON-BLACK comparators, who complained of sexual harassment, sex discrimination, hostile work environment, were never retaliated against with adverse employment actions, even when Delta did not believe

these similarly situated NON-BLACK comparators' allegations and/or believed that hat similarly situated NON-BLACK comparators lied.  Therefore, Plaintiff was treated less favorably, in part, because of her sex and this is relevant to Plaintiff's 42 USC 1981 Retaliation claim.  On the other hand, for the sake of opposing this motion, Plaintiff further objects and disputes all of Delta's alleged immaterial facts in this section, which are not genuine issues of material facts. See Plaintiff's attached Declaration.

**IV. In 2021, Ms. Lee Was Suspended and Terminated for Lying About Another Delta Employee in a Sworn Filing and During Delta's Investigation Thereof.**

Plaintiff objects to Delta's use of any other complaint in any other case on Delta's motion for summary judgment.  As a matter of law, only the operative complaint in this case is valid, as all other complaints in this case or relating to this case are legally "non-existent" and has "no legal effect." see Pettaway v. National Recovery. Solutions, LLC, 955 F.3d 299, 303–04 (2d Cir. 2020)("It is true that "an amended pleading ordinarily supersedes the original and renders it of no legal effect." In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000).");Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non- existent.") Also, any alleged facts in any complaint in CACD does not constitute a judicial admission, according to the Second Circuit, as those complaint are not "operative" and were never "approved" or accepted by the CACD court, and they were superseded by the operative complaint in this case and Plaintiff "AMENDED" the complaint.. see Pillars v. GM LLC *(In re* Motors Liquidation Co.), 957 F.3d 357, 360 (2d Cir. 2020)("Bearing in mind this rule, we cannot say that New GM's mistaken citation of *language from a nonoperative agreement in its initial answer* and notice of removal constitutes a judicial admission.It is true that the statement bore sufficient indicia of formality and conclusiv-eness to constitute such an admission,as it appeared in both an answer and a notice of removal.  But our conclusion is informed by the fact that these filings—contain inherent inconsistencies between the cited language and the actual operative agreement appended to the notice of removal. It is further informed by the bankruptcy court's explicit recognition that the citation was "plainly" a mistake.Cf. Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 122 (2d Cir. 1990 (finding a judicial admission where a party *"at no time moved to amend its amended answer* and does not now claim fraud or mistake.").  Nor do we find it appropriate to deem a statement of fact a judicial admission where that statement *could not be true given that it belonged to a* **superseded** agreement and one that **was never approved by the bankruptcy court."**Cf. PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 123 (2d Cir. 1984) ("Of course, the parties may not create a case by stipulating to facts which do not really exist."). Because New GM's erroneous citation of language from a non-operative agreement was not an intentional, clear, and unambiguous statement of fact, we  hold that it did not constitute a judicial admission. "). This Court must strike, disregard, or ignore any compliant

in CACD, as it is not evidence in this case and Delta never presented this at Plaintiff's deposition or asked any of these questions. Plaintiff further objects and disputes all of Delta's alleged immaterial facts which are not genuine. See Plaintiff's attached Declaration.

**RELEVANT PROCEDURAL HISTORY**

It seem that "On February 22, 2024, Delta filed a Motion to Dismiss Ms. Lee's Second Amended Complaint. (Dkt. 85). The Court's resulting Order dismissed all of Ms. Lee's claims, with the exception of her claims for sexual harassment and hostile work environment under the NYSHRL and the NYCHRL (Count II) and retaliation for complaints based on disability, sex, and race under the NYSHRL and NYCHRL and for retaliation based on race under 42 U.S.C. § 1981 ("Section 1981") (Count III)8 (Dkt. 103)."

# LEGAL ARGUMENT
## I.  Standard of Review.
**DELTA DOES NOT IDENTIFY ANY MATERIAL FACTS WHICH ARE UNDISPUTED BY BOTH PLAINTIFF AND  DELTA IN DELTA's  56.1 STATEMENT, THUS PLAINTIFF MOVES COURT FOR INDEPENDENT REVIEW OF THE RECORD**

Delta's "[A]llegations . . . cannot be deemed true simply by virtue of their assertion in a Local Rule 56.1 statement." Holtz, 258 F.3d at 73; see also Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co., 373 F.3d 241, 245 (2d Cir. 2004) ("[T]he district court may not rely solely on the statement of undisputed facts contained in [a] 56.1 statement . . . [and] must be satisfied that the citation to evidence in the record supports the assertion."). "[W]here there are no[ ] citations or where the cited materials do not support the factual assertions in the [56.1] Statements, the Court is free to disregard the assertion," Holtz, 258 F.3d at 73–4 and review the record independently. Id. at 74. The Second Circuit has provided additional guidance with respect to motions for summary judgment in employment discrimination cases: We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. See, e.g., Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). Because Delta's. Rule 56 motion doesn't met legal standard and Delta didn't meet its burden,The district court still is obligated to determine whether summary judgment is appropriate. See Fabrikant v. French, 691 F.3d 193, 215 n.18 (2d Cir. 2012); Vt. Teddy Bear Co., 373 F.3d at 244 ("[W]here the non- moving party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."). An unopposed motion for summary judgment may be granted "only if the facts as to which there is no genuine dispute show that the moving party is entitled to judgment as a matter of law." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)

Plaintiff objects and disputes all of Delta's alleged legal arguments in this section and any alleged immaterial facts in this section, which are not genuine issues of material facts. See Plaintiff's attached Declaration. Delta has failed to point to any evidence demonstrating inconsistencies.

**II. Ms. Lee Has No Evidence to Support Her Sexual Harassment/Hostile Work Environment Claims Under the NYSHRL and the NYCHRL.**

Plaintiff objects and disputes all of Delta's alleged legal arguments in this section and any alleged immaterial facts in this section, which are not genuine issues of material facts. See Plaintiff's attached Declaration. Delta has failed to point to any evidence demonstrating inconsistencies and/or what allegations are "fantastical." Plaintiff objects to Delta's use of any other complaint in any other case on Delta's motion for summary judgment. As a matter of law, only the operative complaint in this case is valid, as all other complaints in this case or relating to this case are legally "non-existent" and has "no legal effect." see Pettaway v. National Recovery. Solutions, LLC, 955 F.3d 299, 303–04 (2d Cir. 2020)("It is true that "an amended pleading ordinarily supersedes the original and renders it of no legal effect." In re Crysen/Montenay Energy Co., 226 F.3d 160, 162 (2d Cir. 2000).");Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("It is well-established in our circuit that an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.")Also, any alleged facts in any complaint in CACD does not constitute a judicial admission, according to the Second Circuit, as those complaint are not "operative" and were never "approved" or accepted by the CACD court, and they were superseded by the operative complaint in this case and Plaintiff "AMENDED" the complaint.. see Pillars v. GM LLC *(In re* Motors Liquidation Co.), 957 F.3d 357, 360 (2d Cir. 2020)("Bearing in mind this rule, we cannot say that New GM's mistaken citation of *language from a nonoperative agreement in its initial answer* and notice of removal constitutes a judicial admission.It is true that the statement bore sufficient indicia of formality and conclusiv-eness to constitute such an admission,as it appeared in both an answer and a notice of removal. But our conclusion is informed by the fact that these filings—contain inherent inconsistencies between the cited language and the actual operative agreement appended to the notice of removal. It is further informed by the bankruptcy court's explicit recognition that the citation was "plainly" a mistake.Cf. Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 122 (2d Cir. 1990 (finding a judicial admission where a party *"at no time moved to amend its amended answer* and does not now claim fraud or mistake."). Nor do we find it appropriate to deem a statement of fact a judicial admission where that statement *could not be true given that ibelonged to a* superseded agreement and one that was never approved by the bankruptcy court."Cf. PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 123 (2d Cir. 1984) ("Of course, the parties may not create a case by stipulating to facts which do not really exist."). Because New GM's erroneous citation of language from a non-operative agreement was not an intentional, clear, and unambiguous statement of fact, we hold that it did not constitute a judicial admission. "). This

Court must strike, disregard, or ignore any compliant in CACD, as it is not evidence in this case and Delta never presented this at Plaintiff's deposition or asked any of these questions. Plaintiff further objects and disputes all of Delta's alleged immaterial facts which are not genuine. Plaintiff further objects and disputes all of Delta's intentional and deceitful mischaracterizations of Plaintiff's testimony.See Plaintiff's attached Declaration, Plaintiff's Verified Amended Complaint.

**III. Ms. Lee Has No Evidence to Support Her Retaliation Claims.**

Delta failed to argue or explain exactly how "Ms. Lee's retaliation claims fail on several fronts." (see Plaintiff's attached Rule 50 and Rule 56 Motions for Partial Judgment for response and arguments ) where Plaintiff addresses all of these arguments. Plaintiff further objects and disputes all of Delta's alleged immaterial facts which are not genuine. See Plaintiff's attached Declaration, Plaintiff's Verified Amended Complaint.

**A.Ms. Lee Cannot Establish That Her April 2019 Leave of Absence Was Retaliatory.**

Delta failed to argue or explain exactly how "Ms. Lee's retaliation claims fail on several fronts." (see Plaintiff's attached Rule 50 and Rule 56 Motions for Partial Judgment for response and arguments) where Plaintiff addresses all of these arguments. Plaintiff further objects and disputes all of Delta's alleged immaterial facts which are not genuine.( See Plaintiff's attached Declaration, Plaintiff's Verified Amended Complaint.)

Plaintiff objects on basis of law of the case doctrine as the Court already dismissed Plaintiff's Race Discrimination/Disability Discrimination/Reasonable Accommodation/Failure to Interact claims and Delta has no valid legal basis to resurrect and relitigate the law or facts pertaining to these claims. "The law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same litigation absent cogent and compelling reasons, such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.' It does not rigidly bind a court to its former decisions, but cautions that 'litigants [who] once battled for the court's decision . . . ***should neither be required, nor without good reason permitted, to battle for it again.*** '."Mazzei v Money Store, 2023 U.S. App. LEXIS 27213, at *7 [2d Cir Oct. 13, 2023, No. 22-1959]. See also Daniel v T&M Protection Resources, LLC, 2023 U.S. App. LEXIS 12321, at *3-4 [2d Cir May 19, 2023, No. 22-1614] ("The law-of-the-case doctrine provides that 'when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise.'"). The Court must ignore, disregard and strike all of Delta's alleged facts and legal arguments pertaining to Disability Discrimination/Reasonable Accommodation/Failure to Interact claims as they are irrelevant and NOT APPLICABLE TO ANY OTHER NON-DISMISSED CLAIMS.  However, let the record reflect for purposes of Delta's **JUDICIAL ADMISSIONS**, that Delta judicially admitted that Plaintiff engaged in protected activity and formally opposed racial discrimination and disability discrimination and made complaints opposing disability discrimination and race discrimination.. Plaintiff testified in Verified Complaint and in Deposition that similarly situated NON-BLACK

comparators, who complained of sexual harassment, sex discrimination, hostile work environment, were never retaliated against with adverse employment actions, even when Delta did not believe these similarly situated NON-BLACK comparators' allegations and/or believed that hat similarly situated NON-BLACK comparators lied. Therefore, Plaintiff was treated less favorably, in part, because of her sex and this is relevant to Plaintiff's 42 USC 1981 Retaliation claim. On the other hand, for the sake of opposing this motion, Plaintiff further objects and disputes all of Delta's alleged immaterial facts in this section, which are not genuine issues of material facts. See Plaintiff's attached Declaration.

PLAINTIFF WAS NEVER ON A LEAVE OF ABSENCE IN APRIL 2019. PLAINTIFF WAS SUSPENDED WITHOUT PAY. Delta judicially admits and concedes there is *GENUINELY DISPUTED MATERIAL FACT HERE* as Delta cites Plaintiff's deposition testimony and concedes that *"Ms. Lee's retaliation claims are first premised on a false contention that she was "suspended" in April 2019 for complaining about sexual harassment. See, e.g., Pl. Tr. 251:5-252:15.10."* It is undisputed in the record that Plaintiff orally opposed sexual harassment by Tamasi to Equal Opportunity Manager Henrietta Archie. *This is ANOTHER GENUINELY DISPUTED MATERIAL FACT HERE.* Delta concedes this when Delta admits Plaintiff testified that "Ms. Archie explicitly informed her that she "was going to be suspended for two weeks," and stated, "Erika, you're being suspended because you are reporting . . . hostile workplace, sex race discrimination and hostile work environment." Pl.Tr. at 252:13-15, 255:2-5." *ANOTHER GENUINELY DISPUTED MATERIAL FACT HERE i*s that Delta refused to ever engage in the interactive process at any time and simply summarily denied Plaintiff's reasonable accommodation requests and the April 2019 phone call with Archie was not related to Plaintiff's disability. *ANOTHER GENUINELY DISPUTED MATERIAL FACT HERE i*s that Ms. Archie had authority to suspend Ms. Lee, so these alleged statements are factual. (see Declaration attached).

*COURT MUST DISREGARD ALL OF DELTA'S EVIDENCE, DISPUTED FACTS & ARGUMENTS PERTAINING TO PLAINTIFF'S DISMISSED ADA/REASONABLE ACCOMMODATION CLAIMS.*
*Plaintiff should not even have to file any evidence or response to this but in an abundance of caution, here goes:*
Delta intentionally attempts to deceive the Court in believing that Plaintiff was not discriminated against and retaliated against with suspension without pay in April 2019 because Delta conflates Plaintiff's October 2018 and January 2019 request for a ADA reasonable accommodation (to leave work at scheduled time) request with Plaintiff's sex discrimination, race discrimination, retaliation, and hostile work environment claims. First of all, Plaintiff's October 2018 reasonable accommodation request and January 2018 were summarily denied without interactive process in February 2019 and no further discussion was had. While Delta argues that Plaintiff was not suspended without pay in April 2019 in retaliation for opposing discrimination in April 2019 but

rather was given a leave of absence as Plaintiff could not perform the essential elements of her job, Delta itself created a genuine disputed issue of material facts which is for a jury to decide. Plaintiff has controverted Delta's alleged facts on this issue with evidence and testimony of Plaintiff and Delta's own managers. Plaintiff was never placed on a leave of absence because if that were true , Delta would've provided evidence from third party administrator Sedgwick who processes Delta's leaves of absence and Plaintiff would've been on an approved leave of absence for short term or long terms disability or plaintiff would've filed a claim for state disability and/or unemployment benefits, which never happened. (see Deposition Testimony of Lisa Todd and Bill Ittounas) Also, had Delta put Plaintiff on a "APA" leave , Delta would've attempted to find Plaintiff a new job in a different department as Delta did with Carol Watts Lynch ( see Exhibit 3 ). Delta never even questioned Plaintiff about this during her deposition or had any documents in discovery regarding this new fairytale. Delta invented this "APA" leave of absence narrative solely for this motion. If Delta did indeed put Plaintiff on APA leave of absence , there would be documents and evidence from TPA Sedgwick, payroll stubs and checks proving this, as well as emails between Plaintiff and Equal Opportunity Anneylse Sanders or Archie attempting to offer Plaintiff new job positions in a different department as Delta did with Carol watts Lynch (see Exhibit 3) if plaintiff could ever not perform the essential duties of her job and needed a new job. Also, Plaintiff offers Exhibit 1 as evidence to prove that Plaintiff's SkyClub job requirements did not require Plaintiff to do any lifting.(see Exhibit 1, Declaration of Rosanda Brown; Declaration of Aasir Azzarmi; Plaintiff's Declaration) Delta concedes that there is a genuinely disputed issue of material fact here since Plaintiff testified that she did indeed report and oppose sex discrimination and sexually hostile work environment and retaliation to Henrietta Archie in EO in April 2019 , while Delta concedes that Plaintiff only sent an email alleging only race discrimination and ADA (disability discrimination)and not sex discrimination alone. However, because of a combination of plaintiff's race and sex, Tomasi targeted plaintiff as Tomasi had a sexual fetish to try "black pussy" and asking plaintiff if her vagina tasted like "fried chicken and collard greens" and asking plaintiff if her vagina hair was "nappy" like only black peoples hair is. Moreover, Tomasi wanted Plaintiff to dress sexy in heels and skirt everyday because of Plaintiff's sex. Delta concedes in Delta's own exhibits, emails, evidence and judicial admissions that it is undisputed that Plaintiff raised the high heel shoe issue in April 2019(two weeks before suspension without pay) which is and was directly related to and correlated to Plaintiff's sex , as only females were voluntarily allowed to wear high heels at that time , as part of Delta's uniform code. Tomasi, however, was forcing plaintiff to look and dress sexy in short skirts and dresses and high heel for Tomasi's sexual fetishes/desires and retaliated against plaintiff with adverse employment action (write up , benefits revoked, denial of days off ) for refusing to look sexy for Tomasi and Tomasi alleged Plaintiff's flat shoes were out of compliance. Yet, plaintiff's white female co-workers( Patricia Papadopolis) wore the same exact flat shoes every day and were never forced to

wear high heels and look sexy for Tomasi.  So, yes, there was racial discrimination involved as similarly situated white comparators were treated differently because they were not targeted by Manager Tamasi for a combination of their race and sex.  Any reasonable juror would agree that plaintiff initiating an April 2019 meeting with "Equal Opportunity" to oppose being written up in retaliation in April 2019 for opposing Tamasi's sexual harassment by refusing to "dress sexy" for a lesbian manager (Tamasi ) by refusing to  wear short skirts and high heels to satisfy Tamasi's sexual desires was indeed plaintiff clearly opposing sex discrimination by Tamasi in April 2019 to Henrietta Archie.  Furthermore,  Delta conceded that Delta even agreed with Plaintiff in April 2019 when Delta determined that Plaintiff's flat shoes were in compliance with uniform policy and Tamasi had no right to coerce, demand, and force plaintiff to wear high heel and skirts to look sexy for Tamasi.  In fact, Delta overruled Tamasi's retaliatory write up for Plaintiff refusing to wear high heels and skirts and  Delta agreed with Plaintiff . However, Plaintiff was informed by Archie that Plaintiff was being punished with suspended without pay for opposing and reporting sex discrimination to Delta and complaining about Tamasi's sexual harassment, sex and race discrimination, retaliatory write up/ and hostile work environment.

Irrespective of whether Plaintiff labelled it  sex or race or disability discrimination in the April 2019 email , Plaintiff still opposed discrimination approximately 2 weeks before Delta retaliated against plaintiff with a suspension without pay on the same day that Archie and  Delta overruled Tamasi's adverse employment action and then determined that Tamasi could not force Plaintiff to wear high heels , skirts  to look sexy solely for Tamasi's sexual pleasure.  Because Delta can not point to any non discriminatory reason to why Plaintiff was suspended without pay in April 2019 , Plaintiff does not have to prove pretext, as Delta only now,  for the first time (on this motion), relabeled the suspension without pay to a "APA" leave of absence.  However, Plaintiff's evidence attached controverts the fact that Plaintiff was never on an APA leave and Plaintiff did not have to lift heavy bags or anything above 10 lbs when sitting at the check in desk.(see Declarations and Annelyse Sanders testimony, as well as Exhibits 1). Plaintiff's April 2019 phone call with Archie was initiated by Plaintiff in April 2019 and had absolutely nothing to do with the old reasonable accommodations which were already summarily denied and which Plaintiff never appealed.   Because Delta thereby argues, admits and  concedes that it is undisputed that Plaintiff opposed (sex) discrimination (heels and skirts and tamasi retaliatory write up) in April 2019 , there are genuinely disputed issues of material facts as Plaintiff's attached evidence herein controverted Delta's pretextual re-labeling of Plaintiff's suspension without pay as a newly alleged APA leave of absence(which is another genuinely disputed material fact) A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." Id. at 248. In determining whether there are genuine disputes of

material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003) In conclusion , the Court can't grant Delta Summary Judgment because the record as a whole would lead a jury to find for Plaintiff and as a legal matter, Delta has failed to argue or prove with admissible evidence that plaintiff " fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party (plaintiff) will bear the burden of proof at trial." Summary judgment is appropriate only '[w]here the record taken as a whole  could not lead a rational trier of fact to find for the non-moving party.'" Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 141 (2d Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  A reasonable jury could and would return a verdict for Plaintiff on all of  Plaintiff's claim as Plaintiff initiated the April 2019 Equal Opportunity meeting with Archie to clearly oppose Tamasi's sex and race discrimination, hostile work environment and retaliation beginning in April 2019 to Delta and Archie regarding Tamasi demanding and forcing plaintiff to wear high heels , skirts, dresses(all female sex related clothing items and gender issues) to look sexy for Manager Tamasi, who had a sexual fetish for "black pussy."  Because Delta agreed with plaintiff in April 2019 that plaintiff did not have to wear skirts, dresses , or high heels solely for Tamasi's arbitrary sexual desires and sexual pleasures, a jury would find that Manager Tamasi's only motive for coercing and demanding plaintiff to wear these things and then retaliating with adverse employment action (write up) when plaintiff opposed Tamasi's  sexual harassment , was solely based on Tamasi's sex and race discrimination, hostile work environment and retaliation, which Delta was aware of in April 2019 and did nothing to curtail.  In April 2019, the only thing Delta did to stop Tamasi's  sexual harassment, sex and race discrimination, hostile work environment and retaliation from continuing was to threaten and silence plaintiff with suspension without pay, as Tamasi continued to discriminate, harass and subject plaintiff to a racially and sexually hostile work environment in 2019 and 2020, and a jury would find that plaintiff was  silenced and deterred as plaintiff was threatened with another suspension without pay and termination if plaintiff ever opposed , spoke, , reported this again verbally and in writing. When Plaintiff opposed Tamasi's 2020 spanking to Kelly Nabors on March 25, 2021, Plaintiff was suspended without pay on March 26, 2021. When Plaintiff opposed sex, race, and disability discrimination to Nabors and Kruit on April 1, 2021 and in May 2021, and filed another DFEH/EEOC complaint on 6/8/21, and opposed illegal discrimination to Jose Rosado on June 17. 2021, Plaintiff was terminated on 06/17/21.

Delta is fraudulently misleading the Court with Delta's clear lies that "if the Court were to assume Ms. Lee's uncorroborated allegations about Ms.Archie's statements are true, it would have to ignore the subsequent correspondence—i.e.,documentary evidence—between Ms. Archie, Ms. Lee, and her doctors to verify that Ms. Lee was fit to return to work, or conclude that these communications just so happened to coincide with Ms.Lee's two-week "suspension." If the Court

looked at these alleged Doctor's notes, the dates are listed as 11/20/2018 and 02/12/2019, yet Delta is using those doctors notes to spin a narrative that the April 2019 phone call was about a reasonable accommodation when it never was.   While Delta's brand new "leave of absence" fairytale was solely invented for this Summary Judgment motion, as it was never told to Plaintiff at any time, Plaintiff has not "failed to provide evidence calling into question the legitimacy of Delta's explanations for her April 2019 leave of absence." However, Plaintiff's verified complaint and testimony is enough to create genuinely disputed material facts.

**B. Ms. Lee Fails to Show That Her 2021 Suspension and Termination Were Retaliatory.**

Delta failed to argue or explain exactly how "Ms. Lee's retaliation claims fail on several fronts."  (see Plaintiff's attached Rule 50 and Rule 56 Motions for Partial Judgment for response and arguments) where Plaintiff addresses all of these arguments. Plaintiff further objects and disputes all of Delta's alleged immaterial facts which are not genuine.( See Plaintiff's attached Declaration, Plaintiff's Verified Amended Complaint.)When Plaintiff opposed Tamasi's 2020 spanking to Kelly Nabors on March 25, 2021, Plaintiff was suspended without pay on March 26, 2021. When Plaintiff opposed sex. race, and disability discrimination to Nabors and Kruit on April 1, 2021 and in May 2021, and filed another DFEH/EEOC complaint on 6/8/21, and opposed illegal discrimination to Jose Rosado on June 17. 2021, Plaintiff was terminated on 06/17/21

CONCLUSION

For all of the reasons set forth above, Delta is not entitled to summary judgment, as a matter of law, as Delta's motion is procedurally defective  as Delta didn't meet it's Rule 56 burden. Delta's 56.1 statement does not include any undisputed facts that are material or relevant to Plaintiff's claims and the Court has no subject matter over Delta's 56.1 facts, which involve facts, issues, controversies which occurred in California and not protected by NYCHRL and/or NYSHRL.

Dated: September 15, 2025

ERIKA L. LEE, the PLAINTIFF(proceeding as PRO SE)

**AFFIRMATION OF SERVICE**

I, Erika L. Lee, declare under penalty of perjury that on 9/15/2025, I served a copy of the attached: "RESPONSE & OBJECTIONS IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; CROSS MOTION FOR  PARTIAL JUDGMENT AS A MATTER OF LAW(RULE 50(a)) OR, IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT(RULE 56)" upon all other parties in this case by USPS mail to the following persons: MICHAEL FLEMING, c/o MORGAN LEWIS  LAW FIRM, 101 Park Ave, New York, NY 10178-0060

Date: 9/15/2025

ERIKA L. LEE, the PLAINTIFF (PRO SE)

Erika Lee
20 Confucius Plaza #10K
New York, NY, 10002
646-552-8394. Email: leeerikalatise@gmail.com
ERIKA LEE, PRO SE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**ERIKA LEE**                           **CASE:1:22-cv-08618-DEH-RWL**

           Plaintiff, Pro Se      **PLAINTIFF'S 56.1 COUNTER-STATEMENT OF DISPUTED FACTS**

    -against

**DELTA AIR LINES, INC.,
DAVID NEEDHAM & JOSE
ROSADO**

       Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**          **page 1**

## PLAINTIFF'S 56.1 COUNTER-STATEMENT OF DISPUTED FACTS

**GENERAL OBJECTIONS TO ALL 56.1 FACTS:**     Plaintiff objects to all of Defendants 56.1 Statement of Facts, as they are disputed, however Defendants 56.1 Statement of Facts are not genuine material facts, as Defendants 56.1 facts are immaterial, irrelevant, hearsay, improper narrative, legal conclusion, inadmissible, and have no legal basis to Plaintiff's claims. This alleged material facts are HEARSAY and the EVIDENCE PRESENTED DOES NOT SUPPORT THE HEARSAY and/or the ALLEGED MATERIAL FACT. Hearsay is not admissible on a Rule 56 motion . Also, the Court has no subject matter jurisdiction over Delta's 56.1 facts, issues, and reasonable accommodation requests from 2018 through November 30, 2018, which is the primary focus of Delta's Rule 56 motion.

### "DELTA IS AN EQUAL OPPORTUNITY EMPLOYER"

1. **DISPUTED. OBJECTION. Plaintiff** disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY.(see Plaintiff's **Decl ¶1;; Verified Complaint, Exhibits 1-35)**

2. **DISPUTED. OBJECTION. Vague, No relevance, compound alleged material facts in 1 sentence,** IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY.(see Plaintiff's **Decl ¶2; Verified Complaint, Exhibits 1-35)**

3. **DISPUTED. OBJECTION. Vague, No relevance, compound alleged material facts in 1 sentence,** IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY.(see Plaintiff's **Decl ¶3; Verified Complaint, Exhibits 1-35)** ,

### PLAINTIFF'S EMPLOYMENT WITH DELTA AIR LINES

4. UNDISPUTED
5. **DISPUTED. OBJECTION. Plaintiff** disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY.(see Plaintiff's **Decl ¶4; Verified Complaint, Exhibits 1-35)** ,

---

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS     page 2**

6. **DISPUTED.  OBJECTION. Vague.**  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY. (see Plaintiff's **Decl ¶5; Verified Complaint, Exhibits 1-35).**

7. **DISPUTED. OBJECTION.** Lack of personal Knowledge. Vague, No relevance, compound alleged material facts in 1 sentence, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY.(see Plaintiff's **Decl ¶6; Verified Complaint, Exhibits 1-35)**

8. **DISPUTED. OBJECTION**. Hearsay. No relevance, compound alleged material facts in 1 sentence, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." ***DELTA EVEN DISPUTES THEIR OWN FACTS, as DELTA EO MANAGER Annelyse Sanders TESTIFIED and admits that Plaintiff would never have to lift between 50-75 lbs. (see Ex. 2);*** See PLAINTIFF'S TESTIMONY.(see Plaintiff's **Decl ¶7, Verified Complaint, Exhibits 1 & 2 ;  2-35, see Declarations of Annelyse Sanders, Rosonda Brown & Aasir Azzarmi)**

9. **DISPUTED.  OBJECTION.**No relevance, compound alleged material facts in 1 sentence, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." " ***DELTA EVEN DISPUTES THEIR OWN FACTS, as DELTA EO MANAGER Annelyse Sanders TESTIFIED and admits that Plaintiff would never have to lift between 50-75 lbs. (see Ex. 2);***See PLAINTIFF'S TESTIMONY (Plaintiff Decl.¶ 8,11; Exhibits 12, 1-35, **Verified Complaint,** Declarations Brown & Azzarmi)

10. UNDISPUTED.

11. **DISPUTED. INCOMPREHENSIBLE. OBJECTION:** This is not a complete sentence and incomprehensible as Delta ends the sentence with "to…." but doesn't explain or qualify or finish the sentence. Plaintiff can not be forced to respond to respond to incomplete statement of fact. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. **OBJECTION.**No relevance, compound alleged material facts in 1 sentence, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL

---

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**

FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY (Plaintiff Decl.¶ 9; Exhibits 3, 5, 1, 2, 4, 5 6, 7, 12, 1-35, Exhibits 12, 1-35, Verified Complaint, )

**12. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, compound alleged material facts in 1 sentence, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY (Plaintiff Decl.¶ 10; Verified Complaint: Exhibits 3, 5(testimony from Ittounas);5a(authenticated email where Delta's Equal Opportunity department forwards Azzarmi's Reasonable Accommodation request to HR Manager Ittounas to handle);1-35, Declarations of Brown & Azzarmi; Verified Complaint)

13. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶11, 10-135; **Exhibits 17 & 1-35 ,Verified Complaint)**

14. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 12,15;1-135; **Exhibits 17, 12, 1, 2 & Verified Complaint)**

15. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 13, 1-135 ; **Exhibits 17, 12, 1, 2&** Exhibits1-35 ,**Verified Complaint)**

16. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**       **page 4**

"material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 14, 10-15 ; **Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

17. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 15, 10-15;**Exhibits 17, 12, 1, 2, &** Exhibits**1-35 ,Verified Complaint; Declaration of Rosonda Brown)**

18. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 16, 1-135; **Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

19.**DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶17, 1-35 ; **Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

20. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 18, 1-135)

21. **DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 19, 1-135; **Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

22.**DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 5**

Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶20;1-135;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**23. DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.21,¶ 1-135 ; **Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**24. DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 22, 1-135 ; **Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**25. DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 23, 1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**26. DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶24,1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**27.DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS      page 6**

"material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶25, 1-135; 1;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**)

**28. DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 26, 1-135;  1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**)

**29. UNDISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 27,1-135 ;  1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**)

**30. DISPUTED.OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶28,1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**)

**31. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶29,1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**)

32. DISPUTED. **OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶30,1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**)

**33. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 7**

1  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
2  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
3  an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
   "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 31,1-135 ;**Exhibits 1,2 17, 12,**
4  **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
5  **34. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
   FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
6  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
7  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
   SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
8  an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
9  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶32, 1-135 ;**Exhibits 1,2 17, 12,**
   **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
10 **35. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
   FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
11 Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
12 under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
   SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
13 an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
14 "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 33 ; 1-135 ;**Exhibits 1,2 17, 12,**
   **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
15 **36. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
16 FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
   Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
17 under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
18 SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
19 "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 36,39,1-135 ;**Exhibits 1,2 17, 12,**
20 **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**〈33〉
   **37. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
21 FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
22 Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
23 SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
24 an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
   "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 36,35, 1-135 ;**Exhibits 1,2 17, 12,**
25 **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)** 〈34〉
   **38. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
26 FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
27 Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
28 SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 8**

1  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 36,37, 1-135 ;**Exhibits 1,2 17, 12,**
2  **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
   **39.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT
3  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
4  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
5  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged
6  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 37, 36, 1-135 ;**Exhibits 1,2 17, 12,**
7  **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
   **40. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT
8  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
9  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
10  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged
11  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 37, 38, 1-135 ;**Exhibits 1,2 17, 12,**
12  **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
   **41. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT
13  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
14  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
15  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged
16  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 38,39,1-135 ;**Exhibits 1,2 17, 12,**
17  **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**
   **42. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT
18  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
19  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
20  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged
21  "material fact." See PLAINTIFF'S VERIFIED AMENDED COMPLAINT; PLAINTIFF'S
22  TESTIMONY(Plaintiff Decl.¶ 39, 40,1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. &
23  Azzarmi, **Verified Complaint)**
   **43. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT
24  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
25  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
26  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
   an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged
27  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 40, 41, 1-135 ;**Exhibits 1,2 17, 12,**
28  **&1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 9**

**44. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 41, 42,1-135 ;**Exhibits 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**45. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 42,41, 433, 1-135 ;**Exhibits 11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**46. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 43, 44,1-135 ;;**Exhibits 11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**47. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 44,45, 1-135 ;**Exhibits 11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**48. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 45, 46, 1-135 ;**Exhibits**

**DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**49.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." (Plaintiff Decl.¶ 45, 46, 1-135 ;**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**50.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." (Plaintiff Decl.¶ 45, 46,47 1-135 ;**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**51.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 48, 1-135 ;**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**52.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 49 1-135 ;**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**53..DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS          page 11**

"material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 50,51,**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**54.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an **I**MPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 51, 52,1-135 ;**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**55.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an **I**MPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 52-53,  1-135 ;**Exhibits DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint)**

**56..DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 53,54, (Plaintiff  Decl.¶ 45, 46, 1-135 ;**Exhibits  DELTA_LEE_00000080; Ex .11(Testimony of Nabors), 25, 1,2 17, 12, &1-35**, Declarations of Brown. & Azzarmi, **Verified Complaint**

**PLAINTIFF'S COMPLAINT AND DELTA'S ENSUING INVESTIGATION INTO PURPORTED DISCRIMINATION**

**57.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 54,55,1-135**Verified Complaint)**

---

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**        **page 12**

**58.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 55-56,**Verified Complaint**)

**59.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 56, 10-41 ; Exhibits

**60.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 57, 1-135)

**61. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 58, 1-135, verified complaint)

**62. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff **Decl.¶ 59, 1-135,** verified complaint)

**63. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 60, 61, 1-135 verified complaint)

**64. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS      page 13**

1   Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
2   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
    SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
3   an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
    "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 61, 1-135, verified complaint)
4   **65. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
5   FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
    Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
6   under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
7   SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
    an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
8   "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 62, 1-135, verified complaint)
9   **66. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
    FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
10  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
11  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
    SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
12  an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
    "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 63, 1-135; verified complaint)
13  **67. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
14  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
    Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
15  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
16  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
    an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
17  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 64, 1-135; verified complaint)
18  **68.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
    FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
19  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
20  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
    SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
21  an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
    "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 65, 1-135, verified compaint)
22  **69..DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
23  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
    Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
24  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
25  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
    an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
26  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 66, 1-109 ; Exhibits 1-35
27  **70.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
    FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
28  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
    under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS —

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**        **page 14**

1  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
2  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff **Decl.¶ 67,66, 1-135 ;** Exhibits
3  11(testimony of EO Manager Kelly Nabors), Ex. 25, (Kelly Nabors letter to Donya Williams), &
Declaration of Brown & Azzarmi, Verified Complaint)
4  **71.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
5  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
6  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
7  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
8  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 68, 1-135; Exhibits 1-35
9  **72.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
10  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
11  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
12  an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
"material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 69, 1-135 ;  Exhibits1-35, &
13  Declaration of Brown & Azzarmi, Verified Complaint)
14  **73.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
15  Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
16  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
17  an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
18  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 70, 71, ,1-135 ; & Declaration of
Brown & Azzarmi, Verified Complaint)
19  **74..DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
20  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
21  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
22  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
23  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 71,72 1-135 ; & Declaration of
Brown & Azzarmi, Verified Complaint)
24  **75.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT
25  FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.
Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact
26  under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS
27  SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is
an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged
28  "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 72, 1-135 ;  & Declaration of
Brown & Azzarmi, Verified Complaint)

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 15**

**76. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 73, 1-135 ; & Declaration of Brown & Azzarmi, Verified Complaint)

**77.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 74, 1-109 ; Exhibits 1-35

78.DISPUTED. OBJECTION. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 75, 1-135,& Declaration of Brown & Azzarmi, Verified Complaint)

**79.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 76,77 1-135 ;& Declaration of Brown & Azzarmi, Verified Complaint)

**80.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 77, 1-135; Verified Complaint)

**81.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**     page 16

an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 78, 1-109 ; Exhibits 1-35

**82.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 79, 1-135, verified complaint)

**83.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 80, 1-135; verified complaint)

**84.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 81, 1-135;verified complaint)

**85.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 82, 1-135; verified complaint)

**86.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 83, 1-135; verified complaint)

**87.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 84, 1-135 ; (Exhibit 14)(Exhibits

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**        **page 17**

7-9);Exhibit 11(Testimony of Nabors); Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint); Exhibit 16 (Declaration of Mayra Amezquita)

**88. DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 85, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 11(Testimony of Nabors); Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint); Exhibit 16 (Declaration of Mayra Amezquita)

**89.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 86-87, 1-135 ; (Exhibit 14) (Exhibits 7-9);Exhibit 11(Testimony of Nabors); Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**90.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 87, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 11(Testimony of Nabors); Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**91.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 88, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**92.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT.

