**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ERIKA LEE, | |
| Plaintiff, | |
| v. | 22-cv-8618 (DEH) (RWL) |
| DELTA AIR LINES, INC., | |
| Defendant. | |

**DEFENDANT'S COMBINED REPLY MEMORANDUM IN FURTHER SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO**
<u>**PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

MORGAN, LEWIS & BOCKIUS LLP

Ira G. Rosenstein
Imani D. Gunn
101 Park Avenue
New York, NY 10178
T: (212) 309-6000
F: (212) 309-6001
ira.rosenstein@morganlewis.com
imani.gunn@morganlewis.com
*Counsel for Defendant Delta Air Lines, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................... 2

    A.    Plaintiff Failed to Properly Address Delta's Statement of Facts, and Such
        Facts Should Therefore Be Deemed Admitted. ..................................................... 2

    B.    Plaintiff Has Not Demonstrated Any Genuine Dispute of the Material
        Facts or That She Is Entitled to Summary Judgment............................................. 6

        1.    Plaintiff was not subject to sexual harassment or a hostile work
             environment. ............................................................................................ 6

        2.    Plaintiff was not suspended in April 2019. ................................................ 9

             a.    Plaintiff requested accommodations for limited lifting and
                  standing, and to leave work at the end of her scheduled
                  shift. ............................................................................................. 10

             b.    Delta determined during the interactive process that
                  Plaintiff was unable to fulfill the essential functions of her
                  role due to her restrictions............................................................ 11

             c.    Delta did not place Plaintiff on a Sedgwick-administered
                  Leave of Absence or into Delta's Alternative Position
                  Assistance Program....................................................................... 12

        3.    Plaintiff was suspended and terminated for legitimate, non-
             discriminatory and non-retaliatory reasons............................................... 13

             a.    Plaintiff's activity was not protected. .......................................... 14

             b.    Plaintiff fails to establish pretext. ............................................... 15

III.    CONCLUSION............................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Aziz Zarif Shabazz v. Pico*,
   994 F. Supp. 460 (S.D.N.Y. 1998) (Sotomayor, J.)....................................................................9

*Barnes v. City of New York*,
   No. 13-CV-7283, 2015 WL 4076007 (S.D.N.Y. July 2, 2015)...............................................4

*Bellsouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*,
   77 F.3d 603 (2d Cir. 1996)......................................................................................................5

*Brown v. City of New York*,
   No. 16 Civ. 1919 (ALC), 2018 WL 3821620 (S.D.N.Y. Aug. 10, 2018)................................4

*Bryant v. S. Country Cent. Sch. Dist.*,
   No. 14-CV-5621, 2017 WL 1216553 (E.D.N.Y. Mar. 31, 2017).............................................4

*Dixon v. Zenk*,
   361 F. App'x 218 (2d Cir. 2010) ...........................................................................................11

*Genova v. County of Nassau*,
   No. 17-CV-4959, 2020 WL 813160 (E.D.N.Y. Feb. 19, 2020) ...............................................4

*Jeffreys v. City of New York*,
   426 F.3d 549 (2d Cir. 2005).....................................................................................................9

*Kennedy v. City of New York*,
   570 F. App'x 83 (2d Cir. 2014) .............................................................................................12

*Manolis v. Brecher*,
   No. 11-CV-2750, 2014 WL 642849 (S.D.N.Y. Feb. 14, 2014)................................................4

*Mitchell v. Metro-N. Commuter R.R.*,
   No. 12-CV-0489, 2014 WL 431343 (S.D.N.Y. Feb. 4, 2014)..................................................8

*Mohammed v. New York City Dep't of Educ.*,
   932 F. Supp. 2d 420 (E.D.N.Y. 2013) ..................................................................................16

*Polite v. VIP Cmty. Servs.*,
   No. 20CIV7631, 2022 WL 9847075 (S.D.N.Y. Oct. 17, 2022) .......................................14, 15

*Porter v. Quarantillo*,
   722 F.3d 94 (2d Cir. 2013)......................................................................................................5

*Risco v. McHugh*,
   868 F. Supp. 2d 75 (S.D.N.Y. 2012).......................................................................................3

*Robinson v. De Niro*,
  739 F. Supp. 3d 33 (S.D.N.Y. 2023).........................................................................................3

*Rodriguez v. Count. of Nassau*,
  830 F. App'x 335 (2d Cir. 2020) .............................................................................................8

*Rojas v. Roman Cath. Diocese of Rochester*,
  738 F. Supp. 2d 381 (W.D.N.Y. 2010).....................................................................................8

*Sanders v. Madison Square Garden, L.P.*,
  525 F. Supp. 2d 364 (S.D.N.Y. 2002)....................................................................................14

*Schweit v. City of New York*,
  No. 04CV5462, 2007 WL 1133440 (E.D.N.Y. Apr. 17, 2007)...............................................17