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 18**

Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact."See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 89, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N; Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**93. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact."See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 90, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N; Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**94.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 91, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N; Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**95.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 92 1-135; Exhibit11(testimony of Kelly Nabors)(Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N; Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**96.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT. However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 92,1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibits 11(Testimony of Nabors) Exhibit 26(photos of Needham and compare with Delta call

log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**97.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact."See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶94,1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 11(Testimony of Nabors) 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**98.DISPUTED. OBJECTION**. DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 95, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**99.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 96, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**100. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 97, 1-135; verified complaint)

**101. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 98, 1-135 ; (Exhibit 14)(Exhibits

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS          page 20**

7-9);Exhibit 11(Testimony of Nabors who doesn't "LOG" every call she takes); Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**102.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 99, 1-135; verified complaint)

**103.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 100, 1-135;verified complaint)

**104.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 101, 1-135; verified complaint)

**105.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 102, 1-135; verified complaint)

**106.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff Decl.¶ 103, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**107.DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS —

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS**         **page 21**

SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 104, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15);Declaration of Brown & Azzarmi, Verified Complaint)

**108. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 105, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

**109. DISPUTED. OBJECTION.** DELTA'S ATTORNEYS ARE  ATTEMPTING TO COMMIT FRAUD ON THE COURT. No relevance, IMPROPER NARRATIVE, NOT A MATERIAL FACT. Plaintiff disputes and objects to this alleged "undisputed material fact" as it is not a material fact under Rule 56 and it is disputed. DEFENDANT PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS "UNDISPUTED." Also, this is an IMPROPER NARRATIVE, NOT A MATERIAL FACT.  However, plaintiff disputes this alleged "material fact." See PLAINTIFF'S TESTIMONY(Plaintiff  Decl.¶ 106, 1-135 ; (Exhibit 14)(Exhibits 7-9);Exhibit 26(photos of Needham and compare with Delta call log); M & N;  Q &R;(Exhibit 10); (Exhibit 15); Exhibit 25;Declaration of Brown & Azzarmi, Verified Complaint)

### SUMMARY JUDGMENT IS NOT PROPER

Upon the foregoing DISPUTED material facts, the exhibits attached hereto, and Plaintiff's accompanying memorandum of law, Plaintiff respectfully requests that the Court DENY summary judgment for Defendant as the ENTIRE RECORD shows there are disputed material facts, which Delta has never defended against and/or never controverted.

RESPECTFULLY SUBMITTED,
Dated: September 15, 2025

**Erika L. Lee, Plaintiff, Pro Se**

---

**RULE 56.1 COUNTER STATEMENT OF DISPUTED FACTS        page 22**

Erika Lee
20 Confucius Plaza #10K
New York, NY, 10002
646-552-8394. Email: leeerikalatise@gmail.com
ERIKA LEE, PRO SE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - -X

**ERIKA LEE**                             <u>**CASE:1:22-cv-08618-DEH-**</u>
<u>**RWL**</u>

            Plaintiff, Pro Se            <u>**PLAINTIFF'S**</u>
<u>**DECLARATION IN**</u>
    -against                              <u>**OPPOSITION TO**</u>
<u>**DELTA'S RULE 56**</u>
**DELTA AIR LINES, INC.,**                <u>**MOTION**</u>
**DAVID NEEDHAM & JOSE**
**ROSADO**

            Defendants

- - - - - - - - - - - - - - - - - - - - - - - - - -X

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 1**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFF'S DECLARATION IN OPPOSITION TO DELTA'S MOTION FOR**
**SUMMARY JUDGMENT & IN SUPPORT OF 56.1 COUNTER-STATEMENT**
**OF DISPUTED FACTS**

      I, Erika Lee, declare under penalty of perjury pursuant to 28 U.S.C.§ 1746, that the foregoing is true and correct. I, Erika Lee have personal knowledge of all of the facts in this Declaration and the information set forth in this Declaration is true and correct to the best of my knowledge, except where stated "upon information and belief." I, Erika Lee, declare that if called as a witness, I am competent to testify as to all matters herein if called to do so and will testify to the same at trial.

1.Delta does not maintain an Equal Employment Opportunity ("EEO") Policy that prohibits all forms of unlawful discrimination, including discrimination based on race, color, religion, national origin, creed, age, sex (including pregnancy), disability, genetic information, marital

status, sexual orientation, gender identity, citizenship status, parental status, veteran status or other characteristics that may be protected by law, as well as harassment and retaliation.

2. Delta does seem to maybe have an employee manual titled "The Way We Fly," but it does not "set forth the Company's expectation that all employees act professionally, respectfully and with good judgment" or explain in clear and certain terms how this is allegedly executed. Delta does not have any" commitment to non-discrimination and non-retaliation. In fact , Delta has systemic pattern and practice of intentionally discriminating , retaliating, harassing based on race, color, religion, national origin, creed, age, sex (including pregnancy), disability, genetic information, marital status, sexual orientation, gender identity, citizenship status, parental status, veteran status or

other characteristics that may be protected by law, as well as harassment and retaliation.

3.Plaintiff has no personal knowledge and has previously never seen the paragraph in "The Way We Fly " which allegedly" requires employees to participate fully in company investigations by "providing truthful and accurate answers to questions, as well as documents or

other information requested by the company." Also, Plaintiff always participated fully in Delta's "investigations" and Plaintiff remained silent during Delta's investigations, and Plaintiff being silent can never be misinterpreted as not "providing truthful and accurate answers to questions, as well as documents or other information requested by the company."

4.Because of Plaintiff's race, Delta racially discriminated against Plaintiff and refused to grant Plaintiff a transfer to LGA, as Delta did for similarly situated white comparators, including but not limited to Kimberly Ng in December 2018. Instead, Delta informed plaintiff that Delta was refusing to grant a transfer to NYC and instead , Plaintiff was required to apply and interview for a new job on ebid, if and when any were ever available . Plaintiff was not "transferred" to LGA in December 2018.

5. Because of Plaintiff's race, Delta racially discriminated against Plaintiff and refused to grant Plaintiff a transfer to LGA, as Delta did for similarly situated white comparators, including but not limited to Kimberly Ng, in December 2018. Instead, Delta informed Plaintiff that Delta was refusing to grant a transfer to NYC and Plaintiff was required to apply and interview for a new job on ebid, if

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 2**

and when any were ever available. Plaintiff was not "assigned" to Delta's "Sky Club." at LGA in December 2018, Delta posted job ad on E-bid and Plaintiff applied. Delta than interviewed and hired Plaintiff, based on Plaintiff's previous experience and qualifications, specifically for the advertised, open job position at Delta's "Sky Club" at LGA airport in NYC that posted on the Internet, identical to the one in Exhibit 1 attached.

6.Plaintiff has no personal knowledge to confirm whether or not "Sky Clubs are a network of branded Delta lounges located throughout airports worldwide."

7. Plaintiff's role in the Sky Club never required her to do any lifting, any standing for long periods of time, and never required Plaintiff to lift heavy items like passenger luggage as needed. Plaintiff applied for the job at the Sky Club precisely because Plaintiff 's role in the Sky Club never required her to do any lifting, any standing for long periods of time , and never required Plaintiff to lift heavy items like passenger luggage as needed. The job requirements for Plaintiff's Sky Club position at LGA Airport were the same publicly advertised job requirements listed in Exhibit 1. The written job requirements for SkyClub that Plaintiff was hired for never stated in writing that Plaintiff was required to do any lifting, any standing for long periods of time, and never required Plaintiff to lift heavy items like passenger luggage as needed.

8.There are many different departments CSAs fall under within Delta's Airport Customer Service ("ACS") division , including but not limited to  125 ACS,  127 Sky Club, and 120 Ramp, and only ramp CSAs are required to be able to lift 70 pounds occasionally and 50 pounds frequently. It is ACS 100% false that  CSAs,regardless of where they are assigned in the airport, can be called to assist in other locations without notice based on operation needs, as everything is done by bidding and training purposes.  Ramp agents                                   have never been "called to assist in" the SkyClub " without notice based on operation need."  SkyClub agents have  never been "called to assist in" on the Ramp "without notice based on operation need."

9.. While Plaintiff emailed Delta's Equal Opportunity ("EO") office at Accommodations@delta.com, attaching an Accommodation Request Form for her position as a CSA based at LGA on January 16, 2019, this was a mutually exclusive REASONABLE ACCOMMODATION REQUEST, was only for LEAVING AT PLAINTIFF'S SCHEDULED TIME OFF AND FOR NO OTHER REASON,  but was then summarily denied and closed in February 2019.  Delta, on the other hand is now attempting to commit fraud on the court and is attempting to confuse the Court and conflate this  Reasonable Accommodation Request with the October 2018 one that Plaintiff made when Plaintiff was working in a different department in a different job in Los Angeles, CA.   In October 2018, while Plaintiff was still working at a completely different job position in a different department (Dept. 125)in Los Angeles, CA with different job requirements(lifting bags), Plaintiff submitted a Reasonable Accommodation request in OCTOBER 2018 (see Exhibit 17), which was IGNORED AND DENIED and was NEVER CONSIDERED "OPEN," as the October 2018 Reasonable Accommodation Request became MOOT on November

30, 2018, as Plaintiff was no longer working in Los Angeles, CA where Plaintiff needed a reasonable accommodation for lifting bags. If you will notice, Plaintiff's doctor's note was from 11/20/2018. Once Plaintiff was hired at the Sky Club at LGA Airport in New York on December 1, 2018, Plaintiff no longer needed any Reasonable Accommodation for lifting bags, as Plaintiff did not have to lift any bags in the Sky Club at LaGuardia Airport, New York, as Plaintiff's job requirements did not include any lifting, pushing, pulling any objects or luggages. Delta and Delta's attorneys are committing fraud on the court and manufactured all of these fraudulent documents for this motion solely to pretend that Delta didn't suspend Plaintiff without pay in April 2019 for opposing sexual harassment and sex discrimination by Tamasi. Also, Plaintiff never requested any Reasonable Accommodation for lifting any bags at any time from December 1, 2018 through July 2019 and Delta has no emails or evidence from Plaintiff to prove that Plaintiff ever requested any reasonable accommodation for not being able to lift any bags and/or not being able to perform the essential duties of the LGA SkyClub position. Plaintiff, only made a Reasonable Accommodation Request in January 2019 to leave on time to be able to get on paratransit, but that was summarily denied and closed in February 2019. Also, testimony from Delta HR Manager Lisa Todd (see Exhibit 3)proves that Delta does not unilaterally make Reasonable Accommodation Requests on its own for employees, Lisa Todd testified that an Accommodation Request and assessment and interactive process is only initiated if the employee asks for one. Plaintiff never requested or initiated any Reasonable Accommodation Requests at anytime from December 1, 2018 through July 2019 for being unable to lift any bags, because lifting bags was not in Plaintiff's job description.(see Exhibit 12, Declarations of Azzarmi, Plaintiff, and Brown). If Delta, assuming arguendo this wasn't Delta's Fraud on the Court, actually put Plaintiff on an "APA leave" as Delta claims, Delta would've been able to produce a letter identical to the letter that Annelyse Greene Sanders wrote, sent and served on Carol Watts Lynch,(Ex. 2) which would've described Plaintiff's options, offered disability pay and asked Plaintiff if Plaintiff would voluntarily choose to be in the APA leave of absence program, as Delta can not and does not put an employee on APA leave of absence without their consent. Plaintiff never volunteered or consented to being on any APA leave and/or any leave of absence in April 2019. Delta never even put Plaintiff on any leave, including but not limited to any APA leave of absence or any leave of absence at any time in April 2019. Delta's is committing fraud on the court and manufacturing this "APA leave" narrative for this motion. Delta suspended Plaintiff without pay in April 2019 for opposing discrimination and hostile work environment.

10. Delta Airlines, Equal Opportunity Manager Joanne Guerrant, HR Managers Lisa Todd, Bill Ittounas, and Aasir Azzarmi and others have testified that HR is responsible for handling accommodation requests. HR Manager Emily Pardo even forwarded Aasir Azzarmi's Reasonable Accommodation Request to HR Manager Ittounas as she wrote that HR Manager Ittounas was "handling" Azzarmi's Reasonable Accommodation Request "case."

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 4**

11. While Plaintiff did fill out the Reasonable Accommodation form on 12/29/2018 stating "[d]ue to my injury I have to take paratransit. This station & many others make you stay beyond your shift (frozen). I cannot do this because I'm scheduled [*sic*] a trip to return at a certain time. And if I don't take it I will be stranded," this Reasonable Accommodation request was summarily denied immediately in January 2019 and then closed in February 2019. Regarding this 12/29/2018 Reasonable Accommodation Request, Delta never engaged in any interactive process or assessment at any time as it was summarily denied. Additionally, as far as the October 2018Reasonable Accommodation Request for the LAX Dept. 125 job, Delta also never engaged in any interactive process or assessment at any time and this Accommodation Request became moot, non-existent, and dead on November 30, 2018.

12. While Plaintiff did fill out the Reasonable Accommodation form on 12/29/2018 , " Ms. Lee's Accommodation Request Form also included a Physician'sCertification for Job Accommodation," which was signed by Ms. Lee's health care provider, Naheed Van de Walle," on 11/20/2018 and which became moot, non-existent, and obsolete on November 30, 2018 and/or in February 2019, as Plaintiff received physical therapy and Plaintiff's doctor noted on 2/12/19 that "Plaintiff transferred to sedentary position where no lifting was required".

13.While Plaintiff did fill out the Reasonable Accommodation form on 12/29/2018 stating "To leave on time. Not excess standing, sitting, bending, or lifting. And ability to leave on time," this Reasonable Accommodation request was summarily denied immediately in January 2019 and then closed in February 2019 and Plaintiff never appealed it, so this request became obsolete as Plaintiff received physical therapy and Plaintiff's doctor noted on 2/12/19 that "Plaintiff transferred to sedentary position where no lifting was required". However, this is just Delta attempting to commit fraud on the court as Delta manufactured documents, solely for this motion, to create a new narrative, as Delta has no non-discriminatory reason to have suspended Plaintiff without pay in April 2019 for opposing sexually and racially hostile work environment and sex harassment and discrimination.

14. While Dr. Van de Walle's Physician's Certification originally stated on 11/20/2018 that Ms. Lee must "avoid excessive lifting, bending for continuous prolonged periods of time, observe proper body biomechanics during lifting and ask for assistance if needed," this doctors note became moot, non-existent, and obsolete on November 30, 2018 when Plaintiff changed jobs and/or in February 2019 after Plaintiff received physical therapy, whereby he noted on 2/12/19 that "Plaintiff transferred to sedentary position where no lifting was required," and thus Plaintiff no longer needed any reasonable accommodation as Plaintiff's new job in SkyClub did not require Plaintiff to do any "excessive lifting, bending for continuous prolonged periods of time, observe proper body biomechanics during lifting and ask for assistance if needed." In February 2019, did not require Plaintiff to do any "excessive lifting, bending for continuous prolonged periods of time, observe proper body biomechanics during lifting and ask for assistance if needed," so he amended the doctor's note on 2/12/19 adding that "Plaintiff transferred to sedentary position where no lifting was required,"

15. Because Plaintiff was working a different job position in a different department at LAX airport in Los Angeles, CA in October and November 2018 when Plaintiff requested a reasonable accommodation for that unique, different job position(Dept 125, see Exhibits 2 and 12) which had lifting bags as a job requirement until November 30 2018, Plaintiff **ONLY saw** Dr. Van de Walle to fill out the Reasonable Accommodation form on 11/20/2018 **SOLEY FOR THE DEPT. 125 position at LAX airport position in Los Angeles, CA in October and November 2018** as Plaintiff was not yet aware on 11/20/2018 that Plaintiff was going to be hired to begin working at LGA Airport SkyClub in New York on December 1, 2018. Therefore, Dr. Van de Walle's Physician's Certification would never say and did not say anything about paratransit and/or a standing or sitting restriction, as the paratransit was only applicable to New York City and not Los Angeles, CA. This proves that the October 2018,Reasonable Accommodation request was solely requested exclusively for the specific **DEPT. 125 position at LAX airport** and Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018. While Delta's attorneys commit fraud on the court and are trying to manufacture fraudulent documents and a fraudulent narrative, Exhibit 2 Declaration testimony of Annelyse Sanders proves that there are different job and lifting requirements in Dept 125 and Dept. 127, as Carol Watts Lynch was not able to perform essential requirements of Dept. 125 due to lifting too much weight, but Delta did find Carol Watts Lynch capable of working in Dept. 127(SkyClub) because there is no lifting required.

16. Henrietta Archie, was NOT "the Lead Program Manager within EO" who was "assigned" to Ms.Lee's October 2018 accommodation request in October 2018 and/or November 2018 while working **DEPT. 125 position at LAX airport where Plaintiff used Dr. Van de Walle's Physician's Certification**, as both the request and the doctor certificate became moot, non-existent and futile on December 1, 2018. However, Plaintiff's December 2018 and/or January 2019 reasonable accommodation request to leave work at scheduled time for paratransit services was handled by Henrietta Archie, but Archie summarily denied and closed that request in February 2019. It is only for this summary judgment motion that Delta and Delta's attorneys manufactured fraudulent documents to create a fraudulent pretextual narrative to justify the retaliatory suspension without pay in April 2019.

17. Per Delta's normal EO practice, Ms. Archie never maintained an accurate, contemporaneous log of developments in Ms. Lee's accommodation process, including to document correspondence with Ms. Lee during her accommodation process because Delta and Delta's attorneys manufactured these fraudulent documents to create a fraudulent pretextual narrative to justify the retaliatory suspension without pay in April 2019, as Ms.Lee's October 2018 accommodation request in October 2018 and/or November 2018 while working **DEPT. 125 position at LAX airport where Plaintiff used Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags.** Furthermore, Ms. Archie never maintained an accurate, contemporaneous

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 6**

1   log of developments in Ms. Lee's accommodation process, including to document correspondence
2   with Ms. Lee during her accommodation process because Archie summarily denied and closed that
3   mutually exclusive December 2018/January 2019 accommodation request in February 2019  where
    Plaintiff requested to leave work at scheduled time to use paratransit services.
4   18.  On February 5, 2019, Ms. Archie spoke with Ms. Lee for the first time via telephone regarding
5   her ONE AND ONLY, ACTIVE, December 2018/January 2019 accommodation request where
    Plaintiff requested to leave work at scheduled time to use paratransit services, Plaintiff did not have
6   any open requests for  "accommodations,"(plural) as Delta and Ms. Archie is fraudulently testifying
7   to because Plainitff's October 2018 accommodation request while working DEPT. 125 position at
8   LAX  airport where Plaintiff used Dr. Van de Walle's Physician's Certification became moot, non-
    existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where
9   Plaintiff sat at a desk and did not have to lift any bags.   Plaintiff informed Ms. Archie on February 5,
10  2019, that there was only one "accommodation" for this Dept. 127 SkyClub position that Plaintiff
11  was requesting. ᶤPlaintiff informed Ms. Archie on February 5, 2019 and Ms. Archie became aware
    for the first time on February 5, 2019  that Plaintiff formally withdrew and cancelled the moot, non-
12  existent and futile accommodation request Plaintiff made in October 2018 accommodation request
13  while working DEPT. 125 position at LAX  airport where Plaintiff used Dr. Van de Walle's
14  Physician's Certification because Plaintiff was hired for a new job in the SkyClub where Plaintiff sat
15  at a desk and did not have to lift any bags. Ms. Archie said she understood but still wanted Dr. Van de
    Walle to amend the original Physician certification.
16
    **19.** During the February 5, 2019 phone call, Ms. Archie **NEVER** explained any " accommodation
17  process to Ms. Lee, including the Interactive Group Discussion ("IGD") that would allegedly occur
18  between EO, Ms. Lee, Human Resources ("HR"), and Ms. Lee's managers," because Archie
19  summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation
    request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit
20  services and because Archie agreed and confirmed with Plaintiff that Plainitff's October 2018
21  accommodation request while working DEPT. 125 position at LAX  airport where Plaintiff used Dr.
22  Van de Walle's Physician's Certification became moot, non-existent and futile on December 1,
    2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not
23  have to lift any bags.
24  20. Ms. Lee **NEVER** acknowledged that she understood the accommodation process because Ms.
25  Archie **NEVER** explained any " accommodation process to Ms. Lee, as Archie summarily denied
    and closed that mutually exclusive December 2018/January 2019 accommodation request in February
26  2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and
27  because Archie agreed and confirmed with Plaintiff that Plaintiff's October 2018 accommodation
28  request while working DEPT. 125 position at LAX  airport where Plaintiff used Dr. Van de Walle's

Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags.

21. During the call, Ms. Archie was not  "reviewing Ms. Lee's Accommodation Request Form and Physician's Certificate with Ms. Lee, including the restrictions reflected in the Physician's Certificate," because Archie had already summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and because Archie agreed and confirmed with Plaintiff that Plaintiff's October 2018 accommodation request while working DEPT. 125 position at LAX  airport where Plaintiff used Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags.

22. Ms. Lee NEVER explained on the call that her primary concern was having to stay at work late and missing her transportation home because Archie had already summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and because Archie agreed and confirmed with Plaintiff that Plaintiff's October 2018 accommodation request while working DEPT. 125 position at LAX  airport where Plaintiff used Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags.

23. Ms. Lee never "further stated during the call that, because her department was small, it was sometimes necessary for her to stay past the conclusion of her shift to cover for other employees" because Archie had already summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and Archie wasn't entertaining any conversation about Plaintiff's December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services.

24. Ms. Archie NEVER pointed out to Ms. Lee during the call that the end-of-shift and paratransit requirements were not included in Dr. Van de Walle's Physician Certificate because Archie agreed and confirmed with Plaintiff that Plaintiff's October 2018 accommodation request while working DEPT. 125 position at LAX  airport where Plaintiff used Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags and Dr. Van de Walle's Physician Certificate did not apply to Plaintiff's current job position in New York in Dept. 127.

25. Because Archie had already summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and Archie wasn't entertaining any conversation about Plaintiff's December 2018/January 2019 accommodation request in February 2019 where

1   *Plaintiff requested to leave work at scheduled time to use paratransit services, Ms. Lee NEVER*
2   "advised Ms. Archie that she would speak with her doctor about those additional requirements
    because she wanted them to be part of the accommodation request and
3   included in the IGD with her leaders."
4   26. Because Archie agreed and confirmed with Plaintiff that Plaintiff's October 2018 accommodation
5   request while working DEPT. 125 position at LAX  airport where Plaintiff used Dr. Van de Walle's
6   Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was
    hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags and
7   Dr. Van de Walle's Physician Certificate did not apply to Plaintiff's current job position in New York
8   in Dept. 127, Ms. Archie emailed Ms. Lee a medical form for Ms. Lee's medical provider to amend
    and clarify that  Plaintiff had a new sedentary job where Plaintiff did not need to lift bags anymore.
9   27. Dr. Van de Walle's amended Physician's Certificate indicated the truth that Ms. Lee was hired in
10  new, different SkyClub position at LGA airport which was a "sedentary position where no lifting is
11  involved."
12  28. While. Dr. Akselrud's Physician's Certificate stated that Ms. Lee's restrictions included: "sitting
13  for more than 1 h[our], climbing steps, standing for more than 1 h[our], pushing more than 10
    pounds, carrying more than 15 pounds," and also indicated that Ms. Lee needed to use
14  paratransit, *Archie had already summarily denied and closed that mutually exclusive December*
15  *2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave*
16  *work at scheduled time to use paratransit services and Archie wasn't entertaining any further review*
    *about Plaintiff's December 2018/January 2019 accommodation request in February 2019 where*
17  *Plaintiff requested to leave work at scheduled time to use paratransit services, as Archie informed*
18  *Plaintiff that Delta had no legal obligation to accommodate Plaintiff's request under ADA to leave on*
19  *time because Plaintiff's use of paratransit services occurred after Plaintiff left the workplace.*
    *29. On March 1, 2019, Ms. Archie "spoke with Ms. Lee via phone" only to reiterate that Archie had*
20  *already summarily denied and closed that mutually exclusive December 2018/January 2019*
21  *accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time*
22  *to use paratransit services and Archie wasn't entertaining any conversation about Plaintiff's*
23  *December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to*
    *leave work at scheduled time to use paratransit services AND to reconfirm that Plaintiff's October*
24  *2018 accommodation request while working DEPT. 125 position at LAX  airport where Plaintiff used*
25  *Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1,*
26  *2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not*
    *have to lift any bags and Dr. Van de Walle's Physician Certificate did not apply to Plaintiff's current*
27  *job position in New York in Dept. 127.*
28  30. Ms. Archie NEVER indicated that she would proceed to schedule the IGD for Ms. Lee, Ms.
    Archie simply called to scream and yell at Plaintiff and to reiterate that because *Plaintiff was hired*

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 9**

*for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags that Plaintiff's doctor's certificates can not contain any lifting restrictions on the form. Even though Archie was aware that Plaintiff could perform the essential function of the SkyClub job at all times because no lifting was required, Archie simply wanted Plaintiff's doctor to amend the form to tailor the form to how Archie wanted the form to look. Because Plaintiff HAD NO ACTIVE REASONABLE ACCOMMODATION REQUESTS IN MARCH 2019 and APRIL 2019 since Plaintiff was able to perform the essential function of the SkyClub job at all times with or without any reasonable accommodation because no lifting was required at LaGuardia SkyClub in New York where Plaintiff was working, Archie just simply wanted the physician form amended by Plaintiff's doctor and then emailed and/or faxed to her.*

*31* Ms. Archie NEVER scheduled Ms. Lee's IGD for April 12 2019 because Plaintiff H*AD NO ACTIVE REASONABLE ACCOMMODATION REQUESTS IN MARCH 2019 and APRIL 2019, the April 12 2019 conversation was an Equal Opportunity meeting that Plaintiff initiated regarding the racially and sexually hostile work environment, retaliation, sex/race discrimination and harassment by Manager Tamasi, which included the issue with the "heels" and Tamasi writing Plaintiff up, adverse employment action, for wearing flat shoes and not looking sexy enough for Tamasi.*

32. Ms. Archie NEVER "reached out to Ms. Lee's healthcare provider to clarify the nature of Ms. Lee's lifting restriction," and was NEVER "informed that Ms. Lee could lift no more than 5 pounds," as Plaintiff's doctors both told her Ms. Archie is lying as Ms. Archie never called either one of them and never spoke to either one of them, and they both confirmed that they would never have a phone conversation with Ms. Archie even if she did call.

33. Because Archie agreed and confirmed with Plaintiff that Plaintiff's October 2018 accommodation request while working DEPT. 125 position at LAX airport where Plaintiff used Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018 ,as Plaintiff was hired for a new job in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags and Dr. Van de Walle's Physician Certificate did not apply to Plaintiff's current job position in New York in Dept. 127, NO "IGD was conducted on April 12, 2019" nor was any "IGD" ever " scheduled."

34. Because there never was any "April 12 IGD" and because*Archie had already summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and Archie wasn't entertaining any conversation about Plaintiff's December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services,* Ms. Archie NEVER first met with Department Manager Michelle Valek and Senior Human Resources Manager Greta Boggan to discuss the operational needs of Ms. Lee's role, including the need to work extended shifts when required due to irregular operations as Plaintiff H*AD NO ACTIVE REASONABLE ACCOMMODATION REQUESTS IN MARCH 2019 and APRIL 2019*

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 10**

35. Because Plaintiff *HAD NO ACTIVE REASONABLE ACCOMMODATION REQUESTS IN MARCH 2019 and APRIL 2019 and because Plaintiff was hired for a new job on December 1, 2018 n the SkyClub where Plaintiff sat at a desk and did not have to lift any bags or anything heavy at any time,* Ms. Archie, Ms. Valek, and Ms. Boggan also NEVER reviewed the physical requirements of the role, including the requirement that CSAs must be able to lift heavy items frequently, for example, passenger luggage, because there weren't any physical requirements for the SkyClub position at LGA SkyClub.

*36.* Because there never was any "April 12 IGD" and because *Archie had already summarily denied and closed that mutually exclusive December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and Archie wasn't entertaining any conversation about Plaintiff's December 2018/January 2019 accommodation request in February 2019 where Plaintiff requested to leave work at scheduled time to use paratransit services and* Because Plaintiff *HAD NO ACTIVE REASONABLE ACCOMMODATION REQUESTS IN MARCH 2019 and APRIL 2019, Plaintiff never* "joined the IGD" as there never was any "IGD" at any time and "the requirements of her role and her restrictions" were never reviewed with Plaintiff at any time in April 2019.

37. Because there never was any "April 12 IGD" and because *Plaintiff was hired for a new job on December 1, 2018 in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags or anything heavy at any time,* Ms. Lee was NEVER advised AT ANY TIME "that she could be accommodated in the form of a leave of absence—which is administered through Delta's third-party leave provider Sedgwick—and/orassistance through Delta's Alternative Position Assistance ("APA") Program to allow for Ms. Lee to identify an alternative position that could accommodate her medical requirements." If there were true, Delta would have emailed and/or sent Plaintiff the same emails and documents and job offers that Annelyse Greene Sanders sent Carol Watts Lynch in Exhibit 2 and Plaintiff would have received disability paychecks from Sedgwick, none of which ever happened because Delta is committing fraud on the court.

38. Because there never was any "April 12 IGD" and because *Plaintiff was hired for a new job on December 1, 2018 in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags or anything heavy at any time and was able to perform all the essential functions of her job,* Ms. Lee NEVER "advised that she was not interested in APA and would speak further with her doctors about providing updated information about her restrictions" as Delta never offered Plaintiff any "APA" leave of absence. Plaintiff was suspended without pay and Delta's attorneys are committing fraud on the court and are just relabeling the suspension without pay for this motion.