*Tripathy v. McCloskey*,
  No. 21-CV-6584, 2024 WL 2135623 (S.D.N.Y. May 13, 2024) .............................................4

*Uttarwar v. Lazard Asset Mgmt. LLC*,
  No. 24-1085-CV, 2025 WL 704278 (2d Cir. Mar. 5, 2025)...................................................16

*Yu v. New York City Hous. Dev. Corp. (HDC)*,
  No. 07 CIV. 5541, 2011 WL 2326892 (S.D.N.Y. Mar. 16, 2011) .......................................5, 6

## I.    <u>INTRODUCTION</u>

As Defendants demonstrated in their Motion for Summary Judgment (the "Motion"),[1] there exists no *genuine* dispute of material fact to permit Plaintiff to overcome summary judgment.  That is, in support of her claims and in opposition to the Motion, Plaintiff continues to offer only her own contradictory, vacillating, self-serving, and altogether fantastical testimony, or inadmissible statements of individuals clearly lacking personal knowledge of the purported facts, or whose testimony contradicts Plaintiff's own asserted facts.  Such tactics raise no genuine dispute of material fact under the law.  Nor is Plaintiff's purported cross-motion for summary judgment ("Cross-Motion") worthy of credence, as it is based solely on Plaintiff attributing an admission to Delta that it did not make and her misapplication of the law.

Plaintiff does not credibly or substantively dispute Delta's Motion, its Rule 56.1 Statement, or any of the plentiful evidence cited therein.  Instead, she relies solely on conclusory and unsupported statements that cannot overcome Delta's well-supported filings.  Specifically, the evidence demonstrates that in early 2019, Plaintiff engaged with Delta's EO Department seeking a job accommodation that would limit her standing, bending, and lifting, and that would permit her to leave work early.  Plaintiff's request related to her position in the LGA Sky Club, which she testified routinely required that she lift items, stand for long periods of time, and stay past her scheduled shift subject to the needs of the airport.  Plaintiff's medical documents, submitted in support of her request and signed by two separate healthcare providers, indicated that Plaintiff had medical limitations that substantially limited her ability to fulfill the admitted job requirements, i.e., that she could not stand for extended periods or lift more than a few pounds, and that she needed to depart on time every day.  In light of this information, and the

---

[1] All defined terms and abbreviations herein are ascribed the same meaning as in the Motion.

requirements of the role, Plaintiff was temporarily unable to report to work in April 2019, given her doctor's representation that she could not do so safely. When Delta received subsequent paperwork explaining that Plaintiff's restrictions were removed, she was immediately returned to work. None of this is genuinely disputed.

The evidence further demonstrates that Plaintiff was suspended in 2021 pending an investigation into credible allegations that she had lied about her interactions with a Delta employee. Upon further investigation, during which Plaintiff behaved insubordinately in violation of Delta policy, Delta substantiated the allegations of Plaintiff's dishonesty and terminated her as a direct result of that finding and her insubordination. Again, Plaintiff cannot and does not credibly dispute those facts. Moreover, in support of her allegations that she was subject to extreme, outrageous, and ongoing public sexual assault and harassment at the hands of Sky Club employee Bernadette Tamasi, Plaintiff offers only her own inherently implausible and contradictory testimony, and now an affidavit from a purported witness that *directly* contradicts Plaintiff's own testimony.

For the reasons set forth below, as well as in Delta's opening Motion, Plaintiff's Opposition and Cross-Motion do nothing to alter the conclusion that Delta is entitled to summary judgment as to all claims.

## II.   ARGUMENT

### A.   Plaintiff Failed to Properly Address Delta's Statement of Facts, and Such Facts Should Therefore Be Deemed Admitted.

Purportedly in opposition to Delta's Motion, Plaintiff submits a protracted "56.1 Counter-Statement of Disputed Facts" ("Plaintiff's Counterstatement"). Plaintiff's Counterstatement is plainly improper pursuant to Local Rule 56.1 and should be disregarded.

Local Rule 56.1(d) requires that "each statement controverting any statement of material fact[] must be followed by citation to evidence." Moreover, "[e]ach numbered paragraph in the statement of material facts . . . will be deemed to be admitted for purposes of the motion unless *specifically controverted* by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *See* Local Civil Rule 56.1(c) (emphasis added); *see also Risco v. McHugh*, 868 F. Supp. 2d 75, 88 n.2 (S.D.N.Y. 2012) (rejecting assertions in 56.1 counterstatement where, *inter alia*, counterstatement "improperly interject[ed] arguments and/or immaterial facts in response to facts asserted by [d]efendant, without specifically controverting those facts").