39. Because there never was any "April 12 IGD" and because *Plaintiff was hired for a new job on December 1, 2018 in the SkyClub where Plaintiff sat at a desk and did not have to lift any bags or anything heavy at any time and was able to perform all the essential function of her job,* it was

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 11**

1   *states she was in his office on 4/05/19 and can return to her to full duty status and to right of the*
2   *signature it is dated 4/15/19."* This proves that there was no alleged "ICG" call on 4/12/19 as
3   Archie and Delta never actually believed that Plaintiff was unable to work or perform essential
4   duties. This is just pretext for discrimination since Archie wanted the Physician Certification form
5   amended since February 2019(but never removed Plaintiff from the workplace when Delta and
    Archie were aware of Plaintiff's work restrictions. Also ,in this email is  Plaintiff's worker's comp
6   injury claim number "Subject: FW: 30178398440-0001 - LEE, ERIKA L - 08/10/2017" in the subject
    line from Sedgwick, as they were Delta and Sedgwick had a workplace injury on 08/10/2017 and
7   Plaintiff had these restrictions since 08/10/2017 but never removed Plaintiff from the workplace and
8   put plaintiff on a "APA leave of absence" previously when Plaintiffs work restrictions were more
    restrictions were previously worse and got progressively better with physical therapy.   This further
9   proves Delta had no non-discriminatory reason to suspend Plaintiff without pay and remove Plaintiff
10  from the workplace all of a sudden on 04/12/2019 when Plaintiff opposed discrimination, harassment,
11  hostile work environment and retaliation orally on 04/12/2019 to Archie and 04/05/2019 to Delta,
12  Melissa Seppings Equal Opportunity Director, and other Delta Managers.  In sum, Delta was aware
    of Plaintiff's work restrictions since August 2017 (due to workplace injury) but allowed plaintiff to
13  remain in workplace and even hired Plaintiff for a new job beginning on December 1, 2018, but
14  then .  all of sudden , less than 1 week and/ or less than 24 hours after Plaintiff opposed
15  discrimination, harassment, hostile work environment and retaliation orally on 04/12/2019 and
    04/05/2019, Delta removed Plaintiff from the workplace when Plaintiff's work restrictions were
16  never an issue previously.  Keeping in mind, Archie even admitted in "DELTA_LEE_00000067" that
17  Plaintiff's job didn't require Plaintiff to do any heavy lifting at any time on a daily basis but then uses
18  a hypothetical example using the word  "may":"At this time Erika is in a position that does not
19  require the following on a daily basis, however during an IROP, she may also be required to work at
    the ticket counter and gates areas at the LGA airport, which may include assisting passengers with
20  their air travel, including checking in passengers and their baggage, assisting passengers with
21  rebooking, greeting and dispatching flights, opening and closing aircraft doors, and assisting
22  passengers with boarding and de-boarding aircraft by operation of a mobile bridge adaptor and/or a
    jet way. Additionally, this position may require standing, walking, bending, and possibly lifting up to
23  70 Ibs. occasionally and 50 Ibs. frequently."
24  44. Because in March 2019, Ms. Archie requested plaintiff's doctor amend the physician form to
25  have it revised to reflect and include what Archie wanted Plaintiff to dictate to Dr. Akselrud to write,
    which was that Ms. Lee was "cleared of all medical restrictions" even though Plaintiff's job at LGA
26  SkyClub didn't require Plaintiff to lift anything heavy and Plaintiff didn't have any open reasonable
27  accommodation requests , "Dr. Akselrud did not provide any additional information about what had
28  changed since he reported Ms. Lee's restrictions in February and early April 2019," because nothing

---

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION**   **page 13**

changed as Plaintiff had no open reasonable accommodation requests and was not requesting a reasonable accommodation in March -July 2019.

45. Ms. Archie alleges she emailed Ms. Lee to request that Ms. Lee authorize Ms. Archie to speak with Dr. Akselrud to obtain necessary clarification to confirm it was safe for Ms.Lee to return to the workplace, *but Plaintiff simply returned the form but never signed the form or authorized Archie to speak with* Dr. Akselrud, as plaintiff preserved her HIPAA rights at all times.

46. While Plaintiff doesn't have personal knowledge to know whether or not On April 18, Ms. Archie actually emailed Ms. Lee's supervisor, Randy Vogel, informing him that she had received authorization to communicate with Ms. Lee's provider, and that she would be reaching out to Ms. Lee's provider for further clarification regarding Ms. Lee's return to work, *however Plaintiff never signed the form and never authorized Archie to speak with* Dr. Akselrud, as plaintiff preserved her HIPAA rights at all times. To prove Archie is a liar and never had this authorization at any time, one can look at Vogel's written statement in DELTA_LEE_00000080 where he wrote "so think it is best to ensure we have confirmation on the release before we bring her back thanks," as Vogel expresses doubt that Plaintiff ever *"authorized Archie to speak with* Dr. Akselrud, as plaintiff preserved her HIPAA rights at all times."

47. While Plaintiff doesn't have personal knowledge to know whether or not Mr. Vogel actually replied to Ms. Archie's email stating that he had spoken with Ms. Lee regarding Ms. Archie's intended outreach to her provider, Mr. Vogel never spoke to Ms. Lee about Archie's intended outreach to her provider, as Plaintiff never signed the form and never authorized Archie to speak with Dr. Akselrud, as plaintiff preserved her HIPAA rights at all times.

48. Because Plaintiff never signed the form and never authorized Archie to speak with Dr. Akselrud, as plaintiff preserved her HIPAA rights at all times, Ms. Archie didn't have these options . On April 24, Ms. Archie never spoke with Ms. Lee via phone and asked whether she would prefer that Ms. Archie contact Dr. Akselrud directly or provide Ms. Lee with a clarification letter to give to her provider, as Archie didn't have these options because Plaintiff never authorized Archie to speak to her doctor.

49. On April 24, Ms. Archie never spoke with Ms. Lee via phone and asked whether she would prefer that Ms. Archie contact Dr. Akselrud directly or provide Ms. Lee with a clarification letter to give to her provider, as Archie didn't have these options because Plaintiff never authorized Archie to speak to her doctor.Thus, Ms. Lee never "indicated that she had an appointment with her provider that same day and would therefore prefer to provide him with the letter in-person*" on the phone to Archie.*

50. On April 24, Ms. Archie never spoke with Ms. Lee on the phone so it is false that "After the call, Ms. Archie emailed Ms. Lee the clarification letter which Ms.Archie requested Ms. Lee provide to her doctor to allow for clarification regarding her safe return to work."

51. The fax of Dr. Akselrud on April 24 2019 stated the same thing that was started during plaintiff's 04/05/2019 visit "patient able to work without restrictions," so Archie didn't receive any

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 14**

clarification, but this is being used a pretext to retaliate against plaintiff with adverse employment action of suspension without pay. Delta and Sedgwick already knew that Plaintiff had attended physical therapy for 6 weeks because they paid for it.

52.The completed letter indicated that Ms. Lee was able to work without restrictions just as it did started during plaintiff's 04/05/2019 visit and the letter never stated that "patient able to work without restrictions due to her completion of six weeks of physical therapy."Dr. Akselrud wrote 2 mutually exclusive statements. The letter speaks for itself.

53.Ms. Archie never received "updated information from Ms. Lee's doctor confirming that Ms. Lee was released to return to work with no restrictions," since the fax of Dr. Akselrud on April 24 2019 stated the same thing that he started during plaintiff's 04/05/2019 visit which was that "patient able to work without restrictions." Plaintiff doesn't have personal knowledge to know whether or not Mr. Vogel actually lemailed Ms. Boggan, Mr. Vogel, and Ms. Valek, informing them that she had received updated information from Ms. Lee's doctor confirming that Ms. Lee was released to return to work with no restrictions," but if she did it was 100% false as Archie never actually received any new or "updated information."

54.On or around April 5, 2019, Ms. Lee arrived at work and communicated to Plaintiff's Supervisor/ Manager Bernadette Tamasi, at the LGA Sky Club, that Plaintiff 's sweater was missing, but Plaintiff never stated that it was missing "from her locker," as Plaintiff did not have a locker.

55. As Plaintiff's Supervisor/Manager, Ms. Tamasi was responsible for, among other things, maintaining the general appearance of the Sky Club, including ensuring employees in the Sky Club complied with the uniform standard. There were no "lead CSAs" in the Sky club and "CSAs" don't manage whether or not CSAs are violating Delta's "uniform standard."

56. As Plaintiff's Supervisor/Manager, Ms. Tamasi had authority over the terms and conditions of Ms. Lee's employment.

57. Ms. Tamasi never attempted to resolve the issue by Ms. Tamasi offering Ms.Lee her own sweater to wear, as Ms. Tamasi's sweater size would never have fitted plaintiff.

58.Because of Manager.Tomasi's constant sexual harassment and hostile work environment Manager.Tomasi was always sexually demanding plaintiff "look sexy" and wear skits, dresses and high heels for her, as Tamasi, as masculine lesbian woman. Because plaintiff always politely declined and opposed Manager.Tomasi sexual demands for to plaintiff "look sexy" and wear skits, dresses and high heels solely for Tamasi's pleasure, Tamasi said she was writing Plaintiff up for Plaintiff wearing flat shoes, which Tamasi never believed were not in compliance with the uniform standard *because Patricia Papadouplis, a similarly situated white female comparator, had the same shoes on and when Plaintiff advised Tamasi this, Tamasi didn't write up Patricia Papadouplis and allowed Patricia Papadouplis to wear these same flat shoes. Tamasi was only demanding that Plaintiff wear "sexy heels."*

---

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 15**

*59.* Tamasi knew that Plaintiff flat shoes were in compliance with Delta's uniform standard because Plaintiff got them from a Delta authorized store, and other managers said the shoes were in compliance and *Patricia Papadouplis was never written up for wearing the same shoes.*

*Manager* Tamasi did not provide plaintiff with any accurate document showing the shoes were not in compliance with Delta's uniform standard.

60. Manager Tamasi continued demanding that Plaintiff wear "sexy heels" and not the flat shoes she allowed Patricia Papadouplis to wear and never issued write up to Patricia Papadouplis for wearing the same shoes.

61. It is 100% false that "Ms. Tamasi only interacted with Ms. Lee on one other occasion: on March 29, 2019, when, at Ms. Lee's request, Ms. Tamasi had taken Ms. Lee's photo with Mr. Met (the mascot for the New York Met's baseball team)."

*62.* During that interaction, Manager Tamasi demanded Plaintiff wear heels and take a photo in the heels for Tamasi because Tamasi said "she wanted a picture to masturbate to." Plaintiff never told Tamasi that Plaintiff wanted to wear heels. Plaintiff was ordered, and coerced to wear heels to comply with her Supervisor/Manager Tamasi's orders or be written up and be retaliated against with adverse employment actions as plaintiff was days later when Plaintiff refused to comply because it had no work purpose , it was only to fulfill Tamasi's sexual desires.

63. The day following the sweater incident, on April 6, 2019, Ms. Lee sent an email to her Manager Tamasi's manager Randy Vogel (Operations Station Manager or "OSM") about Tamasi's write up about Plaintiff's flat shoes allegedly not being in compliance with Delta's uniform standard, Randy is not a "supervisor."

64. Before writing that letter, Plaintiff spoke to Vogel informally in person and explained all the sexual harassment, sexually assault , hostile work environment and asked Vogel for advice. Vogel instructed and directed Plaintiff what to say and what not to type in that email (Archie's Ex. E.) and to send it to him. Vogel warned and advised Plaintiff not to mention "sexual harassment, sexually assault , hostile work environment" or put any salacious details in writing, as it would make plaintiff look unprofessional and Delta's Equal Opportunity office aka Delta's "legal department" would immediately retaliate if any salacious details were in writing as Delta has a "no write up" policy. Plaintiff didn't need to spell out sexual harassment in "any way during the April 5, 2019 incident," because it should've be understood or inferred that a masculine aggressive lesbian manager was forcing only 1 female subordinate (plaintiff) to wear heels and skirts and retaliating with adverse employment actions when Plaintiff refused to comply , as Tamasi's demand served no legitimate work purpose. Delta later agreed with Plaintiff that Tamasi was wrong and Plaintiff did not have to wear heels and skirts if she didn't want to. Also Before writing that letter , Plaintiff and plaintiff's witness, delta employee Mayra Amezquita , had reported Tamasi's sexual harassment, sexually assault , hostile work environment to LAX HR Manager Ashley Rangel in 2018 and Plaintiff was threatened with indefinite suspension without pay and termination by Rangel if Plaintiff complained

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 16**

in writing again.  However, Here in April 2019, plaintiff was being retaliated with adverse employ-ment actions by Tamasi for opposing Tamasi's sexual harassment, sexually assault , hostile work environment. Tamasi's write up had long term professional consequences, even though Plaintiff didn't violate any Delta policy.  Delta later agreed with Plaintiff and revoked Tamasi's write up , which was an adverse employment action.

65. Plaintiff sent an email to Melissa Seppings (Director, EO) to oppose  Tamasi's write up , which was an adverse employment action, which was retaliation for opposing Tamasi's sexual harassment, sexually assault , hostile work environment, but never stated  that "Ms. Tamasi's comments about her shoes were retaliation for "exercising [her] rights under [the] Americans with Disabilities Act ADA) as well as racial discrimination. "

66.Ms. Lee copied Ms. Archie on an email Plaintiff sent  to Ms. Seppings.

67.Ms. Archie was/is responsible for and/or authorized to conduct investigations into complaints of discrimination/hostile work environment/retaliation/harassment, as discrimination/hostile work environment/retaliation/harassment issues are always handled by Equal Opportunity.

68.Plaintiff doesn't have personal knowledge to know whether or not Ms. Archie forwarded Ms. Lee's email to HR Senior Manager Greta Boggan.

69. Ms. Lee never stated the she did have an accommodation related to her footwear at that time because Plaintiff didn't need one but plaintiff requested a potential/hypothetical reasonable accommodation if Delta were to have affirmed Tamasi's write up , which was an adverse employment action. Tamasi was Plaintiff's supervisor/manager and not Ms. Lee's peer and colleague, and Plaintiff never alleged that Ms. Tamasi would have been informed of Ms. Lee's alleged  pending accommodation request with EO.

70.Before writing that letter, Plaintiff spoke to Vogel informally in person and explained all the sexual harassment, sexually assault , hostile work environment and asked Vogel for advice. Vogel instructed and directed Plaintiff what to say and what not to type  in that email (Archie's Ex. E.) and to send it to him. Vogel warned and advised Plaintiff not to mention "sexual harassment, sexually assault , hostile work environment" or put any salacious details in writing, as it would make plaintiff look unprofessional and Delta's Equal Opportunity office aka Delta's "legal department" would immediately retaliate if any salacious details were in writing as Delta has a "no write up" policy.  Plaintiff didn't need to spell out sexual harassment in "any way during the April 5, 2019 incident," because it should've be understood or inferred that a masculine aggressive lesbian manager was forcing only 1 female subordinate (plaintiff) to wear heels and skirts and retaliating with adverse employment actions when Plaintiff refused to comply , as Tamasi's demand served no legitimate work purpose. Delta later agreed with Plaintiff that Tamasi was wrong and Plaintiff did not have to wear heels and skirts if she didn't want to. Also Before writing that letter , Plaintiff and plaintiff's witness, delta employee Mayra Amezquita , had reported Tamasi's sexual harassment, sexually assault , hostile work environment to LAX HR Manager Ashley Rangel in 2018 and Plaintiff was -

1   threatened with indefinite suspension without pay and termination by Rangel if Plaintiff complained

2   in writing again. However, Here in April 2019, plaintiff was being retaliated with adverse

3   employment actions by Tamasi for opposing Tamasi's sexual harassment, sexually assault , hostile

    work environment. Tamasi's write up had long term professional consequences , even

4   though Plaintiff didn't violate any Delta policy. Delta later agreed with Plaintiff and revoked

5   Tamasi's write up , which was an adverse employment action.

6   71.Archie informed Plaintiff that Ms. Archie was/is responsible for and assigned to investigate Ms.
    Lee's claims alleging retaliation for

7   exercising her ADA rights and race discrimination, as discrimination and harassment and retaliation

8   issues are always handled by Equal Opportunity.

9   72.Plaintiff never stated the she "required" the"orthopedic" shoes but could obtain a doctors note and
    was requesting a reasonable accommodation for a potential orthopedic" shoes if Delta were to have

10  affirmed Tamasi's write up , and not have allowed plaintiff to wear her compliant flat shoes.

11  73.Delta never conducted an investigation into Ms. Lee's complaints as Delta's standard operating

12  procedure is to send a letter to the complainant with Delta's investigative findings such as Delta did
    with Donya Williams in Exhibit 25, but which Delta never did in this case.

13  74.Delta never conducted an investigation into Ms. Lee's complaints as Delta's standard operating

14  procedure is to send a letter to the complainant with Delta's investigative findings such as Delta did
    with Donya Williams in  Exhibit 25, but which Delta never did in this case. However, "Tamasi's

15  communications with Ms. Lee were not  intended to ensure compliance with Delta's uniform

16  guidelines, *as Delta agreed that plaintiff could not be forced to wear "sexy heels" and her flat shoes*

17  *were in compliance at all times and Tamasi always allowed Patricia Papadouplis to wear these same*

18  *shoes without any adverse employment actions.*

19  75.In August 2019, Ms. Lee applied for and was hired for a job  at JFK airport since Delta refused to
    transfer plaintiff out of the hostile work environment that Tamasi was subjecting plaintiff to. Plaintiff

20  was never "assigned" to work  at JFK airport , applied for and was hired for a job  at JFK airport.

21  76.On April 1, 2020, Ms. Lee volunteered to began an unpaid , COVID-19 leave of absence, as Delta

22  was begging employees to take this unpaid , COVID-19 leave of absence since Delta was losing
    money due to COVID

23  77.During Ms. Lee's COVID-19 leave of absence, Delta informed Plaintiff that she was not

24  considered active Delta employee for pay purposes or any purposes beneficial to plaintiff , however

25  Delta later informed plaintiff that Delta did consider plaintiff an active Delta employee to punish ,
    retaliate and discipline plaintiff for her any alleged off duty conduct.

26  78.Lee's COVID-19 leave of absence was originally was set to end on April 30, 2021, but Kruit and

27  Nabors informed Plaintiff on March 26, 2021 and April 1, 2021 that plaintiff was suspended without

28  pay beginning on  March 26, 2021 and no longer considered on COVID-19 leave of absence, which
    was a breach of contract.

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 18**

79. Ms. Lee filed a civil rights complaint on or around September 20, 2020 in the United States District Court for the Central District of California.

80. Ms. Lee's civil rights complaint on filed in the United States District Court for the Central District of California was not limited to only discrimination based on her race, sex, and disability, as well as retaliation for engaging in alleged protected activity.

81. Ms. Lee's civil rights complaint on filed in the United States District Court for the Central District of California had no reason to contain any references to sexual harassment or to Ms. Tamasi, *as the court had no personal jurisdiction over Tamasi and that case was limited to Delta's conduct and civil rights violations in California.*

82. *Ms. Lee filed an amended civil rights complaint in 2020.*

83. *In the amended complaint, Ms. Lee repeated general discriminatory gender comments (about older women being women needing to get breast implants and losing weight to advance their careers, and looking sexy etc. ) which were misogynistic in nature and freely made by Delta Station Manager Joseph Turnpap while plaintiff was working at LAX, but Tumpap wasn't sexually harassing Plaintiff perhaps in the same manner of Tamasi. Tumpap made these general discriminatory misogynistic, gender comments (about older women being women needing to get breast implants and losing weight to advance their careers, and looking sexy etc.) openly in front of many others, offending other women too.*

84. *Ms. Lee did not " allege for the first time that, upon transferring to LGA, Ms. Tamasi began sexually harassing her, as Tamasi began sexually harassing plaintiff before Plaintiff worked at LGA and plaintiff reported this to HR Manager Ashley Rangel in 2018 .*

85. *Plaintiff and Mayra Amezquita reported to HR Manager Ashley Rangel in 2018 the other interactions Plaintiff had with Ms. Tamasi before plaintiff was hired at LGA skyclub. Plaintiff was never given a "transfer to LGA in late December 2018."*

86. *On February 23, 2021, Ms. Lee filed a civil rights complaint with California Department of Fair Employment and Housing ("DFEH")*

87. O*n February 19, 2021, Plaintiff returned Mr. Needham's phone call, where Needham began repeating the same things Tamasi used to say and asked if plaintiff ever watched lesbian porn,  if Plaintiff ever had lesbian sex , if plaintiff ever told Tamasi that plaintiff was a lesbian , if plaintiff liked "bbc," when was last time plaintiff had sex with a man, if plaintiff had a boyfriend at the time, if plaintiff had a hairy vagina, and asking all these questions about Tamasi's sex life ,which plaintiff had no knowledge off, etc.*

88. Mr. Needham did speak with Ms. Lee on February 19, 2021, and indeed, was working on this date because he picked up the phone and told Plaintiff he was currently drinking  a beer and was waiting for her to return his call.   Also , Needham told Plaintiff he has several cell phones as Delta was not his only employer and that he mostly works remote.  Needham's allegation that he " was taking his mother to get her COVID-19 vaccination," which takes 30 seconds, doesn't disprove that plaintiff

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 19**

spoke to Needham. Also, according to DELTA_LEE_00000013 Needham took a 2 minute "work" call on 02/23/21 at 6pm on this alleged work phone and then a few minutes later posted a picture of himself drinking at a bar . (See Exhibit 26) Also, according to DELTA_LEE_00000013 Needham took many "work" calls on 02/24/21 on this alleged work phone while also posting pictures on Facebook of himself drinking at a bar and at the beach telling Facebook he works anywhere he wants. (See Exhibit 26) Needham sounded drunk when Plaintiff spoke to him on 2/19/2021 and admitted he had a few beers. Needham is always drinking alcohol and posting pictures on Facebook and bragging about his alcoholism.On March 25, 2021, plaintiff called Kelly Nabors to oppose Needham's sexual harassing questions and comments and Needham's repeatedly asking Plaintiff if Tamasi spanked Plaintiff in 2020, among other things, when Plaintiff informed Needham that plaintiff was scared of being retaliated against and didn't want to discuss the discrimination, sexual assault, sexual harassment and formal hostile work environment that Tamasi subjected plaintiff to.  Plaintiff asked Kelly Nabors to find out who Needham was and to contact him and tell Needham to stop calling plaintiff's phone to have phone sex talk about his sex life , Tamasi's sex life, and his questions about mine because his phone calls are inappropriate, unprofessional and unwanted and plaintiff is on a Covid Leave and can't be forced to talk to him. Kelly Nabors informed plaintiff that she would discretely talk to Needham and tell him to stop calling as plaintiff didn't want to talk about Tamasi's discrimination, sexual  assault, sexual harassment and formal hostile work environment to Needham when his questions were sexually harassing and sexually perverted in nature and were beyond the scope of any HR duties.

89..Plaintiff has no personal knowledge to actually know whether or not On March 25, 2021, Mr. Needham actually emailed Senior HR Manager Danielle Kruit. However , On March 25, 2021, Kelly Nabors who knew plaintiff expressed she was unaware of who Needham was. David Needham had no personal knowledge to actually know what plaintiff or Mayra Amezquita previously reported to Randy Vogel , Ashley Rangel, etc.

90.Plaintiff has never alleged  that plaintiff called Needham on his "Delta-provided work mobile phone" so this alleged " forensic investigation report of incoming and outgoing calls" has no probative value.

91.Because Plaintiff has never alleged  that plaintiff called Needham "from any phone number associated with Ms. Lee, " the forensic investigation report would  not reflect this.

92.On March 25, 2021, plaintiff called Kelly Nabors to oppose Needham's drunk, sexual harassing phone calls, sexual harassing questions and sexual comments, as  Needham kept repeatedly asking Plaintiff if Tamasi spanked Plaintiff in 2020, among other things; however Plaintiff informed Needham that plaintiff was scared of being retaliated against and didn't want to discuss the discrimination, sexual  assault, sexual harassment and formal hostile work environment that Tamasi subjected plaintiff to.  On March 25, 2021, Plaintiff asked Kelly Nabors to find out who Needham was and to contact him and tell Needham to stop calling plaintiff's while drunk to have raunchy —

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 20**

phone sex talk about his sex life , Tamasi's sex life, and to ask plaintiff sexual questions because his phone calls are inappropriate, unprofessional and unwanted and plaintiff is on a Covid Leave and can't be forced to talk to him about these topics.  Kelly Nabors informed plaintiff that she would discretely talk to Needham and tell him to stop calling as plaintiff didn't want to talk about Tamasi's discrimination, sexual  assault, sexual harassment and formal hostile work environment to Needham when his questions were sexually harassing and sexually perverted in nature and were beyond the scope of any of Delta HR duties.

93.On April 1, 2021, Kruit informed Plaintiff that she was suspended without pay and material benefits revoked on March 26, 2021 because           of "what you told Kelly Nabors on March 25, 2021." On March 25, 2021 , plaintiff opposed Tamasi's discrimination, sexual  assault, sexual harassment and formal hostile work environment to Nabors and called Kelly Nabors to oppose Needham's drunk, sexual harassing phone calls, sexual harassing questions and sexual comments, as  Needham kept repeatedly asking Plaintiff if Tamasi spanked Plaintiff in 2020, among other things and to advise Needham to stop calling plaintiff's while drunk to have raunchy phone sex talk about his sex life , Tamasi's sex life, and to ask plaintiff sexual questions because his phone calls are inappropriate, unprofessional and unwanted and plaintiff is on a Covid Leave and can't be forced to talk to him about these topics.

94.Ms. Lee  was suspended without pay on March 26, 2021 but Kruit never informed Plaintiff what Plaintiff allegedly did or said or what written policy Plaintiff violated to warrant a suspension until April 1, 2021.In an email On March 30, 2021 and on the phone on April 1, 2021, Ms. Kruit reprimanded, shamed, and  scolded plaintiff for  opposing Tamasi's discrimination, sexual  assault, sexual harassment and formal hostile work environment to Nabors and for telling  Kelly Nabors about Needham's drunk, sexually harassing phone calls, sexually harassing questions and sexual comments and requesting Needham stop calling plaintiff's while drunk to have raunchy phone sex talk about his sex life , Tamasi's sex life, and to ask plaintiff sexual questions. Kruit told Plaintiff that  even though plaintiff was an inactive employee, on an unpaid Covid Leave of Absence , plaintiff still had to entertain and consent to  Needham's inappropriate, unprofessional and unwanted sexually harassing phone calls about any topic Needham wanted to discuss and couldn't refuse them.  Kruit never spoke to Plaintiff about Plaintiff's "allegations" in the DFEH complaint.

95.On the call, Ms. Lee never "indicated that she was unable to provide any specifics regarding her alleged call with Mr. Needham on February 19," plaintiff told Kruit and Nabors that Needham began repeating the same things Tamasi used to say to Plaintiff, asked if Tamasi spanked plaintiff in 2020 and asked if plaintiff ever watched lesbian porn,  if Plaintiff ever had lesbian sex ,  if Plaintiff had lesbian fantasies, if plaintiff ever told Tamasi that plaintiff was a lesbian , if plaintiff liked "bbc," asked when was the last time plaintiff had sex with a man, if plaintiff had a boyfriend at the time, if plaintiff had a hairy vagina, and asking all these questions about Tamasi's sex life ,which plaintiff had no knowledge off, etc.

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 21**

96. Ms. Lee would need to reference "notes" like Delta's airport phone records before responding to any further questions which plaintiff had no access to, and which Delta never offered to produce, and Delta has video cameras where Delta could've located the Delta telephone that Plaintiff used and provided the video and the phone log but refused to do so because it would've proven that Plaintiff did indeed have a phone call with Needham on 2/19/21. It is impossible for Plaintiff to have lied about this as Delta knows Plaintiff was in the airpot that day and Delta had the ability to review the video footage from video cameras and produce the call log for discussion, but Delta and Kruit refused to do so. Kruit and Delta needed to invent a pretextual non-discriminatory reason to suspended and terminate Plaintiff, so she intentionally manufactured a situation that Plaintiff was unable to prove to fraudulently make Plaintiff appear "dishonest." However, Plaintiff was not dishonest, as Kruit admits that Plaintiff was "evasive" and "uncooperative." It is impossible to ever be dishonest when one is silent. Essentially, Kruit and Delta are retaliating against Plaintiff for engaging in protected activity, as Kruit, Needham, Delta do not like the true statements that Plaintiff made in her DFEH/EEOC complaint, where Plaintiff was opposing discrimination and retaliation to DFEH/EEOC in February 2021, March 2021, April 2021, June 11, 2021.

97. In a phone call with Nabors on March 25, 2021, in an email n March 30, 2021 and on the phone on April 1, 2021, Plaintiff opposed Tamasi's race/sex discrimination, sexual assault, 2020 spanking, sexual harassment and constant sexually and racially hostile work environment to Kruit and Nabors and also opposed Needham's drunk, sexually harassing phone calls, sexually harassing questions and sexual comments and requested Needham stop calling plaintiff while being drunk to have raunchy phone sex talk about his sex life , Tamasi's sex life, and asking plaintiff sexual questions that Plaintiff informed Needham that she did not want to discuss, as Plaintiff was in fear or being retaliated against.

98. Besides the April 1 phone call, Ms. Nabors has a very bad selective memory since she "does not recall participating in a discussion with Ms. Lee" on March 25, 2021 or in 2012, 2013 and 2014. Kelly Nabors also testified in Exhibit 11 attached that she doesn't take notes or log or create paperwork for every call that comes in. On March 25, 2021, Plaintiff called Kelly Nabors to oppose Needham's drunk, sexual harassing phone calls, sexual harassing questions and sexual comments, as Needham kept repeatedly asking Plaintiff if Tamasi spanked Plaintiff in 2020, among other things; however Plaintiff informed Needham that plaintiff was scared of being retaliated against and didn't want to discuss the discrimination, sexual assault, sexual harassment and constant sexually and racially hostile work environment that Tamasi subjected Plaintiff to. On March 25, 2021, Plaintiff asked Kelly Nabors to find out who Needham was and to contact him and tell Needham to stop calling plaintiff while drunk to have raunchy phone sex talk about his sex life , Tamasi's sex life, and to ask plaintiff sexual questions because his phone calls are inappropriate, unprofessional and unwanted and Plaintiff is on a Covid Leave and can't be forced to talk to him about these topics. Kelly Nabors informed plaintiff that she would discretely talk to Needham and tell him to stop calling as plaintiff

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 22**

formally opposed Needham's sexually harassing phone conversations, which was sexually perverted in nature and were beyond the scope of any of Delta HR duties. The next day, on March 26, 2021, all of a sudden, less than 24 hours later, Danielle Kruit suspended Plaintiff without pay based on Plaintiff's conversation with Nabors.

99. On April 1 , 2021 Ms. Kruit and Ms. Nabors, were calling plaintiff a "liar" and "dishonest" and didn't believe the things plaintiff told them on March 25, 2021 or on March 30, 2021 or on April 1, 2021 , Ms. Lee provided only the honest answers she possessed at the time and  never "refused to provide clear or consistent answers regarding her purported conversation with Mr. Needham and in connection with the investigation." Plaintiff was not able to provide information she did not possess.

100. On April 15, 2021, Ms. Lee told Ms. Kruit that she would ignore any further requests for information as Kruit was attempting to violate plaintiff's privacy rights and legally privileged information that Kruit had no legal right to access, but also Plaintiff was not able to provide any more information , as plaintiff did not possess any more information.

101. Ms. Tamasi conducted herself inappropriately with Ms. Lee, including by making any advances or comments of a sexual or suggestive nature towards Ms. Lee.

102. Plaintiff doesn't have personal knowledge to know whether or not "Ms. Kruit confirmed during the investigation that Ms. Tamasi had never been the subject of any other workplace complaints regarding discrimination, harassment, or otherwise inappropriate conduct during her over 30-year tenure with Delta."

103. Plaintiff doesn't have personal knowledge to know whether or not "Ms. Kruit spoke with Ms. Boggan," but " Ms. Boggan never conducted any actual , substantial "previous investigation into Ms. Lee's allegations raised relating to Ms. Tamasi in April 2019"

104. Ms. Boggan doesn't have personal knowledge to confirm to Ms. Kruit that Plaintiff opposed Tamasi's sexual harassment, sex discrimination, sexually assault , hostile work environment to Ashley Rangel in 2018, Randy Vogel and Henrietta Archie in 2019.

105. Ms. Lee never acted "evasive[ly] during her interview and through written exchanges with Delta"as plaintiff was not able to provide any information which  plaintiff did not possess  at the time and/or information that was legally privileged and violated Plaintiff's rights . Plaintiff fully "cooperated with Delta's investigators" to the best of her ability as plaintiff provide all the  information which  plaintiff possessed at the time. Plaintiff never  fabricated and/or "intentionally fabricated the alleged February 19, 2021 conversation with Needham in her DFEH Complaint*EEOC complaint on February 23, 2021.  When similarly situated non black comparators, Hosana Wurtz, Priscilla Ivanoff, Kosakowski, LaCroiux were not believed by Delta they were never retaliated against with suspension without pay or termination.*

**106. *On June 17, 2021, Delta and/or Kruit and/or Defendant Rosado retaliated against Plaintiff by terminating Plaintiff's employment because Plaintiff engaged in protected activity of filing DFEH/ EEOC complaints opposing discrimination/harassment/retaliation/hostile work environment  on June***

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 23**

*11, 2021(Exhibit 14) and February 23, 2021(Exhibits 7-9) and also opposing discrimination/ harassment/retaliation/hostile work environment orally in phone call on June 17, 2021 to Defendant Jose Rosado, orally in phone call on March 25, 2021 to Kelly Nabors, in an email on March 30, 2021 to Nabors and Kruit(Exhibit R), orally in phone call on April 1, 2021, Plaintiff asked Kruit for a reasonable accommodation on June 8, 2021(Exhibit 10) and the EEOC issued a right to sue on June 17, 2021(Exhibit15).*

107. Attached as **Exhibit 1** is a true and correct copy of Delta's 2025 SkyClub Job posting of the job requirements of the same Sky Club position that I previously interviewed for, applied for, and was hired for. I personally saw and printed Exhibit 1 from Delta's website on the Internet was located at https://delta.avature.net/en_US/careers/JobDetail/Sky-Club-Ambassador-LAX/28764?jobId=28764.