In her Counterstatement, Plaintiff lodges blanket form objections to each fact Delta sets forth in its 56.1 Statement. Specifically, Plaintiff purports to dispute *107* of Delta's *109* fact statements, stating in response to *each* that Delta "PRODUCED NO EVIDENCE TO MEET ITS SUMMARY JUDGMENT BURDEN THAT THIS FACT IS 'UNDISPUTED.'" *See generally* Pl.'s Counterstatement. That is untrue, as Delta's 56.1 Statement follows each statement of fact with citation to admissible evidence. *See generally* 56.1 Statement.

Furthermore, Plaintiff's Counterstatement does not set forth any facts that she contends present a dispute of fact; rather, Plaintiff simply states as to each paragraph that she "disputes this alleged 'material fact.'" *See generally* Pl.'s Counterstatement. Plaintiff then directs the Court to various parts of the record—most often her *entire* set of exhibits, 28-page declaration ("Plaintiff's Declaration"), and 61-page operative Second Amended Complaint ("SAC", Dkt. 58). *See, e.g.*, Pl.'s Counterstatement ¶¶ 21-52 (Dkt. 172). Plaintiff's Counterstatement is fatally flawed. *See Robinson v. De Niro*, 739 F. Supp. 3d 33, 105 (S.D.N.Y. 2023) ("A plaintiff alleging discrimination claims cannot escape summary judgment merely by vaguely asserting the

existence of some unspecified disputed material facts. . . . The party opposing the motion [for summary judgment] must set forth 'concrete particulars.'" (internal citations omitted)); *Genova v. County of Nassau*, No. 17-CV-4959, 2020 WL 813160, at *4 (E.D.N.Y. Feb. 19, 2020) ("[I]t is not the role of the Court to search the summary judgment record for evidence supporting a nonmovant's opposition."); *Brown v. City of New York*, No. 16 Civ. 1919 (ALC), 2018 WL 3821620, at *6 (S.D.N.Y. Aug. 10, 2018) (declining to consider portions of LR 56.1 response that did not include specific record citations); *Bryant v. S. Country Cent. Sch. Dist.*, No. 14-CV-5621, 2017 WL 1216553, at *7 (E.D.N.Y. Mar. 31, 2017) ("[T]o specifically controvert a statement of material fact, a nonmovant is required to do so with *specific* citation to admissible evidence." (emphasis added)).

As this Court has warned Plaintiff many times before, her pro se status does not exempt her from complying with applicable rules. *See Tripathy v. McCloskey*, No. 21-CV-6584, 2024 WL 2135623, at *2 (S.D.N.Y. May 13, 2024) ("[A]lthough [plaintiff] is pro se, it is his duty to adhere to LR 56.1 and he 'cannot simply dump papers on the court and expect the court to sift through them to determine if some nugget is buried somewhere in that mountain.'"); *Manolis v. Brecher*, No. 11-CV-2750, 2014 WL 642849, at *3 (S.D.N.Y. Feb. 14, 2014) ("[Plaintiff's] status as a pro se litigant does not relieve her of the duty of complying with federal and local rules" and "'the special solicitude' frequently afforded to pro se litigants does not excuse [plaintiff's] failure to comply with the requirements of Local Rule 56.1.").

Plaintiff's Declaration submitted in support of her Opposition is deficient in its own right. Specifically, Plaintiff uses her Declaration to engage in diatribes containing legal argument and conclusions, speculation, and lengthy narrative recitations of purported facts, many of which she clearly lacks personal knowledge. *See generally* Pl.'s Decl.; *see Barnes v. City of New York*, No.

13-CV-7283, 2015 WL 4076007, at *5 (S.D.N.Y. July 2, 2015), *report and recommendation adopted*, No. 13 CIV. 7283, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015) ("the *pro se* litigant is not relieved from the usual standards of summary judgment motions, including, for instance, Rule 56's requirement that affidavits and declarations 'be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.'").  Plaintiff's Declaration reflects her apparent disregard for the rules and for what constitutes "facts" appropriate for declaration.

Moreover, pursuant to the Court's Order dated October 3, 2025, ("Oct. 3 Order"; Dkt. 177), Delta understands that the Court will not consider the majority of Plaintiff's materials Plaintiff attached to and cited in her submissions. *See* Oct. 3 Order ¶ 3.  Materials precluded from consideration under this Order include Exhibits 1, 2, 4, 5, 12, 17, 18, 25, 26, and the declarations submitted by Rosonda Brown and Annelyse Greene. *See* Gunn Decl. ¶¶ 4-10.[2]

Given the material deficiencies present in her Counterstatement and Declaration, the Court should wholly disregard each, but at minimum, every portion that contains legal conclusions and arguments, unsubstantiated opinions, and/or factual assertions made without specific reference to admissible, non-precluded record evidence. *Yu v. New York City Hous. Dev. Corp. (HDC)*, No. 07 CIV. 5541, 2011 WL 2326892, at *2 (S.D.N.Y. Mar. 16, 2011) ("[T]o the extent that the statements contained in plaintiff's affidavit are not based on his personal knowledge or potentially admissible attached exhibits, they are not admissible as evidence and we need not consider them."); *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment[.]"); *Bellsouth Telecomms., Inc. v. W.R. Grace & Co.-Conn.*, 77 F.3d

---

[2] Delta addresses Plaintiff's admissible, non-precluded exhibits herein, where relevant.