**108**. Attached as **Exhibit 2** is a true and correct copy of a Declaration of Annelyse Greene Sanders and authenticated documents of her handling of Carol Watts Lynch who was removed from workplace on an "APA leave of absence. These documents are a matter of public record, which Plaintiff purchased, personally saw and printed from pacer.uscourts.gov, a government website on the internet, which any member of the public with internet access can also view, purchase and print.

**109.** Attached as **Exhibit 3** is a true and correct copy of the Deposition Transcript of Delta HR Manager,Lisa Todd, which is a matter of public record, which Plaintiff purchased, personally saw and printed from pacer.uscourts.gov, a government website on the internet, which any member of the public with internet access can also view, purchase and print.

110. Attached as **Exhibit 4** is a true and correct copy of the Testimony Transcript of Delta Manager Elaine Little and Reid Campbell, which Plaintiff personally received from Aasir Azzarmi, but also Plaintiff was listening in on this entire proceeding as Plaintiff was also subpoenaed to appear to be deposed on April 3, 2019. Plaintiff has personal knowledge as Plaintiff personally heard Elaine Little and Reid Campbell testify to what they testified to on the paper. Plaintiff's name is on cover page as being present with Little and Campbell as a witness.

**111.** Attached as **Exhibit 5** is a true and correct copy of the Testimony Transcript of Delta HR Manager Bill Ittounas on October 3, 2018, which Plaintiff personally received from Aasir Azzarmi. Plaintiff knows Delta HR Manager Bill Ittounas and he does handle Reasonable Accommodations. Attached as **Exhibit 5a** is a true and correct copy of Delta Bates documents "DELTA000404" and "DELTA000405" which is an emailReasonable Accommodations request that Aasir Azzarmi sent to Delta's "Equal Opportunity" Department, which they forward to Human Resources Manager Bill Ittounas, who was "handling" Aasir "Azzarmi case." If you notice, every time Plaintiff's emailed Danielle Kruit in 2021 to request a reasonable accommodation, Danielle Kruit never forwarded Plaintiff's reasonable accommodation email requests to any Delta "Equal Opportunity" manager, this is because Human Resources does handle reasonable accommodations. However, DELTA EQUAL OPPORTUNITY DOES NOT ENGAGE IN INTERACTIVE PROCESS OR EVER INTEND TO GRANT REASONABLE ACCOMMODATIONS, EXCEPT WHEN THEY USE THE

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 24**

1    REASONABLE ACCOMMODATION PROCESS WHEN THEY WANT TO CREATE A
2    NARRATIVE AND TO SET EMPLOYEES UP FOR ADVERSE EMPLOYMENTS ACTIONS,
     (SUSPENSION, TERMINATION, OR INVOLUNTARY INDEFINITE "LEAVE OF ABSENCE."),
3    such as they did in this case. Plaintiff did not even request a reasonable accommodation in
4    2019(besides the one to leave on-time which was summarily denied in February 2019 and the
5    hypothetical and potential shoe reasonable accommodation.), yet Archie argue now, on this motion,
     alleges that she was engaging  interactive process with Plaintiff. Archie had no valid reason then
6    in2019 or now to ever have engaged in any interactive process, since Plaintiff did not request any
7    reasonable accommodation in March 2019 or April 2019, and every other past reasonable
8    accommodation request was either summarily denied or moot, non-existent and not applicable to
     Plaintiff's SkyClub position
9    112. Attached as **Exhibit 6** is a true and correct copy of the Deposition Transcript of Delta EO or
10   Equal Opportunity Manager Joanne Guerrant, which is a matter of public record, which Plaintiff
11   purchased, personally saw and printed from pacer.uscourts.gov,  a government website on the
     internet, which any member of the public with internet access can also view, purchase and print.
12   Guerrant testifies that "normally" an HR manager does "handle" reasonable accommodations.
13   113. Attached as **Exhibit 7** is a true and correct copy of the DFEH/EEOC complaint Plaintiff filed on
14   02/23/2021.
15   114.Attached as **Exhibit 8** is a true and correct copy of the DFEH/EEOC complaint Plaintiff filed on
     04/3/2021, after being suspended without pay on 3/26/21.
16   *115.* Attached as **Exhibit 9** is a true and correct copy of the DFEH/EEOC complaint Plaintiff filed on
17   06/10/2021, after being suspended without pay on 3/26/21 for more than 2 months in retaliation for
18   opposing sex/race discrimination, hostile work environment and retaliation when similarly situated
19   *NON-BLACK comparators*(Hosana Wurtz, Priscilla Ivanoff, Kosakowski, LaCrioux, Roy) who
     complained of sexual harassment, sex discrimination, hostile work environment, were never
20   retaliated against with adverse employment actions, even when Delta did not believe these similarly
21   situated NON-BLACK comparators' allegations and/or believed that these same similarly situated
22   NON-BLACK comparators lied.  Therefore, Plaintiff was treated less favorably, in part, because of
     her *sex and race this is relevant to Plaintiff's 42 USC 1981 Retaliation claim.*
23   *116.* Attached as **Exhibit 10** is a true and correct copy of an email that Plaintiff sent Delta HR
24   Manager Danielle Kruit whereby Plaintiff engaged in protected activity by requesting a reasonable
25   accommodation and asking about Plaintiff's benefits and how long the retaliatory suspension without
     pay will last.
26   117. Attached as **Exhibit 11** is a true and correct copy of the Deposition Transcript of Delta EO or
27   Equal Opportunity Manager Kelly Nabors which is a matter of public record, which Plaintiff
28   purchased, personally saw and printed from pacer.uscourts.gov,  a government website on the
     internet, which any member of the public with internet access can also view, purchase and print

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 25**

118. Attached as **Exhibit 12** is a true and correct copy of a Delta Bates stamped document ***Delta 3:15-cv-020-jam-002812***which is a matter of public record, which Plaintiff purchased, personally saw and printed from pacer.uscourts.gov, a government website on the internet, which any member of the public with internet access can also view, purchase and print. This document shows that CSA's are not all the same,as there are different departments with different number, with different job requirements and different job qualifications and "Specific functions, tasks, and department may vary or be added depending upon the location…". This supports the fact that in LGA SkyClub, Plaintiff was never required to lift any heavy objects and there were no minimum mandatory lifting requirements at LGA SkyClub, but LAX SkyClub, at one point, did impose minimum mandatory lifting requirements for Carol Watts Lynch(see Exhibit 2).

119. Attached as **Exhibits 13 & 14** are true and correct copies of Plaintiff's June 10, 2021 DFEH/ EEOC charges Plaintiff filed for retaliation, whereby Plaintiff was terminated 1 week later, on June 17, 2021.

**120.**Attached as **Exhibits 13 & 14** are true and correct copies of Plaintiff's June 10, 2021 DFEH/ EEOC charges Plaintiff filed for retaliation, whereby Plaintiff was terminated 1 week later, on June 17, 2021.

121. Attached as **Exhibit 15** is a true and correct copy of Plaintiff's June 17, 2021 EEOC Right to Sue charge, whereby Plaintiff was, on June 17, 2021, the same day.

122. Attached as **Exhibit 16** is a true and correct copy of Delta employee Mayra Amezquita's Declaration, which I personally received from Mayra Amezquita, who witnessed Tamasi's sexual harassment and reported it to Delta HR Manager Ashely Rangel in 2018.

123.Attached as **Exhibit 17** is a true and correct copy of Delta's November 1, 2018 email to Plaintiff confirming that Plaintiff requested a Reasonable Accommodation for her job at LAX Airport (Dept. 125) on or around October 30, 2018, where Delta emailed Plaintiff Delta's Physician Certification forms. These are Physician Certification forms which Dr. Van de Walle's completed strictly for Plaintiff's LAX Airport DEPT. 125 position where Plaintiff was required to lift heavy bags. However, Dr. Van de Walle's Physician's Certification became moot, non-existent and futile on December 1, 2018, as Plaintiff was hired for and began a new job at LGA SkyClub in New York where Plaintiff sat at a desk and did not have to lift any bags or any heavy items, as she had a "sedentary," that had no minimum lifting requirements.

124. Attached as **Exhibits Q and R** are Plaintiff's emails to and from Delta HR Manager Danielle Kruit from March 30, 2021 to April 12, 2021.

125. Attached as **Exhibit M** is a true and correct copy of Delta Bates document "DELTA000009," which Plaintiff personally received from Aasir Azzarmi, proves hat Delta does not terminate and/or suspended without pay or revoke material benefits of similarly situated white female employees who make false accusations of sex discrimination, hostile work environment, physical or sexual assault, or harassment, when Delta does not believe these similarly situated white female employees and/or

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 26**

believes these similarly situated white female employees made intentionally false statements against other Delta employees. However, with Plaintiff, Delta deviated from their progressive discipline policy and skipped all steps in their own progressive discipline policy and went straight to suspension without pay and then termination.

126. Attached as **Exhibit N** is a true and correct copy of Delta Bates document "DELTA000276," and "DELTA000277," which Plaintiff personally received from Aasir Azzarmi, proves that Delta does not terminate and/or suspended without pay or revoke material benefits of similarly situated white female employees who make false accusations of sex discrimination, hostile work environment, physical or sexual assault, or harassment, when Delta does not believe these similarly situated white female employees and/or believes these similarly situated white female employees made intentionally false statements against other Delta employees. However, with Plaintiff , Delta deviated from their progressive discipline policy and skipped all steps in their own progressive discipline policy and went straight to suspension without pay and then termination.

127. Attached as **Exhibit 18** is a true and correct copy of Delta's Manager Joseph Jackson's VERIFIED complaint in his EDNY lawsuit, which is a matter of public record, which Plaintiff purchased, personally saw and printed from pacer.uscourts.gov, a government website on the internet, which any member of the public with internet access can also view, purchase and print. Similarly situated white female comparators, Erin Pieroni & Delgado, made false accusations against Joseph Jackson, a black male manager who worked at Delta for 22 years, who with no evidence whatsoever, and Delta(racist, white male HR manager Bill Ittounas) believed them at their word and terminated Jackson, without any evidence and without any investigation. Delta HR Manager Bill Ittounas testified in Azzarmi's workers compensation case that Delta allows its managers, including but not limited to Bill Ittounas, to subject employees to adverse employment actions and terminations, based solely on the managers subjective "perception" only. Similarly situated NON-BLACK comparators(Pieroni, Delgado, Hosana Wurtz, Priscilla Ivanoff,) who complained of sexual harassment, sex discrimination, hostile work environment, were never retaliated against with adverse employment actions, even when Delta did not believe some of these similarly situated NON-BLACK comparators' allegations and/or believed that these similarly situated NON-BLACK comparators lied. Therefore, Plaintiff was treated less favorably, in part, because of her sex and this is relevant to Plaintiff's 42 USC 1981 Retaliation claim. Plaintiff had a valid reason to alleged RACE DISCRIMINATION because Delta only allows white women to engage in protected activity(opposition to harassment, discrimination, hostile work environment) with adverse employment actions but not black women (Plaintiff, Donya Williams, etc).

128. Attached as **Exhibit 25** is a true and correct copy of an post-Investigation letter that EO Manager Kelly Nabors sent to former Delta employee, Donya Williams, who opposed sexual harassment, discrimination, harassment and was put on an indefinite leave of absence. Exhibit 25 was filed in Federal Court, and thus is a matter of public record, which Plaintiff purchased, personally

saw and printed from pacer.uscourts.gov, a government website on the internet, which any member of the public with internet access can also view, purchase and print. Plaintiff uses Exhibit 25 to prove that Delta n*ever conducted an investigation into Plaintiff's sexual harassment, hostile work environment, race discrimination, disability discrimination, sex discrimination and retaliation complaints* in 2018 to HR Manager Ashely Rangel and/or in 2019 to EO Manager Henrietta Archie, because after Delta conducts an investigation, it is Delta's standard business practice to send out a post-Investigation letter such as Exhibit 25. Delta never sent Plaintiff a post-investigation letter, such as Exhibit 25, after Delta suspended Plaintiff without pay in April 2019.

129. Attached as **Exhibit 26** are true and correct copies of David Needham's Facebook posts from February 24, 2021 and other days, which Plaintiff personally saw and printed from facebook.com, a public website on the internet, which any member of the public with internet access can also view and print. Plaintiff uses these Facebook posts to prove(compare to his alleged Delta call log) that David Needham does indeed take business calls while he is out of the Delta office(at the beach in another state), and he receives and makes Delta business calls on days when he is drinking alcohol(see 2/24/21 pics and compare to Delta phone log), as he did with Plaintiff on 2/19/21. When Plaintiff spoke to Needham on 2/19/21, his speech was slurred, he was talking in a loud, sexy manner, had no inhibitions, was crude, unprofessional, no filter, and was asking inappropriate sexual questions (for example, asking if Plaintiff liked "bbc," which means big black cock and telling Plaintiff he likes hairy crotches, etc.), which had absolutely nothing to do with any Delta investigation.

130. Attached as Exhibit 28 is a true and correct copy of emails between Plaintiff and Delta HR Manager Danielle Kruit(with EO Manager Nabors copied) from April 28, 2021 through April 30, 2021, whereby Plaintiff engaged in protected activity by opposing retaliation and discrimination and where Delta and HR Manager Kruit suspended Plaintiff again without pay from April 30, 2021 through June 17, 2021.

131.Plaintiff never spoke to Ms. Boggan.


I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S. Code § 1746, that the foregoing is true and correct. Executed on 9/15/2025.

Date: 9/15/2025

ERIKA L. LEE, the PLAINTIFF(proceeding as PRO SE)

**DECLARATION IN OPPOSITION OF DELTA'S RULE 56 MOTION    page 28**

# Sky Club Ambassador - LAX



📍 **UNITED STATES, CALIFORNIA, LOS ANGELES**
🛄 **AIRPORT CUSTOMER SERVICE**
📅 **30-MAY-2025**
💼 **REF #: 28764**
💼 **LINKEDIN TAG: #LI-LR3**
💼 **STARTING PAY: $25.96 PER HOUR**

---

## HOW YOU'LL HELP US KEEP CLIMBING (OVERVIEW & KEY RESPONSIBILITIES)

**Internal Movement Eligibility:**
Internal Employees: Before applying for this position, please reference the company's Internal Mobility Policy and Residency Policy to ensure you meet all eligibility requirements. You must be in good standing, which includes meeting performance standards and tenure requirements in your current role. For more information, visit the HR portal or contact your manager or HR representative. Compliance with these policies is mandatory for consideration.

At Delta Air Lines, connection is at the heart of everything we do and guides our every action. We strive to welcome and care for all of our customers during their travels with us and aim to deliver an elevated experience.

Every role plays a crucial part in our mission to connect people to people, people to places, and people to potential.

Do you thrive as a host or hostess and have a passion for service?

As a Delta Sky Club Ambassador, you will interact with our members to ensure a positive experience through thoughtful, genuine, and memorable service. Responsibilities include:

- Providing a warm greeting to members by name and checking in using handhelds or self-check in kiosks.

PILOT CAREERS    Register    LOG IN

- Proactively taking appropriate service recovery measures.
- Taking ownership of the club environment throughout the day ensuring clean, well-organized guest experience.
- Have a servant leadership mind frame in the level of service.
- Resolving guest concerns and involving leadership when necessary.
- Optimally handling unruly passengers, working with Club Lead, Station Leadership, airport police and TSA when vital.

*Delta Air Lines will never ask candidates for money throughout our recruitment process, including for any pre-employment screenings. All email communications with Delta's recruitment team will come from a Delta email domain. If you have any questions about the legitimacy of an outreach from Delta's recruitment team, you can contact candidatecare@delta.com.*

## BENEFITS AND PERKS TO HELP YOU KEEP CLIMBING

Our culture is rooted in a shared dedication to living our values – Care, Integrity, Resilience and Servant Leadership – every day, in everything we do. At Delta, our people are our success. At the heart of what we offer is our focus on Sharing Success with Delta employees. Exploring a career at Delta gives you a chance to see the world while earning great compensation and benefits to help you keep climbing along the way:

- Competitive salary, industry-leading profit sharing program, and performance incentives.
- 401(k) with generous company contributions up to 9%.
- New hires are eligible for up to 2-weeks of vacation. This is earned for use in the following vacation year (April 1 – March 31).
- In addition to vacation, new hires are eligible for up to 56 hours of paid personal time within a 12-month period.
- 10 paid holidays per calendar year.
- Birthing parents are eligible for 12-weeks of paid maternity/parental leave.
- Non-birthing parents are eligible for 2-weeks of paid parental leave.
- Comprehensive health benefits including medical, dental, vision, short/long term disability and life insurance benefits.
- Family care assistance through fertility support, surrogacy and adoption assistance, lactation support, subsidized back-up care, and programs that help with loved ones in all stages.
- Holistic Wellbeing programs to support physical, emotional, social, and financial health, including access to an employee assistance program offering support for you and anyone in your household,

PILOT CAREERS   Register   LOG IN

members.
- Career development programs to achieve your long-term career goals.
- World-wide partnerships to engage in community service and innovative goals created to focus on sustainability and reducing our carbon footprint.
- Business Resource Groups created to connect employees with common interests to promote inclusion, provide perspective and help implement strategies.
- Recognition rewards and awards through the platform Unstoppable Together.
- Access to over 500 discounts, specialty savings and voluntary benefits through Deltaperks such as car and hotel rentals and auto, home, and pet insurance, legal services, and childcare.

## WHAT YOU NEED TO SUCCEED (MINIMUM QUALIFICATIONS)

- Consistently prioritizes safety and security of self, others, and personal data.
- Embrace diverse people, thinking, and styles.
- Possesses a high school diploma, GED, or high school equivalency.
- Is at least 18 years of age and has authorization to work in the United States.
- Minimum of 2 years customer-facing experience.
- Proficiency in English.
- Possess basic digital literacy.
- Flexibility to work morning to evening shifts, weekends, and holidays.
- Qualified applications with an arrest or conviction record(s) will be considered for employment in accordance with the Los Angeles County Fair Chance Ordinance for Employers and the California Fair Chance Act.
- Based on the position you are considered for, this may include a review for the following but not limited to criminal, employment, residential and motor vehicle record history, license or credential verification, drug testing, reference checks, or medical examinations and SIDA eligibility as defined in accordance with 49 CFR 1544.229.

## WHAT WILL GIVE YOU A COMPETITIVE EDGE (PREFERRED QUALIFICATIONS)

- Ticketing experience

< Go back

PILOT CAREERS   Register   LOG IN

APPLY NOW

Share:   

©2025 Delta Air Lines, Inc.

Tracking Preferences

Privacy

Delta Air Lines is an equal opportunity employer including disability/veteran.

Delta Air Lines, Inc. is an Equal Employment Opportunity / Affirmative Action employer and provides reasonable accommodation in its application and selection process for qualified individuals, including accommodations related to compliance with conditional job offer requirements. Supporting medical or religious documentation will be required where applicable. To request a reasonable accommodation, please click here

Delta is proud to offer comprehensive benefits packages to meet the needs and wellbeing of our employees and their families. To learn more about our benefits, pay philosophy and pay rates, please click here

1  AMY WINTERSHEIMER FINDLEY (BAR NO. 163074)
   PETER A. GRIFFIN (BAR NO. 306201)
2  ALLEN MATKINS LECK GAMBLE
     MALLORY & NATSIS LLP
3  501 West Broadway, 15th Floor
   San Diego, California 92101-3541
4  Phone: (619) 233-1155
   Fax: (619) 233-1158
5  E-Mail: awintersheimer@allenmatkins.com
           pgriffin@allenmatkins.com
6
   Attorneys for Defendant
7  DELTA AIR LINES, INC.

8                 UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10

11  CARROLL WATTS-LYNCH,                Case No. 2:15-cv-09476-MWF-RAO

12              Plaintiff,              **DECLARATION OF ANNELYSE
                                        GREENE SANDERS IN SUPPORT
13       v.                             OF DEFENDANT'S MOTION FOR
                                        SUMMARY JUDGMENT OR, IN
14  DELTA AIR LINES, INC.; and          THE ALTERNATIVE, PARTIAL
    DOES 1 through 100, Inclusive,      SUMMARY JUDGMENT**
15
                Defendants.            Date:  March 27, 2017
16                                     Time:  10:00 a.m.
                                       Ctrm:  5A
17                                            350 West First Street
                                       Judge: Hon. Michael W. Fitzgerald
18
                                       Complaint Filed: September 16, 2015
19                                     Trial Date:      May 30, 2017

20

21       I, Annelyse Greene Sanders, declare as follows:

22       1.    I am currently employed as the Program Manager – EO

23  Accommodations for Delta Air Lines, Inc. I began working with Delta's

24  Accommodation Program in 2008 and have been employed in the Equal

25  Opportunity department at Delta since May 21, 2012. The following facts are

26  within my own personal knowledge and, if called upon to do so, I could and would

27  competently testify thereto personally under oath.

28

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF DEFENDANT'S
MOTION FOR

2.    In July 2013, following receipt of a letter from her doctor (a true and correct copy of which is attached hereto as Exhibit B), I began to work with Carroll Watts-Lynch to identify possible accommodations that would allow her to return to work and to perform the essential functions of her position as a Customer Service Agent ("CSA") at LAX.  At the time, Watts-Lynch was on an approved medical leave of absence due to a heart attack suffered in April 2013, a leave scheduled to last until July 31, 2013.  The leave was approved as an accommodation, despite the fact that she did not have any available FMLA or CFRA leave and continued until she was able to return to active employment in February 2016.  Over the course of time that I worked with Watts-Lynch we had numerous phone calls, and exchanged numerous voice mail messages, email communications and written correspondence. At all times throughout the process, my primary goal was to work with Ms. Watts-Lynch to find a way to return her to being a productive employee, working in a safe environment and only doing work within her identified physical limitations.

3.    Specifically, in July 2013, Dr. Thomas Brodie, Ms. Watts-Lynch's cardiologist, provided Delta with work restrictions for Ms. Watts-Lynch which impacted her ability to perform the essential functions of the Customer Service Agent position.  Specifically, Dr. Brodie provided work restrictions that, among other things, prohibited Ms. Watts-Lynch from lifting over 35 pounds, only allowed her to lift between 25 and 34 pounds occasionally, and prevented her from ever carrying anything over 25 pounds.  A true and correct copy of the form provided by Dr. Brodie is attached hereto as Exhibit C.

4.    Following receipt of this information from Dr. Brodie, an interactive discussion was held between myself, Ms. Watts-Lynch, the Department Manager, Jeff Simonin, the Station Manager, Eon Rambharan, and the LAX Human Resources representative, Lola Ajayi, to find a potential accommodation. Unfortunately, based on all the information that was available, it was determined that no reasonable accommodations existed that would allow Ms. Watts-Lynch to

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD

-2-

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF DI_____
MOTION FOR_____

1  perform the essential functions of the CSA position.  One of the critical functions of

2  the position is the need to lift and carry passenger bags from the ticket counter to the

3  bag belts, which is explicitly set forth in the job description for the position, a true

4  and correct copy of which is attached hereto as Exhibit D.  As part of the interactive

5  process, it was discussed whether there was an opportunity for other Delta

6  employees or even for third party vendors, to assist Ms. Watts-Lynch with the lifting

7  requirements.  However, given the uncertain nature of the position (i.e., not knowing

8  when a bag will need to be lifted) and the importance of timely transference of the

9  bags, this was not a viable option.  Given the manner in which the operations are

10  run, bags need to be immediately transferred to the bag belts during the ticketing

11  process.  Co-workers cannot reasonably be expected to assist with the lifting

12  functions, as they have responsibilities of their own that need to be dealt with.

13  Although on occasion there are third party vendors that are able to assist with lifting

14  and carrying of bags, that is not their primary responsibility, which is to assist with

15  oversized baggage and which frequently takes them away from the ticket counter

16  area.  Additionally, although on occasion the CSA's work at locations other than

17  behind the counter, such as at kiosks and the Service Center, depending on the

18  operational needs of the station, the CSA's are routinely required to transition

19  between positions, i.e., moving from the kiosk to the ticket counter as needed based

20  on passenger flow.  I personally visited LAX to observe the job duties and

21  responsibilities of the CSA, which confirmed the information that had been

22  previously relayed to me by the local management team and confirmed for me that

23  the lifting requirements are truly an essential and critical function of the position.

24       5.    Although Ms. Watts-Lynch could not be returned to the CSA position

25  given her lifting restrictions, as a further and alternative accommodation, Ms. Watts-

26  Lynch was offered a continued leave of absence, as administered by Sedgwick, and

27  the opportunity to participate in Alternative Position Assistance ("APA"), a program

28  at Delta which assists employees in obtaining new positions within Delta that meet

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD                    -3-

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF DE
MOTION FOR

1  the individual employees' identified work restrictions.  Throughout Ms. Watts-
2  Lynch's entire leave of absence, she received company paid benefits, disability and
3  workers' compensation benefits and her seniority with Delta was unaffected by her
4  leave.  Ms. Watts-Lynch declined to participate in APA, and chose instead, to
5  simply continue her leave of absence.  Attached hereto as Exhibit E is a true and
6  correct copy of a letter that I sent to Ms. Watts-Lynch, summarizing our efforts to
7  find her an accommodation.
8         6.       During a discussion I had with Ms. Watts-Lynch in 2014, she
9  suggested that there were other positions in Airport Customer Service at LAX that
10 she could perform, specifically identifying an Administrative position and a Service
11 Recovery position.  However, there were no openings in those particular positions at
12 the time in question, which I confirmed with LAX management.  Although Delta
13 would certainly consider Ms. Watts-Lynch for such a position if one were open and
14 she were qualified, Delta does not require an employee currently working in a
15 position to be transferred out of the position in which they work, in order to place an
16 employee who needs an accommodation into the position.  As set forth in our Job
17 Accommodation Program Guidelines for Employees, in evaluating requests for
18 accommodations, Delta cannot compromise safety our operational standards, cannot
19 supersede seniority, cannot eliminate essential job functions and cannot create a new
20 position.  A true and correct copy of these Guidelines are attached hereto as Exhibit
21 F.
22        7.       Ms. Watts-Lynch disputed whether I was telling her the truth about the
23 availability of open positions in LAX, saying that she had seen openings for an
24 Administrative and a Service Recovery position on the company website.  I
25 requested that Ms. Watts-Lynch provide me any information that she might have,
26 such as a screen shot of the positions she was referring to or documentation of any
27 submitted bids, but she told me she was unable to do so and would have her
28 daughter do it.  I never received any additional information from Ms. Watts-Lynch

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD                                                  -4-

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF DE
MOTION FOR

1  to support her argument that there were currently open Administrative positions or

2  Service Recovery positions and I never subsequently learned of any such openings.

3      8.      In the spring of 2014, shortly after the determination was

4  communicated to Ms. Watts-Lynch that Delta could not accommodate the

5  permanent work restrictions that had been identified by Dr. Brodie, Ms. Watts-

6  Lynch submitted a note from a new doctor, Dr. Sean Leoni, who was a pain

7  management specialist, not a cardiologist.  The first note received from Dr. Leoni

8  had restrictions that conflicted with Dr. Brodie's restrictions.  Shortly thereafter, Dr.

9  Leoni provided a second note, releasing Ms. Watts-Lynch to return to work with no

10  medical restrictions of any kind.  This was a dramatic change from Dr. Brodie's

11  assessment that Ms. Watts-Lynch had a permanent lifting restriction and was very

12  troubling to me as I did not want Ms. Watts-Lynch to jeopardize her health.

13  Accordingly, I consulted with Sandy Taylor, an Air Crew Passenger Health Service

14  Nurse who in turn consulted with Tammy Jones, RN.  Ms. Jones' recommendation

15  was that given the nature of Ms. Watts-Lynch's medical restrictions, and the

16  conflicting reports, it would be most prudent to have an Independent Medical

17  Evaluation ("IME") conducted by a cardiologist, to determine her true limitations

18  and to ensure a safe return by Ms. Watts-Lynch, with a complete understanding of

19  her limitations.  The results of the IME which were received in July 2014, confirmed

20  the earlier identified restrictions from Dr. Brodie, i.e., that Ms. Watts-Lynch could

21  not lift anything over 35 pounds.

22      9.      Upon receipt of this information, I contacted Ms. Watts-Lynch to try to

23  coordinate a further interactive discussion with her leadership team.  Ms. Watts-

24  Lynch declined to participate in a follow-up call, instead requesting that I simply

25  communicate with her in writing, which I did.  In my letter, a true and correct copy

26  of which is attached hereto as Exhibit G, Ms. Watts-Lynch was again offered the

27  options to continue her leave (which she did), and to participate in the APA to locate

28  alternative positions for which she felt she was qualified on the internal Delta job

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF D[...]
MOTION FO[...]

-5-

1  website, called eBid. I encouraged Ms. Watts-Lynch to reach out to me if she

2  located a position on eBid in which she was interested, so that I could contact the

3  recruiter and attempt to assist in the placement process. This is something that I

4  routinely do as part of my job and as part of the accommodations process.

5      10.    As far as locating alternative positions at Delta, it was Ms. Watts-

6  Lynch's primary responsibility to review the available positions on eBid, for

7  positions in which she might be interested. This is standard practice for any

8  employee looking to move into a new position as an accommodation. Among other

9  things, it is impracticable for me to know what jobs an employee might be interested

10  in, or what areas of the country an employee might consider for relocation.

11  Additionally, the employee is in a better position to know if they could fulfill the

12  physical requirements for a position. However, I do review the openings on eBid to

13  determine whether anything might be available for an employee for whom I am

14  providing assistance in the accommodations process. In December 2014, I located

15  several positions for Customer Experience Specialists ("CES") that were open and

16  which had physical requirements within Ms. Watts-Lynch's limitations. Although

17  these positions were in Atlanta, Cincinnati and Salt Lake City, it is not at all unusual

18  for Delta employees to commute or to relocate to other areas of the country, so I

19  reached out to Ms. Watts-Lynch to determine if she would be interested in one of

20  these positions. There were no similar positions in the Los Angeles area or

21  anywhere else in Southern California. Although Ms. Watts-Lynch indicated that she

22  was appreciative of my efforts and wanted to "pray on" the opportunities, she

23  ultimately declined these positions because she did not wish to relocate. A true and

24  correct copy of my correspondence is attached hereto as Exhibit H.

25      11.    Delta did not terminate her for her refusal to accept one of these open

26  positions, instead continuing her leave of absence as administered by Sedgwick, and

27  continuing to look for available positions for her. In May 2015, I informed Ms.

28  Watts-Lynch of a cargo call center position that was available at LAX and

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD                                          -6-

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF D[...]
MOTION FO[...]

1   encouraged her to bid for the position. I never heard back from Ms. Watts-Lynch

2   and do not believe that she ever applied for this position. My understanding of the

3   position is that its lifting requirements were within Ms. Watts-Lynch's restrictions. I

4   also advised Ms. Watts-Lynch of various other CES positions around the country, to

5   which she responded that she was not interested in relocating.

6        12.    I subsequently followed up with Ms. Watts-Lynch again in September

7   2015, to tell her about a position on eBid in the San Francisco Cargo Call Center,

8   which I believed fit within her restrictions. Ms. Watts-Lynch again stated that she

9   did not want to move (even to San Francisco). I reminded her to continue to review

10  eBid for possible positions, which she admitted to me she had not been doing.

11       13.    In November 2015, I followed up again with Ms. Watts-Lynch about

12  the position in which she is currently employed in the Sky Club at LAX. Ms. Watts-

13  Lynch told me that she had a cold, but agreed to bid for it. I was quite surprised that

14  Ms. Watts-Lynch seemed reluctant to bid on the position, as it was a very desirable

15  position, within her restrictions, in LAX. I told Ms. Watts-Lynch to apply quickly,

16  as it was unclear how much longer the position would be posted.

17       14.    On December 23, 2015, Ms. Watts-Lynch interviewed for the position

18  after which I followed up with both Ms. Watts-Lynch and the individuals who had

19  interviewed her. Ultimately, Ms. Watts-Lynch was offered the job in early January

20  2016. However, I was quite surprised to learn that instead of immediately starting in

21  the new position, Ms. Watts-Lynch told local management that she had not been

22  released to return to work. That was contrary to all the information that I had from

23  her doctors that said she was released to return to work, with a 35 pound lifting

24  restriction. I had a phone conversation with Ms. Watts-Lynch at the end of January

25  2016 during which Ms. Watts-Lynch informed me that her doctor wanted to perform

26  a stress test before he would release her to return to work, after which her doctor

27  took her out of work, suggesting that she was "totally temporarily disabled". A true

28  and correct copy of her subsequent doctor's notes are attached hereto as Exhibit I.

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF DE...
MOTION FOR...