603, 615 (2d Cir. 1996) ("upholding decision to disregard 'self-serving conclusions' contained in an affidavit opposing summary judgment").

**B.    Plaintiff Has Not Demonstrated Any Genuine Dispute of the Material Facts or That She Is Entitled to Summary Judgment.**

Plaintiff raises no *genuine* dispute to undermine the well-established facts set forth by Delta in its 56.1 Statement and Motion.   Moreover, Plaintiff's misguided attempt to seek summary judgment on certain retaliation claims based on purported judicial admissions she asserts Delta made in its opening brief is meritless and should be denied.

1.    Plaintiff was not subject to sexual harassment or a hostile work environment.

In its opening brief, Delta emphasized that Plaintiff has no evidence to support her claims of sexual harassment or hostile work environment besides her own inconsistent and implausible testimony.   Mot. at 14-16.   Instead of carrying her burden to provide "some hard evidence showing that [her] version of the events is not wholly fanciful," *Yu*, 2011 WL 2326892, at *23, Plaintiff presents evidence in opposition that only further *undermines* her claims that during her employment at LGA Sky Club, Bernadette Tamasi regularly and openly sexually harassed and assaulted her in front of both Delta customers and employees. *See, e.g.*, SAC ¶ 8.

Plaintiff produces only a single declaration from a purported witness to Ms. Tamasi's alleged behavior, from a 2018 incident where Plaintiff was allegedly present in the LGA Sky Club in her personal capacity. *See* Gunn Decl., Ex. A, Pl.'s Tr. at 77:9–78:9; Pl.'s Opp. Ex. 16, Declaration of Mayra Amezquita ("Amezquita Decl.") (Dkt. 172-3).   Notably, and unsurprisingly, Ms. Amezquita's 2021 declaration is *directly* contradicted by Plaintiff's sworn testimony.

For her part, Plaintiff testified that in 2018, while traveling through LGA Sky Club for personal reasons, Ms. Tamasi inexplicably approached her and "spanked [her] on [her] behind,"

6

although the two had never met before. *See* Gunn Decl., Ex. A, Pl.'s Tr. at 77:9–78; 83:21-23.

Plaintiff testified that her "friend/coworker M[a]yra Amezquita saw this," and that Ms.

Amezquita then "reported sexual abuse and assault." *Id.* at 77:23-24. When questioned during

her deposition whether Ms. Tamasi did anything else during this incident, Plaintiff testified that

Ms. Tamasi "didn't have time to do anything else," because Plaintiff immediately "told her[,]

'Don't ever put your hands on me'" and then "walked away from her." *Id.* at 94:9-15. When

asked whether Ms. Tamasi said anything to her during the incident, Plaintiff testified, "no, she

didn't say anything to me at that moment, thank God, I was trying to remain composed." *Id.* at

94:18-20.

Ms. Amezquita's declaration describes entirely conflicting facts. *See* Amezquita Decl. ¶

20. Specifically, Ms. Amezquita does not claim in her declaration that Ms. Tamasi made *any*

physical contact with Plaintiff at all but instead describes only graphic and detailed "sexually

harassing comments." *Id.* Specifically, Ms. Amezquita asserts that she heard Ms. Tamasi

"talking in a southern African-American accent saying to Erika Lee 'your [sic] a sexy black

bitch, Im [sic] gonna tear that black punani up. Make u have a seizure, like you caught the Holy

Ghost. I wonder if your black cat tastes like fried chicken or collard greens and if it's wet like

macaroni and cheese, []while saying mmmmm Yum and licking her lips, I bet your black cat

taste like some black soul food.'" *Id.*

Of note, Plaintiff stated in her Complaint that she was not "spanked" *any time before

mid-2020* (long after her employment at LGA Sky Club had ended). *See* SAC ¶ 25 ("Plaintiff

explained that it was impossible for Delta to have investigated being spanked by Tomasi [sic] at

any time in 2019 because Plaintiff was not spanked until mid-2020[.]"). At her deposition,

Plaintiff testified to the opposite—that, while she worked with Ms. Tamasi in 2019, "[i]t got to

7

the point she would grope my breasts daily whenever I worked with her, she would spank my behind." Gunn Decl., Ex. A, Pl.'s Tr. at 126:7-10. For its part, Delta has set forth credible evidence, including declarations and contemporaneous investigation materials, reflecting that Ms. Tamasi never behaved inappropriately with Plaintiff, and, in fact, had very little contact with her at all. *See* 56.1 ¶¶ 76-77, 104-105; Tamasi Decl. Ex. A. Delta's facts should be considered undisputed. *See Mitchell v. Metro-N. Commuter R.R.*, No. 12-CV-0489, 2014 WL 431343, at \*2 (S.D.N.Y. Feb. 4, 2014) ("Although [plaintiff] may rely on his own testimony in opposing summary judgment, the Court need not credit [plaintiff's] testimony when it is 'contradictory or rife with inconsistencies such that it was facially implausible.'").