-7-

15.    Despite this confusion regarding Ms. Watts-Lynch's ability to return to work and her physical limitations, Ms. Watts-Lynch did ultimately accept the LAX Sky Club position, in which she has been working since February 2016. The Sky Club position was on the same pay scale as her previous CSA position, however, because Ms. Watts-Lynch had retained her seniority during her leave of absence, Ms. Watts-Lynch was earning a higher income based on salary increases that had been provided for the position during the time of her leave.

16.    I am African-American, as is Lola Ajayi. I did not treat Ms. Watts-Lynch differently because of her race and I have no reason to believe that anyone else treated Ms. Watts-Lynch differently because of her race.

I declare under penalty of perjury that the foregoing is true and correct. Executed on February 24, 2017, at Atlanta, Georgia.

_____
ANNELYSE GREENE SANDERS

LAW OFFICES
Allen Matkins Leck Gamble
Mallory & Natsis LLP

851641.01/SD

-8-

DECLARATION OF ANNELYSE GREENE
SANDERS IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY



**△ DELTA**

Annelyse Greene
EO Accommodations
Specialist

**Delta Air Lines, Inc.**
Department 955
P.O. Box 20530
Atlanta, GA 30320
T, +1 404 715 1163
Annelyse.Greene@delta.com

March 12, 2014

Carroll Watts-Lynch
REDACTED
Los Angeles, CA 90059

Dear Mrs. Carroll Watts-Lynch,

As you know, on July 29, 2013, Dr. Thomas S. Brodie, M.D. provided the following work restrictions, which may impact your ability to perform certain essential functions of your position as a Customer Service Agent in Department 125 in LAX:

- Lift up to 34 lbs. occasionally; up to 25 lbs. frequently; and 10 lbs. continuously
- Carry up to 25 lbs. occasionally and up to 10 lbs. continuously
- Push/pull up to 25 lbs. occasionally and 10 lbs. continuously
1. Frequent bend/stoop
- Occasional climb, crawl, kneel, squat

To determine your ability to perform your position as a Customer Service Agent in Department 125 in LAX consistent with your stated restrictions, an accommodation assessment and interactive discussion began on August 5, 2013 and included you; Jef Simonin, Department Manager; Eon Rambharan, Station Manager; Lola Ajayi, Human Resources Manager; and myself. In our discussion, you provided the following suggestions or recommendations as reasonable accommodation options that would allow you to perform all the essential functions of your position:

- Service Center which handles re-ticketing and seat changes
- IROP (Service Recovery) which re-accommodates passengers that have missed flights
- Administration/Moté Area
- Kiosk Assist

No other suggestions were offered by other meeting participants.

We have now completed a thorough review of your work restrictions and the essential job functions of the Customer Service Agent position in Department 125 at LAX. As a result of our review, no reasonable accommodation was identified that would allow you to perform all the essential functions of your particular position. As a reasonable accommodation, we offered that you continue working with Sedgwick for a leave of absence, as administered by Sedgwick.

As you know, accommodations may be an ongoing process, and this decision was based on documentation that you provided for your request and the circumstances that exist at this time. Should circumstances change (including your medical condition, operational requirements, or your assigned work area), of course we would be happy to reevaluate your request, and another interactive accommodation assessment may be required at that time. As always, should you have additional accommodation needs, please feel free to contact me.

Please remember that Delta considers the details of this accommodation process, including any corresponding medical information or documentation, as confidential information. We expect all individuals involved in this process, including you and others who need to know about the accommodation for implementation purposes, to treat it as confidential information.

As a further reasonable accommodation, we also offered and you declined participation in Delta's Alternative Position Assistance Program (APA) to assist you in securing an alternative position within

△ π EXHIBIT 4
Deponent C. Watts
Date 11/10/16 Rptr CC
WWW.DEPOBOOK.COM 2-895

Carroll Watts-Lynch - 000679

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 87 of 184
Case 2:15-cv-09476-MWF-RAO    Document 28-3    Filed 02/27/17    Page 20 of 28    Page ID
#:483

the Company for which you are qualified and can perform within your work restrictions. Such assistance can include résumé development, job skills assessment, job goal identification, job seeking skills, interview feedback, and other job search assistance. While we will make every reasonable effort to help you secure another position within the Company, participation in Job Search Assistance does not guarantee you placement in another job within Delta Air Lines.

You may access the internal job openings through eBid, which is located on the Employee Self-Service site on DeltaNet. Using your Delta Passport login information, you will be able to view and bid on job openings, as well as build and update your résumé and candidate profile. Please remember that it is your responsibility in this process to monitor Delta's eBid system for potential openings for which you believe you may be qualified. It is critically important to the success of your placement that you regularly monitor the positions that become available.

Once you identify a position in which you are interested and for which you are qualified, simply follow the instructions to bid for the position. After you bid, you must immediately inform me so I can contact the recruiter. If you do not contact me immediately after bidding, I will not be able to assist in the placement process. If you have any question about whether your medical restrictions are consistent with the requirements of a position, with or without reasonable accommodation, you should contact me.

For your reference, the following resources are available for information about current open positions at Delta Air Lines:

| Internal job postings, merit and non-contract positions | eBid on Employee Self-Service site on DeltaNet |
| Additional information resources: | |
| Short-Term and Long-Term Disability<br>Sedgwick | 1-877-67-DELTA |
| Retirement and Benefit options<br>Delta Employee Service Center | 1-800-MY DELTA |

For questions regarding bidding or access to eBid, you may contact your Human Resources professional or the Employee Service Center at 1-800-MY DELTA.

I can be reached directly at 404-715-1163 or via email at Annelyse.Greene@delta.com. I look forward to working with you.

Sincerely,

Annelyse Greene
EO Accommodations Specialist

cc;    Jeff Simonin, Department Manager
       Eon Rambharan, Station Manager
       Lola Ajayi, Human Resources Manager

Carroll Watts-Lynch - 000680

Scanned with
CamScanner

# ▲DELTA JOB ACCOMMODATION PROGRAM
## GUIDELINES FOR EMPLOYEES

## OVERVIEW

Delta does not discriminate against individuals with disabilities and will offer reasonable accommodation to qualified individuals with a medically supported need.

Generally, a reasonable accommodation is a change in the work environment or in the way work is customarily performed that will enable an employee with a medical impairment to perform essential job functions, participate in training, or engage in Company-sponsored activities or events. Reasonable accommodation may also be available to assist a job candidate to participate in the hiring process or to help an employee who is no longer able to perform his/her own job to identify and secure another vacant and available position within the Company for which the *employee is qualified and able to perform with his/her work restrictions, with or without a reasonable accommodation.*

Participation in this Program does not mean that Delta Air Lines considers an individual to be disabled. This Program is a workplace initiative available to all employees with verified medical impairments, regardless of disability.

**Job Accommodation** is available based on an employee's medically based work restrictions, as supported by current medical documentation, and the operation's ability to make reasonable changes to the employee's workplace or the way the work is performed. While each request is considered individually based on the specific circumstances, some examples of a reasonable job modification may include a workstation evaluation to determine whether adjustment to desk height is appropriate or a computer monitor needs to be adjusted. It may also mean that special equipment is warranted, such as an ergonomic chair or assistive software or removal of barriers.

While the Company will consider requests for specific accommodations, in some cases a different accommodation that is more efficient or cost effective or less disruptive to the operation may be selected, so long as it is effective and consistent with the individual's medical restrictions. While Delta will make reasonable efforts to accommodate an employee's medical restrictions, not all job accommodation requests can be fulfilled – Delta cannot compromise safety or operational standards, supersede seniority, or eliminate essential functions of a position. Likewise, Delta will not create a new position for an employee in the Job Accommodation Program.

All reasonable accommodations are made based on the information available and the circumstances in effect at the time. We recognize that in the fast-paced airline industry, flight schedules, staffing levels, and other factors are constantly changing. Likewise, we understand that individuals' medical conditions may change over time. An accommodation that at one time was effective and reasonable may not be in the future. As a result, no accommodation at Delta can be final or permanent. Any approved accommodation may need to be reevaluated as circumstances or medical restrictions change.

**Alternative Position Assistance** is available to employees with verified medical impairments that prevent them from returning to their previous positions with Delta. Alternative Position Assistance will help an employee who is no longer able to perform the essential functions of his/her job to identify and secure another position within Delta for which the employee is qualified and able to perform with his/her work restrictions. This assistance may include résumé assistance, job skills assessment, interview coaching, and other services, as appropriate. It is the responsibility of the participating employee to follow the appropriate steps to bid or apply for positions for which the employee believes he/she is qualified and to successfully complete any pre-screening and interviewing so his/ her qualifications may be assessed. The employee must remain in contact with the Accommodation Specialist and immediately update him or her on any position bid on so the Accommodation Specialist can assist in the process.

Alternative Position Assistance is available to help you identify appropriate positions and participate effectively in the selection process. Alternative positions that may be reasonable for an employee in the Program will depend on a number of factors including current job openings and the employees' work restrictions, willingness to relocate, and knowledge, skills, experience, and abilities.

## ACCOMMODATION PROCESS

### ❶ Request accommodation

Contact Delta's Accommodation Department directly at 404-715-9811 or call Delta's Leave and Disability vendor, Sedgwick CMS, at 1-877-67-DELTA, from which you will be prompted and transferred to the Accommodation Department. An Accommodation Request form and Medical Release form will be sent to you by mail or email.

D 482

Scanned with
CamScanner

❷ **Provide medical documentation**

You should complete and return both forms to Delta's Accommodation Department along with current and objective, medical documentation provided by your treating physician supporting the need for an accommodation.

You need provide only the medical documentation pertinent to the condition for which you are seeking accommodation and sufficient to support the medical need for the accommodation requested.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of employees or their family members. In order to comply with this law, Delta asks that you not provide any genetic information when responding to this request for medical information related to your request for a reasonable accommodation. "Genetic information", as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Any medical documentation you provide will be available only to Delta's Accommodation Department, or others with a business need to know, and will not be kept in your employee file. Operation leaders will be told of your work restrictions, but not your specific diagnosis, to help them understand your accommodation needs and make decisions about how they may be able to accommodate you.

❸ **Participate in Accommodation Discussions**

Once adequate and current medical documentation has been received, you will be scheduled for an accommodation assessment discussion, which may occur either in person or by conference call. The discussion will include you, your Accommodation Specialist, and, depending on the request, operational leaders and Human Resources professionals. Because Delta values direct communications with its employees, third parties (including family members, friends, attorneys, religious leaders, or others) are not allowed to participate in accommodation meetings or phone calls, except in rare circumstances such as when the employee is physically or mentally unable to represent himself. In such cases, arrangement must be made in advance with the Accommodation Department. These discussions may not be recorded by or on behalf of any participant.

The purpose of the accommodation assessment discussion is to explore possible means of accommodation in light of your work restrictions. This is your opportunity to explain your restrictions and abilities and suggest your accommodation ideas, as well as

to consider accommodation suggestions that may be offered by other meeting participants.

After the initial accommodation assessment meeting, operation leaders, Human Resources, and the Accommodation Specialist will review accommodation suggestions and a second meeting will be held during which your leaders will inform you how they are able to accommodate your medical restrictions.

*If a reasonable accommodation is identified* that will allow you to continue to work in your current position, your leaders and Accommodation Specialist will coordinate with you to implement the agreed upon accommodation.

*If no reasonable accommodation is identified* that would allow you to perform the essential functions of your position, you may be offered leave of absence and the opportunity to participate in Alternative Position Assistance.

## EMPLOYEE RESPONSIBILITIES

✓ Provide adequate and current medical documentation of your need for accommodation.
✓ Actively participate in the accommodation process.
✓ Attend accommodation assessment meetings.
✓ Immediately notify your Accommodation Specialist and provide objective medical documentation if your medical condition or restrictions change.

*If you are participating in Alternative Position Assistance . . .*

✓ Regularly review available positions on ebid.
✓ Maintain contact with your Accommodation Specialist and provide timely notification of any position for which you have applied.

## DURATION

- *Active employees* may participate in the Job Accommodation Program until they receive an effective job accommodation or obtain an alternative position for which they are qualified and can perform consistent with their restrictions.

- *Inactive employees* may participate in the Job Accommodation Program while on an approved leave of absence.

- *All employees* are expected to actively participate in the process. Should you discontinue your active participation in the process, your accommodation request will lapse. However, you can contact Delta's Accommodation Department to resume active participation at any time so long as you remain an active employee or on an approved leave.

D 483
Scanned with
CamScanner

△ D E L T A

Annelyse Greene
EO Accommodations
Specialist

Delta Air Lines, Inc.
Department 955
P.O. Box 20530
Atlanta, GA 30320
T. +1 404 715 1163
Annelyse.Greene@delta.com

August 13, 2014

Carroll Watts-Lynch
REDACTED
Los Angeles, CA 90059

Dear Mrs. Carroll Watts-Lynch;

Thank you for contacting us to re-evaluate your accommodation needs. As you know, an accommodation assessment and interactive discussion concluded on March 12, 2014 based on your accommodation request and supporting medical documentation you provided from your treating Cardiologist, at that time, Dr. Thomas S. Brodie, M.D. Dr. Brodie provided the following work restrictions:

- Lift up to 34 lbs. occasionally; up to 25 lbs. frequently; and 10 lbs. continuously
- Carry up to 25 lbs. occasionally and up to 10 lbs. continuously
- Push/pull up to 25 lbs. occasionally and 10 lbs. continuously
- Frequent bend/stoop
- Occasional climb, crawl, kneel, squat

After a thorough review of your work restrictions and the essential job functions of the Customer Service Agent (CSA) position in Department 125 at LAX, it was determined that there was no reasonable accommodation that would allow you to perform all the essential functions of your particular position. As a reasonable accommodation, we offered you continued leave of absence, as administered by Sedgwick, and Alternative Position Assistance (APA) for which you declined participation.

On April 22, 2014 you provided a release from Dr. Sean Leoni, M.D., effective May 1, 2014. Given the fact this release conflicted with the restrictions provided just two months earlier by Dr. Brodie, we sought clarification from Dr. Leoni on April 24, 2014. We received a response from Dr. Leoni on April 28, 2014, in which he recommended that you return to work with a lifting greater than 25 lbs. restriction. Subsequently, Dr. Leoni provided an updated work release on May 7, 2014, releasing you to return to work with no restrictions as of May 19, 2014.

Due to the conflicting information received from Dr. Leoni as it relates to your return to work restrictions, we coordinated an Independent Medical Evaluation with a Cardiologist, Dr. Richard M. Hyman, M.D., to assure your safe return to work. Results of the Independent Medical Evaluation were received on July 25, 2014 and revealed that you are restricted from lifting greater than 35 lbs. as a result of your medical condition.

To re-evaluate accommodation options that may be available to you as result of your work restriction identified in the IME results, I contacted you on July 28, 2014 to coordinate an interactive discussion with you and your department leaders. However, you declined to attend and requested that I send you the accommodation decision via mailed correspondence. Therefore, an interactive discussion was held on July 31, 2014. In attendance were Eon Rhambaran and Jeff Simonin, Department Managers; and myself.

After a thorough review of your work restrictions and the essential functions of the CSA position in Department 125 at LAX, it was determined that there is no reasonable accommodation that would allow you to perform all the essential functions of your particular position. Specifically, we discussed the role of the contracted vendors which is to assist with Baggage Hygiene and overweight baggage. These contractors were not hired to nor are they able to provide agents with assistance in handling



Carroll Watts-Lynch - 000662

Scanned with
CamScanner

luggage during the normal course of their duties at the ticket counter. Thus, you would be expected to perform the essential job function of regularly lifting baggage weighing greater than 35 lbs.

As a reasonable accommodation, you may continue on a leave of absence, as administered by Sedgwick. Additionally, we would again like to extend the opportunity for you to participate in the Alternative Position Assistance Program to assist you in securing an alternative position within the Company for which you are qualified and can perform within your work restrictions. Such assistance can include résumé development, job skills assessment, job goal identification, job seeking skills, interview feedback, and other job search assistance. While we will make every reasonable effort to help you secure another position within the Company, participation in Job Search Assistance does not guarantee you placement in another job within Delta Air Lines.

You may access internal job openings through eBid, which is located on the Employee Self- Service site on DeltaNet. Using your Delta Passport login information, you will be able to view and bid on job openings, as well as build and update your résumé and candidate profile. Please remember that it is your responsibility in this process to monitor Delta's eBid system for potential openings for which you believe you may be qualified. It is critically important to the success of your placement that you regularly monitor the positions that become available.

Once you identify a position in which you are interested and for which you are qualified, simply follow the instructions to bid for the position. After you bid, you must immediately inform me so I can contact the recruiter. If you do not contact me immediately after bidding, I will not be able to assist in the placement process. If you have any question about whether your medical restrictions are consistent with the requirements of a position, with or without reasonable accommodation, you should contact me.

For your reference, the following resources are available for information about current open positions at Delta Air Lines:

| | |
|---|---|
| **Internal job postings**, merit and non-contract positions | eBid on Employee Self-Service site on DeltaNet |
| Additional information resources: | |
| **Short-Term and Long-Term Disability** Sedgwick | 1-877-67-DELTA |
| **Retirement and Benefit options** Delta Employee Service Center | 1-800-MY DELTA |

For questions regarding bidding or access to eBid, you may contact your Human Resources professional or the Employee Service Center at 1-800-MY DELTA.

If you are interested in seeking an alternative position with Delta, please contact me to begin this process. I can be reached directly at 404-715-1163 or via email at Annelyse.Greene@delta.com.

Please remember that Delta considers the details of this accommodation process, including any corresponding medical information or documentation, as confidential information. We expect all individuals involved in this process, including you and others who need to know about the accommodation for implementation purposes, to treat it as confidential information.

Sincerely,

Annelyse Greene
EO Accommodations Specialist

cc:    Jeff Simonin, Department Manager
        Eon Rambharan, Station Manager
        Lola Ajayi, Human Resources Manager

Carroll Watts-Lynch - 000653

**△DELTA** ⟲

Annelyse Greene          Delta Air Lines, Inc.
EO Accommodations        Department 955·
Specialist               P.O. Box 20530
                         Atlanta, GA 30320
                         T. 404 715 1163
                         F. 404 677 3901
                         Dana.Harper@delta.com

December 17, 2014

Carroll Watts-Lynch
REDACTED
Los Angeles, CA 90059

Dear Carroll Watts-Lynch,

Thank you for speaking with me on December 15, 2014 about our open positions as Customer Experience Specialists in our Reservations department in Atlanta, Cincinnati, and Salt Lake City.

As you know, on July 25, 2014 we received results of an Independent Medical Evaluation to evaluate accommodation for your job as a Customer Service Agent in department 126 in LAX. The following restrictions were provided:

• No lifting > 35 lbs.

On July 31, 2014, it was determined that no reasonable accommodation was available that would allow you to perform all the essential functions of your job and, as an alternative accommodation, you were offered and accepted leave and Alternative Position Assistance (APA) to assist you in finding another position within the company for which you were minimally qualified and is within your restrictions.

On December 15, 2014 I told you that we are now filling a January class for Customer Experience Specialists in our Atlanta, Cincinnati, and Salt Lake City Customer Engagement Centers that are within your restrictions. As you know, we discussed your interest in and reviewed your qualifications for the job. Because you met the minimum qualifications for the job, I was pleased to be able to offer you a position. At the time, you told me you weren't sure you were interested in accepting the position. Before you make a decision, please log on to eBid and view the Behind the Scenes and Is This Job For You? videos to help you learn more about the job.

If you decide to decline, you may continue your participation in APA provided you have not exceeded 24 months of APA participation and your leave of absence will continue to be administered by Sedgwick. As a general rule, if you have not secured a position by the end of your approved leave of absence, your Delta employment will end once the approved leave of absence is exhausted.

If you have any questions about the Customer Experience Specialist position, please contact Leah Gajria at 612-807-0845 or Leah.Gajria@Delta.com. Because our needs to fill this class are time-sensitive, please let me know your decision no later than December 22, 2014. If I do not hear from you by that date, I will conclude that your final decision is to decline the position offered



△π EXHIBIT 12
Deponent C.Watts
Date 11/10/16 Rptr CC
www.depoxnook.com

Carroll Watts-Lynch - 000650

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 93 of 184
Case 2:15-cv-09476-MWF-RAO   Document 28-3   Filed 02/27/17   Page 26 of 28   Page ID
#:489

Carroll Watts-Lynch
December 17, 2014
Page 2 of 2

Please feel free to contact me if you have any further questions.

Kind Regards,

Annelyse Greene
Accommodation Specialist

cc:  Leah Gajria, Human Resources Manager

Carroll Watts-Lynch - 000651

Scanned with
CamScanner

1

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

JOSEPH LEWIS,

     Plaintiff,

         vs.

DELTA AIR LINES, INC.,

     Defendant.

)
)
)
)
)
)
)
)
)
)

Case No.
2:14-cv-01683
RFB-GWF

DEPOSITION OF LISA TODD

Taken at the Law Offices of:

Fisher & Phillips, LLP

3800 Howard Hughes Parkway, Suite 950

Las Vegas, Nevada  89169

Thursday, June 4, 2015

10:29 a.m.

Reported By: Gale Salerno, RMR, CCR No. 542

Scanned with CamScanner

114

1                    to 2:02 p.m.)

2  BY MR. STONE:

3      Q.    Have you had a chance to look at the

4  document, Lisa?

5      A.    Yeah.  I've glanced at it.

6      Q.    This was produced by Delta, I think from a

7  subpoena to Sedgwick, Bates D-1364 to D13 -- it looks

8  like 24 is the last page.

9          MR. MAHONEY:  There's several different

10 Bates numbers that aren't sequential.

11 BY MR. STONE:

12     Q.    And this is Plaintiff's Exhibit 33.

13         Have you seen this before?

14     A.    No.

15     Q.    So please explain to me how Sedgwick was

16 hired in this instance, particularly since I think

17 you were involved with them somehow when you were at

18 GE, and explain what they were supposed to do in

19 Mr. Lewis' case and what the purpose of this report

20 is.

21     A.    I don't know what the purpose of the report

22 is, so I'll answer that question.

23         But it's Sedgwick's role when an employee

24 makes a request for leave, regardless of the type of

25 leave, whether it's medical, whether it's military,

Scanned with CamScanner

115

1  whether it's personal, they evaluate the request for

2  the leave.  Determine if there's a legitimate reason

3  for the leave.  Obtain the next documentation

4  regardless of the type of leave, and then authorize

5  the leave and provide communication to the employee

6  and to the leader what the leave guidelines are.

7      Q.   Or they say no, right?

8      A.   Or they deny it, yes, based on many things.

9      Q.   Sure.  Okay.

10          So who gets to see the report?  Does

11  Kirk Kozy get to see the report?

12      A.   This report?

13      Q.   This report.

14      A.   Never.

15      Q.   Who gets to see the report?

16      A.   This type of documentation.  No one at

17  Delta.

18      Q.   Who is the person referred to, you'll see

19  in this report, identified as the DCC?

20      A.   I don't know.

21      Q.   It would appear to be someone at Delta.

22          MR. MAHONEY:  Objection.

23  BY MR. STONE:

24      Q.   That's why I was asking you to advise if it

25  was or if it wasn't.

Scanned with CamScanner

129

1  note for heat exhaustion, but really isn't the issue.

2  Urged to call Sedgwick to determine if need for

3  continuation of leave is appropriate.  Gave number to

4  Sedgwick.

5      Q.   What are the three notes down at the bottom

6  right?

7      A.   It says continuation of leave is

8  appropriate.  It says urged to call Sedgwick to

9  determine if need for continuation of leave is

10  appropriate.

11      Q.   And did you write that it would be

12  appropriate?  Is that the conclusion you came to?

13      A.   No.  I suggested to him that he call

14  Sedgwick to determine if continuation of the leave is

15  appropriate.

16      Q.   In this phone call Mr. Lewis told you he

17  had HIV, correct?

18      A.   He did.

19      Q.   What did you do after this phone call,

20  having been informed that he was disabled?

21      A.   What specifically are you asking me?

22      Q.   What did you do after he told you he was

23  disabled?  He had HIV.  That's a disability under the

24  Federal statute.  You were an ADA advisor.  What did

25  you do after you were told Mr. Lewis had HIV?

Scanned with CamScanner

133

1  BY MR. STONE:

2      Q.   Why didn't you start the interactive

3  process with Mr. Lewis or refer him to EO to start

4  the interactive process once he told you he was

5  disabled?  That was new news, wasn't it?

6      A.   What he told me was he needed a

7  continuation of his leave, and that he had absences

8  connected to his leave.  I referred him to Sedgwick,

9  which is an opportunity for him to pursue a leave,

10  which can be a reasonable accommodation, Mr. --

11      Q.   Did he tell you he wasn't getting his

12  medicine and he was getting sick?

13      A.   He did.  And then he also told me that was

14  resolved.

15      Q.   It was resolved the day I think he called

16  you.  But did he tell you he missed work because he

17  didn't have his medication and he got sick again?

18      A.   He did.  He suggested there were two days.

19      Q.   And he told you he had HIV, correct?

20      A.   That's correct.

21      Q.   And you didn't start the interactive

22  process or call Joanne Guerrant, and I'm trying to

23  find out why?

24      A.   I referred him to Sedgwick so he could

25  continue his leave.  That's a reasonable

Scanned with CamScanner

134

1  accommodation.

2      Q.   I didn't ask you if you offered him a

3  reasonable accommodation.  You're not listening to

4  the question.

5          MR. MAHONEY:  She's listening to your

6  questions.  She's satisfactorily answering your

7  questions.  You're rudely berating the witness.

8  BY MR. STONE:

9      Q.   Why didn't you call Joanne Guerrant, or

10 start yourself the so-called interactive process with

11 Mr. Lewis, instead of telling him, oh, get some more

12 time off from Sedgwick?

13     A.   He did not ask for an accommodation.  He

14 asked about the sick time, and I referred him to the

15 resource that he needed.  I did not have a reason to

16 refer him for an accommodation.

17     Q.   I didn't ask you if you had a reason to

18 refer him for an accommodation.

19     A.   You just asked me why I didn't refer him

20 for the interactive process.

21     Q.   For the interactive process, not an

22 accommodation.

23     A.   That's -- the interactive process is --

24 that's how we evaluate an accommodation request.

25     Q.   Didn't Joe call you back on 21st to tell

Scanned with CamScanner

202

1      A.    Because we weren't intending to hold him

2 accountable for the absences.

3      Q.    That's not what Kozy said yesterday.   In

4 all his e-mails he said he wanted to fire Joe for his

5 absences.

6      A.    Again, on the 14th we established we were

7 looking at those absences as potentially being

8 covered under the leave.   We had made a deliberate

9 decision that those absences were not something we

10 were going to hold him accountable or terminate him

11 for.   We were concerned about his honesty.

12     Q.    But how could you be concerned about his

13 honesty when he went out of his way to tell everybody

14 he didn't want to be paid for those days, and

15 somebody else filled in the timesheets?   How was he

16 dishonest?

17          MR. MAHONEY:   Objection.   That's been asked

18 multiple times.

19          Go ahead.

20          THE WITNESS:   He was dishonest when he

21 provided us information about his arrival time that

22 was not consistent with the actual arrival time.

23          So his badge records on the 10th, he told

24 us he had arrived at 2:07.   The swipe records showed

25 it was a considerably later time.

224

1  to make sure Joe wasn't being treated differently,

2  how did you get comfortable that Joe wasn't being

3  treated differently?

4      A.    Based on the information that the leader

5  provided me.

6      Q.    So you relied on Kirk Kozy for everything?

7      A.    Correct.

8      Q.    You never did any investigative work of

9  your own?

10          MR. MAHONEY:  Objection.  Vague.

11          THE WITNESS:  I had a conversation with

12  Joe Lewis.  I asked him for specific information both

13  on the 23rd and the 29th.  That's an investigation.

14  BY MR. STONE:

15      Q.    Okay.

16      A.    Two separate investigations, in fact.

17      Q.    Is it your testimony today under oath that

18  you and Joanne, or you and anybody else, never talked

19  about how to fire Mr. Lewis without triggering the

20  ADA?

21      A.    No.

22      Q.    So then who did you talk to about that?

23      A.    How to fire him?

24      Q.    Without triggering the Americans with

25  Disabilities Act?

Scanned with CamScanner

225

1        A.    I did not have that conversation.   We had a

2   conversation about the reason to terminate, and the

3   reason to terminate was because of his conduct during

4   the investigation.

5        Q.    Why wasn't the reason to terminate what

6   Mr. Kozy said yesterday, he was terminated for his

7   absences?

8        A.    I can't speak to Mr. Kozy's statements.

9   But what I can tell you is we gave him the benefit of

10  the doubt regarding his absences, assuming they would

11  have been covered under his leave.

12       Q.    Okay.   I want you to --

13       A.    We did not hold him accountable.

14       Q.    I want you to look at Exhibit 12 again just

15  real quickly.   It's your handwritten notes dated

16  August 20, 2012.   And there's nothing else on the

17  page.

18       A.    Okay.

19       Q.    Lisa, Kirk Kozy called you on the 20th.   In

20  your fourth or fifth line doesn't it say that he

21  wanted to hold Lewis accountable for the most recent

22  absences?

23       A.    That's correct.

24       Q.    Thank you.

25             Isn't it the case that Mr. Lewis filed for

Scanned with CamScanner

235

## CERTIFICATE OF REPORTER

1

2      I, the undersigned, a Certified Shorthand

3  Reporter of the State of Nevada, do hereby certify:

4      That the foregoing proceedings were taken

5  before me at the time and place herein set forth;

6  that any witnesses in the foregoing proceedings,

7  prior to testifying, were duly sworn; that a record

8  of the proceedings was made by me using machine

9  shorthand which was thereafter transcribed under my

10  direction; that the foregoing transcript is a true

11  record of the testimony given to the best of my

12  ability.

13      Further, that before completion of the

14  proceedings, review of the transcript [ ✓ ] was

15  [  ] was not requested pursuant to NRCP 30(e).

16      I further certify I am neither financially

17  interested in the action, nor a relative or employee

18  of any attorney or party to this action.

19      IN WITNESS WHEREOF, I have this date

20  subscribed my name.

21

22  Dated: _____6-13-15_____

23

24                         _____
                           GALE SALERNO, RMR, CCR #542
25

Scanned with CamScanner

MINUTES

WORKERS' COMPENSATION BOARD

STATE OF NEW YORK

Hearing Point:  New York, New York

Date of Hearing:  April 3, 2019

AASIR AZZARMI                    Claimant

DELTA AIRLINES INC               DC Case No. 

# Exhibit 4

HEARING BEFORE THE WORKERS' COMPENSATION BOARD

PRESENT:  MELISSA RICHBURG, WCL JUDGE

Marcy Lyons Manna
Verbatim Reporter

APPEARANCES:

Claimant present pro se
D. Secemski, Esq. for the employer

| WITNESSES | PAGE |
|---|---|
| Elaine Little via telephone | 3 |
| Erika Lee via telephone | 52 |
| Reid Campbell via telephone | 83 |

Scanned with CamScanner

Elaine Little

A     What do you mean?

Q     Did you speak to one of your managers about Aasir's leave in July 2017 when the absences were recoded?

A     So if it was recoded, an occurrence is recoded, I usually connect with the flight attendant so they can follow up with Sedgwick to get it recoded. Maybe Sedgwick needed additional paperwork. That's why I always direct the flight attendant back to Sedgwick.

Q     Since you knew Aasir was out on leave in July 2017, why was his leave not approved until almost a month later, until August 16, 2017?

A     I don't know. That's why I told Aasir to follow up with Sedgwick.

Q     Okay. So in -- okay. In August 2017 Edwin's called Aasir and asked Aasir where he was, what he was doing, why he wasn't showing up for his rotations. So and then Edwin said on the record that -- that he E-mailed Pamela Alston and got Aasir's leave approved. Why couldn't you have done that?

A     I don't recall why.

Q     When you were an FSM, could you have done that if you wanted to?

A     It depends on the situation. That's why I told Aasir to follow up with Sedgwick.

Elaine Little

they need to follow up with Sedgwick, if I speak to

Pamela or she sends me an E-mail they had to follow up

with Sedgwick, I call the flight attendant and tell

them to follow up with Sedgwick.

Q    When somebody's out on leave for a workplace injury,

does a flight attendant have to wait a few weeks?

A    I'm not sure.

Q    When they submit paperwork, how do you know that they

contacted Sedgwick?

A    If the occurrence is approved, our system is

updated, DBMS, which is updated by admin services.

Q    If Sedgwick approves a leave, that would be

Pamela Alston, she would have updated Aasir's leave in

DBMS; is that correct?

A    That's correct.

Q    And then you would see it on -- you would pull up DBMS

and see, okay, Aasir's leave is approved?

A    Correct.

Q    All right. Now, as an FSM, did you ever -- what

happens if an employee is absent often or is on leave?

Do you get reprimanded for their reliability?

A    No.

Q    Are you evaluated on how you manage your flight

attendants?

Reid Campbell

you don't get anything for seven days.

Q    After seven days you got paid; is that correct?

A    Yes.  I got OJI pay from on-the-job-injury insurance.

Q    Now, when you got injured, when did you -- from the time you got injured, the day you got injured, you said you had called Sedgwick the same day.  How long after that did you know you were officially approved for Workers' Compensation leave?

A    Oh, God.  I wish that somebody had gotten in touch with me first.  I have files but they're not handy.

Q    Do you think it was a few weeks before you were officially approved?

A    No.  I don't think it took that long.

Q    Okay.  So maybe less than two weeks?

A    Yes.

Q    Okay.  And how did you know you were approved - by letter? phone call?  How?

A    Phone call.

Q    From Sedgwick?

A    And they were sending a letter at the same time.

Q    From Sedgwick or your manager?

A    Sedgwick.