Not only does Plaintiff create additional glaring inconsistencies on opposition, but she also fails to grapple with or address the existing inconsistencies identified by Delta in its Motion. Instead, Plaintiff uses her opposition to assert that the Court may not properly consider her *own* inconsistent statements and pleadings made relating to her claims, as her previous complaints are "legally non-existent." Pl.'s Opp. at 18 (Dkt. 172). This is not so. *See, e.g.*, *Rojas v. Roman Cath. Diocese of Rochester*, 738 F. Supp. 2d 381 (W.D.N.Y. 2010) (considering previous versions of plaintiff's complaints, EEOC complaints, and plaintiff's testimony in a criminal trial to find plaintiff's claims implausible at the summary judgment stage).

And contrary to Plaintiff's argument in opposition, *see* Pl.'s Opp. at 6 (Dkt. 172), this is not an instance where the Court must necessarily undertake a credibility assessment to grant summary judgment, but rather, one where Plaintiff's contradictions "transcend credibility concerns and go to the heart of whether the party has raised genuine issues of material fact to be decided by a jury." *Rodriguez v. Count. of Nassau*, 830 F. App'x 335, 339 (2d Cir. 2020). Accordingly, this Court should decline to further indulge Plaintiff's facially inconsistent and

8

outrageous claims. *See, e.g., Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 470 (S.D.N.Y. 1998) (Sotomayor, J.) (granting summary judgment against plaintiff after concluding that "[f]rom the complaint, to plaintiff's deposition, to his opposition papers to defendants' summary judgment motion, plaintiff's allegations of the events at issue are replete with inconsistent and contradictory statements"); *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (affirming district court's summary judgment where "(1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person . . . would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint[]").

### 2. Plaintiff was not suspended in April 2019.

Plaintiff's retaliation claims are premised, in large part, on her claim that she was suspended for two weeks in April 2019 as a direct consequence of complaints that she purportedly lodged regarding sex-, race-, and disability-based discrimination and harassment by Ms. Tamasi. *See, e.g.*, SAC ¶¶ 9-11. Indeed, Plaintiff went so far as to testify during her deposition that Delta EO employee Henrietta Archie explicitly informed her, "Erika, you're being suspended because you are reporting . . . hostile workplace, sex race discrimination and hostile work environment." *See* Mot. at 19.

In its opening brief, Delta demonstrated with reference to record evidence that Plaintiff was not suspended at all in April 2019, but instead was in the midst of an interactive accommodations process, which led to an approximately two-week period wherein Plaintiff was not cleared to safely work given her standing and lifting restrictions, and a need to consistently

leave work on time to take paratransit. Mot. at 18-19.[3]  Plaintiff's accommodations process, including her brief time away from the workplace while she sought updated documentation from her doctor, is corroborated by contemporaneous records: correspondence between Plaintiff, her doctor, and Delta EO; an affidavit from Ms. Archie; and Plaintiff's own testimony. *See* 56.1 ¶¶ 11-56.  In turn, Plaintiff points only to her own, self-serving and contradictory declaration, and reference to precluded "testimony of . . . Delta's own managers," which in any event does not address the position Plaintiff held during the time period she held it and therefore fails to create a genuine dispute of fact.  Pl.'s Opp. at 20-22 (Dkt. 172).

> a.    Plaintiff requested accommodations for limited lifting and standing, and to leave work at the end of her scheduled shift.

Plaintiff first attempts to create a dispute of fact by claiming that she "never requested or initiated any reasonable accommodation request at any time from December 1, 2018 through July 2019 for being unable to lift any bags because lifting bags was not in Plaintiff's job description."  Pl.'s Opp. at 14 (Dkt. 172-1).  Plaintiff further claims that "Delta has no emails or evidence from Plaintiff to prove that Plaintiff ever requested any reasonable accommodation for not being able to lift any bags and/or not being able to perform the essential duties of the LGA Sky Club position." *Id.*

Unsurprisingly, Plaintiff's assertion is blatantly false and disputed by the record.  In her accommodation paperwork, submitted to Delta on January 16, 2019 and dated December 29, 2018, Plaintiff clearly specifies that her accommodation request is "[t]o leave on time, Not [sic]