A. Azzarmi        April 3, 2019                    89



C E R T I F I C A T I O N

Date:  April 17, 2019


    Certified to be a true and accurate transcript of the
above proceedings.



                    /s/ *Marcy Lyons Manna*
                        Marcy Lyons Manna
                        Verbatim Reporter

A. Azzarmi      April 3, 2019                    108



MINUTES

WORKERS' COMPENSATION BOARD

STATE OF NEW YORK

Hearing Point:  New York, New York

Date of Hearing:  October 3, 2018

AASIR AZZARMI                    Claimant

DELTA AIRLINES                   DC Case No. 

# Exhibit 5

HEARING BEFORE THE WORKERS' COMPENSATION BOARD

PRESENT:  MELISSA RICHBURG, WCL JUDGE

                                Marcy Lyons Manna
                                Verbatim Reporter

APPEARANCES:

Claimant present pro se
D. Secemski, Esq. for the claimant

WITNESSES                                    PAGE
The Claimant                                   2
William Ittounas                              21

Scanned with
CamScanner

William Ittounas

W I L L I A M   I T T O U N A S, being duly sworn, testified as follows:

THE JUDGE:    You can put your hand down. Please state your name and business address for the record.

THE WITNESS:    William Ittounas.  My business address is JFK International Airport, Terminal 4, Jamaica, New York 11430.

THE JUDGE:    Okay.  Mr. Secemski.

EXAMINATION BY MR. SECEMSKI:

Q    What is your job at Delta?

A    HR manager.

Q    How long have you been in that position?

A    I have been in this position since 2013 in my current role and overall 18 years as an HR manager.

Q    Okay.  Are you familiar with Mr. Azzarmi who is sitting on the other side of the table?

A    Yes.

Q    Was there a time Mr. Azzarmi was employed by Delta?

A    Yes.

Q    What was his position?

A    Flight attendant.

Q    If you know, when was Mr. Azzarmi terminated from employment with Delta?

A. Azzarmi        October 3, 2018                    21



William Ittounas

not a violation of company policy to be absent when on

an approved Workers' Compensation claim?

A    Right.

Q    Correct.  Okay.  So it is established that

Nicholas/Aasir went out on a Workers' Compensation

claim on March 13, 2017.  He was out since then.  He

never came back one day.

MR. SECEMSKI:     This is testimony.

Q    Is it correct that Nicholas/Aasir never came back to

work at Delta since March 13, 2017 when he first went

out on a workplace injury?

A    I don't know the dates that you were absent; that

would be a question for Elaine.

THE JUDGE:     I need you to finish up in case

there's redirect.

THE CLAIMANT:     All right.

Q    Do you know what a reasonable accommodation is?

A    Yes.

Q    What is that?

A    That's a program that Delta has for all

employees.  When Delta is made aware that an

individual employee cannot perform the essential

functions of their job, there's a very formal process

that is administered centrally in Atlanta to determine

A. Azzarmi     October 3, 2018                    78

William Ittounas

what that accommodation looks like for each individual
that applied.

Q    Are you aware that it is also a city, state, and
federal law?

A    Yes.

MR. SECEMSKI:    I'm going to object.
Reasonable accommodations have no relevance to whether
there was a violation of Section 120 of the
Workers' Compensation Law; that's the reason we're
here.

THE JUDGE:    Yes, we're here for Section 120.

MR. SECEMSKI:    While we certainly maintain
there was no violation of any state or city or federal
statute by Delta, that's not relevant to this
proceeding.  This proceeding is about whether there
was discrimination and retaliation for having filed a
Workers' Compensation claim; reasonable accommodation
doesn't factor in to that at all.

THE JUDGE:    Okay.  I'll let him continue
along this line for a little bit.

THE CLAIMANT:    All right.  So thank you,
your Honor.

EXAMINATION BY THE CLAIMANT:    (Continued)

Q    Mr. Pimentel E-mailed Allison Ausband, A-U-S-B-A-N-D.

A. Azzarmi        October 3, 2018              79

William Ittounas

      eligible for a new period of disability.  This comes

from Atlanta headquarters, human resources.

          MR. SECEMSKI:    I see it.

          THE CLAIMANT:    She's an HR claims manager in

charge of Workers' Compensation claims.

          MR. SECEMSKI:    That's not what it says.

          THE CLAIMANT:    She's a claims-management --

          MR. SECEMSKI:    I'm looking at the document

that Mr. Azzarmi is referring to.

          THE CLAIMANT:    Let me know when I can ask a

question.

          MR. SECEMSKI:    Go ahead.

EXAMINATION BY THE CLAIMANT:  (Continued)

Q    Mr. Ittounas, did you ever receive this E-mail

    (Handing)?

          THE JUDGE:    What's the date of the E-mail?

          THE CLAIMANT:    February 8, 2018.

A    I would have received that, sure.

Q    I guess we're curious.  What is the policy, what is

    this HR claims-management manager speaking about that

    I would have had to have come back for a day in

    July 2017 in order for my disability leave to be

    extended?  Do you know what that's referring to?

A    I don't.  Again, I can surmise.  But that you

A. Azzarmi    October 3, 2018    85

William Ittounas

        procedure if an employee, if they were out more than

        12 months on a Workers' Compensation claim?

        A    I'm not aware of that.

Q    You never terminated --

        A    I'm not aware.

Q    Okay.  Do you even have maybe a slight clue what she's

        referring to?  What is this policy she's referring to?

        A    It's a reference to disability.  But as I said,

        I'm surmising it, what it's referencing based on that.

Q    Does this make any sense to you in any -- you're an HR

        manager for 18 years.  This doesn't make, doesn't

        refer to anything that you learned or work you

        performed in the past?

        A    It doesn't.

Q    Okay.  Okay.  So I guess the question, next question,

        is you said Delta has a reasonable-accommodation

        program.  Who do they provide reasonable

        accommodations to?

                MR. SECEMSKI:    Objection.  Not relevant.

                THE JUDGE:    He can answer.

        A    Reasonable accommodations are available to all

        employees.

Q    They have to ask for it?

        A    Yes.

                    A. Azzarmi      October 3, 2018                87



William Ittounas

Q    What happens if they ask?

A    The employee would be contacted by the
accommodations program in Atlanta; it's not handled
locally.

Q    What -- why is it you never addressed Aasir/Nicholas
to this program?

A    I don't believe I was informed that you were
requesting accommodation.

Q    You were copied on the E-mail; you just said you would
have received that.

        MR. SECEMSKI:    Objection.    There's nothing
in the E-mail that talks about reasonable
accommodation.

        THE CLAIMANT:    Can I -- it sure does.    The
subject line, reasonable accommodation, February 8.
That's the question I sent.    It's the subject line.    I
said, hello disability concierge.    I sent it to the
disability concierge, and I contacted Allison Ausband.
I went to the -- my doctor this week.    He advised me I
should be able to return to work full-duty, no
restrictions in or around May of 2018.    I previously
informed HR that it might have been
March or April 2018.    That is not possible.    I still
can't walk without crutches.

                A. Azzarmi    October 3, 2018              88

William Ittounas

MR. SECEMSKI:    Judge, I note the document speaks for itself; I don't think we need to read it into the record.

THE JUDGE:    That's fine.

Q    Are you saying that -- you see where reasonable accommodation is?

MR. SECEMSKI:    I see -- is that down below whether that was included in the E-mail to Ittounas?

THE CLAIMANT:    He said he received the E-mail; is that correct?

MR. SECEMSKI:    I don't know what he received.  The E-mail to Mr. Ittounas says, Hi, Latidia, Bill Ittounas is handling the Azzarmi case, I added him to the E-mail.

THE CLAIMANT:    So Bill Ittounas said on the record that he would have received this E-mail, so Bill received this E-mail forwarded to him.  The subject line is reasonable accommodation.

EXAMINATION BY THE CLAIMANT:    (Continued)

Q    My question to you, Bill, is who -- since you have a program at Delta, if somebody asks for reasonable accommodation -- you said all employees can be given reasonable accommodation.  If an employee at the New York base where you're the human resources, who

A. Azzarmi       October 3, 2018                89



C E R T I F I C A T I O N

Date:  October 5, 2018


Certified to be a true and accurate transcript of the
above proceedings.



/s/ Marcy Lyons Manna
                Marcy Lyons Manna
                Verbatim Reporter


A. Azzarmi       October 3, 2018                    108



1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

JOSEPH LEWIS,                    )
                                 )
        Plaintiff,               )
                                 )
vs.                              )CIVIL ACTION FILE
                                 )NO. 2:14-CV-01683
DELTA AIR LINES,                 )
                                 )
        Defendant.               )
_____)

- - -

DEPOSITION OF JOANNE GUERRANT

Atlanta, Georgia

November 18, 2015

Reported by:

CARLA J. HOPSON, RPR

# Exhibit 6

# Exhibit 6

Joanne Guerrant                                          11/18/2015

54

```
 1              GUERRANT

 2      Q     (By Mr. Stone) Okay.  So if an HR person

 3   learns -- and they are one of the first people at Delta

 4   to learn that someone's disabled and has an

 5   accommodation request, it's their responsibility to get

 6   it to the attention of EO and Mindy Frederickson and

 7   get it focused on whether the assessment proves the

 8   accommodation is required or not.

 9      A     That's correct.

10      Q     Okay.  Thank you.

11            So now, give me just a minute.  Could you

12   turn to Page 4968, please.

13            (An off-the-record discussion ensued.)

14      Q     (By Mr. Stone) Okay.  We're back on.

15            Could you turn, please, to 4968, Miss

16   Guerrant.

17      A     I have it.

18      Q     Thank you.

19            Could you read the first two paragraphs

20   ending with the Delta phone number.  Okay?

21      A     (Reading.)

22            Okay.

23      Q     Okay.  Those two paragraphs state that an

24   employee does not have to put an accommodation request

25   in writing to the disability administrator; is that
```

Joanne Guerrant                                    11/18/2015

Exhibit 6

91

GUERRANT

2    been diagnosed had used all of his FML for the year,

3    what would you have recommended to the other two people

4    who were trying to fire him?  Wouldn't you have

5    recommended to have an assessment?

6              MR. MAHONEY:  I object to the form.

7              Go ahead.

8              THE WITNESS:  I don't know if I would have

9    done that.

10             Q    (By Mr. Stone) What would you have done?

11             A    I'm not sure at this point.

12             Q    Well, tell me why you're not sure.

13             A    Because it feels like you're asking me a

14   hypothetical question and -- so you're asking me what

15   would I have done.  Normally in that situation it would

16   have been handled by the HR professional, so they

17   wouldn't come to me to say if we have this employee, he

18   has HIV, what should I do.

19             Q    They should have gone to Mindy; right?

20             A    Yes, if they believed that it was a

21   disability or he required an accommodation or may need

22   an accommodation, yes.

23             Q    So let me help you then.  Wouldn't your

24   answer to my hypothetical be you would have said, Hey,

25   guys, Lewis says he has a disability.  Have you spoken

**Exhibit 6**

Joanne Guerrant                                                11/18/2015

105

GUERRANT

1

2                          C E R T I F I C A T E

3    STATE OF GEORGIA:

4    COUNTY OF FULTON:

5

6         I hereby certify that the foregoing deposition

7    was taken down, as stated in the caption, and the

8    colloquies, questions and answers were reduced to

9    typewriting under my direction; that the foregoing

10   transcript is a true and correct record of the evidence

11   given.

12        The above certification is expressly withdrawn

13   and denied upon the disassembly or photocopying of the

14   foregoing transcript, unless said disassembly or

15   photocopying is done under the auspices of Toby

16   Feldman, Inc., Certified Court Reporters, and

17   the signature and original seal is attached thereto.

18        I further certify that I am not a relative or

19   employee or attorney of any party, nor am I financially

20   interested in the outcome of the action.

21        This, the 3rd day of December, 2015.

22

23

24              CARLA J. HOPSON, RPR

                Certified Shorthand Reporter

25              B-1816

EEOC Form 161 B (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Erika L. Lee<br>1054 E. Turmont St<br>Carson, CA 90746 | From: | Los Angeles District Office<br>255 E. Temple St. 4th Floor<br>Los Angeles, CA 90012 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 480-2021-02794 | Garrett D. Hoover,<br>Intake Supervisor | (213) 785-3001 |

*(See also the additional information enclosed with this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☐ | More than 180 days have passed since the filing of this charge. |
|---|---|
| ☒ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
|---|---|
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Rosa M. Viramontes*

**Rosa M. Viramontes,**
**District Director**

June 17, 2021

*(Date Issued)*

Enclosures(s)

cc:    **Larry Wexler**
**Assistant General Counsel**
**DELTA AIR LINES, INC.**
**1030 Delta Blvd, Dept 981**
**Atlanta, GA 30354**

Scanned with
CamScanner

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
DIRECTOR KEVIN KISH

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
800-884-1684 | TDD 800-700-2320
www.dfeh.ca.gov | email: contact.center@dfeh.ca.gov

Valeria Cometto
Senior Corporate Counsel
1030 Delta Blvd.
Atlanta, GA 30354

EEOC Number    480-2021-02794C
Case Name      Erika L. Lee
Filing Date    June 11, 2021

## NOTICE TO COMPLAINANT AND RESPONDENT

This is to advise you that the above-referenced complaint is being dual filed with the California Department of Fair Employment and Housing (DFEH), by the United States Equal Employment Opportunity Commission (EEOC). The complaint will be filed in accordance with California Government Code section 12960. This notice constitutes service pursuant to Government Code section 12962.

The EEOC is responsible for the processing of this complaint and the DFEH will not be conducting an investigation into this matter. Please contact EEOC directly for any discussion of the complaint or the investigation.

## NOTICE TO COMPLAINANT OF RIGHT TO SUE

This letter is also your state Right to Sue notice. **This state Right to Sue Notice allows you to file a private lawsuit.** According to Government Code section 12965, subdivision (b), you may bring a civil action under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The lawsuit may be filed in a State of California Superior Court. Government Code section 12965, subdivision (b), provides that such a civil action must be brought within one year from the date of this notice. Pursuant to Government Code section 12965, subdivision (d)(1), this one-year period will be tolled during the pendency of the EEOC's investigation of your complaint. You should consult an attorney to determine with accuracy the date by which a civil action must be filed. This right to file a civil action may be waived in the event a settlement agreement is signed.

Be advised, the DFEH does not retain case records beyond three years after a complaint is filed.

DFEH-200-02 (01/2019)



AA ■ mail.gov.com

Sent M...

Re:Reasonable Accommodation Request

**Erika Lee**
leeerikalaliso@gmail.com
Hide details

To: **K** Kruit, Danielle R

Cc: **K** Kelley.nabors@delta.com

Bcc: **E** Erikallee@hotmail.com

Date: June 8, 2021, 11:15 AM

*Ex. 10*

Hello Danielle,

In regards to my request Reasonable Accommodation of a transfer for my disability (mobility impairment), I had asked David Needham in February 2021 for transfer to any open Cargo position in California, as I have experience in Cargo and I was allowed to sit down for almost the entire time, which accommodated my disability. David Needham told me to ask you, his boss, about accommodating my disability because he said he has no authority. So I made several reasonable accommodation requests over 2 months ago before and after Being suspended , yet Nobody at Delta has ever gotten back to me about my Reasonable accommodation requests that I made in February and March 2021, it is now June 2021 . There are open Ready Reserve Cargo positions in SFO and OAK on delta.com that I asked for and would definitely accommodate my disability of mobility impairment upon return from suspension. When am I coming off suspension ? How long is this suspension expended to last ? Because of this retaliatory suspension , I'm being economically harmed , yet I'm still employed at Delta, you took away all my benefits and I even had PPT and paid vacation time that began on April 1, 2021 that I earned previously. Are you paying me out for this while keeping me on suspension? Please advise. Thanks.

Sincerely,

Erika Lee

On Friday, April 2, 2021, Kruit, Danielle R <danielle.kruit@delta.com> wrote:

I will be on vacation from Friday, April 2nd - Friday April 9th. If you need immediate assistance, please reach out to David Needham at 718-704-2716.

I will respond as soon as possible.

Thanks,

Danielle Kruit

 Reply    Reply all    Forward

Scanned with CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 125 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-2    Filed 06/16/21    Page 26 of 50    Page ID #:826
Case 2:20-cv-08754-CBM-JEM    Document 62-2    Filed 03/08/21    Page 19 of 98    Page ID #:611

Kelley Nabors                                      9/10/2015

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

JOSEPH LEWIS,                    )
                                 )
        Plaintiff,               )
                                 ) CIVIL ACTION FILE
        vs.                      )
                                 ) NO.  2:14-CV-01683
DELTA AIR LINES,                 )
                                 )
        Defendants.              )

                   - - -

DEPOSITION OF KELLEY NABORS
Atlanta, Georgia
September 10, 2015

Reported by:
LELAND W. DAVIS

# Exhibit 11

COPY

email@tobyfeldman.com          Toby Feldman, Inc.          Certified WOB
tobyfeldman.com                NATIONWIDE SERVICES          (800) 246.4950

Scanned with
CamScanner

Scanned with

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 126 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-2    Filed 06/16/21    Page 28 of 50    Page ID
#:626
Case 2:20-cv-08754-CBM-JEM    Document 28-2    Filed 03/08/21    Page 21 of 90    Page ID
#:613

Kelley Nabors                                            9/10/2015

10

1                         Nabors

2       card.

3            Q     Okay.   And what is the EO Department at

4       Delta?  What is its role and function in supporting

5       and advising company managers?

6            A     Sure.   We support the entire corporation,

7       all divisions.  And we work closely with field HR to

8       discuss, coach, counsel, provide comparables, and

9       give guidance regarding numerous different matters

10      of the company, be it attendance or time card

11      issues, if we have any kind of harassment

12      discrimination, things like that, we get involved in

13      all aspects of an employee possible corrective

14      action up to and including termination.

15                 We also conduct investigations throughout

16      the company on numerous different things, but again,

17      to include things like workplace violence and

18      harassment discrimination.  And we try to again

19      ensure that the company is following the correct

20      policies and procedures, not just by the company

21      that are laid out by Delta, but beyond, if

22      necessary.

23           Q     What do you mean by, "Beyond, if

24      necessary"?

25           A     Meaning if there is -- you know, we are

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 127 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-2    Filed 06/16/21    Page 29 of 50    Page ID
Case 2:20-cv-08754-CBM-JEM    Document 26-5    Filed 03/08/21    Page 22 of 96    Page ID
#:614
#:1829

Kelley Nabors                                    9/10/2015

                                                          11

Nabors

1                              Nabors

2    not lawyers.  And so I don't want you to think that

3    we give the law.  But we try to ensure things

4    that -- again harassment, discrimination, those

5    things that fall under equal opportunity as defined,

6    if you will, by law, that is what we get involved in

7    along the other things I described.

8                  We also review all terminations that come

9    into the company.  And we hear appeals for anybody

10   in the corporation who has been terminated if they

11   choose to appeal.

12        Q    What is the difference between CRP and EO

13   then?  They have appeals for people that have been

14   terminated.  What is the dividing line?

15        A    They do.  So the Tech Ops CRP process is

16   for Tech Ops employees only.  They have specific

17   categories of terminations that they do not review.

18   I am not an expert on that CRP process as far as

19   what they don't hear.  But I do know it includes

20   things like drugs, positive drug tests, workplace

21   violence, and some other things that again I am not

22   an expert on.

23                  From a company prospective, EO will

24   review any and all terminations  The CRP process

25   also has a time line associated with it.  And an

Scanned with
CamScanner

Scanned with

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 128 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-2    Filed 06/16/21    Page 30 of 50    Page ID
Case 2:20-cv-08754-CBM-JEM    Document 28-6    Filed 03/08/21    Page 23 of 96    Page ID
#:615

Case 2:14-cv-01683-RFB-GWF    Document 84-5    Filed 03/18/16    Page 9 of 27

Kelley Nabors                                            9/10/2015

12

                                    Nabors

1

2    equal opportunity you can appeal when you choose to

3    appeal.

4              Q    So Mr. Lewis was fired allegedly for time

5    card falsification, to use your words.  Leaving

6    aside for the moment there are no time cards, did EO

7    do an investigation at any time?

8              MR. MAHONEY:  Objection.  Vague.  Go

9         ahead.

10             A    I understand that again Jo Anne Guerrant

11   and Lisa Todd had a conversation about the

12   situation.  And Jo Anne reviewed documents that were

13   relevant in making and understanding what the

14   recommendation of the operation was.  So, yes, Jo

15   Anne was involved in a review.

16             Q    Have you found her review papers?

17             A    No.

18             Q    Would she have created review papers?

19             A    We don't create review papers for every

20   call we take in EO.  Literally, this is what we do.

21   We coach, counsel, and guide the HR managers.  So

22   many times the HR managers are going to be keeping

23   the notes.  But, yes, she would have been involved

24   in conversations.  She would have reviewed emails

25   and any other documentations that would have been

Case 1:22-cv-08618-DEH-RWL   Document 171   Filed 09/17/25   Page 129 of 184
Case 2:20-cv-08754-CBM-JEM   Document 82-1   Filed 06/16/21   Page 22 of 50   Page ID
#:617

Kelley Nabors                                          9/10/2015

28

                                   Nabors

1

2            But my assumption would be normally when

3    we are requesting a file, it is for one of two

4    reasons.  One, because we received an appeal; or

5    two, because there was a charge received and

6    somebody is asking -- the legal department would be

7    asking for the actual file.

8            Q    In your review and preparation for

9    today's deposition, did you seek from Mr. Lewis any

10   communication that he was unhappy with the CRP

11   appeal and he wanted EO to prosecute his appeal?

12           A    I don't remember seeing that.

13           Q    Do you remember seeing any correspondence

14   from any person whatsoever indicating that

15   Mr. Lewis' appeal that was commenced on

16   October 12th, 2012 with the CRP should be removed

17   and processed by EO?

18           A    No.  I don't remember seeing anything

19   like that.

20           Q    Is there standard policy that would allow

21   for EO to remove and dispossess Mr. Brown at CRP

22   from his 30-day appeal requirement and assume the

23   appeal at EO?

24           MR. MAHONEY:  Object to the form.  Go

25       ahead.

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 130 of 184

Case 2:20-cv-08754-CBM-JEM    Document 62-2    Filed 06/16/21    Page 34 of 50    Page ID
Case 2:20-cv-08754-CBM-JEM    Document 28-2    Filed 03/08/21    Page 27 of 98    Page ID
#:619
#:1634

```
1                  C E R T I F I C A T I O N

2

3    STATE OF GEORGIA       )
                            )
4    COUNTY OF DEKALB       )

5

6           I, LELAND W. DAVIS, a Shorthand Reporter

7    and Notary Public of the State of Georgia,

8    do hereby certify:

9           That KELLEY NABORS, the witness whose

10   examination is hereinbefore set forth, was

11   duly sworn by me, and that this transcript

12   of such examination is a true record of

13   the testimony given by such witness.

14          I further certify that I am not related

15   to any of the parties to this action by

16   blood or marriage and that I am in no way

17   interested in the outcome of this matter.

18          In WITNESS WHEREOF, I have hereunto

19   set my hand this 28th day of September, 2015.

20

21

22

23   _____
             LELAND W. DAVIS

24

25
```

Scanned with
CamScanner

Scanned with

Interview only those who are most competitive for the position.   The hiring manager may notify the candidates not selected for the position prior to the successful candidates being publicly announced

<u>4.  Document retention</u>

The Station Manager is responsible for retaining the EOI documents for a minimum of five years.  The EOI documents include the EOI posting; all expressions of interest submitted by employees; all resumes submitted; any other document submitted by employees during any part of the process; all interview documents, including hiring manager(s) notes; and any other document created, used, or relied upon to determine who to interview or who to select.  The documents must clearly identify the hiring manager(s).

## 101.3  CUSTOMER SERVICE AGENTS

*The following general information is provided around the various positions within ACS and is not intended to be a complete job description.*

### 101.3.1 DEPARTMENT 120 - BELOW WING OPERATIONS

Department 120 CSA's perform a variety of duties according to the functional work area.  They are responsible for directing the ground movement of the aircraft in terminal ramp areas and expeditiously lifting and transporting baggage, mail, and cargo from loading equipment at the aircraft.  They operate ground support equipment such as tugs, conveyor belts, and tow tractors.  Department 120 CSA's are non-public contact employees who are subject to rotating shifts and off days and outside work.  They practice safety conscious behaviors in all operational processes and procedures.

Following training, employees will have the ability to drive and operate cargo loaders, baggage tugs, and tow tractors when required to dispatch aircraft.



### 101.3.2 DEPARTMENT 125 - ABOVE WING OPERATIONS

Department 125 CSA's perform a variety of duties according to the functional work area assignment; however, in certain stations and under certain circumstances personnel may be required to perform all functions.  Department 125 CSAs are subject to rotating shifts and off days, and may be required to work outside.  Department 125 CSAs are public contact employees and handle all facets of work associated with ticketing and the activities necessary to board and deplane passengers.  Specific functions, tasks, and departments may vary or be added depending upon the location and operational requirements.  Department 125 CSAs practice safety conscious behaviors in all operational processes and procedures.

### 101.3.3 DEPARTMENT 127 - Sky Club

Department 127 CSA's are public contact employees who perform a variety of customer service oriented duties within the Sky Club, such as issuing rapid redemption upgrades, boarding passes, future reservations, resolving customer complaints and providing a high level of quality customer service to elite fliers.  Sky Club employees communicate in a positive manner with customers as well as other departments within Delta.  Specific functions, tasks, and departments may vary or be added depending upon the location and operational requirements.  Department 127 CSAs practice safety conscious behaviors in all operational processes and procedures.

Sky Club positions are awarded to the most qualified individuals, as determined through a selection process.  Sky Club positions are not awarded on the basis of seniority.

### 101.3.4  CARGO - CSA – 807, 808 AND 824

Cargo CSA's perform a variety of duties according to the functional work area assignment, which can include regular, in-person customer contact/counter.  In certain stations and under certain circumstances, personnel may be required to perform all cargo-related duties.  Cargo CSA's are subject to rotating shifts and off days and may be required to work outside.  They are responsible for the booking, pricing, acceptance/delivery and safe handling of cargo/mail shipments according to regulations and company standards including some of the following: customer contact, preparation of paperwork, collection of funds and receipts; satisfaction of customers, and the lifting, sorting and transporting of freight to/from loading equipment.  They are responsible for using cargo computer programs to book,

▲ **DELTA** ✈          ACS DIVISIONAL PRACTICES MANUAL                Page 2

Delta 3:15-cv-020-JAM--002812


Scanned with
CamScanner

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 480-2021-02794 |

|  CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone | Year of Birth |
|---|---|---|
| MS. ERIKA L LEE | 646-552-8394 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 1054 E. TURMONT ST, CARSON, CA 90746 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| DELTA AIR LINES INC. | Unknown | (734) 921-7731 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1030 DELTA BLVD., HAPEVILLE, GA 30354 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 03-26-2021 | 06-10-2021 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

Around 2020, I filed a court case for discrimination due to my race (black), national origin (American), disability, and sexual harassment. From on or about March 26, 2021, to the present I have been subjected to retaliation by being suspended without pay. I am still currently under suspension without an end date.

No reason was given to me for the retaliation.

I believe I have been discriminated against in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I have been discriminated against in retaliation for engaging in a protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

CS CamScanner



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email. contact center@dfeh.ca.gov

February 23, 2021

Erika Lee
13163 Fountain Park Dr.
Playa Vista, California 90064

RE: **Notice to Complainant**
DFEH Matter Number: 202102-12699424
Right to Sue: Lee / Delta Air Lines, Inc. et al.

Dear Erika Lee:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. If you do not have an attorney, you must serve the complaint yourself. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

Scanned with CamScanner



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

February 23, 2021

RE:    **Notice of Filing of Discrimination Complaint**
DFEH Matter Number: 202102-12699424
Right to Sue: Lee / Delta Air Lines, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 135 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-5    Filed 06/16/21    Page 19 of 26    Page ID
#:7069



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH DIRECTOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

February 23, 2021

Erika Lee
13163 Fountain Park Dr.
Playa Vista, California 90064

RE:   **Notice of Case Closure and Right to Sue**
DFEH Matter Number: 202102-12699424
Right to Sue: Lee / Delta Air Lines, Inc. et al.

Dear Erika Lee:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective February 23, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Scanned with
CS CamScanne



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH  DIRECTOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 137 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-5    Filed 05/08/21    Page 21 of 26    Page ID
#:708

1

## COMPLAINT OF EMPLOYMENT DISCRIMINATION
## BEFORE THE STATE OF CALIFORNIA
## DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
### Under the California Fair Employment and Housing Act
### (Gov. Code, § 12900 et seq.)

2

3

4

**In the Matter of the Complaint of**

5
Erika Lee                                         DFEH No. 202102-12699424

6
                              Complainant,

7
vs.

8
Delta Air Lines, Inc.
300 World Way
9
Los Angeles, California 90045

10
Ashely Rangel
300 World Way
11
Los Angeles, California 90045

12
Joseph Tumpap
300 World Way
13
Los Angeles, California 90045

14
Bernadette Komasi

15
,

16
                              Respondents

17
_____

18
**1.** Respondent **Delta Air Lines, Inc.** is an **employer Delta Air Lines, Inc.** subject to suit under
19
the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

20
**2.** Complainant is naming **Ashely Rangel** individual as Co-Respondent(s).
Complainant is naming **Joseph Tumpap** individual as Co-Respondent(s).
21
Complainant is naming **Bernadette Komasi** individual as Co-Respondent(s).

22
**3.** Complainant **Erika Lee**, resides in the City of **Playa Vista**, State of **California.**

23
**4.** Complainant alleges that on or about **February 19, 2021**, respondent took the
24
following adverse actions:

25
**Complainant was harassed** because of complainant's race, ancestry, national origin
(includes language restrictions), color, sex/gender, gender identity or expression, sexual

26

-1-
27
*Complaint – DFEH No. 202102-12699424*

28
Date Filed: February 23, 2021

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 138 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-5    Filed 09/06/21    Page 22 of 86    Page ID
#:1092

1  orientation, genetic information or characteristic, disability (physical or mental), medical
condition (cancer or genetic characteristic), age (40 and over), other, sexual harassment-
2  hostile environment, sexual harassment- quid pro quo, association with a member of a
protected class.
3

4  **Complainant was discriminated against** because of complainant's race, ancestry,
national origin (includes language restrictions), color, sex/gender, gender identity or
5  expression, sexual orientation, genetic information or characteristic, disability (physical or
mental), medical condition (cancer or genetic characteristic), age (40 and over), other,
6  sexual harassment- hostile environment, sexual harassment- quid pro quo, association with
a member of a protected class, family care or medical leave (cfra) and as a result of the
7  discrimination was denied hire or promotion, reprimanded, asked impermissible non-job-
related questions, denied the right to wear pants, denied any employment benefit or
8  privilege, denied reasonable accommodation for a disability, other, denied work
opportunities or assignments, denied or forced to transfer, denied family care or medical
9  leave (cfra).