---

[3] In her Opposition, Plaintiff accuses Delta of asking the Court to adjudicate issues, defenses, and facts that occurred in California and have no relevance to Plaintiff's claims. *See* Pl.'s Opp. at 8. Specifically, Plaintiff claims that "the majority of Delta's 56.1 Facts are about Reasonable Accommodation request [sic] from California" and that "Platinif [sic] withdrew on 11/30/2018, as it didn't apply to NYC employment at LGA airport". *Id.* Delta's focus in its opening brief and the evidence set forth is squarely on Plaintiff's accommodation history during her time working in LGA Sky Club, beginning in late 2018 through early 2019. 56.1 ¶¶ 11-56. As explained herein, such history is directly relevant to Plaintiff's claim that she was retaliated against in April 2019 when she was allegedly suspended without pay for purported complaints of discrimination. *Id.*

excess standing, sitting, bending, or lifting." *See* 56.1 ¶ 11.  Moreover, Plaintiff submitted paperwork signed by her medical provider specifying that Plaintiff must "[a]void excessive lifting, bending for continuous prolonged periods of time, observe proper body biomechanics during lifting and ask for assistance if needed." Archie Decl., Ex. B at 7.  Later paperwork from a separate doctor, dated February 8, 2019, similarly indicated that Plaintiff had a permanent restriction prohibiting her from "[s]itting more than 1 [h]our, climbing steps, standing for more than one h[our], pushing more than 10 lbs, [and] carrying more than 15 lbs." *Id.*, Ex. D at 8.

In the face of overwhelming evidence undermining her assertions, Plaintiff asserts as a last-ditch effort that "Delta manufactured documents, solely for this motion, to create a new narrative." Pl.'s Decl. ¶ 13 (Dkt. 172-1). The Second Circuit has been clear, however, that a non-moving party's "bald assertion of falsified affidavits and exhibits . . . is insufficient to overcome a motion for summary judgment." *Dixon v. Zenk*, 361 F. App'x 218, 219 (2d Cir. 2010) (affirming grant of summary judgment where plaintiff attempted to refute record evidence by arguing, without support, that such evidence was falsified).

> b.    Delta determined during the interactive process that Plaintiff was unable to fulfill the essential functions of her role due to her restrictions.

Plaintiff goes on to similarly claim that her Sky Club position "never required [her] to do any lifting, any standing for long periods of time, and never required Plaintiff to lift heavy items." Pl.'s Decl. ¶ 7.  She further asserts that "[t]he written job requirements for SkyClub that Plaintiff was hired for never stated in writing" any such requirements. *Id.*; *see also, e.g.,* Pl.'s Decl. ¶¶ 37-40, 43, 44 (Dkt. 172-1); Pl.'s Opp. at 22 (Dkt. 172).

Plaintiff's assertions directly contradict her sworn deposition testimony, where she testified that in her LGA Sky Club position, she "absolutely" had responsibility for lifting, that such requirement was in the job description, and that she also "had to stand quite a lot." Gunn

Decl., Ex. A, Pl.'s Tr. at 124:12–125:2 ("Q Did you have any responsibilities for lifting any items? A. Objection, absolutely, it is in the description as well. Q. How about standing, did you have to stand? A. Objection, I had to stand quite a lot. Q. That was a requirement of the job? A. Objection, it was, it was, we had to take turns. It was I guess the model at that time where Delta wanted us to stand and greet the passengers or customers at the door and stand there."). As is well established, Plaintiff "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) (summary order) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)).

Moreover, Plaintiff left undisputed Delta's asserted fact that customer service agents ("CSAs") within Delta's Airport Customer Service division, such as Sky Club employees, are subject to being called in to assist in other locations without notice based on operational needs, which would require Plaintiff to lift up to seventy pounds. *See* 56.1 ¶ 9. And Plaintiff confirmed that CSAs were routinely made to stay beyond their scheduled shifts subject to the needs of the airport, which according to Plaintiff and Plaintiff's medical documentation, she could not do. *See id.* ¶¶ 13, 31-32. Thus, the record clearly reflects that Plaintiff's restrictions as they existed during her April 2019 interactive group discussion ("IGD") rendered her unable to fill the requirements of the role.

             c.     Delta did not place Plaintiff on a Sedgwick-administered Leave of Absence or into Delta's Alternative Position Assistance Program.

Lastly, Plaintiff claims that, if she were placed on a formal Leave of Absence through Sedgwick, Delta's third-party administrator, or referred to Delta's Alternative Position Assistance ("APA") program, Delta would have provided documentary evidence of the same.

*See* Pl.'s Opp. at 21 (Dkt. 172).  This is a red herring.  Delta was clear in its opening brief, as supported by record evidence, that during the IGD with Plaintiff on April 12, 2019, Plaintiff was verbally offered as an accommodation the opportunity to participate in Delta's APA program, or to reach out to Sedgwick to facilitate a formal Leave of Absence.  *See* 56.1 ¶ 40; Archie Decl. ¶ 24, Ex. A at 5.  Delta does *not* state that it "put Plaintiff on any APA leave" or any Sedgwick-administered leave, as both accommodations were offered at Plaintiff's discretion.  Further, Plaintiff expressed during the IGD a preference to return to her doctor for updated paperwork, which she ultimately did.  *See* 56.1 ¶ 41; Archie Decl. ¶¶ 28-34.  The absence of paperwork confirming that Delta "put" Plaintiff into an alternative accommodation is irrelevant and insufficient to raise a genuine dispute of material fact.