10 **Complainant experienced retaliation** because complainant reported or resisted any form
of discrimination or harassment, requested or used a disability-related accommodation,
11 participated as a witness in a discrimination or harassment complaint, requested or used
family care or medical leave (cfra) and as a result was denied hire or promotion,
12 reprimanded, asked impermissible non-job-related questions, denied the right to wear pants,
denied any employment benefit or privilege, denied reasonable accommodation for a
13 disability, other, denied work opportunities or assignments, denied or forced to transfer,
denied family care or medical leave (cfra).
14

15 **Additional Complaint Details:** Beginning in December 2018, Manager Bernadette Komasi,
16 who is a lesbian, began making sexual advances at me because of my sex and race (she
said she wanted to try "black cat" and could "get me off with just a few licks," said I was
17 "deprived" because black men dont eat black women's vaginas, would always be staring at
my breasts, butt and vagina when talking to me, asked me if my pubic hair was "kinky" like
18 the hair on my head, asked if I ever had an orgasm before from oral sex, always requested
that I let her perform oral sex on me during and after work hours, every time she walked by
19 me , Manager Bernadette Komasi, always stuck her tongue out at me in a rolling and
repetitive manner to simulate the act of cunninlingus that she requested to perform on me,
20 Berndette Komasi threatened me with retaliation, termination and write ups if I didn't submit
to her sexual demands. I report this to Delta's Equal Opportunity Department in April 2019,
21 but it kept continuing until around August 2019 and then continued util around February/
March 2020, when I saw Bernadette Kamasi at the airport, where she was  working and she
22 stuck her tongue out at me and said, "You know you want to sit on my face." Def. Tumpap
denied me the right to wear pants bc he wanted me to look "sexy" for Delta's business
23 travelers and to wear heels when I have mobility issues, criticized by African hair and told
me I needed to look like a "white"woman if I wanted to promoted at Delta. I reported this to
24 Rangel, who kept retaliating and treated other similarly situated non-black employees and
male employees different than me ,because of my race and sex.   Rangel refused to engage
25 interactive process and denied me reasonable accommodations that she accommodate,

26
                                          -2-
27                         *Complaint – DFEH No. 202102-12699424*

28 Date Filed: February 23, 2021

Case 1:22-cv-08618-DEH-RWL   Document 171   Filed 09/17/25   Page 139 of 184
Case 2:20-cv-08754-CBM-JEM   Document 22-5   Filed 05/06/21   Page 22 of 26   Page ID
#:1103

1  Kimberly Ng, who is white. Rangel admits , George, a male, was treated according to Delta
   policy but that I wasn't. Rangel interfered with my FMLA and CFRA rights by telling me I
2  couldn't' ask for any days off or apply for FMLA or I would have benefits taken away.   I
   opposed the sexual and racial harassment and discrimination to Ashley Rangel who refused
3  to do anything about it since 2018, I even opposed Rangel's disability discrimination, failure
   to engage in interactive process. failure to accommodate to Delta's EO Department in 2018
4  and 2019, who also refused to engage and accommodate my disabilities and continued
   retaliation against me for engaging in protected activities. I've been  Opposing racial and
5  sexual harassment by all Defendants since 2018, opposing Defendants Interference and
   impairment with my employment contract in violation of USC 1981, retaliation for Engaging
6  in many protected activities since 2017 and/or 2018 and/or 2019 and/or 2020 and/or now
7  2021,  testifying in another employee's Federal lawsuits, being a member of at least 3 Class
   Action lawsuits against Delta Air Lines, Inc for failure to pay wages and/or overtime in
8  violation of California State labor laws,  Filing workers compensation claims and exercising
   my rights under California's Workers Compensation laws , engaging with a lawyer to file
9  workers compensation claims, opposing Defendants refusal to engage in a good faith
   interactive process and failing to accommodate my disabilities, requesting MULTIPLE
10 reasonable accommodation for my disabilities, requesting to use intermittent FMLA leave
   /CFRA leave to go to doctors appointments for my serious medical conditions and/or
11 disabilities since September 2018, Defendants told me that I was not allowed to use and/or
   apply and/or even ask for any days off after I exercised by rights  under the FMLA/CFRA  in
12 September 2018. Def. Delta then told me again in October 2019 that I was not allowed to
   apply for FMLA in October 2019.to go to doctors appointments for my serious medical
13 conditions and/or disabilities. Defendants consistently discriminated against me and
   harassed me because of my race and sex with constant race and gender comments about
14 my looks, my body , my hair, my butt, my breast, my vagina.    Because of my race and sex,
15 I was constantly denied the same employment rights and benefits that other males and non-
   black employees and/or all employees are entitled to (per company policy and/or Ready
16 Reserve employment contracts).  Kimberly Ng, who self identifies as a white woman,  was
   given a transfer to another location while she was on a medical leave but in the same month
17 Defendants denied me a transfer to the same location and position, as they alleged it was
   based on company policy.  On February 19, 2021, I made another reasonable
18 accommodation request to HR Manager David for a transfer to LAX airport, beginning on
   April 1, 2021 and once again, Delta Air Lines, Inc. told me that I was not able to get a
19 transfer while out on a leave, yet similarly situated white employees. like Kimberly Ng, are
   always given transfers while out on leaves. Delta Air Lines, Inc. refused to engage in the
20 interactive process again on February 19, 2021 by just denying me a transfer without
   exploring any other options of how to accommodate my disability.  Also,  on Wednesday
21 February 17, 2021, Delta's HR Manager David left me a voicemail telling me that he wanted
   to investigate the racial and sexual discrimination and harassment by Defs. Ashley Rangel,
22 Joseph Tumpap and Bernadette Kamasi that had been occurring since October 2018.  On
   Friday, Feb. 19, 2021, I briefly called HR Manager David and told him that I had already
23 reported the constant sex and racial harassment and discrimination by Defendants to Delta's
   Equal Opportunity Department several times, most notably in April 2019, which Delta's EO
24 Department said they were thoroughly investigating. On Feb. 19, 2021, HR Manager David
25 told me that somehow Delta's EO Department never investigated the sex and racial
   harassment and discrimination by Komasi, Rangel, and Tumpap..  I then told, HR Manager

26
27
28 Date Filed: February 23, 2021

1   David, that "I was sexually and racially harassed, discriminated and retaliated against by
    Komasi, Rangel and Tumpap but Delta would not do anything to stop it since October 2018."
2   Delta's HR Manager, David told me last week, "Well thats why Delta realizes they made a
    mistake and now Delta wants to finally investigate your allegations of being sexually and
3   racially harassed by the people you mentioned since you complained about this racial and
    sex harassment since 2018 when working at Los Angeles LAX Airport."    I told Delta 's HR
4   Manager, David, "I don't mind telling you every detail of these racial and sexual harassment,
    as long as you give me something in writing that I won't continue to be retaliated against for
5   opposing this racial and sexual harassment, because other Delta employees get terminated
    for opposing racial and sexual harassment in writing and/or orally and/or participate in
6   Delta's investigations. I just want the harassment and discrimination and retaliation to stop.
7   This is why I took an unpaid leave of absence because Delta has made the working
    environment so hostile since 2018 when I began engaging in protected activity and
8   exercising my rights under California and Federal laws." On 02/19/2021, Delta's HR
    Manager, David, refused to promise me in writing that I won't be retaliated against if I
9   participate in Delta's alleged new investigation of the  racial and sexual harassment
    ,discrimination, and retaliation that Komasi, Rangel and Tumpap perpetrated against me
10  and/or which has been occurring since October 2018.    I engaged in protected activity
    again  on 02/19/2021 when I asked Delta HR Manager, David, for a reasonable
11  accommodation of a transfer, which was once again DENIED. This is a continual violation
    that has been occuring since October 2018, when I asked for this. I told David that although
12  I'm domiciled in New York, I have been  a California/Los Angeles resident since around
    2011,  but right now I'm in between places to live and but Im residing  in Playa Vista,
13  California and would like to get a transfer back to Los Angeles LAX airport, as  I am
    currently  displaced, as I have no income, and am expecting to return to work on April 1,
14  2021. Delta's HR Manger, David, told me on 02/19/2021, "You  cant get a reasonable
    accommodation of a transfer to LAX because you filed lawsuit against Delta."  I then told
15  HR Manager David before hanging up , "Now  I'm being retaliated again by Delta, today,
16  February 19, 2021, for engaging in protected activity for filing a lawsuit. Now I cant be
    reasonably accommodated or transferred.  This is exactly why  I'm not sure I want to
17  participate in any other Delta investigations because I dont want Delta to continue to be
    retaliated against like this anymore like you are doing to me right now. "

18

19

20

21

22

23

24

25

26

27                                          -4-
                              *Complaint – DFEH No. 202102-12699424*

28  Date Filed: February 23, 2021

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 141 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-5    Filed 06/16/21    Page 25 of 36    Page ID
#:262
Case 2:20-cv-08754-CBM-JEM    Document 28-2    Filed 03/08/21    Page 24 of 48    Page ID
#:712

1

VERIFICATION

2  I, **Erika L. Lee**, am the **Complainant** in the above-entitled complaint. I have read the
foregoing complaint and know the contents thereof. The same is true of my own
3  knowledge, except as to those matters which are therein alleged on information and
4  belief, and as to those matters, I believe it to be true.

5  On February 23, 2021, I declare under penalty of perjury under the laws of the State
of California that the foregoing is true and correct.
6
7                                                              **Playa Vista, CA**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                              -5-
27                       *Complaint – DFEH No. 202102-12699424*

28  Date Filed: February 23, 2021

Scanned with
CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 142 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-5    Filed 06/16/21    Page 26 of 36    Page ID
#:1776

STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency . . .           GAVIN NEWSOM, GOVERNOR
                                                                                    KEVIN KISH, DIRECTOR
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

April 3, 2021

Erika Lee
13163 Fountain Park Dr.
Playa Vista, California 90064

RE:  **Notice to Complainant**
     DFEH Matter Number: 202104-13127904
     Right to Sue: Lee / Delta Air Lines Inc

Dear Erika Lee:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents.  If you do not have an attorney, you must serve the complaint yourself.
Please refer to the attached Notice of Case Closure and Right to Sue for information
regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of
Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 143 of 184
Case 2:20-cv-08754-CBM-JEM    Document 62-5    Filed 06/16/21    Page 27 of 36    Page ID
#:1777



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                                    GAVIN NEWSOM, GOVERNOR
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                                         KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

April 3, 2021

RE:    **Notice of Filing of Discrimination Complaint**
       DFEH Matter Number: 202104-13127904
       Right to Sue: Lee / Delta Air Lines Inc

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot
program. Under this program, established under Government Code section 12945.21,
a small employer with 5 -19 employees, charged with violation of the California Family
Rights Act, Government Code section 12945.2, has the right to participate in DFEH's
free voluntary mediation service. Under this program both the employee requesting an
immediate right to sue and the employer charged with the violation may request that all
parties participate in DFEH's free voluntary mediation service. A request for mediation
must be made within 30 days of receipt of the Notice of Case Closure and Right to Sue.
If mediation is requested, the employee is prohibited from filing a civil action until
mediation is complete. The employee's statute of limitations to file a civil action,
including for all related claims not arising under section 12945.2, is tolled from DFEH's
receipt of a mediation request under section 12945.21 until mediation is complete.  To
request DFEH Small Employer Family Leave Mediation, email
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on
the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

Scanned with
CamScanner

[image of man]

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 144 of 184
Case 2:20-cv-08754-CBM-JEM   Document 62-5   Filed 06/16/21   Page 28 of 36   Page ID
#:1778



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

April 3, 2021

Erika Lee
13163 Fountain Park Dr.
Playa Vista, California 90064

RE:   **Notice of Case Closure and Right to Sue**
      DFEH Matter Number: 202104-13127904
      Right to Sue: Lee / Delta Air Lines Inc

Dear Erika Lee:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective April 3, 2021 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation pilot program. Under this program, established under Government Code section 12945.21, a small employer with 5-19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free voluntary mediation service. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free voluntary mediation service. A request for mediation must be submitted to the DFEH within 30 days of receipt of the Notice of Case Closure and Right to Sue. If mediation is requested, the employee is prohibited from filing a civil action until mediation is complete. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from DFEH's receipt of a mediation request under section 12945.21 until mediation is complete. To request DFEH Small Employer Family Leave Mediation, email DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,



STATE OF CALIFORNIA I Business, Consumer Services and Housing Agency                                                    GAVIN NEWSOM, GOVERNOR
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                                          KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) I California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

Scanned with
CamScanner

1

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**

2

**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**

3

**(Gov. Code, § 12900 et seq.)**

4

**In the Matter of the Complaint of**

5

Erika Lee

DFEH No. 202104-13127904

6

Complainant,

7

vs.

8

Delta Air Lines Inc
1030 Delta Blvd

9

Atlanta, California 30354

10

Respondents

11

_____

12

1. Respondent **Delta Air Lines Inc**  is an **employer Delta Air Lines Inc** subject to suit under

13

the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

14

15

2. Complainant **Erika Lee**, resides in the City of **Playa Vista**, State of **California**.

16

3. Complainant alleges that on or about **March 26, 2021**, respondent took the

17

following adverse actions:

18

**Complainant was harassed** because of complainant's race, ancestry, national origin

19

(includes language restrictions), color, sex/gender, sexual orientation, disability (physical or
mental), medical condition (cancer or genetic characteristic), age (40 and over), other,

20

sexual harassment- hostile environment, sexual harassment- quid pro quo, family care or
medical leave (cfra).

21

**Complainant was discriminated against** because of complainant's race, ancestry,

22

national origin (includes language restrictions), color, sex/gender, sexual orientation,
disability (physical or mental), medical condition (cancer or genetic characteristic), age (40

23

and over), other, sexual harassment- hostile environment, sexual harassment- quid pro quo,
family care or medical leave (cfra) and as a result of the discrimination was reprimanded,

24

suspended, asked impermissible non-job-related questions, denied the right to wear pants,
denied any employment benefit or privilege, denied reasonable accommodation for a

25

disability, other, denied work opportunities or assignments, denied or forced to transfer,
denied family care or medical leave (cfra).

26

-1-

27

*Complaint – DFEH No. 202104-13127904*

28

Date Filed: April 3, 2021

Scanned with CamScanner

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 147 of 184
Case 2:20-cv-08754-CBM-JEM   Document 62-5   Filed 06/16/21   Page 31 of 36   Page ID
#:1781

1

2     **Complainant experienced retaliation** because complainant reported or resisted any form
      of discrimination or harassment, requested or used a disability-related accommodation,
3     participated as a witness in a discrimination or harassment complaint, requested or used
      family care or medical leave (cfra) and as a result was reprimanded, suspended, asked
4     impermissible non-job-related questions, denied the right to wear pants, denied any
      employment benefit or privilege, denied reasonable accommodation for a disability, other,
5     denied work opportunities or assignments, denied or forced to transfer, denied family care or
      medical leave (cfra).
6

7     **Additional Complaint Details:** In February 2021, I reported sexual harassment/sexual
      assault to David by DeltaManager Bernadette Konami which occurred in 2020, where she
8     spanked me and told me she wanted to insert a white dildo into my black Vagina. HR
      Manager David told me on the phone and in a voicemail that Kelley Nabors or Equal
9     Opportunity Department at Delta never investigated when I spoke to them in April 2019 of
      the racially and sexually hostile work environment by Manager Komasi .   I filed a FEHA
10    report in February 2021 . On March 26, 2021, I was suspended without pay and my material
      benefits were taken away for alleged "dishonest behavior." . HR Manager Danielle said me
11    that someone told her that I am a "liar" and "dishonest" but refused to identify person or how
      I am "dishonest."
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                              2
                                    *Complaint – DFEH No. 202104-13127904*
28    Date Filed: April 3, 2021

Case 1:22-cv-08618-DEH-RWL    Document 171    Filed 09/17/25    Page 148 of 184
Case 2:20-cv-08754-CBM-JEM   Document 62-5   Filed 06/16/21   Page 32 of 36   Page ID
#:1782

1 | VERIFICATION

2 | I, **Erika Lee**, am the **Complainant** in the above-entitled complaint.  I have read the
foregoing complaint and know the contents thereof.  The same is true of my own
3 | knowledge, except as to those matters which are therein alleged on information and
4 | belief, and as to those matters, I believe it to be true.

5 | On April 3, 2021, I declare under penalty of perjury under the laws of the State of
California that the foregoing is true and correct.
6 |
| **Los Angeles, CA**
7 |

8 |

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

-3-
27 | *Complaint – DFEH No. 202104-13127904*

28 | Date Filed: April 3, 2021

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other Information before completing this form. | ☐ FEPA ☒ EEOC | 480-2021-02794 |

| CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT & HOUSING | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| MS. ERIKA L LEE | 646-552-8394 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 1054 E. TURMONT ST, CARSON, CA 90746 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| DELTA AIR LINES INC. | Unknown | (734) 921-7731 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1030 DELTA BLVD., HAPEVILLE, GA 30354 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE |  |
|---|---|
| Earliest | Latest |
| 03-26-2021 | 06-10-2021 |

☒ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

Around 2020, I filed a court case for discrimination due to my race (Black), national origin (American), disability, and sexual harassment. From on or about March 26, 2021, to the present I have been subjected to retaliation by being suspended without pay. I am still currently under suspension without an end date.

No reason was given to me for the retaliation.

I believe I have been discriminated against in retaliation for engaging in a protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe I have been discriminated against in retaliation for engaging in a protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *[signature]* Erika L Lee | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

Scanned with CamScanner

Ex 16

## DECLARATION OF MAYRA AMEZQUITA

I, **MAYRA AMEZQUITA**, being first duly sworn, declare and testify as follows:

1. I, **MAYRA AMEZQUITA**, have personal knowledge of all of the facts and in this Declaration and the information set forth in this Declaration is true and correct to the best of my knowledge, except where stated "upon information and belief.". Every fact in this Declaration is based solely on my personal knowledge. I, Mayra Amezquita, declare that if called as a witness, I am competent to testify as to all matters herein if called to do so and will testify to the same at trial.

2. I, Mayra Amezquita, was directly employed by Delta Air Lines, Inc. as a Ready Reserve Customer Service Agent at Los Angeles International Airport in 2018.

3. I am a Hispanic female.

4. As a Delta Air Lines, Inc. Ready Reserve agent in Department 125 at Los Angeles LAX International Airport in 2018, I was a contract employee.

5. As a Delta Air Lines, Inc. Ready Reserve agent in Department 125 at Los Angeles LAX International Airport in 2018, I was a contract employee, who was not entitled to any health insurance benefits and/or any paid vacation days.

6. Under the Ready Reserve employment contract with Delta Air Lines, Inc., I and Erika Lee, had the material benefits of having Delta pass travel benefits, Ready Reserve seniority shift bidding benefits, a PPT (personal paid time) bank of hours to take a limited amount of personal days off, and shift swapping benefits to swap or drop or pick up shifts with other Ready Reserve agents for the purpose of either picking up hours to earn extra income or swapping my shift with another employee to work a different shift than the shift awarded to me in Delta's Ready Reserve seniority shift bidding

Employees are paid via the MPS system, a separate system. For example, if our Manager asks us to stay after our shift for "IROP" (or irregular operations), the Manager has to manually do something in another system to make sure we get paid for the hours we worked. The time clock used to swipe in and out when Ready Reserve contract employees begin and end our shifts have no effect for the payroll purposes of our hours. Basically, if a Delta manager at LAX Dept. 125  forgot or chose not to manually update the hours we worked in the MPS system, the Ready Reserve contract employee would never be paid for the hours they worked and the hours would never be accounted for.

18. Under our Delta Ready Reserve employment contracts in 2018, any pass travel fees, for example international taxes, were payroll deducted by Delta if we travelled internationally using our material pass travel benefits that we were entitled to in our Delta Ready Reserve employment contracts.

19. Ashley Rangel explicitly informed me that our material swapping benefits benefits in our Delta Ready Reserve employment contracts, "could only be temporarily suspended if we used or abused FMLA."

20. Around early 2018, I heard Delta supervisor/manager Bernadette Komasi, talking in a southern African-American accent saying to Erika Lee, "your a sexy black bitch, Im gonna tear that black punani up. Make u have a seizure, like you caught the Holy Ghost. I wonder if your black cat tastes like fried chicken or collard greens and if it's wet like macaroni and cheese , (while saying mmmmm Yum and licking her lips,  I bet your black cat taste like some black soul food." Erika asked me to report what I witnessed to HR because she was too scared of being retaliated against, so when I saw Ashley Rangel walking through LAX airport, I approached her and informally reported to Ashley Rangel the sexually harassing comments that I personally heard Bernadette Komasi say to Erika Lee. Ashley Rangel's response to me

Scanned with
CamScanner

was, "don't get involved in that messy hoedown between Erika and Bernadette. Girls hold hands with other girls. Girls always tell other girls that they are sexy and they touch each others tits. My girlfriends have done that to me and vice versa. Erika should take it as a compliment that Bernadette thinks she's a sexy BBW, not many men are into BBWs like Erika. Erika's probably not used to being complimented on her appearance. As a friend, just advise her not to be offended by Bernadette's compliments, tell Erika just to smile and say thank you because Delta stresses that we treat other employees as internal customers. For example, if a male customer said the same things to Erika, I can't call the customer to reprimand him for complimenting a Delta employee just because the employee is easily offended. Delta doesn't allow me to do that. Erika needs to get some thicker skin. If Erika's your friend, you should tell her not to be making petty complaints at work, because it makes her look unprofessional and catty. Bernadette's compliments are not sexual harassment."

21. Kimberly Ng, a white woman, was a Los Angeles LAX Delta agent, who told me in 2018 that when she asked Ashley Rangel for a reasonable accommodation for a transfer to another airport while she out on medical leave, Ashley Rangel granted her reasonable accommodation request and helped Kimberly get transferred to another airport while Kimberly was still out on a medical leave and not an active Delta employee.

22. I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746 and under the laws of the State of California and the U.S. that the foregoing is true and correct. Executed in Los Angeles, CA on **02/24/2021**.

_Mayra_  02/24/2021

**MAYRA AMEZQUITA**

Scanned with
CamScanner



Entire Mailbox ▼ | 🔍

↺ Reply  ↻ Reply All  ↪ Forward | ✉ |   | 🗑 Junk | Close

## Accommodation Request - IP
Accommodations



| | |
|---|---|
| **Sent:** | Friday, November 02, 2018 6 46 AM |
| **To:** | Lee, Erika L |
| **Cc:** | Accommodations |
| **Attachments:** | | 🔲 Accommodation Request Empl~1.pdf (236 KB) [Open as Web Page] | 🔲 Accommodation Program Empl~1 |

Good morning,

Thank you for contacting the accommodation department on Novembe
accommodations to allow qualified employees with a medical impa:
training or other Company-sponsored events.  An accommodation a:
accommodations are appropriate and available to assist you in s;
Service Agent at LAX or whether we can assist you in finding and
medical restrictions.  A Job Accommodation Program: Guidelines
process.
https://deltaairlines.sharepoint.com/company/HR/PoliciesProgram;

To begin the accommodation review, I have enclosed two forms for
Release of Medical Information.  In addition, a Physician's Cer1
to provide current medical documentation supporting your request
format.  However, the medical information provided must be a cu1
medical impairment, provides any job-related restrictions (incl(
accommodation.  You are encouraged to provide any medical docume
and additional medical exams (functional capacity, independent r
assist us in reviewing your accommodation request.  It is your 1
for our review.  Generally, conclusory statements that an accomr
sufficient.  You will find more information about what should ar
for Employees.  All medical information received by Delta will t
accommodations.

Please complete and return the attached Accommodation Request ar
Physician's Certification or other medical documentation suppor1
accommodations@delta.com or fax it to 404-677-3851.  If you dec:
medical documentation directly to us, please ensure the medical
have any questions or concerns, please feel free to contact us ;

Thank you,
The Accommodation Team

Scanned with
CamScanner

  https://apps.delta.com/ 

WebApp

**Accommodation Request - IP**
Accommodations

Good morning,

Thank you for contacting the accommodation department on November 1, 2018 inquiring about job accommodations. Delta will make reasonable accommodations to allow qualified employees with a medical impairment to perform their essential job functions or to participate in training or other Company-sponsored events. An accommodation assessment is an interactive process we use to evaluate whether job accommodations are appropriate and available to assist you in safely performing all the essential functions of your job as a RR_Customer Service Agent at LAX or whether we can assist you in finding another position within Delta that you are able to perform within your medical restrictions. A Job Accommodation Program: Guidelines for Employees document can be found at the below address to explain the process.
https://deltaairlines.sharepoint.com/company/HR/PoliciesPrograms/Pages/Job%20Accommodation%20Program.pdf#search=accommodation%20guidelin

To begin the accommodation review, I have enclosed two forms for you to complete: an Accommodation Request form and an Authorization for Release of Medical Information. In addition, a Physician's Certification for Job Accommodation is attached for your physician to complete to provide current medical documentation supporting your request. If you prefer, you can provide similar information in a different format. However, the medical information provided must be a current report from your treating healthcare provider that describes your medical impairment, provides any job-related restrictions (including their expected duration), and explains the medical need for accommodation. You are encouraged to provide any medical documentation, such as office visit notes, laboratory studies, X-ray reports, and additional medical exams (functional capacity, independent medical evaluations, etc.) related to your accommodation needs that would assist us in reviewing your accommodation request. It is your responsibility to work with your physician(s) to provide such information for our review. Generally, conclusory statements that an accommodation, or that a particular accommodation, is required will not be sufficient. You will find more information about what should and should not be included in your medical documentation in the Guidelines for Employees. All medical information received by Delta will be kept confidential and will only be used to evaluate your request for job accommodations.

Please complete and return the attached Accommodation Request and Authorization for Release of Medical Information forms, along with the Physician's Certification or other medical documentation supporting your request by November 23, 2018 via email to accommodations@delta.com or fax it to 404-677-3851. If you decide to have your physician send the Physician's Certification or other medical documentation directly to us, please ensure the medical documentation is received by November 23, 2018. In the meantime, if you have any questions or concerns, please feel free to contact us at 404-715-9811.

Thank you,
The Accommodation Team


Exhibit

Scanned with
CS CamScanner

Attached is Defendant's Amended and Supplemental Objections and Responses to Plaintiff's First Set of Interrogatories.

We still have not heard back from you regarding Bill Ittounas' deposition. Please confirm as soon as possible whether you still intend to depose him on December 11 and, if so, the time and location.

Thank you,

**Nicole M. Zito**
**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6707 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
nicole.zito@morganlewis.com | www.morganlewis.com
Assistant: Roberta A. Leone | +1.212.309.6647 | roberta.leone@morganlewis.com

Exhibit

**From:** Zito, Nicole M.
**Sent:** Thursday, November 30, 2017 7:55 PM
**To:** William A. Roche (williamroche@gmail.com)
**Cc:** Rosenstein, Ira G.
**Subject:** Jackson v. Delta Air Lines, Inc. - Delta's Response to Plaintiff's November 2017 Letter

William,

Attached is Delta's response to Plaintiff's letter regarding Delta's Interrogatory Responses and Objections. A courtesy copy of the attached letter is also being sent via U.S. Mail. Delta will provide its Supplemental and Amended Objections and Responses to Plaintiff's First Set of Interrogatories under separate cover as soon as possible.

Please confirm whether you still intend to depose Bill Ittounas on December 11 and, if so, please confirm the time and location.

Thank you,

**Nicole M. Zito**
**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6707 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
nicole.zito@morganlewis.com | www.morganlewis.com
Assistant: Roberta A. Leone | +1.212.309.6647 | roberta.leone@morganlewis.com

**From:** Zito, Nicole M.
**Sent:** Thursday, November 16, 2017 4:40 PM
**To:** 'William A. Roche'
**Cc:** Rosenstein, Ira G.
**Subject:** Jackson v. Delta Air Lines, Inc. - Deposition Notices

William,

We are in receipt of your deposition notices seeking to depose 4 Delta fact witnesses on December 5, 2017. Of those four witnesses, only Mr. Ittounas will be made available by Defendant. We are prepared to proceed with th deposition of Mr. Ittounas on December 11, 2017. Please confirm the time and location.

Delta objects to the depositions of Ms. Delgado and Ms. Pieroni, as neither of them is alleged to have been involv in the decision to take any alleged adverse action taken against Plaintiff and, therefore, their testimony is not relevant to Plaintiff's claims. Further, Ms. Pieroni, a Seattle based flight attendant, who is currently on a leave o absence, cannot be compelled to come to New York for a deposition.

2

Exhibit

8. Upon information and belief, at all relevant times, Defendant, DELTA AIR LINES, INC., is a corporation organized and existing pursuant to the laws of the State of New York and is maintaining a number of offices in the State of New York, including at John F. Kennedy International Airport (hereinafter "JFK"), JFK Access Road, Jamaica, New York 11430; LaGuardia Airport (hereinafter "LGA"), 1 Delta Terminal Suite 2, Flushing, New York 11371.

9. DELTA AIR LINES, INC., is in private for-profit corporation engaged in the business of air travel, and transportation.

## FACTUAL ALLEGATIONS

10. Upon information and belief, Plaintiff JOSEPH JACKSON was hired on or about July 26, 1993 as a Temporary Part Time ("TPT") Ramp operations personnel. He was hired to work at the DELTA facility located at Atlanta Airport.

11. In 1995 Plaintiff was transferred to a full time employee and began working in the air cargo department for DELTA at Atlanta.

12. In 1997 Plaintiff was transferred to New York State and began working as a Gate Agent at LGA.

13. In 1998 Plaintiff became an inflight attendant and performed these duties for approximately 10 years.

### Failure to Promote based on race

14. Upon information and belief, between the years 2004 and 2008 Plaintiff began to apply for management positions. He applied numerous times to open positions located in Georgia and New York.

15. On or about April 1, 2008 Plaintiff was hired as a manager.

16. Plaintiff was one of the most senior employees at his location and during his tenure with DELTA.

17. In 2012 Plaintiff applied for a position as a Base Manager. Plaintiff was denied the position and it was offered to a Caucasian Female, Debbie Bunch, who upon information and belief was less experienced than Plaintiff and not familiar with the dynamics and day-to-day operations of a NYC base.

18. Upon information and belief, Defendant failed to provide any reason for denying the Plaintiff the position.

19. In 2014 Plaintiff again applied for a position as a Base Manager. Plaintiff was again denied and it was offered to a Caucasian Male, Mathew Blanchette, who upon information and belief was less experienced and less senior that Plaintiff.

20. Upon information and belief, Defendant failed to provide any reason for denying the Plaintiff the position.

### Discrimination and termination based on race and gender

21. Plaintiff was most recently subjected to discrimination by the Defendants in the manner in which Defendant unilaterally terminated Plaintiff.

22. On or about September 2, 2015 Plaintiff was terminated by Defendant, based on the word of two (2) females who alleged that the Plaintiff sexually harassed them.

23. Defendant failed to conduct an investigation and terminated the Plaintiff.

Case 1:16-cv-02330-KAM-VMS   Document 1   Filed 05/09/16   Page 1 of 7 PageID #: 1

Exhibit

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOSEPH JACKSON

                                                    Plaintiff,          **VERIFIED COMPLAINT**

                                                                        Jury Trial Demanded

                        AGAINST

DELTA AIR LINES, INC.
                                                    Defendant.

Plaintiff, JOSEPH JACKSON, through his attorneys, The Law Office of Amer j. Anwar, as and for his Verified Complaint Sets forth the following under penalty of perjury:

## PRELIMINARY STATEMENT

1. This action is brought by JOSEPH JACKSON (hereinafter "Plaintiff" or "JACKSON") against DELTA AIR LINES, INC. (hereinafter "Defendant" or "DELTA") for its intentional racial and gender discrimination, retaliation and resulting wrongful termination against the Plaintiff, an African-American male.
2. Plaintiff's federal claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §2000e, *et. seq.,*
3. Plaintiff's state and local law claims arise under New York State Executive Law §296 and New York City Human Rights Law, Administration Code of the City of New York Title 8.

## JURISDICTION AND VENUE

4. Jurisdiction is conferred on this court by 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States of America. The Court has supplemental jurisdiction to hear state and local law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in the United States District Court for the Eastern District of New York under 28 U.S.C. § 138(b) as the claims arose in the County of Queens and County of Kings, State of New York and the Plaintiff is a resident of the County of Nassau, State of New York.

6. The United States Equal Employment Opportunity Commission issued JOSEPH JACKSON a Notice of Right to Sue dated February 12, 2016, within 90 days of the receipt of which he filed this Verified Complaint, a copy of which is annexed hereto as Exhibit "1".

## PARTIES

7. Plaintiff, JOSEPH JACKSON, is an individual residing in the State of New York and maintaining a residence at 295 Andrews Road, Mineola, New York 11501.



# 1501 Medical PC

## *Dr. Ilya Akselrud & Dr. Mikhail Akselrud*

501 5th avenue, Suite 1203
New York, NY 10017
(212) 850-1100

1501 80th Street, Suite 1
Brooklyn, NY 11228
(718) 837-2660

To Whom it May Concern,

Patient Erica Lee 11/29/████ was seen in my office on 04/05/2019. At this time patent can return to work in full capacity with no restrictions.

Signature _____    Dr. Mikhail Akselrud    Date:04/15/2019
Licence #296712-1
DEA #BA5707016

Dr. Mikhail Akselrud

*If any question you may contact above number to our office.*

CONFIDENTIAL

DELTA_LEE_00000051
Scanned with

 **David Needham** added a new photo.

Feb 24, 2021 · 🌐



 30

 

 **Sandy Mazzillo Margulis**
I should be with you in this pic with mine

CS CamScanner

 25





**Karen Dillon**

 crazy busy at work so I haven't been on FB for awhile.  What do I see when I finally find time to browse?! Good for you! Enjoy. Next time don't forget to take me!!

5y



facebook.com



CamScanner

← **David's post** 🔍

 **David Needham** updated his cover photo.
Feb 24, 2021 · 🌐    •••



 25



facebook.com    

CS CamScanner



**David Needham**

Feb 24, 2021 · 🌐

❤ 1

 facebook.com 

CS CamScanner

← **David's post**    🔍

 **David Needham** updated his profile picture.    ⋯
Oct 19, 2023 · 🌐



👍❤️ 34

↗

Most relevant ⌄

 **Sandy Rossen**
Living the dream! Awesome!

2y

 **Angela Sitaram**
Looking fabulous!

2y



facebook.com

 CamScanner

 **David Needham** added a new photo.

Aug 16, 2018 · 🌐                                                    •••



 14

 

 **Veronica Gilligan**
Love it!! Pre gaming for a quiet house! the
silence might wreck your head David 🤣

 CamScanner

From: **Kruit, Danielle R** <danielle.kruit@delta.com>
Date: Friday, April 30, 2021
Subject: Pretextual Suspension in Retaliation for engaging in
Legally Protected Activity
To: Erika Lee <leeerikalatise@gmail.com>
Cc: "Nabors, Kelley" <Kelley.Nabors@delta.com>

# Exhibit



Hello Erika,


Since you were approved for a voluntary unpaid leave of
absence through the end of April, your name appeared on a list
that the JFK employee support group was using to determine
who was returning to work. That list did not include the
information of your current status which is suspended. Since
I'm handling the investigation, they were unaware of the
circumstances. I've clarified with Pam that you are not
returning to work May 1st and will remain on suspension,
pending conclusion of the investigation and determination of
your status.



Thanks,

Danielle



From: Erika Lee <leeerikalatise@gmail.com>
Sent: Wednesday, April 28, 2021 1:46 PM
To: Kruit, Danielle R <danielle.kruit@delta.com>
Cc: Nabors, Kelley <Kelley.Nabors@delta.com>
Subject: [EXTERNAL] Pretextual Suspension in Retaliation
for engaging in Legally Protected Activity

mail.google.com

From: **Erika Lee** <leeerikalatise@gmail.com>
Date: Wednesday, April 28, 2021
Subject: Pretextual Suspension in Retaliation for engaging in Legally Protected Activity
To: "Kruit, Danielle R" <Danielle.kruit@delta.com>
Cc: Kelley.nabors@delta.com


Hello Danielle and "Equal Opportunity" ,

Last week I got a voicemail from Shalonda asking me about my return to work on May 1. Then my Delta manager at the airport got in touch with me last week , her name is  Pamela Bissendol , and she said she had no knowledge of me being suspensed  because she said I did nothing wrong to warrant a suspension and doesn't understand how or why I'm suspended since I haven't been in the workplace for over 1 year. I told Pamela that the pretextual suspension was based on me allegedly being "dishonest" or some alleged undisclosed "dishonest behavior" according to this Suspension letter you sent to me , but based on me engaging in legally protected activity (opposing discrimination and retaliation, asking for reasonable accommodation, exercising rights under FMLA ) and filing a FEHA /Title VII complaint .  Anyways So ,  am I off suspension starting May 1  ?  And Am I going back to work on May 1?  Please advise because my airport managers wanted to know. Thanks.