### 3.    Plaintiff was suspended and terminated for legitimate, non-discriminatory and non-retaliatory reasons.

Plaintiff requests summary judgment on her retaliation claims stemming from her March 2021 suspension, and subsequent June 2021 termination.  She does so by asserting, without citation, that Delta has made a binding judicial admission in its opening brief that it suspended and terminated Plaintiff "because Plaintiff opposing [sic] discrimination by filing a charge with [the California Department of Fair Employment and Housing] and/or [the Equal Employment Opportunity Commission]".  Pl.'s Opp. at 2 (Dkt. 172).  Delta, of course, admitted no such thing, nor did it do any such thing.  Rather, Delta explained that it suspended Plaintiff's employment—which was not active at the time—pending an investigation into specific, credible allegations that she had been dishonest in claiming that she had an extensive and detailed phone call with Mr. Needham that simply never occurred.  *See* 56.1 ¶¶ 90-95; Kruit Decl. Ex. A.  In Delta's ensuing investigation, Plaintiff was unable to answer basic questions regarding the alleged call, instead claiming that she needed to reference her "notes."  *See* 56.1 ¶¶ 98-99, 102-103.  Plaintiff later

testified in her deposition that such notes on the purported phone call do not and never did exist. *See* Mot. at 11, n.7. Plaintiff eventually informed Delta during the investigation that further questions "will be ignored and unanswered." Kruit Decl., Ex. D at 3. Thus, Delta determined that Plaintiff had intentionally engaged in dishonest behavior regarding a Delta employee and had further been insubordinate and evasive during Delta's investigation into the same. *Id.* Delta did not and does not admit that it took any action against Plaintiff because she complained of discrimination.

Even so, Plaintiff's cross-motion and 2021 retaliation claims should each fail, because (1) she has not established that she engaged in protected activity, and (2) she fails to establish that Delta's legitimate, non-retaliatory reason for her suspension and termination were pretext for retaliation.

a.    Plaintiff's activity was not protected.

Underlying Plaintiff's cross-motion is her apparent belief that she was entitled to lodge disingenuous complaints containing intentional falsehoods regarding a Delta employee, and that she would thereafter be insulated from any consequences. Plaintiff misunderstands the law. Plaintiff's cross-motion cannot succeed, and her 2021 retaliation claims warrant dismissal for the independent and sufficient reason that she has not shown that she engaged in protected activity.

Plaintiff's complaint made to the state and federal agencies, and any complaints otherwise made internally to Delta, are only protected to the extent she made them in good faith—she did not. *See, e.g.*, *Polite v. VIP Cmty. Servs.*, No. 20CIV7631, 2022 WL 9847075, at *2 (S.D.N.Y. Oct. 17, 2022). Indeed, "[i]t is well-established that, while a plaintiff's complaint does not have to be correct in order to constitute protected activity, it must have been made in the 'good faith, reasonable belief' that it was." *Id.* (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)); *see also Sanders v. Madison Square Garden, L.P.*, 525 F. Supp.

2d 364, 366 (S.D.N.Y. 2002) ("Therefore, if the plaintiff did not make a good faith complaint, but rather made up accusations . . . then her activity was not protected." (citing *Matima v. Celli*, 228 F.3d 68 (2d Cir. 2000))).  The record evidence reflects that Plaintiff's 2021 complaint made to the DFEH and EEOC were made in bad faith, as confirmed by Delta's contemporaneous investigation, and Plaintiff has not provided *any* evidence to indicate otherwise.

Weighing facts similar to those here, the Court in *Polite* considered "Human Resources' determination that [p]laintiff fabricated the complaints against [his supervisor]," in finding that "no reasonable juror could find that he possessed a 'good faith, reasonable belief' that he was opposing an unlawful employment practice," and "[h]e therefore cannot establish that he engaged in any protected activity."  *Polite*, 2022 WL 9847075, at *2.

The same result is plainly appropriate here where Plaintiff does not actually dispute (with citation to any admissible or relevant evidence) that Delta's investigation concluded that Plaintiff made intentional and substantial falsehoods in her DFEH complaint.  *See* Pl.'s Counterstatement ¶ 108 (Dkt. 172-1).  Thus, even if it could somehow be said that Delta took actions because of Plaintiff's DFEH/EEOC complaints, and not for the specific dishonest statements contained therein and ensuing insubordinate behavior, Plaintiff still cannot succeed in her Cross-Motion. The situation at hand is not one of an employee making a good-faith, albeit mistaken or incorrect, complaint of discrimination.  Instead, the undisputed record evidence demonstrates that Plaintiff was acting in bad faith in filing a knowingly fabricated agency complaint, and thus that her activity was not protected.  *See* 56.1 ¶¶ 90-108.

b.    Plaintiff fails to establish pretext.