Sincerely,

Erika Lee



| Comments | PD Changed | PD Changed Comment | Change By | PD Expire Date | Action Status |
|---|---|---|---|---|---|
| Today Nicholas was issued a Written Coaching for conduct - specifically the confrontation of another FA in the GRU layover hotel on 13JUN16. Nicholas elected not to sign and was given a copy of the Written coaching. Nicholas asked to review his verbal coachings and expressed concern over the IVC's issued in NYC. Nicholas asked to speak with base leadership in DTW, however they were in meetings and I let him know I would work on setting up a meeting with either Cheronda Davis or Sam Johnson. I also encouraged Nicholas to set up a meeting with BM B'nard Rawls in NYC. Nicholas expressed that he would be contacting his attorney. | Y | Based on a review of the investigation file, I decided to overturn the WC. During the investigation we failed to collect all witness statements that corroborated what FA Pimentel was saying. FA Wurtz received an IVC and I believe that Pimentel's actions were similar. FSM Vieth and I contacted FA Pimentel to give him the news and he was very pleased. I told him that in looking at all points of the investigation and his and Hosanna's statements that I was overturning it and giving him an IVC. I said that this case is now closed. We discussed that we would still be meeting on 11/08 with CD Tanya Morgan to address other concerns of his but this one is put to rest and he agreed. | 0343326 | 08/30/2017 | Complete |

0343326



FA CONFIDENTIAL

| | |
|---|---|
| | guess their actions and decisions, making it a very hostile and uncomfortable atmosphere to safely and efficiently do their jobs.<br>• Priscilla said that she is not pre-judging Nicholas from what she heard from other crew or going on his reputation of writing people up. |
| **ILONA POLYAK (537250) E Flight Attendant** | • FA didn't remember anything of significance other than that she cut her finger on a bottle opener. |
| **NABILA NAIBKHEL (0668921) F Flight Attendant** | • Nabila didn't see anything usual that went on during this rotation. Nabila didn't really know what the complaint was about, however she didn't see anything that Nicholas did wrong on the flight.<br>• She stated Nicholas worked both ways in Business and she worked with him from GRU to JFK. She stated he was a good worker had no problems with him and that everything went very well.<br>• Nabila believes that any alleged crew conflict stems from a more personal issue and that it seems that Nicholas is the new kid on the block and now everyone goes after him.<br>• Nabila had a talk over dinner with Nicholas and told him that he should start making more friends because he is no longer in ACS. Nabila said that in IFS, they are all family and they should work together and be there for each other. If something happens, the crew will take care of each other and if a crew member doesn't have good relationships with colleagues, it will not be good.<br>• Nabila also thinks that people should leave their personal issues at home and not bring it to work place. She stated that if someone doesn't like someone, they shouldn't invite that person to their home. Crew members should come to work and try to work together and not against each other.<br>• Nabila stated she always believes that crew members are one family from the moment they sign in until they get back. Of course they all have their differences but personal issues should be left at home.<br>• Nicholas first flight was with Nabila and Nabila knows Nicholas thinks differently and it seems he is changing. Nabila stated she thinks that Nicholas should be given some time. She sees Nicholas like her son and she tries to tell him what is best for him. |
| **RONALD MIRANDA (693079) H Flight Attendant** | • Ronald did not witness any issues at all and actually worked opposite cabins both ways. |
| **PD Recommendation** | • PRISCILLA IVANOFF, IVC<br>• NICHOLAS PIMENTEL, none |
| **Rationale:** | • No FA corroborated Pricilla's statement:<br>"Nicholas' presence made her and every other crew member second guess our actions and decisions, making it a very hostile and uncomfortable atmosphere to safely and efficiently do our jobs." |

# Exhibit N

CONFIDENTIAL

DELTA000276



| | |
|---|---|
| **Development Opportunities:** | • Discuss with FA Priscilla Ivanoff:<br>  o Implications of assuming negative intentions (i.e. assuming FA Arturo might take a picture with his SkyPro or that he might go into leadership and the implications of that)<br>  o Revisit and coach on Crew Resource Management skills (in particular crew coordination, communication, workload management). Useful skills to use when there are issues with LOD positions responsibilities<br>  o Ensuring FA that crew members are trained professionals and are given the tools and training to deal with adverse events that can happen in the air (i.e. turbulence, medical emergencies, threats)<br>  o Discussing that all people are entitled to have aspirations of career growth and advancement<br>  o Review of Rules of the Road (in particular "Demonstrate honesty, integrity, and respect) |

Ex. N

# EXHIBIT Q

Danielle,

Danielle, you said I was a "liar" and "dishonest" or had committed "dishonest behavior" after I opposed sexual harassment, race discrimination and retaliation in February 2021. Then after reading this email u sent on 04/12/2021 , now, all of a sudden, you are claiming that you are conducting an "investigation into a complaint" that I made "false statements" which "concern an alleged phone call with David Needham."   So are these just "allegations" or are they "false statements "?  Which are they ?  If they are just allegations, Then why did you personally write and sign your name on the 03/26/2021 Suspension letter that I am "dishonest" as if it were a fact or that I was suspended for "dishonest behavior" as if it were factual ,  yet you just admitted that you are still "conducting an investigation" into "the allegations" that I "made false statements"????  According to your Suspension letter , before you started "conducting" this alleged "Investigation," you had already determined that I am "dishonest" and engaged in "dishonest behavior."   So because you already concluded , without or before "conducting an investigation" that I am "dishonest," then why are you are still continuing to harass me by demanding I answer all these questions if you allegedly already determined that I am "dishonest"??? It makes absolutely no sense.  You do not personally know if I am dishonest or not!

Furthermore ,  I already answered these questions the best way I could in our phone meeting. I do not have any obligation to answer questions regarding my lawful off duty conduct, as it is an invasion of my privacy.   Some states have laws that ban employers from taking adverse employment action against employees based on lawful off-duty conduct. Presently,

Scanned with CamScanner

California, Colorado, Louisiana, New York, and North Dakota prohibit employers from firing or retaliating against employees for off-duty lawful activity, including speech. Article 1, Section 1 of the California Constitution gives each citizen an "inalienable right" to pursue and obtain "privacy." California's constitutional right to privacy guarantees the privacy right is "an inalienable right which may not be violated by anyone" including private parties. So therefore I have no new information except to inform you that I'm filing a complaint with the California Labor Commissioner for being suspended for lawful off duty Conduct , for loss of wages and being retaliated against under Labor Code section 96(k) which Provides the Labor Commissioner with authority to be assigned claims for loss of wages that arise from retaliation for lawful conduct occurring during nonworking hours and away from the employer's premises.

California Labor Code section 96(k) provides protections for employees who are terminated for "lawful conduct occurring during nonworking hours away from the employer's premises." California Labor Code Section 96(k) makes the following conduct illegal: "... demotion, suspension, or discharge from employment for lawful conduct occurring during nonworking hours away from the employer's premises.

Additionally, I was just asked to Resign by Delta's worker's compensation lawyer, so this proves that this suspension is pretextual and clearly also has no merit based on what you've been saying in these emails before any investigation was conducted. If I were dishonest, you wouldn't need to ask me these questions either.

Once again, Am I being paid to respond to these harassing emails? I haven't been an active Delta employee for at least 1 year , so anything I've allegedly done in or 2021 was off duty conduct, which Delta suspended me , before even being investigated.

Now Please cease and desist from emailing me again to ask more invasive questions about my off duty conduct , violating my privacy , and insisting I write written detailed responses, as this is time consuming work and Delta is also not paying me to do any work , so I will not do it . I'm not answering any more emails about my off duty conduct so your emails regarding these topics will be ignored and unanswered . You will be receiving a complaint from the California Labor commissioner. Thank you.

Sincerely ,

Erika Lee

EXHIBIT Q


Scanned with CamScanner

On Monday, April 12, 2021, Kruit, Danielle R <danielle.kruit@delta.com> wrote:

Erika:

Thank you for your email.

There is no effort here to brand you as dishonest and I have not called you "dishonest." Instead, I have informed you that we are conducting an investigation into a complaint that you made false statements in relation to Delta. I have also told you that the allegations concern an alleged phone call that you had with David Needham. These are serious allegations and I have cautioned you to be cooperative and candid in your dealings with me on this matter.

You have now indicated that you called David on February 19 from an airport phone. Based on your statement, there are some additional questions that I would like for you to answer directly:

1. What airport did you make the call from?
2. What approximate time did you arrive at that airport?
3. Why were you at the airport? If to take a flight, please provide the flight details including airline, the destination airport, departure time, and flight number.
4. What terminal did you make the call from?
5. What is the nearest gate to the airport phone that you claim you used to call David? If you know the actual location of the phone, please specify it.
6. Did you use any Delta crew facilities (such as the crew lounge) while at the airport and, if so, which ones?
7. Did you use any facilities that required you to swipe your badge? If so, which ones?
8. Please provide a copy of your cell phone bill covering February 19, 2021, the day of the alleged call. You may black out the names of persons called but leave the numbers.
9. Please provide the number of phone calls made and received by you on your cell on February 19th and for each such call indicate whether it was incoming or outgoing and the time and duration of the call:

2 calls.

Call #1: Incoming, 4 mins.



Scanned with CamScanner

# EXHIBIT Q

**From:** Erika Lee <leeerikalatise@gmail.com>
**Sent:** Friday, April 02, 2021 2:10 PM
**To:** Kruit, Danielle R <danielle.kruit@delta.com>
**Cc:** Nabors, Kelley <Kelley.Nabors@delta.com>
**Subject:** [EXTERNAL] Re: Reasonable Accommodation Request

This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.

Danielle,

What were the exact questions you had that you want me to respond to in writing ? Please

Scanned with CamScanner

What were the exact questions you had that you want me to respond to in writing ? Please email them to me.

I asked for a Reasonable Accommodation for my disability in February 2021 and in March 2021 and Delta and you and David and HR and Equal Opportunity have still refused to engage in the interactive process once again.

I don't recall ever telling you Personally or anyone at Delta that I have a "voicemail left by David on February 17, 2021 "and "phone records documenting the phone calls" so please cease and desist from harassing me about my Personal cell phone records that you are not privy to . This is an invasion of my privacy . Delta does not own my phone nor does Delta pay my cellular phone bills so You have no right to demand to see my personal cell phone records or to be asking me who I'm dating, living with , sleeping with or communicating with when I am not in my profession capacity and/or not an active Delta employee. You have no right to know who I'm dating, living with , sleeping with or communicating with when I am not in my professional capacity at Delta and/or not an active Delta employee. Shall you not cease and desist from harassing me about my personal phone records , I will get a Court Order for you to stop harassing me, as this is an invasion of privacy , as you are not a law enforcement agency and you must cease and desist fromStalking me and putting me under constant surveillance. Also , I never once told you that I called David from my personal cell phone. I called him from an airport phone, so I wouldn't have access to those phone records. Once again, if you continue to harass me and demand personal phone records that you are not privy to , I will seek a restraining order against you. You have no right to know anything about my off duty conduct, as I have been on a leave of absence for almost a year. My personal cell phone records have nothing to do with me Opposing The illegal discrimination and retaliation and hostile work environment that Delta Managers subjected me to.

Sincerely



EXHIBIT Q

Erika Lee

On Friday, April 2, 2021, Kruit, Danielle R <danielle.kruit@delta.com> wrote:

Erika,

Scanned with CamScanner

# EXHIBIT R

**From:** Erika Lee <leeerikalatise@gmail.com>
**Sent:** Tuesday, March 30, 2021 6:12 PM
**To:** Kruit, Danielle R <danielle.kruit@delta.com>
**Subject:** [EXTERNAL] Suspension for "dishonest behavior"

This message is from an EXTERNAL SENDER - be CAUTIOUS, particularly with links and attachments.

Scanned with CamScanner

Hello Ms. Kruit,

# EXHIBIT R

I received the Suspension letter into my alleged "dishonest behavior." I don't believe I have never met you before. Are you based in Detroit or Atlanta ? I have never worked in Detroit or Atlanta. Who told you I was "dishonest" or committed some "dishonest behavior?" I am just really confused as to how I am "dishonest" or how or when I committed some "dishonest behavior" and how this warranted me being suspended. This is clearly retaliation for my recent February 2021 complaint to HR of sexual harassment/sexual assault by Delta Manager Bernadette Komasi who has been asking me to show her my "black cat" since 2017 , amongst other things and who even spanked my butt in 2020. Less than 1 month ago I reported that to HR and now , in retaliation, I'm suspended and Delta took away my pass travel benefits to retaliate against me for complaining about sexual harassment.  The truth is I, a black woman, am being retaliated against for not wanting to be sexually harassed at work by a white lesbian Delta Manager.  I would like to know who exactly is making these "allegations" that I'm "dishonest."


So should I call you on April 1,2021 as it states in that Suspension letter ? I'm on the West Coast so please dont move the time before PST business hours. Also , I recently became a full time employee and was expecting to begin receiving health care benefits , which I need for my disability. So I'm requesting a reasonable accommodation that any health insurance benefits not be interrupted as I have a disability that I will need to see a doctor and get medication. Are the health insurance benefits  going to be Also taken away as well ? How long am I suspended for ?  Am I coming back to work on May 1?


I remember when I last opposed sexual harassment by Manager Bernadette Komasi in April 2019 to Delta's Equal Opportunity Department, Delta  suspended me for 2 weeks and caused me to lose income to retaliate against me. So now . Am I only being suspended for 2 weeks again like last time for opposing sexual assault (being spanked) by Manager Bernadette Komasi or is this suspension going to be longer than 2 weeks ?   In 2018 , when I opposed sexual harassment by Manager Bernadette Komasi to Ashley Rangel, I was retaliated against and had my swapping benefits revoked, pass travel benefits revoked ,seniority shift bidding privileges revoked , denial of FMLA , denied me ability to pick up hours to earn income.  The retaliation is relentless because I'm a black women with a disability.   What is really disturbing is how Delta allows white women (Erin Pieroni , Delgado, Maria Tamburrini, etc ) employees to oppose sexual harassment by non white men (Neil Muhammed and Joe Jackson ) in the workplace without any retaliation

Scanned with CamScanner

(suspensions or benefits taken away ) but when black women (me , Donya Williams ) make a complaint about being sexually harassed , we are called names, labeled "dishonest" and immediately retaliated against by Delta and/or racially hostile white HR managers such as yourself. This is racial discrimination. Why are black women at Delta never treated equally at Delta?    If I were white like those white women (Erin Pieroni , Delgado , etc ) who accused Joe Jackson , a black male Manager , without any evidence , I would never be branded "dishonest" as Erin Pieroni etc were never told by HR Manager William Ittounas that  they were "dishonest.".  Then, Joseph Jackson , a black man , was terminated based solely on Erin Pieroni's word because she's a pretty blond white female , she is automatically considered "honest" but when I , a black woman , complain about a white lesbian women sexually harassing me and sexually assaulting me (with witnesses ) I'm labeled "dishonest" by white HR Managers at Delta who don't even know me and were not there at the time.  You and Delta are perpetuating violence against black women.  Because of my race and gender I'm being disparately disciplined and disparately retaliated against for the same exact protected  "conduct" that white women Erin Pieroni Maria Tamburrini and Delgado engaged in , but who were never suspended for .  It's not a surprise that many  people are publicly boycotting Delta this week , as Delta continues publicly perpetuating racism to disenfranchise blacks and poc and society is now aware of Delta's racism and protesting it.

Sincerely,



Erika Lee

View Gmail in: **Mobile** | Older version | Desktop

© 2021 Google

Scanned with CamScanner

## DECLARATION OF ROSONDA BROWN

I, Rosonda Brown, declare under penalty of perjury pursuant to 28 U.S.C.§ 1746, that the foregoing is true and correct. I, Rosonda Brown, have personal knowledge of all of the facts in this Declaration and the information set forth in this Declaration is true and correct to the best of my knowledge, except where stated "upon information and belief." I, Rosonda Brown, declare that if called as a witness, I am competent to testify as to all matters herein if called to do so and will testify to the same at trial.

1. I was formerly a Delta CSA in Delta's SkyClub in Los Angeles, CA. Not any Delta CSA in the airport can just be "assigned" to the SkyClub, one must apply, interview and wait to be hired and then do local training. There is a competitive hiring process every time a SkyClub position opens up.

2. I previously worked with Erika Lee and Caroly Watts Lynch. A Los Angeles Federal jury found Delta to be liable of intentionally discriminating against Carol Watts Lynch for denying her reasonable accommodation. When Delta finds out or discovery or believes an employee is disabled, has medical conditions, or asks for reasonable accommodations, Delta discriminates and invents fraudulent reasons to remove employee from the workplace and suspends them without pay for a long period of time until Delta decides to terminate them. This is Delta's standard modus operandi. Delta never unilaterally initiates reasonable accommodation requests for employees. Quite the contrary, Delta discourages and retaliates against employees with suspension without pay and termination when employees make reasonable accommodation requests. Most times Delta does not even engage in the interactive process, they just deny most reasonable accommodations by ignoring them, neglecting them and never addressing them. Most times when you do make reasonable accommodation requests to Delta, they are almost always ignored and dismissed by Delta's negligence and refusal to engage in interactive process. It is only when Delta suspects, fears, or has reason to believe, the employee will file a lawsuit, does Equal Opportunity get involved. Most times, Delta's HR Managers handle reasonable accommodations and also just denies them by neglecting and ignoring them. Most times Delta does not even engage in the interactive process, they just deny most reasonable accommodations by ignoring them, neglecting them and never addressing them. The way to know if Delta actually engaged in the interactive process or considered an employees' reasonable accommodation is if, after any alleged "IGD" is had and the "IME" that Delta schedules you for, Delta then sent their standard reasonable accommodation letter on Delta letterhead after the "IGD" or interactive process discussion took place and Delta outlines in writing in this letter, what Delta can or can not accommodate and Delta makes all of their findings, as Delta did with Tabitha Hutchinson and Jennifer Palmer, and other who Delta actually went through the interactive process with. If Delta never sent Erika to get an "IME" from Delta's doctors and Erika never received a Delta accommodation letter

## DECLARATION OF BROWN

1   after the "IME" and "IGD,"  it means Delta never conducted any interactive process or
2   really had any "IGD" meeting with Erika.
3. As a former Delta SkyClub CSA employee myself, I know the SkyClub position does not
3   require any lifting of any objects above approximately 3 lbs., does not require any
4   excessive standing for long periods of time, or any pulling or pushing of heavy objects.
    During "IROP," SkyClub agents never are required to leave the SkyClub and go assist in
5   the Ramp or in ACS and lift any heavy objects or bags.  A SkyClub agent will NEVER
6   HAVE TO LIFT ANY PASSENGER'S BAGS AT ANY TIME or go assist in any other
    departments, as the SkyClub has very limited staff and is always understaffed. If anything,
7   ACS agents come into the SkyClub to assist sometimes. When applying, interviewing, and
8   being hired for Delta SkyClub, Delta's ads and/or job description  don't have any minimum
    lifting requirements in writing and Delta does not make you take a lifting test. However,
9   when you are applying, interviewing, being hired, and training for ACS and Ramp(where I
10  also worked), you must pass weight lifting assessments, as lifting between 50-75 lbs is a
    job requirement. Delta never imposes any lifting requirements for SkyClub employees,
11  except for discriminatory purposes, because when Delta knows an employee has
12  restrictions or is disabled,  only then will Delta impose lifting requirements on the
    employee they believe is disabled, to use as a fraudulent reason to suspend or terminate the
13  employee they believe is disabled.  They did this same thing to me and Carol Watts Lynch
14  and a Los Angeles jury agreed that Delta discriminates in the manner I described. Delta
    usually retaliates with suspension without pay for 2 weeks(if they bringing you back to
15  work) or for around 4 months, when they are planning on terminating you.  The reason I
16  know that Delta never put Plaintiff on any "leave of absence" or "APA leave" in April 2019
17  is because when Delta puts you on one of these "leave of absence" or "APA leaves" for not
    being able to meet the lifting requirements, Delta does not let you return in 2 weeks or less
18  and Delta will not bring you back to work just because a doctor's new note changed the
19  employees lifting restrictions. In fact, if the doctor changes the lifting restrictions, Delta
    wont believe the employee and/or the doctor and will send the employee to an "IME."
20  Also, if Erika didn't get a formal Delta "APA letter" in the mail on Delta letterhead
21  explaining the program and how to find and search and apply for new jobs and check-in
22  with Equal Opportunity, it means Delta never put Erika on this very specific, indefinite
    "APA leave of absence" which only allows employees to return to workplace once they
23  found a new position. Also, if Erika never got paid with a short term or long term
24  disability check from Sedgwick in April 2019 while out on this alleged "APA leave of
    absence," it means Delta never put Erika on this very specific, indefinite  "APA leave of
25  absence," which is a long term leave of absence program that lasts until you are hired at a
26  new Delta position. If Erika didn't get a new Delta job after returning from this leave, it
    absolutely means Delta never put Erika on this very specific, indefinite  "APA leave of
27  absence."  I was on this "APA leave of absence" for a very long time(over 1 year) and so
28  was Carol Watts Lynch.

**DECLARATION OF BROWN**

4. While Delta may have arbitrarily imposed weight lifting requirements for Carol Watts Lynch for the SkyClub, but Delta only did that to attempt to keep Carol Watts Lynch out of the workplace and terminate her by putting her on this indefinite leave of absence , and the Los Angeles jury agreed with this fact. There are NO weight lifting requirements for SkyClub employees. When I was working with Carol Watts Lynch in the SkyClub, both Carol Watts Lynch and I never lifted any bags or anything over 3 lbs, nor were we ever requested to go work in ACS 125 or the 120 Ramp departments at any time, including during "IROP."

5. The Equal Opportunity Department is the department at Delta Airlines that Delta directs you to go to regarding discrimination, harassment, retaliation, hostile work environment, etc. Delta's Equal Opportunity Managers are responsible and authorized to handle discrimination, harassment, retaliation, hostile work environment complaints. It is their main, primary job responsibility and what they do all day.

6. I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S. Code § 1746, that the foregoing is true and correct. Executed on 09/12/2025.

ROSONDA BROWN

**DECLARATION OF BROWN**

# DECLARATION OF AASIR AZZARMI

I, Aasir Azzarmi, declare under penalty of perjury pursuant to 28 U.S.C.§ 1746, that the foregoing is true and correct. I, Aasir Azzarmi, have personal knowledge of all of the facts in this Declaration and the information set forth in this Declaration is true and correct to the best of my knowledge, except where stated "upon information and belief." I, Aasir Azzarmi, declare that if called as a witness, I am competent to testify as to all matters herein if called to do so and will testify to the same at trial.

1.Delta does not maintain an Equal Employment Opportunity ("EEO") Policy that prohibits all forms of unlawful discrimination, including discrimination based on race, color, religion, national origin, creed, age, sex (including pregnancy), disability, genetic information, marital status, sexual orientation, gender identity, citizenship status, parental status, veteran status or other characteristics that may be protected by law, as well as harassment and retaliation.

2.  Delta does not have any" commitment to non-discrimination and non-retaliation. In fact , Delta has systemic pattern and practice of intentionally discriminating , retaliating, harassing based on race, color, religion, national origin, creed, age, sex (including pregnancy), disability, genetic information, marital status, sexual orientation, gender identity, citizenship status, parental status, veteran status or other characteristics that may be protected by law, as well as harassment and retaliation.

3. I was a CSA at JFK Airport from 2012-2014.  Not any CSA can just go work in the SkyClub. Not only is there training involved, but some CSAs aren't hired into the SkyClub due to image, presentation, people skills or communication skills. Even during IROP, a CSA who is a Ramp Agent who wears clothes that a mechanic wears will never be asked to go work in the SkyClub when there is "IROP," as the Ramp Agent doesn't have the training, experience, presentation, and computer skills to just go work in the SkyClub for a few hours in their mechanic-like clothes. And vice versa, a SkyClub agent will never (because of FAA) be asked to go do Ramp Agent duties for the day  because of "IROP."  Now, as a CSA in Dept. 125, there were a few times where the SkyClub was short-staffed and they asked me to go work in the SkyClub for the day, but it wasn't due to "IROP," but because of call-outs. However, even during IROP, I have never seen or heard of any SkyClub CSAs coming out of the SkyClub and working in Dept 125.  It just never happens because there are very few positions in the SkyClub and they are also short staffed as it is and when there is "IROP," the SkyClub is the most busiest time because all of the members and VIPS are hiding in there to relax, work, eat, drink while the flight is delayed and the SkyClub agent are needed more than ever. It just NEVER happens. Also, it is specialized position, many 125 Airport agents have interviewed for the position and have not been hired. A lot of older women and disabled people want to get hired in the SkyClub because there are no lifting requirements, either you work at desk doing check-ins and ticketing or you do meet and greets and escort VIPS from curb to SkyClub and then to plane.

# DECLARATION OF AZZARMI

1   Not any Delta CSA in the airport can just be "assigned" to the SkyClub.  When I've worked
2   in the SkyClub in both JFK and LGA airports, all of the SkyClub agents have told me that
    they love this job because of all the free good food, air conditioning, nicer passengers,
3   beautiful environment, and most importantly because they NEVER have to lift any bags or
    anything more than 4 lbs. You will never see a SkyClub agent lifting a bag or needing to lift
4   anything heavy above 3 lbs.(restocking paper or food perhaps)because the passengers have all
5   already checked in their heavy luggage before going through security, as SkyClubs are after
    TSA and Delta agents stand in front of TSA to screen and prevent those large heavy bags
6   from going through TSA.  There simply is no lifting of any bags or anything heavy, even
7   when Delta advertises the SkyClub job on the internet, they do not list any lifting
8   requirements and there is almost no standing for long periods of time. This is the appeal and
    allure of it and why older people and disabled people all want to be hired in the SkyClub and
9   they rarely ever want to leave the SkyClub once they work there, as its a nice place to work
10  and you don't incur any bodily wear and tear.  Only 125 ACS CSA's and 120 Ramp CSA's
    have to be able to 70 pounds occasionally and 50 pounds frequently, but while Delta labels
11  them "CSAs," it is not the same job position as a SkyClub "CSA," and the job requirements
12  are completely different.
13  5.Delta HR Managers are responsible for handling accommodation requests.  I gave Erika the
    Exhibit 5a is a true and correct copy of Delta Bates stamped document "DELTA000404,
14  DELTA000405, DELTA000406" which I personally received from Delta's attorneys at
15  Morgan Lewis.  Also, Delta HR Manager Bill Ittounas and Delta's attorney authenticated this
    document in Workers Comp Hearing which is Exhibit 5, that I also gave Erika.  Every time I
16  asked Delta's Equal Opportunity office (Pamela Kelly, Melissa Seppings, etc.) for a
17  Reasonable Accommodation, they always forwarded it to HR Managers, such as Emily
    Pardo, Bill Ittounas, or Courtney Ebert to "handle" and they never engaged in interactive
18  process or ever provided any reasonable accommodation. Sometimes they pretend to take
19  employees through the process, but then eventually they invent pretextual reasons to retaliate
    and discriminate and terminate. Even when Delta can easily provide a reasonable
20  accommodation which wouldn't cause them any inconvenience or any money, Delta will 9
21  times out of 10 deny it because they punish for even asking, and revealing you have a
    disability to Delta, 9 out of 10 times results in termination, indefinite suspension without pay,
22  or indefinite APA leave of absence, where they usually don't allow you to return.  Delta's
23  former EO employees have all told me that "The reason Delta has a corporate policy not to
    approve any reasonable accommodations is because Delta believes they are the law and they
24  don't have to follow any law, Delta doesn't want to open the floodgates and approve any
25  reasonable accommodations because everybody will ask for one, Delta doesn't want any
    disabled employees working there, and Delta doesn't want to retain any employees who
26  actually think or believe they have any legal rights." One EO employee told me a famous
27  story of a Delta employee who asked Delta "Equal Opportunity"  for a reasonable
    accommodation with a doctor's note to be able to use the bathroom 1 time per hour for at
28  least 3 minutes every hour, due to a gastrointestinal disease, Delta denied it, told the

**DECLARATION OF AZZARMI**

1  employee they couldn't use the bathroom anytime they felt like it without permission,
2  suspended the employee without pay for a few weeks, and then terminated the employee for
   insubordination for using the bathroom too many times. Delta also has a "no write-up policy"
3  that they strictly enforce and they tell you at least 3x a day in training, "you never complain,
   never record, and you never write anything down on paper or in emails about your complaints
4  or experiences to Delta, you can only talk to a manager and you can't record any
5  conversations."
6  8. Delta's Equal Opportunity Managers, such as Pamela Kelly, Henrietta Archie, Melissa
   Seppings, and Kelly Nabors, all do handle any and all investigations for discrimination,
7  retaliation, harassment issues or when Delta gets an EEOC charge.  Delta's EO office is just
8  Delta's legal office where Delta's corporate in-house defense attorneys systemically
   discriminate, retaliate, commit wage theft, and other illegal acts under the guise of being an
9  "Equal Opportunity" office. This is Delta's standard operation procedure. When I opposed
10  illegal discrimination, retaliation, harassment , EO Manager Pamela Kelly did the
   investigation and suspended me without pay and terminated me.  Because I opposed sex
11  discrimination at Delta Airlines, Delta's Equal Opportunity Manager( a different woman)
12  demoted me in retaliation and I know this because my manager showed me what Delta's EO
   Manager sent her in an email, because the EO Manager made the order and decision to
13  demote, suspend and terminate me, as Delta's EO Department uses and reviews "the law" and
14  their legal strategies to make their decisions to suspend, retaliate and terminate. Delta EO
   Manager Kelly Nabors has testified to this too. Delta's Equal Opportunity Managers, such as
15  Pamela Kelly, Henrietta Archie, Melissa Seppings, and Kelly Nabors, EO Managers, are
16  responsible for and authorized to conduct investigations into complaints of discrimination,
   as  discrimination and harassment and retaliation issues are always and only handled by Equal
17  Opportunity.
18  9. I gave Erika what she labelled as Exhibit M, which is a true and correct copy of Delta
19  Bates stamped document "DELTA000009," which I personally received from Delta's
   attorneys at Morgan Lewis.  "DELTA000009" is evidence that Delta employee Hosana
20  Wurtz, who says she is "white," intentionally made 100% false accusations against me, where
21  she intentionally lied(and theres a video of the entire interaction)to Delta and told Delta that I
   "lunged" at her and physically assaulted her. I received an adverse employment action and
22  was demoted because Delta believed her initially, without any investigation, as Delta rarely
23  ever does any substantial investigations. When Delta discovered that Delta employee Hosana
   Wurtz lied and intentionally made 100% false accusations against me, and that Hosana Wurtz
24  was one of the catalysts that caused me to file EEOC charge, Delta only had a non-punitive
25  conversation with Wurtz("IVC") and didn't suspend or terminate Hosana Wurtz even when
   Delta knew for sure that employee Hosana Wurtz maliciously and intentionally lied to Delta
26  and made 100% false accusations. Delta can't deny any of this. The document speaks for
27  itself.
28  Delta only punishes the victims, not the perpetrators.  The more evil, immoral, slanderous and
   debaucherous acts an employee engages in, the more Delta rewards, celebrates and _____

**DECLARATION OF AZZARMI**

1  appreciates them. Once I saw our pilot smoking METH in the hotel before operating the
2  international flight home, when I told a Delta manager about this, she told me "If you ever
   open your mouth, you will be in trouble, not him, so shut your mouth." "Honesty, integrity,
3  respect" is the total opposite of what Delta practices.
4  10. I gave Erika what she labelled as Exhibit M, which is a true and correct copy of Delta
   Bates stamped document "DELTA000276," and "DELTA000277," which I personally
5  received from Delta's attorneys at Morgan Lewis.
6  "DELTA000276" and "DELTA000277" is evidence that Delta employee Priscilla Ivanoff,
   who is "white," intentionally made 100% false accusations against me, where she
7  intentionally lied to Delta and told Delta that I created a "hostile work environment" yet I
8  never spoke a word to this woman and never worked near her. I had my step-dad and at least
   8 others as witnesses. When Delta discovered that Delta employee Ivanoff lied and
9  intentionally made 100% false accusations against me, once again Delta only had a non-
10 punitive conversation with Ivanoff("IVC") and didn't suspend or terminate Ivanoff even
   when Delta knew for sure that employee Ivanoff maliciously and intentionally lied to Delta
11 and made 100% false statements. The document speaks for itself. I know of at least 3 other
12 non-black employees who Delta caught lying and making 100% false accusations against
   other employees, none of these other non-black Delta employees were ever suspended or
13 terminated when Delta determined they were dishonest or making false statements under
14 perjury.

15 I declare under penalty of perjury under the laws of the United States of America, pursuant to
16 28 U.S. Code § 1746, that the foregoing is true and correct. Executed on 09/13/2025.
17
18
19                    Aasir Azzarmi
20
21
22
23
24
25
26
27
28

**DECLARATION OF AZZARMI**