Even assuming, arguendo, that Plaintiff could demonstrate that she engaged in protected activity (she cannot), she must still demonstrate that Delta's legitimate, non-retaliatory reasons for her suspension and termination were pretextual.

Plaintiff asserts that the Court cannot grant Delta summary judgment on her retaliation claims relating to her 2021 suspension and termination because the issue of pretext is one for a jury. *See* Pl.'s Opp. at 13 (Dkt. 172). In support, Plaintiff simply states that "Delta has no evidence to prove that Plaintiff ever made any false statements." *Id.* at 13. Plaintiff's conclusory assertion is incorrect, but more importantly, misstates what is required of her at this stage of the burden-shifting analysis. That is, Delta has provided its legitimate, nonretaliatory reasons for the challenged conduct—that Plaintiff violated Delta's policies requiring honesty and full participation in company investigations. *See* Kruit Decl., Ex. J at 22 (Code of Ethics) ("Anything less than complete honesty will lead to appropriate disciplinary action, up to and including termination of your employment."); Kruit Decl., Ex. K at 26 (The Way We Fly) ("Each one of us is required to fully cooperate in company investigations. This includes providing truthful and accurate answers to questions, as well as documents or other information requested by the company."). The burden thus shifts to Plaintiff to "point 'to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Mohammed v. New York City Dep't of Educ.*, 932 F. Supp. 2d 420, 429 (E.D.N.Y. 2013). She fails to do so here, in the face of evidence contradicting Plaintiff's statements regarding her call with Mr. Needham, and email correspondence reflecting Plaintiff's belligerent behavior during the investigation. And mere temporal proximity between Plaintiff's alleged activity and Delta's actions will not support a finding of pretext at this stage. *See Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-1085-CV, 2025 WL 704278, at *4 (2d Cir. Mar. 5, 2025) ("[E]ven under the more liberal city law standards, temporal proximity alone remains insufficient to demonstrate retaliatory motives after the employer has offered legitimate, nonretaliatory reasons.").

Lastly, Plaintiff points to supposed evidence showing "that Delta has a systemic pattern and practice of NOT suspending or terminating similarly situated non-black females . . . who intentionally make 100% knowingly false accusations about discrimination, physical assault, and hostile work environment that occurred in the workplace."  Pl.'s Opp. at 13 (Dkt. 172). Plaintiff's purported evidence appears to consist of internal Delta documents relating to specific incidents involving former Delta employees and vexatious litigant Aasir Azzarmi (fka Nicholas Pimentel), *see* Pl.'s Opp., Ex. M-N (Dkt. 172-3).  Plaintiff's evidence does not save her claims, as it provides no information or context from which it can be said that Plaintiff's purported comparators are similarly situated in any material respect, let alone all material respects.  *See Schweit v. City of New York*, No. 04CV5462, 2007 WL 1133440, at *6 (E.D.N.Y. Apr. 17, 2007) ("[T]to justify an inference of retaliation from disparate treatment, 'the plaintiff must show she was similarly situated in all material respects' to the individuals with whom she seeks to compare herself.").  Most importantly, these vague documents do not reflect that the purported comparators engaged in conduct like Plaintiff's, i.e., intentionally dishonest and insubordinate behavior.  Plaintiff's comparator evidence likewise fails to raise an issue of fact as to Delta's proffered reason for her suspension and termination.

Plaintiff's Cross-Motion cannot succeed, and her 2021 retaliation claims cannot survive, where she does not allege protected activity for which Delta could have retaliated, and further fails to demonstrate that issues of fact exist regarding pretext.

## III.  **CONCLUSION**

For the foregoing reasons, and those set forth in its opening brief, Delta respectfully requests that this Court grant its Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and dismiss this action, with prejudice, in its entirety.

**RESPECTFULLY SUBMITTED,**

October 21, 2025                          MORGAN, LEWIS & BOCKIUS LLP
New York, New York

By: */s/ Imani D. Gunn*
       Ira G. Rosenstein
       Imani D. Gunn
101 Park Avenue
New York, NY 10178
(212) 309-6000
ira.rosenstein@morganlewis.com
imani.gunn@morganlewis.com
*Attorneys for Delta*

## **WORD COUNT CERTIFICATION**

I hereby certify that this memorandum complies with the word-count limits pursuant to Local Civil Rule 7.1. This memorandum contains 5,410 words, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, but does include material contained in footnotes, according to the word processing software used to prepare it.

/s/ *Imani D. Gunn*
Imani D. Gunn